UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE HIPSAVER COMPANY, INC., | ) <br> ) Civil Action No. 05-10917 PBS <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) <br> ) |
| J.T. POSEY COMPANY, | ) <br> ) |
| Defendant. | ) <br> ) |

**MEMORANDUM IN SUPPORT OF MOTION OF
DEFENDANT J.T. POSEY COMPANY FOR ORDER
TRANSFERRING VENUE TO CENTRAL DISTRICT OF CALIFORNIA**

The within motion is being filed as a companion motion to J. T. Posey Company's ("Posey") motion to dismiss Plaintiff's complaint under FRCP 12(b)(6).

**I.     INTRODUCTION**

This is an action for damages and injunctive relief for alleged false advertising and breach of a settlement agreement. Pursuant to 28 U.S.C. § 1404(a), Defendant J.T. Posey Company ("Posey") moves this Court for an Order transferring venue of this action to the U.S. District Court for the Central District of California.

**II.     PARTIES**

Posey is a corporation organized under the laws of the State of California with its principal place of business located in Arcadia, Los Angeles County, California. Posey is a family-owned business that has been operated by members of the Posey family since its

founding in 1937.  Posey is a well-respected supplier of various products used in the healthcare industry.  Within the last five years, Posey has introduced a line of hip protectors, that is, products that are designed to help prevent hip fractures in elderly persons caused by falls.  See accompanying Declaration of Victoria Gay Lewis, paragraph 2 (hereafter, cited "Lewis Decl., ¶ __.").

Plaintiff The HipSaver Company Inc. ("HipSaver") is one of Posey's competitors.  Lewis Decl., ¶ 3.  HipSaver also manufactures and sells hip protectors.  HipSaver claims that its principal place of business is in Canton, Massachusetts.  See Complaint, ¶ ___.

### III.  STATEMENT OF FACTS

#### A.  POSEY COMMISSIONS AN IMPACT STUDY AND CREATES AND DISSEMINATES ADVERTISING THAT MAKES REFERENCE TO IT

In 2001, Posey engaged an independent laboratory, Garwood Laboratories, Inc. ("Garwood"), to assist it in identifying an effective cushioning material that was to be inserted into a hip protector product (the "Hipster") that Posey was manufacturing.  Lewis Decl., ¶ 5.  In connection with the project, Posey provided Garwood with various foam materials.  Garwood designed a test protocol, conducted the testing and then reported the results in writing to Posey.  Lewis Decl., ¶ 8.  (Hereafter, the testing and test results shall be referred to collectively as the "Impact Study").  Garwood is situated in the County of Los Angeles.  Id., ¶ 11.

In 2002 and 2003, Posey created and disseminated various advertising materials that made reference to the Impact Study.  For example, these materials stated that "[a]n independent laboratory study was conducted to determine the most effective impact

absorbing material . . ." They further stated that the testing was conducted by Garwood and that the data from the Impact Study was on file at Posey's offices. They also contained a bar chart that was intended to graphically illustrate (i) the force of a fall on various surfaces, and (ii) the amount (expressed as a percentage) by which a Posey hip protector could reduce the force of a fall on concrete. Lewis Decl., ¶¶ 9-10.

> **B.  HIPSAVER SUES POSEY FOR FALSE ADVERTISING, POSEY COUNTERCLAIMS, AND THE PARTIES SETTLE THEIR RESPECTIVE CLAIMS**

On or about June 10, 2004, HipSaver instituted an action against Posey in this Court. The action was entitled <u>The HipSaver Company, Inc. v. J.T. Posey Company</u>, U.S.D.C., Case No. 04-11294-PBS ("Posey I"). In Posey I, HipSaver sought damages and injunctive relief under 15 U.S.C. § 1125(a)(1)(B) (the "Lanham Act"), and the Massachusetts Unfair or Deceptive Business Practices Act (G.L. c. 93A), for Posey's alleged dissemination of false materials comparing the effectiveness of hip protectors. In its counterclaim, Posey sought damages and an injunction against HipSaver for its false advertising. <u>See</u> Declaration of Jeffrey G. Sheldon, ¶ 2 (hereafter, "Sheldon Decl., ¶ ___.").

On or about September 22, 2004, HipSaver and Posey settled Posey I. As part of the settlement, the parties entered into a written agreement (the "Settlement Agreement"), which provided, among other things, that HipSaver released Posey from all claims, known or unknown, relating to false advertising claims under 15 U.S.C. § 1125 and G.L. c. 93A which were or which could have been asserted in Posey I. <u>See</u> Sheldon Decl., ¶ 3

and Exhibit "A." After the Settlement Agreement was executed, Posey I was dismissed with prejudice.

### C. HIPSAVER'S RECENT DEMAND LETTERS AND THE ENSUING LAWSUITS BROUGHT BY EACH PARTY

On or about May 3, 2005, HipSaver sent Posey a letter which stated, among other things, (i) that Posey's advertising regarding the Impact Study was deceptive, false and/or misleading, and (ii) that under the Settlement Agreement, Posey was obligated to give HipSaver advance notice prior to engaging in any comparative advertising. Sheldon Decl., ¶ 4 and Exhibit "B".

In the May 3 letter, HipSaver also demanded that Posey withdraw all advertising relating to the Impact Study and that it undertake corrective advertising. Finally, the letter also stated that, if Posey failed to comply with HipSaver's demands, HipSaver would "proceed with a lawsuit." Id. The day after it sent the May 3 cease and desist letter, HipSaver initiated this action ("Posey II"). See generally Complaint.

On May 9, 2005, Posey's counsel informed HipSaver that Posey's advertising regarding the Impact Study was accurate and that, in any event, Posey's accused advertising was in place prior to the execution of the Settlement Agreement, so that any claims regarding the advertising had already been released. See Sheldon Decl., ¶ 5 and Exhibit "C".

On May 17, 2005, HipSaver sent Posey a second letter (erroneously dated May 18, 2005). See Sheldon Decl., ¶ 6 and Exhibit "D". In the May 17 letter, HipSaver again threatened to proceed with a lawsuit in Massachusetts if Posey did not meet HipSaver's demands. Id.

Following its receipt of HipSaver's May 17 letter, Posey filed a complaint for declaratory relief in the U.S. District Court for the Central District of California entitled J.T. Posey Company v. HipSaver Co., Inc., Case No. CV05-3705 FMC ("Posey III"). See Sheldon Decl., ¶ 7 and Exhibit "E". In Posey III, Posey seeks a judicial declaration that its advertising regarding the Impact Study is accurate, that it has not violated the Lanham Act or any other laws, and that Posey has not violated its obligations to HipSaver under the Settlement Agreement in Posey I.

After Posey served HipSaver with the summons and the complaint in Posey III, HipSaver sent Posey a copy of the summons and the complaint in this action, i.e., Posey II. Thereafter, HipSaver asked Posey to agree to transfer Posey III to Massachusetts. However, since virtually all of the witnesses and the evidence relating to both Posey II and Posey III are located in California, Posey asked HipSaver to agree to transfer Posey II to California. Sheldon Decl., ¶ 8. Since the parties could not agree, this motion followed.

## IV.  ARGUMENT

### A. UNDER 28 U.S.C. § 1404(A), THIS COURT MAY TRANSFER THE INSTANT CASE TO THE CENTRAL DISTRICT OF CALIFORNIA

As a threshold matter, Posey notes that, under 28 U.S.C. § 1404(a) ("Section 1404(a)"), a court may not transfer a case to a proposed transferee district unless the action "might have been brought" there. 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.")

Here, the proposed transferee district is the Central District of California, which includes the County of Los Angeles.  See 28 U.S.C. § 84(c).  Since Posey has its principal place of business in the County of Los Angeles, under 28 U.S.C. § 1391(b), the proposed transferee district "might have been brought" there.  Thus, the Central District of California is a proper transferee district for purposes of Section 1404(a).

### B. CONVENIENCE FAVORS A TRANSFER OF THIS CASE TO CALIFORNIA

As is set forth above, HipSaver filed this action approximately two weeks before Posey filed Posey III in the Central District of California.  Thus, HipSaver will likely argue that, under the so-called "first to file rule", it is entitled to have its dispute with Posey resolved in this district.

"The preference for the first-filed action to proceed is, however, not an inviolable rule of law."  Kleinerman v. Luxtron, 107 F.Supp.2d 122, 124 (D. Mass. 2000) (allowing second-filed action to proceed).  Where convenience favors the second-filed action, the first to file rule yields and priority is given to the second action.  Id., at 125 ("[an] exception to the first-filed rule occurs when the balance of convenience favors allowing the later-filed action to proceed.") (citing SW Industries, Inc. v. Aetna Cas. & Sur. Co., 653 F.Supp. 631, 634 (D. R.I. 1987)).

The decision of whether to transfer a matter to a more convenient forum pursuant to Section 1404(a) is a matter committed to the sound discretion of the trial court. Princess House, Inc. v. Lindsey, 136 F.R.D. 16, 18 (D. Mass. 1991) (citing Codex Corp. v. Milgo Electronic Corp., 553 F.2d 735, 737 (1st Cir. 1977).  See also Cianbro Corp. v. Curran-Lavoie, Inc., 814 F.2d 7, 11 (1st Cir. 1987).

On its face, Section 1404(a) requires a district court considering a transfer to take into account (i) the convenience of the parties and witnesses and (ii) the interests of justice. However, the statute does not indicate what weight these factors are to be assigned. In deciding motions brought pursuant to Section 1404(a), courts in this circuit consider: (i) the convenience of the parties and the witnesses, (ii) the order in which the cases were filed, (iii) the availability of documents, and (iv) the possibilities of consolidation or coordination. Cianbro, 814 F. 2d at 11.

The plaintiff's choice of forum is also entitled to consideration, but this is not the controlling factor. See Van Dusen v. Barrack, 376 U.S. 612, 616, 84 S.Ct. 805, 809, 11 L.Ed.2d 945 (1964) ("Section 1404(a) reflects an increased desire to have federal civil suits tried in the federal system at the place called for in the particular case by considerations of convenience and justice."); W. Marine Prods. v. Dolphinite, Inc., Civil Action No. 04-10251-PBS , 2005 U.S. Dist. LEXIS 7489, at *34 (D. Mass, March 23, 2005) (transferring case from Massachusetts to Florida because majority of witnesses were located in Florida). The weight to be accorded this factor varies depending upon the circumstances of the case. Lindsey, 136 F.R.D. at 18 (citing Brant Point v. Poetzsch, 671 F.Supp. 2, 5 (D. Mass. 1987)).

A consideration of the foregoing factors in the instant case leads to the conclusion that the matter should be transferred to the Central District of California.

### 1.     The Convenience of the Parties and the Witnesses:

In deciding a motion to transfer, the convenience of the witnesses is the most important factor. Home Prods. Intern.-North America, Inc. v. PeopleSoft, 201 F.R.D. 42,

48 (D. Mass. 2001); Lindsey, 136 F.R.D. at 18.  In considering this factor, the court must take into account the number of potential witnesses located in both the transferor and transferee districts, the nature of their testimony, and whether they can be compelled to testify.  This ordinarily requires the party seeking a transfer to specify who the important witnesses are and to state generally the substance of their expected testimony.  Lindsey, 136 F.R.D. at 18.  See also Dupre v. Spanier Mar. Corp., 810 F.Supp. 823, 826 (S.D. Tex. 1993) (convenience of the witnesses is not a "battle of the numbers", to be decided by which party has the longer list of "potential" witnesses; the main consideration is the convenience of "key" witnesses", i.e., those who will actually be called to testify).

In this case, the primary issues are: (i) whether Posey has been engaged in false and misleading advertising, and (ii) whether Posey violated the Posey I Settlement Agreement by allegedly failing to give HipSaver advance notice of that advertising.  The advertising at issue relates generally to Posey's "Hipster" product.  More specifically, it relates to statements contained in that advertising regarding the testing performed by Garwood on the foam samples that were provided to it by Posey, including the one that Posey incorporates into its Hipster product.

As is set forth in the accompanying Lewis and Morseburg declarations, the witnesses who have the most knowledge regarding Posey's accused advertising and the Garwood testing that was referenced in that advertising are: (i) Jeff Yates, who was formerly Posey's Director of Marketing, but who is no longer affiliated with the company; (ii) Leanne Powers, who was formerly Posey's Marketing and Communications Manager, but who is no longer affiliated with the company; (iii) Vicky Lewis, who is presently the product manager for Posey's "Hipster" product; (iv) Lee

Rash, who was Posey's manager of new product development in 2001 and who is presently its director of materials; (v) Charles Kline, who was an engineer on the Hipster project and who is presently still employed by Posey; (vi) Ernie Posey, who is presently Posey's president; (vii) Tim Sturkie, a former Garwood employee who participated in the development of the test protocol that was to be used on the materials that Posey wanted tested; (viii) Dominic Hunter, a former Garwood technician who actually performed the testing that is the subject of the Impact Study; (ix) Rick Clemons, who is still employed by Garwood and who wrote the test report; and (x) William Flower, Garwood's quality control manager, who was in charge of assuring that Garwood followed the test protocol and who signed off on the test report.  Lewis Decl., ¶¶ 5-6; Decl., ¶ 2,

     As is also set forth in the accompanying declarations, all of the foregoing witnesses are "key" witnesses who are expected to testify regarding: (i) Posey company's decision to retain Garwood to conduct the subject testing (Rash); (ii) the design of the protocol for the Impact Study (Rash, Kline, Sturkie); (iii) Garwood's actual testing of the foam materials Posey provided (Rash, Lewis, Sturkie, Hunter); (iv) the recordation and reporting of Garwood's test results (Lewis, Sturkie, Clemons, Flower), (v) the development and approval of Posey company's advertisements that refer to the Impact Study and/or Garwood's test results (Yates, Powers, Posey); (vi) Posey company's dissemination of ads that mention the Impact Study and/or the test results (Yates, Powers, Posey); and (vii) Posey company's understanding of the meaning of paragraph 8 of the Settlement Agreement and its execution of that agreement (Posey).  Morseburg Decl., ¶ 3.  Of the ten key witnesses identified above, four (Rash, Kline, Lewis and Ernie Posey) are presently employees of Posey company.  Thus, if venue remains in Massachusetts,

Posey will likely be able to secure their presence in Massachusetts for the trial. The same cannot be said for the remaining six (i.e., Sturkie, Hunter, Clemons, Flower, Yates and Powers), who are either present employees of Garwood or former employees of Garwood or Posey. Posey has no control over any of these six witnesses. None of them has any obligation to testify for Posey and since all of them still reside in the Los Angeles area, Morseburg Decl., ¶¶ 5-6, they are beyond the subpoena power of this court.

In fact, of these remaining six, one (Yates) has already indicated that he is not amenable to traveling from California to Massachusetts for trial. Another (Powers) is 32 weeks pregnant and has been given a "no-fly order" by her doctor. Morseburg Decl., ¶ 6.

As for the other four (Sturkie, Hunter, Clemons and Flower), even if they were inclined to appear at trial voluntarily (and Posey has no information to indicate that they would be so inclined), the personal and financial inconvenience they would suffer by having to travel to Massachusetts would be great. Id.

Posey could depose each of the key non-Posey witnesses and read their testimony at trial. This, however, would be expensive. It would also deprive Posey of the opportunity of having the court and the jury observe them while they testified and justice is better served by having witnesses testify live rather than by deposition. Anderson v. Century Products Co., 943 F.Supp. 137, 149 (D. N.H. 1996) (citing Chicago, Rock Island and Pac. R.R. Co., 220 F.2d 299 (7th Cir. 1955)). See also Kleinerman, 107 F.Supp.2d at 125 (when considering the convenience of the witnesses, the courts prefer live testimony); Lindsey, 136 F.R.D. at .20 ("It is well settled that a court should procure live testimony of material non-party witnesses at trial rather than being forced to rely upon deposition evidence.")

If the instant action were transferred to California, the inconvenience to the witnesses and to Posey would be minimized. The inconvenience to HipSaver would be increased, but only slightly. After all, HipSaver would most likely have only one witness (Mr. Goodwin) attend the trial. The minimal inconvenience of having one witness attend trial in a distant forum would be offset by the convenience of being able to compel each of the six key non-party affiliated witnesses to attend the trial and by the advantage of being able to cross-examine them in person.

In sum, the "convenience of the witnesses" factor clearly weighs heavily in favor of a transfer of this action to the Central District of California. Because a transfer would substantially reduce the burden on Posey and only slightly increase the burden to HipSaver, the "convenience of the parties" factor also weighs in favor of a transfer. Even if this factor did not weigh in favor of a transfer, however, the balance would still tip in favor of a transfer because the "convenience of the witnesses" factor is more important than the "convenience of the parties" factor. PeopleSoft, 201 F.R.D. at 48; Lindsey, 136 F.R.D. at 18.

### 2. The Order In Which the Cases Were Filed.

This action was filed before Posey III. Thus, this factor weighs in favor of no transfer. However, the "first to file" rule does not guarantee that a matter will be litigated in the forum of the first-filed action. Indeed, it is well-established that the preference for the first-filed action may be overcome where convenience favors the later-filed action. See, e.g., Veryfine Prods., Inc. v. Phlo Corp., 124 F. Supp.2d 16, 24-26 (D. Mass. 2000)

(considering convenience of venue of later-filed action, although finding transfer was not warranted).

### 3. The Location of the Documentary and Other Physical Evidence.

Both Posey and Garwood are physically located in Los Angeles County in the Central District of California. Posey maintain their records and documents in Los Angeles Lewis Decl., 11-12, as, presumably, does Garwood. Moreover, Los Angeles is where the physical testing that is the subject of Posey's accused advertising took place and that is also where the equipment that Garwood used to do the testing is located. Lewis Decl., ¶ 11.

Neither Posey nor Garwood maintains a place of business in Massachusetts and neither company maintains any documents there. Lewis Decl., ¶ 12. Moreover, other than the cease and desist letters HipSaver's lawyers sent to Posey, it is exceedingly unlikely that HipSaver will have any documents relevant to the main issues in the case.

On balance, this factor favors a transfer.

### 4. The Possibilities for Consolidation/Coordination.

If this case were transferred to California, it could be consolidated with Posey III because both cases involve the same issues and the same parties. This would conserve judicial resources and the parties' resources. Thus, this factor weighs in favor of a transfer.

5.   **The Plaintiff's Choice of Forum.**

In ruling on a motion under Section 1404(a), the Plaintiff's choice of forum is entitled to some consideration. The fact that this is the Plaintiff's home forum weighs against transfer. However, this factor is outweighed by numerous other considerations. For example, all of the conduct which is the subject of HipSaver's complaint – Garwood's testing, the development of Posey's accused ads, the printing and the dissemination of those ads, the alleged failure to give HipSaver advance notice of the ads – all occurred in California. See generally Lewis Decl. ¶¶ 5, 8, 9, 11.

The only connection this case has to Massachusetts is that HipSaver is located here and this is where and the Plaintiff chose to bring Posey I.

6.   **Other Factors.**

When weighing motion under Section 1404(a), some courts take into consideration the law to be applied under the theory that, if the law to be applied is a statute of State "X", a court sitting in State "X" and is better equipped to interpret that statute than is a court sitting in State "Y". However, this notion was laid to rest in PeopleSoft, 201 F.R.D. at 49, where the court found that a judge in California "is surely as competent to understand the relevant statutes of Massachusetts as is a judge of the United States District Court for the District of Massachusetts to understand any relevant California statutes." Therefore, the "law to be applied" factor weighs neither for nor against a transfer.

## V.   CONCLUSION

The relevant facts and circumstances indicate that the burden of litigating this matter in this forum far outweighs the benefits and the pubic interest in doing so. Therefore, this court should transfer this action to the Central District of California pursuant to Section 1404(a).

Respectfully submitted,

Dated: June 17, 2005

J.T. POSEY COMPANY

By its attorneys,

/s/ Douglas H. Morseburg
Jeffrey G. Sheldon (Admitted Pro Hac Vice)
Douglas H. Morseburg
    (Admitted Pro Hac Vice)
Shannon S. Sheldon
    (Admitted Pro Hac Vice)
SHELDON & MAK
225 South Lake Avenue, Suite 900
Pasadena, CA  91001
(626) 796-4000


Anthony J. Fitzpatrick (BBO # 564324)
DUANE MORRIS LLP
470 Atlantic Avenue, Suite 500
Boston, MA 02210
(617) 289-9200