**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| The HipSaver Company, Inc., | ) | Civil Action No. 05-10917 PBS |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v | ) | |
| | ) | |
| J.T. Posey Company, | ) | |
| Defendant | ) | |
| | ) | |

**PLAINTIFF'S OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS
OR FOR SUMMARY JUDGMENT**

**AND**

**CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT FOR
<u>BREACH OF THE SETTLEMENT AGREEMENT</u>**

Posey has tried this strategy before. Launch a false advertising campaign misstating a flawed study. By the time the misrepresentations are clearly identified and the flaws unearthed, the damage to HipSaver has been done. A 2004 Settlement Agreement providing for advanced notice was intended to prevent such hit-and-run tactics. Now, with this Motion, Posey attempts to create more delay and obfuscate the issues.

The HipSaver Company's Complaint in this action relates a complete story of J.T. Posey Company's unabating campaign of false advertising. It describes a continuous arc

from the beginnings of Posey's copying of HipSaver hip protectors and subsequent misrepresentations, through its agreement to be bound by the settlement in the earlier action before this Court, and ending in its fresh round of false advertising begun this January in breach of that Settlement Agreement.  It thus provides a complete factual predicate more than sufficient to justify HipSaver's claims for relief, and Posey's Motion to Dismiss must be denied. [1]

The advertisement at issue in this case is dated January 24, 2005. It was created and distributed on the Internet, at trade shows, and in product stuffers just  months after Posey agreed to be bound by strict notice and disclosure provisions in the Settlement Agreement.  Therefore, Posey's 2005 advertising campaign was commenced in breach of the agreement; and HipSaver is entitled to summary judgment on Count I of its claim.

Finally, because the advertisement at issue here was created months after the Settlement Agreement, and is independent from the advertisement in the earlier action and the study to which it cites, this Court should deny Posey's Motion for Summary Judgment that the Settlement Agreement exhausts HipSaver's claims.

## FACTUAL BACKGROUND

HipSaver, a small, closely held Massachusetts company headquartered in Canton has been in business since 1995. Complaint at ¶1; Declaration of Edward L. Goodwin ("Goodwin Declaration") at ¶3. HipSaver's primary business is to invent, develop, manufacture, and sell soft hip protector garments, invented by the company's President

---

[1] In the event that this court concludes that material omissions remain in the Complaint, the HipSaver Company seeks leave to amend pursuant to Fed. R. Civ. P. 15(a).

Edward Goodwin, which reduce the potential for critical hip fractures in elder patients. Complaint at ¶2; Goodwin Declaration at ¶3.  HipSaver garments are marketed under the HIPSAVER® and SLIMFIT™ trademarks. Complaint at ¶4; Goodwin Declaration at ¶3.

Posey, headquartered in California, dwarfs the more focused HipSaver in size and the vast scope of its product line.  Complaint at ¶¶5, 6.   Tensions between the two heightened when Posey decided to copy the successful HipSaver design in the recreation of its failing HIPSTER product. Complaint at ¶11; Goodwin Declaration at ¶7.  Not content with misappropriating the HipSaver design, Posey subsequently began a nationwide campaign of false, deceptive and misleading advertising aimed at the HipSaver Company.  Complaint at ¶12; Goodwin Declaration at ¶8.  HipSaver was forced last year to bring suit in this Court in order finally to clear the name of its product, Civil Action No. 04-11294 PBS.  That suit resulted in a Settlement Agreement,[2] attached as Exhibit 1.[3] Further to the Settlement Agreement, Posey withdrew the advertising at issue and published corrective advertising; and the suit was then dismissed with prejudice per stipulation of the parties. Complaint at ¶¶13, 19; Exhibit 11, Stipulation of Dismissal; Exhibit 12, Docket Report from Civil Action No. 04-11294 PBS.

This latest round relates to an enhanced advertising campaign, again targeting HipSaver, begun this year.  Complaint at ¶14; Goodwin Declaration at ¶9.  The campaign centers around a single ad, dated January 24, 2005, attached as Exhibit 2 to the Goodwin

---

[2] The so called "confidentiality provision" referenced in footnote 5 to Posey's Memorandum by its own terms does not apply for "purposes of enforcement."  Exhibit 1 at ¶14.  HipSaver's Complaint seeks to enforce the Settlement Agreement, thus that provision is inapplicable to this matter.
[3] All exhibits may be located in the concurrently filed Appendix of Exhibits.

Declaration (the "2005 Advertisement"). Complaint at p. 7; Declaration of Victoria Gay Lewis at ¶6. The 2005 Advertisement references "an independent laboratory study that was conducted to determine the most effective impact absorbing material," a study by Garwood Laboratories (the "Impact Study"), the rough contours of which are attached as Exhibit 4. The Impact Study expressly names the HipSaver product and compares it to the Posey HIPSTER. Exhibit 4 at ¶1.1.[4] The 2005 Advertisement and the Impact Study are not connected to the advertisements and the so-called UCLA study at issue in the earlier lawsuit. HipSaver has expressly demanded of Posey withdrawal of the 2005 Advertisement to no avail. Complaint at ¶15; *see e.g.* May 18, 2005 letter from Edward J. Dailey to Jeffrey G. Sheldon attached as Exhibit B to the Declaration of Shannon Sheldon. Targeted to health car buyers, many of whom are particularly ignorant as to the relative merits of the hip protection products on the market, the 2005 Advertisement poses a real and substantial threat to HipSaver. Complaint at ¶¶16, 17; Goodwin Declaration at ¶19.

## **ARGUMENT**

Taken as a whole, the HipSaver Complaint, drafted, of course, prior to any discovery, relates a complete picture of Posey's ongoing history of false advertising, up to and including its latest round this year, in clear, broad strokes. The "short and plain statement of the claim" contained within the Complaint is thus more than sufficient to

---

[4]   As stated by Mr. Goodwin in his declaration, he repeatedly asked Posey for the entire Impact Study prior to this lawsuit but was refused. Goodwin Declaration at ¶¶11, 12.

give Posey the "fair notice" required by Fed. R. Civ. P. 8(a)(2). *Centro Medico Del Turabo, Inc. v. Feliciano De Melecio*, 406 F.3d 1, 5 (1st Cir. 2005). Indeed, to see that the notice function of the pleading was more than satisfied in fact, and that this motion to dismiss is rooted in technicalities without substance, one need look no further than Posey's companion Motion to Transfer, or its Summary Judgment motion, or even its Opposition to HipSaver's Motion to Dismiss, Stay or Transfer the California Action, Exhibit 9. In those documents Posey shows little difficulty recognizing the nature of the claim and the "grounds upon which its rests." Thus HipSaver's Complaint, as the Supreme Court recently reiterated, "easily satisfies the requirements of Rule 8(a) because it gives [Posey] fair notice of the basis for petitioner's claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 122 S.Ct 992, 999 (2002).

The highly deferential legal standard is well accepted. When confronted with a motion to dismiss the court accepts as true all well-pleaded factual averments and draws all reasonable inferences in the Plaintiff's favor. *Raytheon Co. v. Continental Casualty Co.*, 123 F. Supp. 2d 22, 26 (D. Mass. 2000). And dismissal for failure to state a claim is appropriate only where the pleadings fail to set forth factual allegations "either direct or inferential" of the elements of the claim needed for recovery under "some actionable legal theory." *Id.*; *Centro*, 406 F.3d at 5. The Rules do not require a claimant to set out in detail the facts upon which he bases his claims. *Raytheon*, 123 F. Supp. 2d. at 26.

## I.     HipSaver Has Provided a Substantial Factual Basis for Its Claims

Posey's argument suffers from acute tunnel vision, narrowly focusing on a few sentences rather than the entire story detailed in the Complaint and the numerous of documents integral to it.  The Settlement Agreement, Exhibit 1, the record of the prior case before this Court including the Executed Stipulation of Dismissal, and Docket, Exhibits 11 and 12, a copy of the 2005 Advertisement at issue in this matter, Exhibit 2, and the underlying Impact Study itself, Exhibit 4, may all be incorporated into the Complaint for purposes of deciding this motion.  *Beddall v. State Street Bank*, 137 F.3d 12 at 16-17 (1st Cir. 1998) ("When, as now, a complaint's factual allegations are expressly linked to--and admittedly dependent upon--a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)"); *Alternative Energy, Inc. v. St. Paul Fire and Marine Insurance Co.*, 267 F.3d 30, 33 (settlement agreement incorporated into pleadings for 12(b)(6) purposes).

### A.     Count 1: Breach of Settlement Agreement

HipSaver's Complaint, on its face, makes clear that Posey has breached a valid Settlement Agreement, thereby causing HipSaver damage.  In particular, it states that the parties entered into a clearly identified Settlement Agreement in order to put an end to the June, 2004 law suit.  Complaint at ¶19.  Posey then breached specifically identified provisions of the Settlement Agreement—namely, the notice and disclosure provisions—

6

by launching its current advertising campaign in violation of the Settlement Agreement without notice to HipSaver.  Complaint at ¶20; Exhibit 1 at ¶8.[5]

Finally, having averred that the unnoticed launch of the 2005 Advertisement was the breach, HipSaver makes clear time and again that its has been "damaged by Posey's advertising;" the enhanced advertising "targets the HipSaver company;" those advertisements are "particularly damaging because of the relative lack of knowledge of among health care buyers;" the ads are "intended to undercut the integrity of the HipSaver Company's products, and directed to overwhelm the HipSaver Company in the marketplace."  Complaint at p. 2, ¶¶ 14, 16, 17.  Still Posey argues that HipSaver has not alleged damage.  Posey Memorandum at p. 6.

This alone is more than sufficient to allege breach in Massachusetts. *Guckenberger v. Boston University*, 957 F. Supp. 306, 316 (D. Mass. 1997) ("To state a claim for breach of contract under Massachusetts law, a plaintiff must allege, at a minimum, that there was a valid contract, that the defendant breached its duties under the contractual agreement, and that the breach caused the plaintiff damage.")[6]

---

[5] Posey's Sheldon and Lewis declarations confirm that there is no question that the "current" 2005 round of advertising identified in the complaint at  ¶14, 20 and page 7 references the 2005 Advertisement, Exhibit 2.  *See* Declaration of Shannon S. Sheldon at ¶3; Declaration of Victoria Gay Lewis at ¶6.

[6] Though it never expressly stated as much in the Complaint, HipSaver clearly impliedly performed its duties under the Settlement Agreement, which required it to execute the Stipulation of Dismissal. Exhibit 1 at ¶12.  The filed Stipulation of Dismissal, Exhibit 11, is part of the 12(b)(6) record, as is the fact, of which this court may take judicial notice, that the early action was accordingly dismissed. Exhibit 12, Case Docket.  *Alternative Energy*, 267 F.3d at 33 ("public records" merge into complaint); *U.S. v. Melrose-Wakefield Hospital*, No. Civ. A. 01-10583-DPW, 2003 WL 21228801 at *3 (D.Mass.2003) (taking judicial notice of "actions reflected in files of this court regarding" earlier related case).  *See also* Posey's memorandum in support of its Motion to Transfer at p.3 ("In conjunction with the settlement, Posey I was dismissed with prejudice.")

**B.     Count 2: Violation of the Lanham Act**

The Complaint alleges all of the elements of a Lanham Act false advertising claim. *Clorox Co. P.R. v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 33 n.6 (1st Cir. 2000).[7] Each factor is addressed in turn.

**(1)** "A false or misleading description of fact or representation of fact by the defendant in a commercial advertisement about its own or another's product." *Id.*

The Complaint identifies multiple acts of misleading description and misrepresentation used in the current campaign including "misrepresentation of product test protocol," and "distorted misrepresentations, literally false representations, statements, and product comparisons in a nationwide advertising campaign." Complaint at ¶22. It also specifically identifies the "enhanced" 2005 advertising campaign, Exhibit 2, and the study referenced in that enhanced advertising, Exhibit 4, by title ("an independent laboratory study that was conducted to determine the most effective impact absorbing material") and underlying source ("Garwood Laboratories"). Complaint at ¶14, page 7.

As indicated above, the 2005 Advertisement clearly referenced in the Complaint, as well as the Impact Study to which it makes reference are part of the record for purposes of deciding this Motion. *See Clorox Co. P.R.*, 228 F.3d at 32 (considering

---

[7] Rather than cite the procedurally parallel *Clorox* case, Posey chooses to misstate the *Cashmere* opinion. *Cashmere & Camel Hair Manufacturers Institute v. Saks Fifth Avenue*, 284 F.3d 302, 310-311 (1st Cir. 2002). Whereas Posey cites it for what a plaintiff must "allege," the actual opinion explicitly refers to what facts a plaintiff must "prove." Though the elements, listed in the Posey brief, are of course substantively identical, and though both cases support HipSaver, the distinction underscores Posey's misguided insistence on conflating the distinct procedural postures.

advertising material outside of the complaint in a motion to dismiss false advertising claim because material was "integral" to assessing the complaint's allegations; "we may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint"). Again, one need only turn to Posey's own exhibits in support of this motion to conclude that Posey had notice that this precise ad is "integral to the complaint." *See* Declaration of Shannon S. Sheldon at ¶3, and Declaration of Victoria Gay Lewis at ¶6.[8] Posey has no cause to complain that it has no notice of the source of the deception.

The 2005 Advertisement misrepresents the superiority of the Posey HIPSTER hip protector over that of HipSaver by misconstruing the faulty, underlying Impact Study. This is the clear implication of the Complaint and supporting documents, and forms the heart of the false advertising claim. The underlying Impact Study expressly names the HipSaver hip protector and compares it to Posey's HIPSTER. Exhibit 4 at ¶1.1. This type of deception, based in misrepresentation of a referenced test study, is a classic establishment claim. *Spalding Sports Worldwide, Inc. v. Wilson Sporting Goods Co*., 198 F. Supp. 2d 59, 67 (D. Mass 2002). *See also Schick Manufacturing, Inc. v. The*

---

[8] In fact, Posey itself has directly contradicted its own argument in this Motion that the Complaint does not "identify" the alleged false advertisement. In its recently filed memorandum in the California Action in partial opposition to HipSaver's Motion to Dismiss, Stay or Transfer, Posey states to the California Court:

> In the instant case, the advertising which is the subject of HipSaver's most recent complaint refers to some testing that was performed by a company called Garwood Laboratories ("Garwood") on some materials that was supplied to it by Posey. The advertising refers to a report that was authored by Garwood regarding that testing. Exhibit 9 at p.6, ll. 15-20.

*Gillette Co.*, Civil Action No. 3-05-cv-174, 2005 WL 1342764 at *10-11 (D. Conn. 2005).

In response to numerous requests for supporting documentation, HipSaver has received only the most basic outline of the Impact Study. Goodwin Declaration at ¶11; Exhibit 4. HipSaver cannot, and is not, expected to allege with precision so early in the proceedings, prior to expert evaluation of the cited test, indeed prior to discovery of the entire advertising campaign, the empirical basis for its position that the ad misrepresents the test protocol. Nor can it or need it allege the precise contours of the claim of superiority conveyed to the purchaser. However, this certainly does not mean that an establishment claim has not been alleged. *Clorox Co. P.R. v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 35 (1st Cir. 2000) ("[W]e are not required to determine what claim was actually conveyed by the advertisements because we are not fact-finders. Instead we must evaluate whether the complaint, as supplemented by the advertising copy, alleges facts that would allow a rational fact-finder to conclude that Proctor & Gamble's advertisements make a superiority claim either explicitly or by necessary implication.").

**(2)** "The statement actually deceives or has the tendency to deceive a substantial segment of its audience." *Clorox*, 228 F.3d at 33 n.6.

The Complaint states that the misrepresentation, deception and product disparagement are:

> [P]articularly damaging because of the relative lack of knowledge among health care buyers. Hip protection products are relatively new; neither the biomechanics nor the relative performance of competing products has been well understood in the marketplace. Lacking a strong understanding of performance and safety, buyers are susceptible to being misled by deceptive advertising masked as pseudo science, precisely the strategy pursued by Posey. Complaint at ¶17.

**(3)** "The deception is material, in that it is likely to influence the purchasing decision. *Clorox*, 228 F.3d at 33 n.6.

The Complaint states that the misrepresentative ads in issue are "intended to undercut the integrity of the HipSaver Company's products, and directed to overwhelm the HipSaver Company in the marketplace." In other words, the false statement is precisely intended to impact the purchasing decision. Complaint at ¶16.

**(4)** "The defendant placed the false or misleading statement in interstate commerce." *Clorox*, 228 F.3d at 33 n.6.

The Complaint states "Nationwide, Posey markets to 17,000 nursing homes and 3,000 rehabilitation hospitals." Complaint at ¶3.

**(5)** "The plaintiff has been or is likely to be injured as a result of the false or misleading statement, either by direct diversion of sales from itself to defendant or by a lessening of goodwill associated with its products." *Clorox*, 228 F.3d at 33 n.6.

The Complaint states: "Without intervention of the trial court, the HipSaver Company cannot counter Posey's false advertising campaign and faces immediate loss of its business." Complaint at ¶24.

HipSaver has thus pled all the elements of a claim for false advertising under §1125 of the Lanham Act.

**C.    Count 3: Violation of Unfair or Deceptive Business Practices Act**

As regards HipSaver's G.L. c. 93A claim, Posey wastes much time arguing the substantive merits of the claim, completely ignoring the procedural context of its motion. Putting aside the fact that the burden of proof at the summary judgment stage would actually be on Posey, it cannot seriously be debated that HipSaver, a small, closely held company with its only place of business in Canton, has *alleged* facts sufficient to put the "center of gravity" of the unfair and deceptive false advertising campaign-- a campaign which "targets the HipSaver company" and is "intended to undercut the integrity of the HipSaver Company products"-- squarely in Massachusetts.  Complaint at ¶14, 16.

As indicated by Posey itself, the test is "fact-intensive" and much discovery will be required to determine whether, for instance, "a single instance of misconduct in one jurisdiction may have greater significance for a case as a whole than a multiplicity of misconduct in another jurisdiction." *Kuwaiti Danish Computer Co. v. Digital Equipment Corp.*, 781 N.E.2d 787, 798-99 (2003) ("a judge should, after making findings of fact, and after considering those findings in the context of the entire §11 claim, determine whether the center of gravity of the circumstances that give rise to the claim is primarily and substantially within the Commonwealth"); *and see Work Group Technology Corp. v. MGM Grand Hotel*, LLC. 246 F. Supp. 2d 102, 118 (D. Mass. 2003) ("[A]s the quoted portion of the *Kuwaiti Danish Computer Co.* case indicates, the decision as to whether

12

'the center of gravity of the circumstances that give rise to the claim is primarily and substantially within the Commonwealth' must be made on the basis of factual findings. Since a Court does not make such findings when ruling on a motion to dismiss, it would seem that a motion to dismiss is no longer an appropriate vehicle for raising the issue.").

Likewise, Posey imports a wholly foreign demand for specificity into its c. 93A damages allegation. *See Marram v. Kobrick Offfshore Fund*, 809 N.E.2d 1017, 1033 (Mass. 2004) ("Nor can we say as a matter of law that in no set of circumstances will the plaintiff be able to establish that the plan suffered actual damages as a result of the defendants' post-investment actions."). One can well envision a scenario whereby a huge company's misleading hip protector ad campaign, in which test protocols are misrepresented, can readily damage the product credibility and sales opportunities of its small, closely held competitor specializing in hip protectors.

In sum, Posey's objection to HipSaver's claims for violation c.93A must fail. The Complaint alleges a viable claim for relief.

## II.     No Heightened Pleading Requirements Apply to HipSaver's False Advertising and Unfair Competition Claims

There are no heightened pleading requirements for HipSaver's False Advertising claims under the Lanham Act because the HipSaver Company has not specifically alleged "fraud" on the purchaser or its equivalents in that Count but rather averred pure false advertising. *See John P. Villano, Inc. v. CBS, Inc.*, 176 F.R.D. 130, 131 (S.D.N.Y. 1997) (refusing to apply Rule 9(b) pleading requirements and N.Y. State equivalents to §1125

claim; observing, "No matter how parsed, a claim of false advertising under the Lanham Act--one of a panoply of trademark torts created by the Act--is not identical to a claim of fraud. Fraud requires, not just the making of a statement known to be false, but also, *inter alia*, a specific intent to harm the victim and defraud him of his money or property[.]"). *United Magazine Co. v. Murdoch Magazines Distribution, Inc.*, No. 00 Civ. 3367(AGS), 2001 WL 1607039 at *12 (S.D.N.Y. Dec. 17, 2001) ("False advertising claims are not fraud claims").

Similarly, HipSaver's chapter 93A claim of unfair and deceptive trade practices is not grounded in fraud, but rather deceptive advertising. *Aspinall v. Philip Morris Co.*, 813 N.E.2d 476, 486 (Mass. 2004) (successful action based on deceptive acts or practices under c. 93A does not require proof of reliance, intent to deceive, or even defendant's knowledge that the representation was false). Heightened pleading requirements of section 9(b) thus do not apply. *U.S. Funding, Inc. of America v. Bank of Boston Corp.*, 551 N.E.2d 922, 925 (Mass. App. Ct. 1990) ("the concept of unfair or deceptive acts or practices made actionable by G.L. c. 93A goes far beyond the scope of the common law action for fraud and deceit . . . and does not necessarily require similar pleading specificity") (citations omitted); *L'il Peach of Massachusetts v. Prendergast*, No. CA 952855, 1996 WL 1251389 at *2 n.4 (Mass. Super. 1996) ("In its brief, the plaintiff also argues that the c. 93A claim is subject to the requirements of rule 9(b), which requires that any allegation of fraud or deceit be pled with specificity. Massachusetts courts do not impose this requirement on c. 93A claimants.").

14

**III.    In the Alternative, HipSaver Seeks Leave to Amend its Complaint**

In the event the court concludes that material omissions remain in the Complaint, HipSaver seeks leave to amend pursuant to Fed. R. Civ. P. 15(a).

**IV.    Posey's Motion for Summary Judgment on Counts II and III Must Be Denied Because HipSaver Could Not Have Brought a False Advertising Claim in September for an Advertisement Created the Following January**

HipSaver could not have brought a false advertising or chapter 93A claim in September of 2004 for an advertisement "dated" January 24, 2005 and distributed subsequent to that date. Declaration of Victoria Gay Lewis at ¶6. The Complaint addresses itself to the 2005 round of advertising. Complaint at ¶14. As is conceded in the declaration of Posey's Victoria Gay Lewis, the two-page advertisement dated January 24, 2005 was a new creation. It was not covered by the September Settlement Agreement which settled claims related to different advertisements citing a different study.[9] The distribution of a new false advertisement as part of a new advertising campaign is a fresh act of false advertising.[10] Moreover, the date of an underlying study to which a newly

---

[9] The charts, pictures and text which make up elements of the 2005 Advertisement were simply not part of the earlier action. Moreover, even if they had been, the 2005 Advertisement (a wholly new combination, with a new lay-out and added text) creates a unique overall theme when considered in its entirety. *Minarik Elec. Co. v. Electro Sales Co., Inc.*, 223 F.Supp.2d 334, 341 (D.Mass. 2002) ("The shift in the manner in which the defendant used the website is also a significant change of fact because in trademark infringement and unfair competition cases the use by the defendant must be analyzed on a case by case basis.").

[10] Even if Posey had distributed this new ad prior to the Settlement Agreement, the Agreement would not preclude suit over this new wave of distribution because a continuing course of such conduct creates separate causes of action. *Zip Dee, Inc. v. Dometic Corp.*, 886 F.Supp. 1427, 1432-33.

issued false advertisement makes reference is irrelevant because the violation is committed when Posey "uses" the misleading description of fact "in commercial advertising." 15 U.S.C. §1125(a)(1), (a)(1)(B). Therefore Paragraph 11 of the Settlement Agreement does not bar any of HipSaver's claims, and Posey's Motion for Summary Judgment on counts II and III must be denied.

**IV     The HipSaver Company Is Entitled to Partial Summary Judgment on Count I Because Posey Did Not Provide Notice to HipSaver Pursuant to the Settlement Agreement**

In consideration of HipSaver's agreement to dismiss the June, 2004 lawsuit in this Court, Posey agreed to pay a lump sum of money, to launch corrective advertising and, at issue in this case, to be bound by strict notice and disclosure provisions for future advertising.  These prophylactic measures were essential for a small, focused company like HipSaver, which can survive only so many attacks of false advertising, however much triage—in the form of corrective advertising—follows.  The damage is done by the first assault, precisely the strategy pursued by Posey.

Paragraph 8 of the Settlement Agreement, one of the safeguards in place to protect HipSaver, reads, in full:

> In the event of any further comparative testing of Posey and HipSaver products by either party, neither party shall make commercial advertising use of the results or analysis related to such testing without first giving the other party at least thirty (30) days advance written notice of the results or analysis.  Exhibit 1 at ¶8.

The advertisement at issue in this case, Exhibit 2, was created on January 24, 2005. It did not exist at the time the Settlement Agreement was signed, in September of 2004. There is no dispute that Posey provided no notice to HipSaver before distributing the 2005 Advertisement. Complaint ¶20; Goowdin Declaration ¶9.[11]

The clear purpose of paragraph 8 is to give HipSaver an advanced opportunity to review comparative studies (shown previously to be flawed, faulty and misrepresented) suddenly pulled out of thin air by Posey and asserted as fact. This works in tandem with provisions such as those of paragraphs 5-8, requiring corrective advertising, and paragraph 4, preventing the future use of flawed studies.

Posey offers a crabbed reading of the opening phrase which would allow it to scuttle the Agreement by recycling old, flawed tests or by offering new comparisons from old testing. Posey's argument would contradict and undercut the very purpose of the Settlement Agreement. An exception for new advertising grounded in "old testing" has no purpose and certainly was not contemplated or intended by the parties. Indeed, the passive preamble to paragraph 8 and its reference to *further testing* could not have been and never was intended as a crippling limitation to be applied only to *new testing*. Rather, the opening phrase should be construed, in light of its purpose, to mean: "In the event of any further application of comparative testing of Posey and HipSaver products by either party . . .". *Fay, Spofford & Thorndike, Inc. v. Massachusetts Port Authority*, 387 N.E.2d 206, 210 (Mass. App. Ct. 1979) (refusing to construe sentence in contract as

---

[11] Posey has moved for summary judgment before it has answered the Complaint, meaning it has made no denial of any sort, and it admits the facts in the Complaint as true. Fed. R. Civ. P. 8(d).

limitation where a literal interpretation would undercut "the general purpose manifested by the entire contract, and by circumstances existing at the time of execution").

As is evident from the context of the Settlement Agreement (which settled a prior false advertising claim based on a different flawed study and which compelled corrective advertising) the point to paragraph 8 is notice of the further use of comparative tests in advertising, and Posey should not be allowed to evade its duties by finely parsing a provision with an otherwise obvious objective. Had Posey complied with the notice provision, this lawsuit might well have been avoided. Its failure to comply with the notice provision is material and a direct breach of the Settlement Agreement.

## <u>CONCLUSION</u>

This action involves a new false advertising campaign, launched this year by Posey without notice to HipSaver. Posey knows exactly which advertisement and study are at issue. Its Motions are simply a tactic of delay because delay is a victory for Posey. The Court should thus deny Posey's Motion to Dismiss or for Summary Judgment and grant HipSaver's cross-motion for Summary Judgment.

Respectfully submitted,

THE HIPSAVER COMPANY, INC.

By its Attorneys,

/s/ Edward J. Dailey
Lee Carl Bromberg
BBO no. 058480
Edward J. Dailey
BBO no. 112220
Peter J. Karol
BBO no. 660338
BROMBERG SUNSTEIN, LLP
125 Summer Street - 11th floor
Boston, Massachusetts  02110-1618
617.443.9292
617.443.0004  (fax)
Dated:  July 1, 2005

## CERTIFICATE OF SERVICE

I certify that a copy of this document has been forwarded by electronic filing and USPS First Class mail today to Defendant's counsel of record, Anthony J. Fitzpatrick, Esq., DUANE MORRIS LLP, 470 Atlantic Avenue, Boston, Massachusetts  02210 and by USPS First Class  mail to Jeffrey G. Sheldon, Esq., SHELDON & MAK, 225 South Lake Avenue, 9th Floor, Pasadena, California  91101

Dated: July 1, 2005                    /s/ Edward J. Dailey
                                       Edward J. Dailey

02820/00502 395840.1

19