UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE HIPSAVER COMPANY, INC., | ) Civil Action No. 05-10917 PBS |
| Plaintiff, | ) |
| v. | ) |
| J.T. POSEY COMPANY, | ) |
| Defendant. | ) |
| AND RELATED COUNTERCLAIM. | ) |

**MEMORANDUM IN SUPPORT OF DEFENDANT J.T. POSEY COMPANY'S MOTION FOR ENTRY OF PROTECTIVE ORDER**

### I.   INTRODUCTION AND FACTS

As the Court is aware, the parties in this action are competitors who are accusing each other of making false and misleading advertising claims, engaging in unfair businesses practices and breaching a prior settlement agreement between them.

On or about July 26, 2005, counsel for the parties engaged in a Rule 26(f) conference. During the conference, counsel agreed that it was appropriate to have a stipulated protective order to limit the use and dissemination of sensitive and proprietary business information that was expected to be the subject of the parties' initial disclosures and/or their discovery responses. *See* accompanying Declaration of Douglas H. Morseburg, paragraph 2 (hereafter cited, "Morseburg Decl., ¶ ___.").

Subsequently, counsel for the parties traded proposed drafts of documents intended to protect the parties' confidential information. Defendant and counterclaimant J.T. Posey Company, Inc. ("Posey") proposed a stipulated protective order that provided for two tiers of protection -- "Confidential" and "Confidential - Attorneys' Eyes Only" -- for material that constituted confidential or proprietary business information and/or trade secrets. The difference between the two tiers was that attorneys in the case were permitted to share their opponents' "Confidential" documents with their clients. They were not, however, permitted to share their opponents' "Confidential - Attorneys' Eyes Only" documents with their clients. *See* Morseburg Decl., ¶ 3 and Exhibit "A" attached.

By contrast, plaintiff and counterclaim defendant The HipSaver Company ("HipSaver") proposed a "Confidentiality Agreement" (not, as the parties discussed, an order) that provided, essentially, (i) that <u>all</u> disclosures and discovery in the case would be treated as "confidential", (ii) that all of a producing party's information could be disclosed to the receiving party, and (iii) that, in the event a producing party wished to shield especially sensitive information from a receiving party, it could apply to the Court for a protective order. *See* Morseburg Decl., ¶ 4 and Exhibit "B". Although counsel for the parties discussed ways to compromise their differences, they were unable to come to any agreement. Morseburg Decl., ¶ 4.

On or about August 12, 2005, HipSaver served a set of requests for production on Posey. Morseburg Decl., ¶ 5 and Exhibit "C". The requests call for the production of, among other things, some of Posey's confidential financial information (e.g., sales and customer information) and certain hip protector product development information, including information regarding tests performed by Garwood Laboratories, Inc.

("Garwood"), only one of which has anything to do with the allegedly false advertisements that underlie HipSaver's claims in this case.

All of the product development information that is the subject of HipSaver's requests for production to Posey is also the subject of a subpoena that HipSaver issued to Garwood. In fact, the Garwood subpoena is broader than the document requests to Posey because the documents requested are not limited to hip protectors. Morseburg Decl., ¶ 5 and Exhibit "D". On at least two occasions, counsel for Posey asked counsel for HipSaver to limit the scope of the subpoena. However, those requests were ignored. Morseburg Decl., ¶ 5.

Finally, it is likely evident to the Court from reading the plaintiff's filings that HipSaver's principal, Edward Goodwin, bears a lot of ill-will towards Posey. This ill-will dates back to at least June 2002, when HipSaver made an unsolicited proposal to Posey. The proposal was for Posey to give up marketing its own hip protectors and to develop the market for HipSaver's products instead. When Posey rejected HipSaver's proposal, HipSaver's president, Edward Goodwin, unleashed a stream of vituperative letters and emails to Posey and its counsel. Morseburg Decl., ¶ 6.

In one such email which was sent to one of Posey's lawyers in February 2003, Mr. Goodwin stated, among other things, (i) that Posey was "in bad need of regulation", (ii) that, in furtherance of the need for "regulation", he (Mr. Goodwin) intended to encourage third parties to sue Posey, and (iii) that he would provide potential plaintiffs with "all the information" they needed to do so. *See* Morseburg Decl., ¶ 7 and Exhibit "E".

As a consequence of all of the foregoing, Posey now asks the Court to enter a protective order that, among other things, (i) limits the persons who are to have access to Posey's confidential information (including its product development information) that is disclosed during discovery, (ii) prohibits the disclosure of Posey's "attorneys' eyes only" information to HipSaver's principal(s), including Mr. Goodwin, and (iii) prohibits HipSaver and its counsel from using any of Posey's confidential information for any purpose other than the instant litigation. In addition, Posey also asks the Court to enter a separate order that provides that the information Posey and Garwood are required to produce in response to any of HipSaver's document requests is limited to that which is directly related to the Impact Study that is referred to in the advertisements that underlie HipSaver's claims in this action.

## II.     THE STANDARD GOVERNING THE INSTANT MOTION

Protective orders are governed by Rule 26(c) of the Federal Rules of Civil Procedure ("Rule 26(c)") which authorizes district courts to issue "any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden." The United States Supreme Court has interpreted the language of Rule 26(c) as conferring "broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36, 104 S. Ct. 2199, 81 L.Ed.2d 17 (1984).

In the *Seattle Times* case, the Supreme Court also noted that the "trial court is in the best position to weigh the fairly competing needs and interests of the parties affected by discovery. The unique character of the discovery process requires that the trial court

have substantial latitude to fashion protective orders." *Id.; see also* 8 Wright, Miller & Marcus, Federal Practice & Procedure, Civil, § 2036, at p. 489 (2d ed. 1994) ("[A] court may be as inventive as the necessities of a particular case require in order to achieve the benign purposes of [Rule 26(c)].").

Under Rule 26(c), subsection (7), district courts have broad latitude to fashion protective orders to prevent disclosure of materials containing many types of information. This includes, but is not limited to, trade secrets or other confidential research, development or commercial information. *See* Fed. R. Civ. Proc. 26(c)(7); *Phillips v. G.M.C.*, 307 F.3d 1206, 1211 (9th Cir. 2002). *See also Quotron Systems, Inc. v. Automatic Data Processing, Inc.*, 141 F.R.D. 37, 40 (S.D.N.Y. 1992) ("Protective orders that limit access to certain documents to counsel and experts are commonly entered in litigation involving trade secrets and other confidential research, development or commercial information.").

As a general rule, a party seeking a protective order must demonstrate "good cause". Fed. R. Civ. Proc. 26(c). In the instant case, a showing of "good cause" requires Posey to show (i) that the information it seeks to protect constitutes a trade secret or other confidential research, development or commercial information, and (ii) that it will be harmed by the unprotected disclosure of the particular information. *See, e.g., In re Wilson*, 149 F.3d 249 (4th Cir. 1998); 8 Wright, Miller & Marcus, Federal Practice & Procedure, Civil, § 2043, at p. 557 (movant must show that information qualifies for protection and that it may be harmed by disclosure).

### III.   ARGUMENT

   **A. Good Cause Exists For the Entry of Posey's Proposed Protective Order.**

On August 12, 2005, HipSaver served its first requests for production on Posey. Morseburg Decl., ¶ 5 and Exhibit "C". The individual requests contained within HipSaver's first request for production call for the production of, among other things:

   "[Request No.] 2:  With respect to hip protection materials, garments, products, and samples, please produce and provide the following:

   a)   all materials, garments, products, and samples provided to Garwood Laboratories for testing;

   b)   all data, documentation, and information, including drafts and revisions, provided to Garwood and related in any manner to any study or testing conducted for or at the direction of Posey;

   c)   all data, documentation, information, including drafts and revisions, received from Garwood and related in any manner to any study or testing conducted for or at the direction of Posey;

                          *       *       *

   f)   all data, documentation, and information which refer or are related in any manner to the use and dissemination of advertisements . . . or marketing statements [that refer to any testing conducted by Garwood] . . . , including . . . [the] identification of customers, institutions, and others

6

to whom the advertisements and public statements were directed, sent, or provided."

"[Request No.] 3.   With respect to hip protection materials, garments, products, and samples, please produce and provide the following:

a)   all correspondence, data, documentation, and information related in any manner to any request or proposal for a study or testing to be conducted in whole or part by Garwood for or on behalf of Posey;

b)   all data, documentation, and information related to the design for and the protocol for each study and test conducted in whole or part by Garwood for or on behalf of Posey;

c)   all data, documentation, and information, including drafts and revisions, which record and report the conduct or results of each study and test conducted in whole or part by Garwood for or on behalf of Posey;

d)   all lab notes related in any manner to each study and test conducted in whole or part by Garwood for or on behalf of Posey;

\*   \*   \*

f)   all photographs, images, and graphics associated with or related in any manner to each study and test conducted in whole or part by Garwood for or on behalf of Posey."

"[Request No.] 4    With respect to Hipster products, please produce and provide the following:

a)    all tests, studies, data, documentation, and information related in any manner to the development and confirmation of accuracy of the laundering instructions supplied with Hipster products;

b)    all studies, tests, data, documentation, and information which conclude, refer, or relate in any manner to satisfactory reduction of microbial contamination of Hipster products when laundered at water temperatures of less than 160 F;

c)    all studies, tests, data, documentation, and information related in any manner to the durability or integrity of "standard" Hipster products when laundered at water temperatures of 120 F;

d)    all studies, tests, data, documentation, information, and correspondence which refer or relate in any manner to Posey's decision and actions undertaken to change its laundering instructions from the instruction in use during 2004 that Hipster products can be laundered at water temperatures of 160 F;

e)    all information and correspondence which refers or relates in any manner to the failure, disintegration, or loss of durability or integrity of Hipster products when laundered at water temperatures of 160 F;

f)    all studies, tests, data, documentation, and information related in any manner to the durability or integrity of Hipster products

when laundered at water of 160 degrees Fahrenheit for at least 25 minutes as suggested by CDC guidelines for laundering;

      g)    all studies, tests, data, documentation, correspondence, and information related in any manner to the failure of Hipster products to meet institutional laundering standards, including those set by the Centers for Disease Control;

      h)    all studies, tests, data, documentation, and information related in any manner to the durability or integrity of "high durability" Hipster products when laundered at water temperatures of 180 F for at least 25 minutes."

\*   \*   \*

"[Request No.] 14.   Please produce every document which refers or relates in any manner to total Hipster sales by product type, unit sales, total unit sales, volume, revenue for each year and for the year to date in 2005."

See Exhibit "C", at pages 6-9 and 11.

As far as request nos. 2, 3, and 4 of HipSaver's first request for production are concerned, documents and information regarding Posey's testing (as well as testing conducted for Posey by Garwood or any other third parties) of hip protection materials, garments, products and samples and reports of such testing (whether relating to impact absorption, durability or launderability) all relate to Posey's product development efforts. Posey considers information regarding its product development efforts to be highly confidential and it does not ever share this information with anyone, including its

9

competitors.  *See* accompanying Declaration of Ernest Posey, paragraphs 2-3.  Likewise, Posey considers information regarding the identities of its customers and its potential customers (see request no. 2(f)) to be confidential.  *Id.*, ¶ 4.  Such information is never shared and it would certainly never be shared with someone such as Mr. Goodwin, who has already stated that he wants third parties to sue Posey and that he will do everything in his power to assist in getting them to do so.  *Id.*

As far as request no. 14 is concerned, Posey is a privately held company and it considers information regarding its unit and dollar sales volumes and its sales revenues to be confidential.  Inside the company, such information is known only to those who have a need to know.  Outside the company, such information is disclosed only to a select few, including, for example, Posey's accountant.  Posey never shares information of this type with its competitors, least of all Mr. Goodwin.  Posey Decl., ¶ 5.

If Posey were required to produce information called for in request nos. 2(a)-(c), 2(f), 3(a)-(d), 3(f), 4(a)-(h) and 14 without any limitations, the public and Posey's competitors, including Mr. Goodwin, would be entitled to gain access to it and use it for any purpose.  *See, e.g., San Jose Mercury News, Inc. v. United States Dist. Ct.*, 187 F.3d 1096, 1103 (9th Cir. 1999) ("It is well-established that the fruits of pre-trial discovery are, in the absence of a court order to the contrary, presumptively public."); *In re Agent Orange Product Liab. Litig.*, 821 F.2d 139, 145 (2d Cir. 1987) (in the absence of judicial protection, discovery materials "would be open to the public").

If Posey's competitors, including HipSaver and Mr. Goodwin, were to gain access to the materials called for above, they would know, among other things, Posey's actual sales of hip protector products and the identities of Posey's customers.  This knowledge

would permit them to identify Posey's largest customers and to try to disrupt its relations with those customers. Posey Decl., ¶ 6.

Moreover, if Posey's competitors, including HipSaver and Goodwin, were to gain access to all of the documents regarding the testing Posey has done, they would know what materials Posey has tested in connection with its product development efforts, what completed products Posey has tested, and what the results of those tests were. This knowledge would give Posey's competitors an immediate competitive advantage because, rather than conduct their own testing, they could rely on the results of Posey's tests. In addition, they would gain insight into the state of Posey's product development efforts. Posey Decl., ¶ 7.

Numerous reported cases support the notion that the unprotected disclosure of information relating to a litigant's sales, the identities of its customers and its product development would subject the litigant to an immediate injury and that disclosure of such information should be subject to a protective order. *See, e.g., Covey Oil Co. v. Continental Oil Co.*, 340 F.2d 993, 999 (10th Cir.), *cert. denied*, 380 U.S. 964 (1965) (production of subpoenaed documents relating to volume of sales, prices and costs; trial court properly ordered that documents could be viewed only by counsel and independent accountants and only for purposes of the case); *Quotron Systems, Inc. v. Automatic Data Processing, Inc.*, 141 F.R.D. 37, 40 (S.D.N.Y. 1992) (in view of possible commercial espionage and possibility of engendering counterclaims, access to adversary's computer programs would be limited to outside counsel and outside experts); *United States v. Dentsply Intern., Inc.*, 187 F.R.D. 152, 159, 161 (D. Del. 1999) (information regarding a competitor, including sales, was confidential; disclosure to a competitor would constitute

11

a "clearly defined and serious injury"); *Safe Flight Instrument Corporation v. Sunstrand Data Control*, 682 F.Supp. 20, 22 (D.Del. 1988) (plaintiff's discovery sought, among other things, information regarding defendant's product development; access by plaintiff's president denied due to risk he would not later be able to separate information learned from defendant's documents from his own); *Turmenne v. White Cons. Ind., Inc.*, 266 F.Supp. 35, 37 (D. Mass. 1967) (due to concern that disclosure of plaintiff's customers would permit defendant to destroy plaintiff's relations with them, information would be revealed only to defense counsel and those third persons selected to assist in handling the case); and *Melori Shoe Corp. v. Pierce & Stevens, Inc.*, 14 F.R.D. 346, 347 (D. Mass. 1953) (answers to interrogatories regarding defendant's manufacturing process would be disclosed only to plaintiff's counsel and technical experts).

In sum, many of the individual requests in HipSaver's first request for production call for documents that are confidential in nature. If these documents were disclosed to the public or to Posey's competitors, it would work a clearly defined injury upon Posey. Moreover, one of Posey's competitors, HipSaver, has already admitted that it wants to encourage others to sue Posey and that, in support of that effort, it intends to provide any information it comes across to the lawyers for potential plaintiffs. Thus, there is ample "good cause" in this case for the entry of a protective order in the form attached as Exhibit "A" to Posey's motion.

12

>    B.    **With Respect to Request Nos. 2 and 3 and the Garwood Subpoena, the Court Should Order That Posey and Garwood Need Only Produce Documents Relating to the Impact Study That Is Referred to In the Advertisements That Underlie HipSaver's Complaint.**

As the Court is aware, the accused advertisements that underlie HipSaver's claims in this case make reference to an impact study (the "Impact Study") that Garwood conducted for Posey in July 2001. The results of the Impact Study were reported to Posey in August 2001. Basically, HipSaver claims that Posey's references to the Impact Study in its ads are false and misleading. Notwithstanding the very narrow grounds upon which its claims are based, HipSaver has asked both Posey and Garwood to produce all documents relating to all testing that Garwood has done for Posey. See Morseburg Decl., Exhibit "C" (Request Nos. 2 and 3 of HipSaver's First Request for Production); see also generally, Morseburg Decl., Exhibit "D" (subpoena to Garwood).

Garwood has done at least 14 testing projects for Posey. However, HipSaver's complaint concerns only one, i.e., the July 2001 Impact Study. The remaining 13 testing projects are completely irrelevant to any of the claims or defenses in the case. Therefore, they are beyond the scope of discovery. Thus, the Court should order that, in responding to HipSaver's requests for production and, in producing documents responsive to those requests or to the subpoena, Posey and Garwood, as the case may be, need only produce documents and information relating to the July 2001 Impact Study and the report concerning it.

## IV. CONCLUSION

For all of the foregoing reasons, the Court should enter the protective order proposed by Posey in connection with the instant action. The Court should also limit the scope of HipSaver's First Request for Production and the subpoena to Garwood so that they encompass only the July 2001 Impact Study and the report concerning it.

Dated: September 7, 2005                         Respectfully submitted,

J.T. POSEY COMPANY
By its attorneys,

/s/ Douglas H. Morseburg
Jeffrey G. Sheldon (CA Bar No. 67516)
Douglas H. Morseburg (CA Bar No. 26205)
Shannon S. Sheldon (CA Bar No. 216199)
SHELDON & MAK
225 South Lake Avenue, Suite 900
Pasadena, CA  91001
(626) 796-4000

Anthony J. Fitzpatrick (BBO # 564324)
DUANE MORRIS LLP
470 Atlantic Avenue, Suite 500
Boston, MA 02210
(617) 289-9200

## CERTIFICATE OF SERVICE

I certify that a copy of this document has been forwarded by electronic mail and USPS First Class mail today to Plaintiff's counsel of record, Edward J. Dailey, Esq., BROMBERG SUNSTEIN, LLP, 125 Summer Street, 11th Floor, Boston, Massachusetts 02110-1618, Edailey@bromsun.com.

Dated: September 7, 2005                         /s/ Donald K. Piper
                                                 Donald K. Piper