# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

_____
                                              )
THE HIPSAVER COMPANY, INC.,                   )   Civil Action No. 05-10917 PBS
                                              )
            Plaintiff,                        )
                                              )
    v.                                        )
                                              )
J.T. POSEY COMPANY,                           )
                                              )
            Defendant.                        )
_____)
                                              )
AND RELATED COUNTERCLAIM.                     )
_____)


## DECLARATION OF DOUGLAS H. MORSEBURG
## IN SUPPORT OF MOTION FOR PROTECTIVE ORDER


I, Douglas H. Morseburg, declare:

1.   I am an attorney at law duly licensed to practice before all of the courts of the State of California and I am admitted to practice in this matter pro hac vice.  I am an attorney at Sheldon & Mak and am one of the attorneys responsible for representing J.T. Posey Company ("Posey") in this matter.  I have personal knowledge of the facts set forth below and, if called as a witness and properly sworn, I could and would testify thereto from my own personal knowledge, except as where stated on information and belief and, as to those facts, I believe them to be true.  I make this declaration in support of Posey's motion for entry of a protective order.

2.   On or about July 26, 2005, I participated in a Rule 26(f) conference with Edward Dailey, one of the attorneys for The HipSaver Company ("HipSaver").  During the conference, I raised the issue of whether it was appropriate to have a stipulated protective

order to limit the use and dissemination of sensitive and proprietary business information that was expected to be the subject of the parties' initial disclosures and/or their discovery responses.  Mr. Dailey agreed that it was.

3.  Subsequently, Mr. Dailey and I traded proposed drafts of documents intended to protect the parties' confidential information.  On behalf of Posey, I proposed a stipulated protective order that provided for two tiers of protection -- "Confidential" and "Confidential - Attorneys' Eyes Only" -- for material that the parties considered confidential or proprietary business information and/or trade secrets.  A true and correct copy of my proposed stipulated protective order is attached as Exhibit "A".

4.  On behalf of HipSaver, Mr. Dailey proposed a "Confidentiality Agreement" (not, as we had discussed, an order), a true and correct copy of which is attached as Exhibit "B".  On Tuesday, August 30, 2005, Mr. Dailey and I had a telephone conversation during which we discussed potential ways to compromise our differences regarding the confidentiality of the parties' confidential information.  However, we were unable to come to any agreement.

5.  On or about August 12, 2005, HipSaver served a set of requests for production on Posey.  A true and correct copy of that request is attached as Exhibit "C".  The requests call for the production of, among other things, some of Posey's confidential financial information and certain product development information.  Most of the product development information that is the subject of HipSaver's requests for production to Posey is also the subject of a subpoena that HipSaver issued to a third party ("Garwood") that does testing in connection with Posey's product development.  A true and correct copy of the subpoena to Garwood is attached as Exhibit "D".  On at least two occasions, I wrote to Mr. Dailey and asked him to agree to limit the scope of the subpoena.  However, Mr. Dailey ignored those requests.

6.  It is evident that HipSaver's principal, Edward Goodwin, bears a lot of ill-will towards Posey.  I have reviewed correspondence between Mr. Goodwin and Posey dating

back to at least 2002.  Based upon my review of that correspondence, I am informed and I believe that, in June 2002, HipSaver proposed that Posey develop a market for HipSaver's products and that Posey give up marketing its own hip protectors.  Posey rejected the proposal.  Shortly afterwards, HipSaver's president, Edward Goodwin, began sending Posey vituperative letters and emails.

7.  One such email was sent on February 18, 2003 to Mr. Anthony Vella, an attorney who formerly worked at Sheldon & Mak and who represented Posey in connection with matters related to HipSaver and Mr. Goodwin.  In his February 18 email, Mr. Goodwin stated, among other things, (i) that Posey was "in bad need of regulation", (ii) that he would encourage third parties to sue Posey, and (iii) that he would provide potential plaintiffs with "all the information" as to "why the hipster is a defective design product offering."  A true and correct copy of that email is attached as Exhibit "E".

8.  As a consequence of the ill-will Mr. Goodwin bears against Posey and the threats Mr. Goodwin has made, the Court should enter a protective order in this matter that, among other things, (i) limits the persons who are to have access to Posey's confidential information (including all of its product development information) that is disclosed during discovery, (ii) prohibits HipSaver's counsel from disclosing the content of any of Posey's confidential documents to HipSaver's principal(s), including Mr. Goodwin, and (iii) prohibits HipSaver and its counsel from using any such information for any purpose other than the instant litigation.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed this 6th day of September, 2005 at Pasadena, California.

/s/ Douglas H. Morseburg
Douglas H. Morseburg

**EXHIBIT "A"**

**From:**      Doug Morseburg
**To:**        "Edailey@bromsun.com".GWIA.SM
**Date:**      8/17/05 4:26PM
**Subject:**   RE: HipSaver v Posey

Dear Ed:

Attached please find a proposed Stipulated Protective Order. Please let me know if you have any suggestions or comments.

Sincerely,

Doug Morseburg

Douglas H. Morseburg
Sheldon & Mak
225 South Lake Ave., 9th Floor
Pasadena, CA 91101-3021
U.S.A.

Tel.       626-356-1217 (direct)
Fax.       626-795-6321
Email      doug@usip.com

This transmission is intended only for the use of the addressee and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately via email at doug@usip.com or by telephone at (626) 796-4000. Thank you.

**CC:**       Cassandra; Piper, Don; Tpfitzpatrick@duanemorris.com

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| THE HIPSAVER COMPANY, INC., | ) | Civil Action No. 05-10917 PBS |
| Plaintiff, | ) | |
| v. | ) | |
| J.T. POSEY COMPANY, | ) | |
| Defendant. | ) | |
| AND RELATED COUNTERCLAIM. | ) | |

## STIPULATED PROTECTIVE ORDER

1.      PURPOSES AND LIMITATIONS

Disclosure and discovery activity in this action are likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation would be warranted. Accordingly, the parties hereby stipulate to and petition the court to enter the following Stipulated Protective Order. The parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords extends only to the limited information or items that are entitled under the applicable legal principles to treatment as confidential.

2.      DEFINITIONS

2.1      "Party" means any party to this action, including all of its officers, directors, employees, consultants, retained experts, and outside counsel (and their support staff).

2.2      "Disclosure or Discovery Material" means all items or information, regardless of the medium or manner generated, stored, or maintained (including, among other

001 Stipulated Protective Order

things, testimony, transcripts, or tangible things) that are produced or generated in disclosures or responses to discovery in this matter.

2.3    "Confidential" information or items means information (regardless of how generated, stored or maintained) or tangible things that qualify for protection under standards developed under Rule 26(c) the Federal Rules of Civil Procedure.

2.4    "Confidential — Attorneys' Eyes Only" information or items means extremely sensitive "Confidential" information or items the disclosure of which to another Party or non-party would create a substantial risk of injury.

2.5    "Receiving Party" means a Party that receives Disclosure or Discovery Material from a Producing Party.

2.6    "Producing Party" means a Party or non-party that produces Disclosure or Discovery Material in this action.

2.7    "Designating Party" means a Party or non-party that designates information or items that is/are produced in disclosures or in discovery as "Confidential" or "Confidential — Attorneys' Eyes Only."

2.8    "Protected Material" means any Disclosure or Discovery Material that is designated as "Confidential" or as "Confidential — Attorneys' Eyes Only."

2.9    "Outside Counsel" means attorneys who are not employees of a Party but who are retained to represent or advise a Party in this action, including coverage counsel and/or a carrier's claims counsel and their support staffs.

2.10    "House Counsel" means attorneys who are employees of a Party and their support staffs.

2.11    "Counsel" (without a qualifier) means Outside Counsel and House Counsel.

2.12    "Expert" means a person with specialized knowledge or experience in a matter pertinent to the litigation who has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this action and who is not a past or a current employee of a

Party or of a competitor of a Party and who, at the time of retention, is not anticipated to become an employee of a Party or a competitor of a Party.

2.13 "Professional Vendors" means persons or entities that provide litigation support services (e.g., photocopying; videotaping; translating; preparing exhibits or demonstrations; organizing, storing, retrieving data in any form or medium; etc.) and their employees and subcontractors.

3. SCOPE

The protections conferred by this Stipulated Protective Order cover not only Protected Material, but also any information copied or extracted from Protected Material, as well as all copies, excerpts, summaries, or compilations thereof, plus testimony, conversations, or presentations by parties or counsel to or in court or in other settings that might reveal Protected Material.

4. DURATION

Even after the termination of this litigation, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing or a court order otherwise directs.

5. DESIGNATING PROTECTED MATERIAL

5.1 Exercise of Restraint and Care in Designating Material for Protection. Each Party or non-party that designates information or items for protection under this Order must take care to limit any such designation to specific material that qualifies under the appropriate standards. A Designating Party must take care to designate for protection only those parts of material, documents, items, or oral or written communications that qualify, so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Order.

Mass, indiscriminate, or routine designations are prohibited. Designations that are shown to be clearly unjustified, or that have been made for an improper purpose (e.g., to unnecessarily encumber or retard the case development process, or to impose unnecessary expenses or burdens on other parties), expose the Designating Party to sanctions in the Court's discretion.

3

If it comes to a Party's or a non-party's attention that information or items that it designated for protection do not qualify for protection at all, or do not qualify for the level of protection initially asserted, that Party or non-party must promptly notify all other Parties that it is withdrawing the mistaken designation.

      5.2    Manner and Timing of Designations:  Except as otherwise provided in this Order (see, e.g., second paragraph of sections 5.2(a) and 5.2(d), below), or as otherwise stipulated or ordered, material that qualifies for protection under this Order must be clearly so designated before the material is disclosed or produced.

Designation in conformity with this Order requires:

      (a)    for information in documentary form (apart from transcripts of depositions or other pretrial or trial proceedings), that the Producing Party affix the legend "CONFIDENTIAL" or "CONFIDENTIAL — ATTORNEYS' EYES ONLY" on each page that contains protected material.  If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins) and must specify, for each portion, the level of protection being asserted (either "CONFIDENTIAL" or "CONFIDENTIAL — ATTORNEYS' EYES ONLY").

A Party or non-party that makes original documents or materials available for inspection need not designate them for protection until after the inspecting Party has indicated which material it would like copied.  During the inspection and before the designation, all of the material made available for inspection shall be deemed "CONFIDENTIAL — ATTORNEYS' EYES ONLY."  After the inspecting Party has identified the documents it wants copied, the Producing Party must determine which documents, or portions thereof, qualify for protection under this Order and then, before producing the specified documents, the Producing Party must affix the appropriate legend ("CONFIDENTIAL" or "CONFIDENTIAL — ATTORNEYS' EYES ONLY") at the top or bottom of each page that contains Protected Material.  If only a portion or portions of the material on a page qualifies for protection the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the

4

margins) and must specify, for each portion, the level of protection being asserted (either

"CONFIDENTIAL" or "CONFIDENTIAL - ATTORNEYS' EYES ONLY").

(b)      for testimony given in deposition or in other pretrial or trial

proceedings, that the Designating Party or non-party offering or sponsoring the testimony

identify on the record, before the close of the deposition, hearing, or other proceeding, all

protected testimony, and further specify any portions of the testimony that qualify as

"CONFIDENTIAL — ATTORNEYS' EYES ONLY."  When it is impractical to identify

separately each portion of testimony that is entitled to  protection, and when it appears that

substantial portions of the testimony may qualify for protection, the Designating Party or non-

party that sponsors, offers, or gives the testimony may invoke on the record (before the

deposition or proceeding is concluded) a right to have up to 20 days to identify the specific

portions of the testimony as to which protection is sought and to specify the level of protection

being asserted ("CONFIDENTIAL" or "CONFIDENTIAL — ATTORNEYS' EYES ONLY").

Only those portions of the testimony that are appropriately designated for protection

within the 20 days shall be covered by the provisions of this Stipulated Protective Order.

Transcript pages containing Protected Material must be separately bound by the court reporter,

who must affix to the first page of the separately bound volume the legend "CONFIDENTIAL"

or "CONFIDENTIAL — ATTORNEYS' EYES ONLY," as instructed by the Party or non-party

offering or sponsoring the witness or presenting the testimony.

(c)      for information produced in some form other than documentary

and for any other tangible items, that the Producing Party affix in a prominent place on the

exterior of the container or containers in which the information or item is stored the legend

"CONFIDENTIAL" or "CONFIDENTIAL —ATTORNEYS' EYES ONLY." If only portions

of the information or item warrant protection, the Producing Party, to the extent practicable, shall

identify the protected portions, specifying whether they qualify as "Confidential" or as

"Confidential — Attorneys' Eyes Only."

(d)      Nothing in this Stipulated Protective Order shall limit the right of a

non-Producing Party to designate the Disclosure or Discovery Material of a Producing Party or

the documents or other non-documentary information produced by a non-party as "Confidential" or "Confidential– Attorneys' Eyes Only".

      5.3     Inadvertent Failure to Designate.   If timely corrected, an inadvertent failure to designate qualified information or items as "Confidential" or "Confidential — Attorneys' Eyes Only" does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material.  If material is appropriately designated after the material was initially produced, the Receiving Party, on timely notification of the designation, must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Order.

    6.     CHALLENGING CONFIDENTIALITY DESIGNATIONS

      6.1     Timing of Challenges.  Unless a prompt challenge to a Designating Party's confidentiality designation is necessary to avoid foreseeable substantial unfairness, unnecessary economic burdens, or a later significant disruption or delay of the litigation, a Party may challenge the confidentiality designation of a Designating Party at any time after the original designation.

      6.2     Meet and Confer.  A Party that elects to initiate a challenge to a Designating Party's confidentiality designation must do so in good faith and must begin the process by conferring directly (in voice to voice dialogue; other forms of communication are not sufficient) with counsel for the Designating Party.  In conferring, the challenging Party must explain the basis for its belief that the confidentiality designation was not proper and must give the Designating Party an opportunity to review the designated material, to reconsider the circumstances, and, if no change in designation is offered, to explain the basis for the chosen designation.  A challenging Party may proceed to the next stage of the challenge process only if it has engaged in this meet and confer process first.

      6.3     Judicial Intervention.  A Party that elects to press a challenge to a confidentiality designation after considering the justification offered by the Designating Party may file and serve a motion as provided by the Federal Rules of Civil Procedure and the Massachusetts Local Rules that identifies the challenged material and sets forth in detail the basis

for the challenge. Each such motion must be accompanied by a competent declaration that affirms that the movant has complied with the meet and confer requirements imposed in the preceding paragraph and that sets forth with specificity the justification for the confidentiality designation that was given by the Designating Party in the meet and confer dialogue.

The burden of persuasion in any such challenge proceeding shall be on the Designating Party. Until the court rules on the challenge, all Parties shall continue to afford the material in question the level of protection to which it is entitled under the Designating Party's designation.

7.     ACCESS TO AND USE OF PROTECTED MATERIAL

7.1     Basic Principles. A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a non-party in connection with this case only for prosecuting, defending, or attempting to settle this litigation. Such Protected Material maybe disclosed only to the categories of persons and under the conditions described in this Order. When the litigation has been terminated, a Receiving Party must comply with the provisions of section 11, below (FINAL DISPOSITION).

Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

7.2     Disclosure of "Confidential" Information or Items. Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated CONFIDENTIAL only to:

(a)     the Receiving Party's Outside Counsel of record in this action, as well as employees of said Counsel to whom it is reasonably necessary to disclose the information for this litigation;

(b)     a maximum of 3 officers, directors, and employees (including House Counsel of the Receiving Party to whom disclosure is reasonably necessary for the prosecution or defense of this litigation;

(c)     Experts of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed the "Agreement to Be Bound by Protective

7

Order" that is attached to this Stipulated Protective Order as Exhibit A (the "Agreement to Be Bound");

        (d)     the Court and its personnel;

        (e)     court reporters and their staffs;

        (f)     Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have signed the "Agreement to Be Bound"; and

        (g)     the author of the document(s) in question or the original source of the information in question, as well as any recipients of the document(s) or information in question.

        7.3     Disclosure of "CONFIDENTIAL — ATTORNEYS' EYES ONLY" Information or Items:  Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL - ATTORNEYS' EYES ONLY" only to:

        (a)     the Receiving Party's Outside Counsel of record in this action, as well as employees of said Counsel to whom it is reasonably necessary to disclose the information for this litigation;

        (b)     Experts of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed the Agreement To Be Bound;

        (c)     the Court and its personnel;

        (d)     court reporters and their staffs;

        (e)     Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have signed the "Agreement to Be Bound"; and

        (f)     the author of the document(s) in question or the original source of the information in question, as well as any recipients of the documents or information in question.

        8.     PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION

If a Receiving Party is served with a subpoena or an order issued in other litigation that would compel disclosure of any information or items designated in this action as "CONFIDENTIAL" or "CONFIDENTIAL - ATTORNEYS' EYES ONLY," the Receiving Party must so notify the Designating Party, in writing (by fax, if possible) immediately and in no event more than three court days after receiving the subpoena or order. Such notification must include a copy of the subpoena or court order.

The Receiving Party also must immediately inform in writing the Party who caused the subpoena or order to issue in the other litigation that some or all the material covered by the subpoena or order is the subject of this Protective Order. In addition, the Receiving Party must deliver a copy of this Stipulated Protective Order promptly to the Party in the other action that caused the subpoena or order to issue.

The purpose of imposing these duties is to alert the interested parties to the existence of this Protective Order and to afford the Designating Party in this case an opportunity to try to protect its confidentiality interests in the court from which the subpoena or order issued. The Designating Party shall bear the burdens and the expenses of seeking protection in that court of its confidential material — and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this action to disobey a lawful directive from another court.

9.    UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Stipulated Protective Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures, (b) use its best efforts to retrieve all copies of the Protected Material, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person or persons to execute the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A.

10.    FILING PROTECTED MATERIAL

Without written permission from the Designating Party or a court order secured after appropriate notice to all interested persons, a Party may not file in the public record in this action

9

any Protected Material. A Party that seeks to file under seal any Protected Material must comply with the Judge's rules for doing so.

11.    FINAL DISPOSITION

Unless otherwise ordered or agreed in writing by the Parties, within sixty days after the final termination of this action, each Receiving Party must destroy all Protected Material that it received from any source during the course of the litigation. As used in this paragraph, the term "all Protected Material" includes all copies, abstracts, compilations, summaries or any other form of storing, reproducing or capturing any of the Protected Material. After all Protected Material is destroyed, the Receiving Party shall certify in writing to all other Parties (and, where appropriate, to any Designating Party or Parties) by the sixty day deadline that all Protected Material was destroyed and affirming that the Receiving Party has not retained any copies, abstracts, compilations, summaries or other forms of storing, reproducing or capturing any of the Protected Material. Notwithstanding this provision, Counsel are entitled to retain an archival copy of all pleadings, motion papers, transcripts, legal memoranda, correspondence or attorney work product, even if such materials contain Protected Material. Any such archival copies that contain or constitute Protected Material remain subject to this Protective Order as set forth in Section 4 (DURATION), above.

12.    MISCELLANEOUS

12.1    Right to Further Relief. Nothing in this Order abridges the right of any person to seek its modification by the Court in the future.

12.2    Right to Assert Other Objections. By stipulating to the entry of this Protective Order no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Stipulated Protective

//

//

//

10

Order.  Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order.

   12.3 Modification.  The Court may modify this Stipulated Protective Order in the interests of justice or for public policy reasons.

IT IS SO STIPULATED THROUGH COUNSEL OF RECORD.


Dated: August ___, 2005     SHELDON & MAK, PC




         By: _____
           Douglas H. Morseburg
         Attorneys for Defendant and  Ccounterclaimant
         J.T. POSEY COMPANY, INC.




Dated: August ___, 2005     BROMBERG SUNSTEIN LLP




         By: _____
           Edward J. Dailey
         Attorneys for Plaintiff and Counterclaim Defendant
         THE HIPSAVER COMPANY, INC. and
         Counterclaim Defendant Edward Goodwin.




ORDER

   The foregoing stipulation of the parties having been received by the Court and duly considered, AND GOOD CAUSE APPEARING THEREFOR, IT IS SO ORDERED.


Dated: _____   _____
         Hon. Patti B. Saris
         United States District Judge


11

EXHIBIT A

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE HIPSAVER COMPANY, INC.,        ) | Civil Action No. 05-10917 PBS |
|               Plaintiff,      ) | |
|      v.                ) | |
| J.T. POSEY COMPANY,        ) | |
|             Defendant.    ) | |
| AND RELATED COUNTERCLAIM.   ) | |

## ACKNOWLEDGEMENT AND AGREEMENT TO BE BOUND

I, _____ [print or type full name], of _____ [print or type full address], have read in its entirety and understand the foregoing Stipulated Protective Order that was issued by the United States District Court for the District of Massachusetts. I agree to comply with and to be bound by all the terms of this Stipulated Protective Order and I understand and acknowledge that failure to so comply could expose me to sanctions and punishment in the nature of contempt.

I further agree to submit to the jurisdiction of the United States District Court for the District of Massachusetts for the purpose of enforcing the terms of this Stipulated Protective Order, even if such enforcement proceedings occur after termination of this action.

Dated: August ___, 2005

_____

Signature

12

**EXHIBIT "B"**

**From:**       "Edward Dailey" <Edailey@bromsun.com>
**To:**         "Doug Morseburg" <doug@usip.com>
**Date:**       8/8/05 8:18AM
**Subject:**    Proposed Confidentiality Agreement

Doug,
  My apology for not having sent this out last week ( I was away racing a sailboat ).  The enclosed DRAFT Confidentiality Agreement is the common agreement I use and is liked by the court - because it tends not to lead to sealed documents (which the courts can't handle with any assurance here).  At the same time, the Agreement does not force a lot of wasted effort designating documents at different levels of confidentiality.

  Upon agreement, the process is to file the Agreement with a joint request for a protective order implementing the Agreement.

     /Ed


This message is intended only for the addressee(s), and may contain information that is privileged and confidential.  If the recipient of this message is not an addressee, please notify us immediately by telephone at 617-443-9292.

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

Civil Action No. 05-10917 PBS

|  |  |
|---|---|
| The HipSaver Company, Inc., | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| v | ) |
| | ) |
| J.T Posey Company, | ) |
| Defendant | ) |
| | ) |
| ———————————————————— | ) |
| | ) |
| J.T. Posey Company, Inc., | ) |
| Counterclaim Plaintiff | ) |
| | ) |
| v | ) |
| | ) |
| The HipSaver Company, Inc. and | ) |
| Edward L. Goodwin, | ) |
| Counterclaim Defendants | ) |
| | ) |
| | ) |
| ———————————————————— | ) |

DRAFT

## CONFIDENTIALITY AGREEMENT

The Plaintiff, HipSaver Company, Inc. ("HipSaver"), the Counterclaim Defendant, Edward L. Goodwin ("Mr. Goodwin") and the Defendant, J.T. Posey Company, Inc. ("Posey") enter into this Confidentiality Agreement.

1

1.     <u>Scope</u>.  This Confidentiality Agreement shall apply to all information,

documents and things produced either by a party or a non-party in response to or in

connection with any discovery conducted in this action or produced at any hearing or trial

of this action, including without limitation, testimony adduced at depositions upon oral

examination or upon written questions, answers to interrogatories, expert reports,

documents and things produced (including documents and things produced to the

receiving party for inspection and documents and things provided to the receiving party,

whether in the form of originals or copies), information obtained from inspection of

premises or things, and answers to requests for admission as well as any and all copies,

abstracts, digests, notes and summaries thereof (collectively referred to as "Confidential

Materials").  This Confidential Agreement does not extend to information, documents,

and things which are or have been used or disclosed in the usual course of business.

2.     <u>Designation of Confidentiality</u>.  All Confidential Materials as defined

above shall be *presumptively* Confidential.

3.     <u>Use of Confidential Materials</u>.  Confidential Materials shall be used by the

receiving person solely for the purpose of conducting this lawsuit and any appeal.

Confidential Materials may not be used for any business or other purpose whatsoever,

whether directly or indirectly.  Nothing contained in this Confidentiality Agreement shall

preclude a party or non-party from using or disseminating Confidential Materials which it

has authored *with the exception of expert reports which shall remain Confidential and may not be disclosed directly or indirectly for any purpose other than this action.*

    4.    <u>Disclosure of Confidential Materials</u>.  Confidential Materials shall not be made public or disclosed to anyone other than to the following persons:

        a.    counsel actively involved in the above-entitled litigation, and legal assistants, investigative, litigation support services, secretarial and clerical personnel who are engaged in assisting counsel in the above-entitled action.

        b.    Any expert and employees and assistants under the control of such an expert, who (1) is engaged by counsel in this litigation, whether or not such expert is paid directly by a party, and (2) is not regularly employed by or associated with a party hereto and whose advice and consultations are being or will be used by a party hereto in connection with this action but only after that person has read this Confidentiality Agreement and has executed the undertaking set out in Exhibit A.

        c.    Any person who authored or has previously received the particular Confidential Materials sought to be disclosed to that person but only after that person has read this Confidentiality Agreement and has executed the undertaking set out in Exhibit A;

        d.    Officers and employees of each party, provided each such person has read this Confidentiality Agreement and has executed the undertaking set out in Exhibit A and provided further that each such person reviews Confidential Materials only for the purpose of becoming informed of information that may be relevant to assistance to

counsel, testimony, and, in the case of officers, decisions that must be made in connection with this action;

        e.      The Court, subject to Paragraph 7, below; and

        f.      Any interpreter, or court or other shorthand reporter or typist translating, recording or transcribing testimony.

    5.    <u>Inadvertent Disclosures</u>.  The inadvertent or mistaken production of documents subject to attorney client privilege or work product doctrine shall not constitute a general or specific waiver of the right of the party that made production to contend that such documents are protected from discovery and to seek return of such documents.  In the event that a party makes inadvertent or mistaken disclosure of documents and information, the party that made the disclosure shall promptly notify the other party of the disclosure, as soon as possible after discovery and shall specifically identify the documents that were inadvertently or mistakenly disclosed by Bates number. Thereafter, the party that received the documents may not use the documents or information in the documents in any manner unless permission has been granted by the trial court.  Nothing in this paragraph precludes the receiving party from claiming that the documents are not privileged or subject to the work product doctrine.

    6.    <u>Objections to Designations</u>.  Should counsel object to the presumptive designation of Confidential Materials, counsel shall notify opposing counsel of the objection and the reasons for the objection.  Counsel shall promptly confer in an attempt to resolve the matter.  If the matter remains unresolved, objecting counsel may then apply

to the trial court for a determination. The burden of demonstrating that the designation is appropriate shall be on the party seeking to maintain a Confidential designation. If no application to the trial court is made, the material will remain as designated. Any information which is subject to a dispute as to its proper designation shall be treated as Confidential pending resolution of the designation dispute.

7.    <u>Limited Disclosure of Confidential Materials</u>.  Confidential Materials shall not be made public or used for any purpose (except as provided in Paragraph 3), directly or indirectly, except to the extent disclosure is made for the record at a hearing or trial. To the extent that a party or non party seeks to protect Confidential Materials from all public disclosure, any party or non party may apply to the trial court for a Protective Order to file and use such Confidential Materials, including testimony, under seal. Pending the Court's determination on an application for a Protective Order, Confidential Materials shall be withheld from disclosure except to counsel on an "eyes only" basis. Nothing in this Confidentiality Agreement limits or restricts a party or non party's right to seek further protective orders under Fed. R. Civ. P. 26(c).

8.    <u>Secure Storage</u>.  The recipient of Confidential Materials shall maintain such information, documents or things in a secure and safe area and shall exercise due and proper care with respect to the storage, custody, use and dissemination (including dissemination to persons identified in paragraph 4).

9.    <u>Preservation of Rights and Privileges</u>.  Nothing contained in this Confidentiality Agreement shall affect the right, if any, of any party or non party to make any other type of objection, claim, or other response to interrogatories, to requests for production of documents or to any questions at a deposition.  Nor shall this Confidentiality Agreement be construed as a waiver by any party or non party of any legally cognizable privilege to withhold any Confidential materials, or of any right which any party or non party may have to assert such privilege at any stage of the proceedings.

10.    <u>Return of Confidential Materials</u>.  Within thirty (30) days after the conclusion of the above-entitled action, including, without limitation, any appeal or retrial, all Confidential Materials shall be returned to counsel or the person who produced it.  Confidential Materials shall not be retained by the receiving party in any form.  As to those materials which contain or reflect Confidential Materials, but which constitute or reflect counsel's work product, all such work product may be maintained by counsel, but such work product shall be used only for the purpose of preserving a file on this action and shall not, without written permission of the party that disclosed the Confidential Materials or a judicial order, be disclosed to anyone other than those to whom such information was first disclosed in accordance with this Confidentiality Agreement.  Counsel retaining court reporters shall have the responsibility for ensuring their compliance with this paragraph and shall notify opposing counsel when compliance is complete.  Nothing here shall require the return or destruction of pleadings or any other

6

papers filed with the court or served by the parties, even if those pleadings or papers contain or reflect Confidential Materials, provided, however, that any such pleadings or papers not returned or destroyed remain subject to the provisions of this Confidentiality Agreement.

11.    <u>Continuing Effect</u>.  Upon conclusion of the above-entitled action, the provisions of this Confidentiality Agreement shall continue to be binding.  This Confidentiality Agreement shall remain in force and effect until modified, superseded, or terminated by consent of the parties or by judicial order.

12.    <u>Other Provisions</u>.  This Confidentiality Agreement is the entire agreement of the parties concerning its terms, supercedes any other agreement concerning its terms or any part of its terms, and may be amended only by a written agreement executed by the parties for that express purpose.  This Confidentiality Agreement shall be governed by the laws of the Commonwealth of Massachusetts and the federal laws of the United States and shall be enforced in the United States District Court for the District of Massachusetts.

This Confidentiality Agreement shall be effective from and after August 1, 2005.


Accepted and Agreed,


THE HIPSAVER COMPANY, INC. and
EDWARD L. GOODWIN
By their Attorneys,


Lee Carl Bromberg
BBO no. 058480
Edward J. Dailey
BBO no. 112220
Peter J. Karol
BBO no. 660338


J.T. POSEY COMPANY, INC.
By its Attorneys,


Anthony J. Fitzpatrick,
BBO no. 564324
DUANE MORRIS LLP
470 Atlantic Avenue
Boston, Massachusetts 02210
617.289.9200

Jeffrey G. Sheldon
Douglas H. Morseburg
SHELDON & MAK
225 South Lake Avenue
Pasadena, California 91101-3021
626.796.4000
02820/00502  423409.1

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

Civil Action No. 05-10917 PBS

|  |  |
|---|---|
| The HipSaver Company, Inc., | ) |
| Plaintiff, | ) |
| v | ) |
| J.T Posey Company, | ) |
| Defendant | )) |
| | ) |
| J.T. Posey Company, Inc., | ) |
| Counterclaim Plaintiff | ) |
| v | ) |
| The HipSaver Company, Inc. and | ) |
| Edward L. Goodwin, | ) |
| Counterclaim Defendants | ) |
| | ) |

**EXHIBIT A**
**CONFIDENTIALITY AGREEMENT**

I, _____, have read and understand the terms and provisions of the Confidentiality Agreement which is attached to this Exhibit A. I understand that I am required to comply with the non disclosure provisions of the Confidentiality Agreement. I understand also that I am required to maintain and protect the confidentiality of all Confidential Materials which I may produce, provide, receive, review, examine, or study in connection with this lawsuit. I have read and understand that documents, information, and things associated with this lawsuit are presumed to be Confidential Materials. I agree that I will not disclose or use any such Confidential Materials or any part of such Confidential Materials for any purpose which is not directly related to this lawsuit except as permitted in paragraph 3 of the Confidentiality Agreement. Within 30 days of the conclusion of this lawsuit and upon written notice from counsel for any party, I will return all Confidential Materials.

Signed:_____

Please print:
Name:
Business Address
Telephone number:

9

**EXHIBIT "C"**

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 05-10917 PBS

| | |
|---|---|
| THE HIPSAVER COMPANY, INC., | ) |
|     Plaintiff / Counterclaim Defendant, | ) |
| | ) |
| v | ) |
| | ) |
| J.T. POSEY COMPANY, | ) |
|     Defendant / Counterclaim Plaintiff | ) |
| | ) |

## PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS

Plaintiff, The HipSaver Company, Inc. ("HipSaver") requests, pursuant to Fed. R. Civ. P.
26, 34 and L.R. 34.1, production of the documents and things requested here.  Your response is
to be in conformance with Fed. R. Civ. P. 34 and is to include a separate, full and complete
response to each of the following requests for production of documents.

## PRELIMINARY INSTRUCTIONS

A.  The discovery requested in these requests, unless otherwise specified and without
regard to the tense used in any request, seeks documents and things for the period from January
1, 2000 *through the present and up to and through conclusion of this litigation.*

B.  If any request has subparts, Defendant must answer each subpart separately and in full and not limit the answer to the request as a whole.

C.  Defendant must make a diligent search and must respond to each request upon your entire knowledge, available from all sources, including:

> 1) all information in your possession or in the possession of any related, affiliated, sponsored, or controlled person, company, entity, subsidiary, or sole proprietorship;
>
> 2) all information in the possession of any present or former officer, director, employee, agent, servant, representative, attorney, or other person acting for or on behalf of the Defendant or any related, affiliated, sponsored, or controlled person, company, entity, subsidiary, or sole proprietorship; and
>
> 3) all information available to the Defendant.

D.  If the Defendant cannot respond completely to any of the requests, please respond to the extent possible, specifying the reason for inability to respond to the remainder and stating any information or knowledge the Defendant has concerning the portion to which it cannot respond fully and completely.

E.  If any document or thing called for in these requests is being withheld on the ground that it is subject to a privilege or otherwise protected from discovery, your attorney is required under L.R. 34.1 to state in full with respect to each document or thing, the precise nature of any grounds for the privilege or other exemption claimed. Also, please prepare and produce a privilege log identifying each such withheld document by stating in full, the title of the document, its date, subject matter, number of

pages, and the identity of the author of the document, stating in full the author's name, last known or present residential address, and last known or present business address and position; the identity of all recipients of an original or copies thereof, stating in full each recipient's name, last known or present residential address, and last known or present business address and position; and identify each such thing being withheld by a complete description of its appearance and function and the last known or present location thereof.

F.  If any document requested here has been destroyed, state the reason for its destruction.  Also, please prepare and produce a destruction log identifying each such destroyed document by stating in full, the title of the document, its date, subject matter, number of pages, and the identity of the author of the document, stating in full the author's name, last known or present residential address, and last known or present business address and position; the identity of all recipients of an original or copies thereof, stating in full each recipient's name, last known or present residential address, and last known or present business address and position; and identify each such document which was destroyed by a complete description of its appearance and function and the last known or present location thereof; and identify all persons having any knowledge of its destruction and each person responsible for its destruction, stating in full each such person's name, last known or present residential address, and last known or present business address and position.

G.  These requests shall be continuing requests pursuant to Fed. R. Civ. P. 26(e), so as to require additional and supplemental responses if the Defendants obtain further information or documents or things at any time between the time responses are served and the termination of this action.

H. The documents and things requested here shall be produced for inspection and copying at the offices of BROMBERG SUNSTEIN LLP, 125 Summer Street, Boston, Massachusetts 02110.

I. For these requests, grammatical conventions shall be governed by Patricia T. O'Conner, Woe Is I (Riverhead Books 1996).

## DEFINITIONS

A. Definitions set out in Fed. R. Civ. P. 34 apply to these requests and expressly include all data and documents maintained, stored, or archived in any electronic form or medium.

B. The term, you, your, yourself, or the term, Posey, or the term, Defendant, as used in these requests means the Defendant and all related, affiliated, sponsored, or controlled persons, companies, entities, subsidiaries, and sole proprietorships and includes any present or former officer, director, employee, agent, servant, representative, attorney, and any other person acting for or on behalf of the Defendant or any related, affiliated, sponsored, or controlled person, company, entity, subsidiary, or sole proprietorship.

C. The term, person, as used in these requests is defined as any natural person or any business, legal, or governmental entity or association and includes any officer, director, corporate member, trustee, employee, agent, servant or representative of any such entity or association.

D. The word, or, as used here shall be construed to mean and / or.

4

E.  Words used in the singular shall, where the context permits, be deemed to include the plural.  Words used in the plural shall, where the context permits, be deemed to include the singular.

F.  The term, <u>related in any manner to</u>, as used in these requests means containing, recording, discussing, mentioning, noting, evidencing, memorializing, analyzing, describing, commenting upon, referring to, or otherwise pertaining to or bearing upon the matter set forth.

G.  The term, <u>refer in any manner to</u>, as used in these requests means containing, recording, discussing, mentioning, noting, evidencing, memorializing, analyzing, describing, commenting upon, referring to, or otherwise pertaining to or bearing upon the matter set forth.

H.  The term, <u>Garwood</u> or <u>Garwood Laboratories</u>, as used in these requests means Garwood Laboratories and all related, affiliated, sponsored, or controlled persons, companies, entities, subsidiaries, and sole proprietorships and includes any present or former officer, director, employee, agent, servant, representative, attorney, and any other person acting for or on behalf of the Garwood Laboratories or any related, affiliated, sponsored, or controlled person, company, entity, subsidiary, or sole proprietorship.

I.  The term, <u>Hipster</u> as used in these requests, means the Defendant's hip protector products or any component part of one or more of those products.

**<u>Documents and Things to be Produced</u>**

1.    With respect to any matter in the Complaint or Counterclaim, please produce and

provide the following:

    a) all electronic mail messages to or from (individually or as part of a group) Jeff

       Yates, Charles Kline, Leanne Powers, Lee Rash, Ernest M. Posey, Victoria Lewis,

       Tom Sturkie, Dominic Hunter, Rick Clemons, William Flower, J.T. Posey

       Company or anyone associated with that company, Edward L. Goodwin,

       HipSaver, or anyone associated with that company;

    b) all correspondence to or from (individually or as part of a group) Jeff Yates,

       Charles Kline, Leanne Powers, Lee Rash, Ernest M. Posey, Victoria Lewis, Tom

       Sturkie, Dominic Hunter, Rick Clemons, William Flower, J.T. Posey Company or

       anyone associated with that company, Edward L. Goodwin, the HipSaver

       Company, Inc. or anyone associated with that company.

2.    With respect to hip protection materials, garments, products, and samples, please

produce and provide the following:

    a) all materials, garments, products, and samples provided to Garwood Laboratories

       for testing;

    b) all data, documentation, and information, including drafts and revisions, provided

       to Garwood and related in any manner to any study or testing conducted for or at

       the direction of Posey;

c)   all data, documentation, information, including drafts and revisions, received

from Garwood and related in any manner to any study or testing conducted for or

at the direction of Posey;

d)   all drafts, copies, mark-ups, and final versions related in any manner to the

development and approval of Posey advertisements or public or customer or

marketing statements and materials in any form that refer in any manner to any

study, test, or results obtained through any study or testing conducted in whole or

part by Garwood;

e)   all drafts, copies, mark-ups, and final versions of all advertisements or public or

customer or marketing statements and materials in any form which refer or relate

in any manner to any study, test, or results obtained through any study or testing

conducted in whole or part by Garwood;

f)    all data, documentation, and information which refer or are related in any manner

to the use and dissemination of advertisements or public or customer or marketing

statements and materials referred to in subparagraphs d) and e) above, including

but not limited to the types of media used, identification of specific publications

and media, and identification of customers, institutions, and others to whom the

advertisements and public statements were directed, sent, or provided.

3.      With respect to hip protection materials, garments, products, and samples, please

produce and provide the following:

a)   all correspondence, data, documentation, and information related in any manner

to any request or proposal for a study or testing to be conducted in whole or part

by Garwood for or on behalf of Posey;

b) all data, documentation, and information related to the design for and the protocol for each study and test conducted in whole or part by Garwood for or on behalf of Posey;

c) all data, documentation, and information, including drafts and revisions, which record and report the conduct or results of each study and test conducted in whole or part by Garwood for or on behalf of Posey;

d) all lab notes related in any manner to each study and test conducted in whole or part by Garwood for or on behalf of Posey;

e) all documents showing calibration of equipment used by Garwood in each study and test conducted in whole or part for Posey

f) all photographs, images, and graphics associated with or related in any manner to each study and test conducted in whole or part by Garwood for or on behalf of Posey.

4.    With respect to Hipster products, please produce and provide the following:

a) all tests, studies, data, documentation, and information related in any manner to the development and confirmation of accuracy of the laundering instructions supplied with Hipster products;

b) all studies, tests, data, documentation, and information which conclude, refer, or relate in any manner to satisfactory reduction of microbial contamination of Hipster products when laundered at water temperatures of less than 160°F;

c) all studies, tests, data, documentation, and information related in any manner to the durability or integrity of "standard" Hipster products when laundered at water temperatures of 120°F;

8

d) all studies, tests, data, documentation, information, and correspondence which refer or relate in any manner to Posey's decision and actions undertaken to change its laundering instructions from the instruction in use during 2004 that Hipster products can be laundered at water temperatures of 160°F;

e) all information and correspondence which refers or relates in any manner to the failure, disintegration, or loss of durability or integrity of Hipster products when laundered at water temperatures of 160°F;

f) all studies, tests, data, documentation, and information related in any manner to the durability or integrity of Hipster products when laundered at water of 160 degrees Fahrenheit for at least 25 minutes as suggested by CDC guidelines for laundering;

g) all studies, tests, data, documentation, correspondence, and information related in any manner to the failure of Hipster products to meet institutional laundering standards, including those set by the Centers for Disease Control;

h) all studies, tests, data, documentation, and information related in any manner to the durability or integrity of "high durability" Hipster products when laundered at water temperatures of 180°F for at least 25 minutes.

5.    With reference to the Declarations of Victoria Lewis (dated June 16, 2005), please produce true and correct copies of all advertisements, fliers, customer handouts, marketing materials, and product stuffers and all drafts of the same whether published or unpublished and including print and electronic format, and accompanied with dates of publication and sources of publication if available, that made reference to the Impact study.

6.      With respect to advertisements, fliers, customer handouts, marketing materials, and product stuffers, and all drafts of the same which were published or used or distributed at any time from and after September 1, 2001, please produce every such document or materials which refer or relate in any manner to laundering, durability, product integrity, protection against injury, reduction of impact, effectiveness and which

7.      Please produce all documents which document or refer or relate in any manner to instructions to Posey employees, distributors, agents, and representatives and directing them to halt and discontinue use, distribution, or communication of any document or advertisement which refers or relates in any manner to any Garwood study or report.

8.      Please produce every document which supports Posey's allegation that "HipSaver has embarked on a campaign to tarnish and damage the reputation of Posey and Posey's hip protector products … [by wrongly accusing] Posey of infringing United States Patent No. 6,519,780."

9.      Please produce every document which supports Posey's allegation that it has not knocked-off HipSaver's products.

10.     Please produce every document which supports Posey's allegation that it has not produced defective products.

11.     Please produce every document which refers or relates in any manner to any clinical validation of Hipster products with respect to protection against hip injury in humans.

12.     Please produce every document demonstrating that Posey hip protector products do not fall apart and degrade.

13.    Please produce every document demonstrating that Posey hip protector products have been proven effective in orthopedic biomechanical testing.

14.    Please produce every document which refers or relates in any manner to total Hipster sales by product type, unit sales, total unit sales, volume, revenue for each year and for the year to date in 2005.

THE HIPSAVER COMPANY, INC.
By its attorneys,

Lee Carl Bromberg
BBO no. 058480
Edward J. Dailey
BBO no. 112220
Peter J. Karol
BBO no. 660338
BROMBERG SUNSTEIN LLP
125 Summer Street - 11th floor
Boston, Massachusetts 02110-1618
617.443.9292
617.443.0004 (fax)
Dated: 8.12.05

## CERTIFICATE OF SERVICE

I certify that a copy of this document has been forwarded by electronic mail and USPS First Class mail today to Defendant's counsel of record, Anthony J. Fitzpatrick, Esq., DUANE MORRIS LLP, 470 Atlantic Avenue, Boston, Massachusetts 02210, ajfitzpatrick@duanemorris.com, and by electronic mail and USPS First Class mail to Jeffrey G. Sheldon, Esq., jgsheldon@usip.com and Douglas H. Morseburg, Esq., dorse@usip.com, SHELDON & MAK, 225 South Lake Avenue, Pasadena, California 91101.

Edward J. Dailey

02820/00502 423858.1

**EXHIBIT "D"**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA
### Western Division

The HipSaver Company, Inc.
  Plaintiff,

                    v.

**SUBPOENA IN A CIVIL CASE**
CASE NUMBER:[1]  05-10917 PBS
District of Massachusetts

J.T. Posey Company
  Defendant,

TO:   Keeper of the Records, GARWOOD LABORATORIES, 7829 Industry Avenue
      Pico Rivera, California  90660

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date and time specified below (list documents or objects): all documents and things described in Schedule A.

| PLACE OF PRODUCTION ATKINSON ANDELSON LOYA RUDD & ROMO PC, 17871 Park Plaza Drive, Suite 200, Cerritos, California  90703, 562.653.3200, attention Aaron V. O'Donnell, Esq. | DATE AND TIME August 15, 2005 at 10:00am |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) Attorney for the Plaintiff | July 22, 2005 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Edward J. Dailey, BROMBERG SUNSTEIN LLP, 125 Summer Street, Boston, Massachusetts  02110
1.617.443.9292

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

[1] If action is pending in district court other than district of issuance, state district under case number 88 (1/94) Subpoena in a Civil Case

| PROOF OF SERVICE | | |
|---|---|---|
| | DATE | PLACE |
| SERVED | | |
| SERVED ON (PRINT NAME) | | MANNER OF SERVICE |
| SERVED BY (PRINT NAME) | | TITLE |

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____          _____
DATE                                              SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

_____

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(C) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The Court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where

that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv) subjects a person to undue burden.

(B) If a subpoena
(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the Court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA
(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## Schedule A

In response to the documents and things requested here, you are required to produce documents and things maintained in any tangible or electronic form, including data and images maintained in a computerized format. For documents maintained in a computerized format, you are required also to produce a useable copy of the program and operating system required to access the computerized data – unless the program and operating system are commercially available.

### Please produce:

1.      All correspondence, including letters, memos, electronic mail, proposals, agreements, and invoices and all drafts and revisions of the same – to or from any person associated with Garwood Laboratories, Inc. and to or from any person associated with or representing the Posey Company during the period from January 1, 2001 through the present.

2.      All requests for proposal, test proposals, statements of work, test designs, test protocols, and all drafts and revisions of the same – which are related to or refer in any manner to testing or other work proposed by or conducted by Garwood Laboratories, Inc. for or on behalf of or in collaboration with the Posey Company at any time during the period from January 1, 2001 through the present.

3.      All manuals; journal reports; scholarly, reference, or professional materials or sources consulted in preparing and executing testing conducted by Garwood Laboratories, Inc. for or on behalf of or in collaboration with the Posey Company at any time during the period from January 1, 2001 through the present.

4.      All certificates of origin or other identifying materials or documents for all specimens and materials tested by Garwood Laboratories, Inc. for or on behalf of or in collaboration with the Posey Company at any time during the period from January 1, 2001 through the present.

5.      All documents which describe the specimens and materials (by dimension, material, shape, color, pouch covering, laminate structure, trade name) tested by Garwood Laboratories, Inc. for or on behalf of or in collaboration with the Posey Company at any time during the period from January 1, 2001 through the present.

1

6.      All documents which describe the top and bottom of the test impact surfaces (including topography, curvature, and impact surface dimensions) for testing conducted by Garwood Laboratories, Inc. for or on behalf of or in collaboration with the Posey Company at any time during the period from January 1, 2001 through the present.

7.      All documents listing the name of persons (and their role) associated with testing conducted by Garwood Laboratories, Inc. for or on behalf of or in collaboration with the Posey Company at any time during the period from January 1, 2001 through the present.

8.      All documents listing the names of persons employed by or representing the Posey Company who were associated with, observed, or participated in any way with testing conducted by Garwood Laboratories, Inc. for or on behalf of or in collaboration with the Posey Company at any time during the period from January 1, 2001 through the present.

9.      All test or work data, records, logs, test reports, diagrams, charts, and materials, including test materials, which are associated in any manner with to testing or other work proposed by or conducted by Garwood Laboratories, Inc. for or on behalf of or in collaboration with the Posey Company at any time during the period from January 1, 2001 through the present.

10.     All test or work data, records, logs, test reports, diagrams, charts, and materials, including test materials, which are associated in any manner with to impact testing, impact absorption testing, or other work related to simulation of a fall from a height of 36 inches which has been conducted by Garwood Laboratories, Inc. for or on behalf of or in collaboration with the Posey Company at any time during the period from January 1, 2001 through the present.

02820/00502  419597.1

2

**EXHIBIT "E"**

**Tue  8/23/05 9:30 AM**                                                          **Page: 1**

<u>**Email Message**</u>


**From: Ed Goodwin**
**Sent: 2/18/03 3:44 AM**
**To: tony@usip.com**
**Cc: Ernie Posey**
**Subject: HipSaver Patent #6519780**

---

Greetings Mr Vella,

As we promised, here is notification of our first patent issue. It would
have covered the product that your client, Posey Co.,
originally copied in 2001. However, we see that your client now uses an
attachment of the internal pad to the outer envelope. That structural
element in all its possible variations in claimed in another still
pending patent of  The HipSaver
Co., Inc. We will therefore wait for the issue of this patent before
beginning the infringement action. As in this case, you will be promptly
notified. As we have said before your client's hands are not clean and
his willful and reckless behavior
is well documented in the case of HipSaver, other hip protectors, and
other products. His company is nothing more than a "copy and sell" house
with a pattern and practice of of using his "marketing muscle" (E
Posey's words) to run roughshod over smaller innovative companies.

Aside from the absolute disregard for intellectual property and
innovation, your client has also no regard for his customers and their
patients. His series of "Hipsters" is just one defective product after
another. The Hipster 1&2
used a resilient foam that has been disproven in all university
biomechanical tests. Your client is unaware of this
because he never read the reports. The Hipster 3 is falling apart all
over the country and causing hip fractures.
You should advise your client of the following two issues:

**Tue  8/23/05 9:30 AM**                                                      **Page: 2**

**Email Message**

1) A protective device must have some credible basis to make a claim. A test from a commercial lab (as Posey claims)
is simply a deceptive marketing (adverstising) gimmick with no valid biomechanical basis. It sets no rational or scientific expectation that would be defensible.

2) The care instructions for the present Hipster are misleading the customer into destroying the product. The product is not institution launderable or launderable according to CDC guidelines.Whatever protective effect exists is rapidly degraded after a series of washes, rendering the product dangerous.

The story of the "Hipster" could be compiled into a nice case history on "How not to introduce a protective product
into the market when you don't have the slightest idea of what you are doing". Perhaps I will write it and submit it to the
Harvard MBA case studies text.

But seriously, your client is in bad need of rational advise. We are getting several calls each week about this shoddy hipster falling apart and producing fractures. Your client, because of his "marketing muscle" and defective product is giving hip protection a bad name.Your client in in bad need of regulation and I will be seeking ways to assist in this effort. In addition to suggesting legal action for those who call condemning the hipster, I will supply any plaintiff's
lawyer with all the information about the scientific basis of a legitimate hip protector and why the hipster is a defective design product offering.

Since your client has no rational internal regulation it will be necessary in both the IP issue and product safety design issue to seek external regulation.

Has he ever sent a letter to his hipster customer base warning that the product is falling apart, rendering it a dangerous
product?  My guess is no: that would not be good for sales!

**Tue  8/23/05 9:30 AM**                                                                 **Page: 3**

<u>**Email Message**</u>

Ed Goodwin
President
HipSaver, Inc.
Toll Free in US: 1-800-358-4477
International: 1-781-828-3880
Fax: 781-821-6514

Mailing Address:
7 Hubbard Street
Canton, MA 02021