# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE HIPSAVER COMPANY, INC., | ) |
| | )    Civil Action No. 05-10917 PBS |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| J.T. POSEY COMPANY, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| AND RELATED COUNTERCLAIM. | ) |
| | ) |

## DECLARATION OF DOUGLAS H. MORSEBURG IN SUPPORT OF MOTION OF DEFENDANT J.T. POSEY COMPANY FOR ORDER (1) REMOVING ATTORNEYS' EYES ONLY DESIGNATION OF EDWARD L. GOODWIN'S DEPOSITION TRANSCRIPT; (2) COMPELLING FURTHER DEPOSITION OF EDWARD L. GOODWIN; AND (3) FOR SANCTIONS AGAINST HIPSAVER AND ITS COUNSEL

I, Douglas H. Morseburg, declare:

1. I am an attorney at law duly licensed to practice before all of the courts of the State of California and I am admitted to practice in this matter pro hac vice. I am an attorney at Sheldon & Mak and am one of the attorneys responsible for representing J.T. Posey Company ("Posey") in this matter. I have personal knowledge of the facts set forth below and, if called as a witness and properly sworn, I could and would testify thereto from my own personal knowledge, except as where stated on information and belief and, as to those facts, I believe them to be true. I make this declaration in support of Posey's motion to compel the deposition of Edward Goodwin and for sanctions.

1

2.  On November 23, 2005, I caused a notice of the Deposition for Edward L. Goodwin, President of HipSaver, to be served on counsel for Plaintiff and Counterclaim Defendant The HipSaver Company, Inc. ("HipSaver").

3.  On October 14, 2005, Magistrate Judge Robert B. Collings entered a protective order ("Protective Order") defining the discovery activity in this action. A true and correct copy of the Protective Order is attached as Exhibit "B".

4.  Prior to filing the instant motion, I attempted to communicate with HipSaver's counsel, Edward Dailey, in an effort to avoid this motion. Specifically, on December 12, 2005, I sent Mr. Dailey an email correspondence requesting a meet-and-confer in an attempt to narrow or resolve the issues of this instant motion. I did not receive any response from Mr. Dailey. A true and correct copy of the email correspondence is attached as Exhibit "C".

5.  To date, Posey has incurred costs of $7,800 in connection with preparing, bringing, and arguing this motion and the accompanying papers.

6.  If a further deposition of Mr. Goodwin is going to occur in Boston, Posey will incur the following expenses totaling at least $4,515. This includes (i) round-trip coach class airfare for two passengers (Posey's counsel and Posey's president, Ernest Posey), which I estimate will cost approximately $800, (ii) round-trip ground transportation between Logan airport and downtown Boston, which I estimate will cost $80, (iii) round-trip ground transportation between Pasadena and Los Angeles airport, or parking at Los Angeles airport, which I estimate will cost $40, (iv) one night's hotel for Posey's counsel and its president, which I estimate will cost $580, and (v) 9 hours of attorney travel time during which the attorney will be unable to do other billable work. This includes 2 hours traveling between Pasadena and Los Angeles airport, 1 hour to/from Logan airport, .5 hour to/from the deposition location, 2.5 hours checking in at airports, boarding airplanes, and checking and retrieving luggage, and 3 hours attending the deposition. At $335 per hour, which is Sheldon & Mak's standard hourly billing rate for my time, which I believe

2

is comparable to the rates charged by similar firms in the Los Angeles area for attorneys with similar experience, the attorney time will total $3,015.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed this 30th day of December, 2005 at Pasadena, California.

/s/ Douglas H. Morseburg
Douglas H. Morseburg

3

**EXHIBIT "B"**

# United States District Court
# District of Massachusetts

|  |  |  |
|---|---|---|
| | ) | |
| THE HIPSAVER COMPANY, INC., | ) | Civil Action No. 05-10917 PBS |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| J.T. POSEY COMPANY, | ) | |
| Defendant. | ) | |
| | ) | |
| AND RELATED COUNTERCLAIM. | ) | |
| | ) | |

## _PROTECTIVE ORDER_

COLLINGS, U.S.M.J.

Having considered the parties' respective positions with respect to the

motion of defendant and counterclaimant J.T. Posey Company ("Posey") for a

protective order, the Court hereby finds that automatic disclosure and discovery

activity in this action will involve the production of confidential, proprietary, or

private information for which special protection from public disclosure and

from use for any purpose other than prosecuting this litigation is warranted.

Accordingly, the terms of this Protective Order shall govern the production and

use of disclosures and discovery materials between the parties to this lawsuit.

Any production by non-parties shall not be subject to the within Protective

Order unless all parties to the litigation and the non-party agree that production

shall be governed by the within Protective Order. In the absence of an

agreement, a party or the non-party from whom disclosure is sought may apply

to a court of competent jurisdiction for a separate protective order governing

production by the non-party. This Order does not confer blanket protections on

all disclosures or responses to discovery. The protection it affords extends only

to the limited information or items that are entitled under applicable legal

principles to treatment as confidential.

    2.    DEFINITIONS

    2.1   "Party" means any party to this action, including all of its

officers, directors, employees, consultants, retained experts, and outside counsel

(and their support staff); the term does not include third parties.

    2.2   "Disclosure or Discovery Material" means all items or

information, regardless of the medium or manner generated, stored, or

maintained (including, among other things, testimony, transcripts, or tangible

things) that are produced or generated in disclosures or responses to discovery

by the parties to this lawsuit.

2.3    "Confidential" information or items means information (regardless of how generated, stored or maintained) or tangible things that qualify for protection under standards developed under Rule 26(c) of the Federal Rules of Civil Procedure.

2.4    "Confidential - Attorneys' Eyes Only" information or items means extremely sensitive "Confidential" information or items the disclosure of which to another Party or to a non-party would cause immediate injury or create a substantial risk of injury.

2.5    "Receiving Party" means a Party that receives Disclosure or Discovery Material from a Producing Party.

2.6    "Producing Party" means a Party that produces Disclosure or Discovery Material in this action.

2.7    "Designating Party" means a Party that designates information or items that is/are produced in disclosures or in discovery as "Confidential" or "Confidential - Attorneys' Eyes Only."

2.8    "Protected Material" means any Disclosure or Discovery Material that is designated as "Confidential" or as "Confidential - Attorneys' Eyes Only."

2.9    "Outside Counsel" means attorneys who are not employees of

3

a Party but who are retained to represent or advise a Party in this action, including coverage counsel and/or a carrier's claims counsel and their support staffs.

2.10  "House Counsel" means attorneys who are employees of a Party and their support staffs.

2.11  "Counsel" (without a qualifier) means Outside Counsel and House Counsel.

2.12  "Expert" means a person with specialized knowledge or experience in a matter pertinent to the litigation who has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this action and who is not a past or a current employee of a Party or of a competitor of a Party and who, at the time of retention, is not anticipated to become an employee of a Party or of a competitor of a Party.

2.13  "Professional Vendors" means persons or entities that provide litigation support services (e.g., photocopying; videotaping; translating; preparing exhibits or demonstrations; organizing, storing, retrieving data in any form or medium; etc.) and their employees and subcontractors.

3.     SCOPE

The protections conferred by this Protective Order cover not only

4

Protected Material, but also any information copied or extracted from Protected Material, as well as all copies, excerpts, summaries, or compilations thereof, plus testimony, conversations, or presentations by parties or counsel to or in court or in other settings that might reveal Protected Material.

4.     DURATION

The confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing or until this Court directs otherwise.

5.     DESIGNATING PROTECTED MATERIAL

5.1     Exercise of Restraint and Care in Designating Material for Protection.  Each Party that designates information or items for protection under this Order must take care to limit any such designation to specific material that qualifies under the appropriate standards.  A Designating Party must take care to designate for protection only those parts of material, documents, items, or oral or written communications that qualify, so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Order.

Mass, indiscriminate, or routine designations are prohibited.  Designations

that are shown to be clearly unjustified, or that have been made for an improper purpose (e.g., to unnecessarily encumber or retard the case development process, or to impose unnecessary expenses or burdens on other parties), expose the Designating Party to sanctions in the Court's discretion.

If it comes to a Party's attention that information or items that it designated for protection do not qualify for protection at all, or do not qualify for the level of protection initially asserted, that Party must promptly notify all other Parties that it is withdrawing the mistaken designation.

5.2   Manner and Timing of Designations:   Except as otherwise provided in this Order (see, e.g., second paragraph of sections 5.2(a) and 5.2(d), below), or as otherwise stipulated or ordered, material that qualifies for protection under this Order must be clearly so designated before the material is disclosed or produced.

Designation in conformity with this Order requires:

(a)   for information in documentary form (apart from transcripts of depositions or other pretrial or trial proceedings), that the Producing Party affix the legend "CONFIDENTIAL" or "CONFIDENTIAL - ATTORNEYS' EYES ONLY" on each page that contains protected material.  If only a portion or portions of the material on a page qualifies for protection, the

6

Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins) and must specify, for each portion, the level of protection being asserted (either "CONFIDENTIAL" or "CONFIDENTIAL - ATTORNEYS' EYES ONLY").

A Party that makes original documents or materials available for inspection need not designate them for protection until after the inspecting Party has indicated which material it would like copied. During the inspection and before the designation, all of the material made available for inspection shall be deemed "CONFIDENTIAL - ATTORNEYS' EYES ONLY." After the inspecting Party has identified the documents it wants copied, the Producing Party must determine which documents, or portions thereof, qualify for protection under this Order and then, before producing the specified documents, the Producing Party must affix the appropriate legend ("CONFIDENTIAL" or "CONFIDENTIAL - ATTORNEYS' EYES ONLY") at the top or bottom of each page that contains Protected Material. If only a portion or portions of the material on a page qualifies for protection the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins) and must specify, for each portion, the level of protection being asserted (either "CONFIDENTIAL" or "CONFIDENTIAL -

7

ATTORNEYS' EYES ONLY").

    (b) for testimony given in deposition or in other pretrial or trial proceedings, that the Designating Party offering or sponsoring the testimony identify on the record, before the close of the deposition, hearing, or other proceeding, all protected testimony and further specify any portions of the testimony that qualify as "CONFIDENTIAL - ATTORNEYS' EYES ONLY." When it is impractical to identify separately each portion of testimony that is entitled to  protection, and when it appears that substantial portions of the testimony may qualify for protection, the Designating Party that sponsors, offers, or gives the testimony may invoke on the record (before the deposition or proceeding is concluded) a right to have up to 20 days to identify the specific portions of the testimony as to which protection is sought and to specify the level of protection being asserted ("CONFIDENTIAL" or "CONFIDENTIAL - ATTORNEYS' EYES ONLY").  Only those portions of the testimony that are appropriately designated for protection within the 20 days shall be covered by the provisions of this Protective Order.  Transcript pages containing Protected Material must be separately bound by the court reporter, who must affix to the first page of the separately bound volume the legend "CONFIDENTIAL" or "CONFIDENTIAL - ATTORNEYS' EYES ONLY," as instructed by the Party offering or sponsoring

8

the witness or presenting the testimony.

(c)    for information produced in some form other than documentary and for any other tangible items, that the Producing Party affix in a prominent place on the exterior of the container or containers in which the information or item is stored the legend "CONFIDENTIAL" or "CONFIDENTIAL -ATTORNEYS' EYES ONLY." If only portions of the information or item warrant protection, the Producing Party, to the extent practicable, shall identify the protected portions, specifying whether they qualify as "Confidential" or as "Confidential - Attorneys' Eyes Only."

5.3    Inadvertent Failure to Designate.    If timely corrected, an inadvertent failure to designate qualified information or items as "Confidential" or "Confidential - Attorneys' Eyes Only" does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material. If material is appropriately designated after the material was initially produced, the Receiving Party, on timely notification of the designation, must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Order.

6.    CHALLENGING CONFIDENTIALITY DESIGNATIONS

6.1    Timing of Challenges.    Unless a prompt challenge to a

9

Designating Party's confidentiality designation is necessary to avoid foreseeable substantial unfairness, unnecessary economic burdens, or a later significant disruption or delay of the litigation, a Party may challenge the confidentiality designation of a Designating Party at any time after the original designation.

6.2    Meet and Confer.  A Party that elects to initiate a challenge to a Designating Party's confidentiality designation must do so in good faith and must begin the process by conferring directly (in voice to voice dialogue; other forms of communication are not sufficient) with counsel for the Designating Party.  In conferring, the challenging Party must explain the basis for its belief that the confidentiality designation was not proper and must give the Designating Party an opportunity to review the designated material, to reconsider the circumstances, and, if no change in designation is offered, to explain the basis for the chosen designation.  A challenging Party may proceed to the next stage of the challenge process only if it has engaged in this meet and confer process first.

6.3    Judicial Intervention.  A Party that elects to press a challenge to a confidentiality designation after considering the justification offered by the Designating Party may file and serve a motion as provided by the Federal Rules of Civil Procedure and the Massachusetts Local Rules that identifies the

challenged material and sets forth in detail the basis for the challenge. Each

such motion must be accompanied by a competent declaration that affirms that

the movant has complied with the meet and confer requirements imposed in the

preceding paragraph and that sets forth with specificity the justification for the

confidentiality designation that was given by the Designating Party in the meet

and confer dialogue.

The burden of persuasion in any such challenge proceeding shall be on

the Designating Party. Until the court rules on the challenge, all Parties shall

continue to afford the material in question the level of protection to which it is

entitled under the Designating Party's designation.

7.    ACCESS TO AND USE OF PROTECTED MATERIAL

7.1    Basic Principles.    A Receiving Party may use Protected

Material that is disclosed or produced by another Party in connection with this

case only for prosecuting, defending, or attempting to settle this litigation. Such

Protected Material and the contents of Protected Material may be disclosed only

to the categories of persons and under the conditions described in this Order.

When the litigation has been terminated, a Receiving Party must comply with

the provisions of section 11, below (FINAL DISPOSITION).

Protected Material must be stored and maintained by a Receiving Party

11

at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

      7.2   Disclosure of "Confidential" Information or Items.  Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated CONFIDENTIAL only to:

      (a)   the Receiving Party's Outside Counsel of record in this action, as well as employees of said Counsel to whom it is reasonably necessary to disclose the information for this litigation;

      (b)   a maximum of 3 officers, directors, and employees (including House Counsel of the Receiving Party to whom disclosure is reasonably necessary for the prosecution or defense of this litigation);

      (c)   Experts of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed the "Agreement to Be Bound by Protective Order" that is attached to this Protective Order as Exhibit A (the "Agreement to Be Bound");

      (d)   the Court and its personnel;

      (e)   court reporters and their staffs;

      (f)   Professional Vendors to whom disclosure is reasonably

12

necessary for this litigation and who have signed the "Agreement to Be Bound"; and

       (g)    the author of the document(s) in question or the original source of the information in question, as well as any original recipients of the document(s) or information in question.

       7.3    Disclosure of "CONFIDENTIAL - ATTORNEYS' EYES ONLY" Information or Items:  Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL - ATTORNEYS' EYES ONLY" only to:

       (a)    the Receiving Party's Outside Counsel of record in this action, as well as employees of said Counsel to whom it is reasonably necessary to disclose the information for this litigation;

       (b)    Experts of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed the Agreement To Be Bound;

       (c)    the Court and its personnel;

       (d)    court reporters and their staffs;

       (e)    Professional Vendors to whom disclosure is reasonably

necessary for this litigation and who have signed the "Agreement to Be Bound";
and

(f)    the author of the document(s) in question or the
original source of the information in question, as well as any recipients of the
documents or information in question.

8.    PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED
IN OTHER LITIGATION

If a Receiving Party is served with a subpoena or an order issued in other
litigation that would compel disclosure of any information or items designated
in this action as "CONFIDENTIAL" or "CONFIDENTIAL - ATTORNEYS' EYES
ONLY," the Receiving Party must so notify the Designating Party, in writing (by
fax, if possible) immediately and in no event more than three court days after
receiving the subpoena or order.  Such notification must include a copy of the
subpoena or court order.

The Receiving Party also must immediately inform in writing the Party
who caused the subpoena or order to issue in the other litigation that some or
all the material covered by the subpoena or order is the subject of this Protective
Order.  In addition, the Receiving Party must deliver a copy of this Protective
Order promptly to the Party in the other action that caused the subpoena or

14

order to issue.

The purpose of imposing these duties is to alert the interested parties to the existence of this Protective Order and to afford the Designating Party in this case an opportunity to try to protect its confidentiality interests in the court from which the subpoena or order issued. The Designating Party shall bear the burdens and the expenses of seeking protection in that court of its confidential material - and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this action to disobey a lawful directive from another court.

9.    UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Protective Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures, (b) use its best efforts to retrieve all copies of the Protected Material, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person or persons to execute the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A.

15

10.    FILING PROTECTED MATERIAL

Without written permission from the Designating Party or a court order secured after appropriate notice to all interested persons, a Party may not file in the public record in this action any Protected Material.  A Party that seeks to file under seal any Protected Material must comply with this Court's directives for doing so.

11.    FINAL DISPOSITION

Unless otherwise ordered or agreed in writing by the Parties, within sixty days after the final termination of this action, each Receiving Party must destroy all Protected Material that it received from any source during the course of the litigation.  As used in this paragraph, the term "all Protected Material" includes all copies, abstracts, compilations, summaries or any other form of storing, reproducing or capturing any of the Protected Material.  After all Protected Material is destroyed, the Receiving Party shall certify in writing to all other Parties (and, where appropriate, to any Designating Party or Parties) by the sixty day deadline that all Protected Material was destroyed and affirming that the Receiving Party has not retained any copies, abstracts, compilations, summaries or other forms of storing, reproducing or capturing any of the Protected Material.  Notwithstanding this provision, Counsel are entitled to

16

retain an archival copy of all pleadings, motion papers, transcripts, legal memoranda, correspondence or attorney work product, even if such materials contain Protected Material. Any such archival copies that contain or constitute Protected Material remain subject to this Protective Order as set forth in Section 4 (DURATION), above.

12.    MISCELLANEOUS

12.1  Right to Further Relief.  Nothing in this Order abridges the right of any person to seek its modification by the Court in the future.

12.2  Right to Assert Other Objections.  The entry of this Protective Order shall be without prejudice to the right of any Party to object to disclosing or producing any information or item on any ground not addressed in this Protective Order.  Similarly, the entry of this Protective Order shall be without prejudice to the right of any Party to object on any ground to use in evidence of any of the material covered by this order.

12.3  Modification.    The Court may modify this Protective Order in the interests of justice or for public policy reasons.

*/s/ Robert B. Collings*

ROBERT B. COLLINGS
United States Magistrate Judge

October 14, 2005.

17

EXHIBIT A

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| | ) | |
| THE HIPSAVER COMPANY, INC., | ) | Civil Action No. 05-10917 PBS |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| J.T. POSEY COMPANY, | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| AND RELATED COUNTERCLAIM. | ) | |
| | ) | |

## ACKNOWLEDGEMENT AND AGREEMENT TO BE BOUND

I, _____ [print or type full name], of _____ [print or type full address], have read in its entirety and understand the foregoing Protective Order that was issued by the United States District Court for the District of Massachusetts. I agree to comply with and to be bound by all the terms of the Order and I understand and acknowledge that failure to so comply could expose me to sanctions and punishment in the nature of contempt.

I further agree to submit to the jurisdiction of the United States District Court for the District of Massachusetts for the purpose of enforcing the terms of this Protective Order, even if such enforcement proceedings occur after termination of this action.

Dated: _____    _____

_____Signature

18

**EXHIBIT "C"**

**From:** Doug Morseburg

**Sent:** Monday, December 12, 2005 1:11 PM

**To:** 'Edward Dailey'

**Cc:** Cassandra Scardino; Doug Morseburg; Don Piper

**Subject:** RE: HipSaver v JT Posey - Brogna Depo and Other Matters

Dear Ed:

Please let me know when you are available to discuss the following issues:

1.  Jeff advises me that after Ms. Brogna failed to appear for her deposition last week, he asked that you make her available that evening following Mr. Goodwin's deposition. You did not do so. Since Mr. Goodwin's deposition concluded early, she could have been deposed when Jeff was there. Thus, there is no reason for our client to have have to pay anything to take her deposition. As a consequence, your offer to pay for half the costs of deposing Ms. Brogna is unacceptable. You and/or your client must pay the full cost associated with taking her deposition or bring her here to L.A. If we cannort come to an agreement on this issue, we will make a motion for an order requiring HipSaver to pay the full cost associated with her deposition and for an extension of the discovery cut-off date to permit the taking of the deposition.

2.  In order to exclude Mr. Posey from the room during the deposition of Mr. Goodwin, you designated the entirety of his testimony as "Attorneys' Eyes Only". Not only was this improper under the terms of the Court's protective order in this case, it deprived Jeff of the opportunity to consult with Mr. Posey about Mr. Goodwin's answers to questions relating to non-confidential matters and then to ask meaningful follow-up questions. Therefore, we want you to agree to re-classify the Goodwin depo transcript and to agree that Posey may ask meaningful follow-up questions. If we cannot come to an agremeent on this issue, we will ask the Court for an order re-classifying the deposition transcript and permitting Posey to resume the deposition at HipSaver's expense for the purpose of asking follow-up questions and for an extension of the discovery cut-off for that purpose.

3.  Although the Court denied your motion to dismiss, you have never withdrawn the objections you asserted to various of Posey first requests for production on the grounds that the requests related to issues that were barred by the settlement agremeent and/or the release in Posey I. Neither have you supplemented your responses. Also, although HipSaver produced a list (prepared in connection with the litigation) of people who have allegedly complained about Posey's products, it has not produced the underlying documents (which are stored in a FileSaver program) from which that list was comiled. Not has it produced the financial documents underlying its tax returns. We need to resolve these issues. If we cannot do so, we will move to compel.

4.  Finally, further to several past emails on this subject, please also confirm that you will be limiting your questions at Posey's 30(b)(6) deposition about the location of documents to those dealing with hip protector products. I know you think this is a non-issue, but if we cannot finally resolve this one, we will have to move for a protective order.

Sincerely,

Doug Morseburg