# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| THE HIPSAVER COMPANY, INC., | ) | Civil Action No. 05-10917 PBS |
| Plaintiff, | ) | |
| v. | ) | |
| J.T. POSEY COMPANY, | ) | |
| Defendant. | ) | |
| AND RELATED COUNTERCLAIM. | ) | |

## DECLARATION OF DOUGLAS H. MORSEBURG
## IN OPPOSITION TO THE MOTION OF HIPSAVER COMPANY, INC. FOR
## LEAVE TO TAKE ADDITIONAL DISCOVERY

I, Douglas H. Morseburg, declare:

1.   I am an attorney at law duly licensed to practice before all of the courts of the State of California and I am admitted to practice in this matter pro hac vice.  I am an attorney at Sheldon & Mak and am one of the attorneys responsible for representing J.T. Posey Company ("Posey") in this matter.  I have personal knowledge of the facts set forth below and, if called as a witness and properly sworn, I could and would testify thereto from my own personal knowledge, except as where stated on information and belief and, as to those facts, I believe them to be true.  I make this declaration in Opposition to the motion of Plaintiff and Counter Defendant The HipSaver Company, Inc.'s ("HipSaver") for leave to conduct additional discovery.

1

2.  I attended the deposition of Edward L. Goodwin on October 18, 2005.  Attached as Exhibit"1"is a true and correct copy of an email he identified as one he sent to Posey's president, Ernest Posey, on April 2, 2005.

3.  On July 12, 2005, there was hearing in this matter on, among other things, a motion for summary judgment that Posey had filed.  A true and correct copy of a portion of the transcript of that hearing is attached as Exhibit"2".

4.  On or about January 10, 2006, I received a letter from HipSaver's counsel, Edward Dailey.  In it, Mr. Dailey complained about some material posted on the Internet at the following web address: www.elderdepot.com.  A true and correct copy of one page of Elder Depot's website and which accompanied Mr. Dailey's letter is attached as Exhibit"3".

5.  Attached as Exhibit"4"is a true and correct copy of Elder Depot's"About Us"web page which I printed on January 26, 2006.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed this 26th day of January 2006 at Pasadena, California.

/s/ Douglas H. Morseburg
Douglas H. Morseburg

2

**EXHIBIT 1**

**Tue  8/23/05 9:25 AM**                                         **Page: 1**

**Email Message**

**From: HipSaver .**
**Sent: 4/ 2/05 7:13 PM**
**To: Ernie Posey**
**Subject: CDC laundry**

---

and while you are off like a Pavlovian dog on your elusive CDC launderabe
hip protector we should remind you that we will be pulling your ostrich head
out of the sand soon. This time we will be relentless.
PS: Poron, ~~been there done that 10 years ago—no good.~~

Edward L. Goodwin
President
HipSaver
7 Hubbard Street
Canton, MA 02021
Toll Free in US: 1-800-358-4477
781-828-3880
Fax: 781-821-6514

http://www.hipsavers.com/

*** The User Friendly Hip Protector
incorporating the dual mechanism airPad ***

**PC 0080**

**EXHIBIT 2**

1

| | |
|---|---|
| 1 | IN THE UNITED STATES DISTRICT COURT |
| | FOR THE DISTRICT OF MASSACHUSETTS |
| 2 | |

```
 3   THE HIPSAVER COMPANY, INC.,   )
                                   )
 4            Plaintiff            )
                                   )
 5            -VS-                  ) CA No. 05-10917-PBS
                                   ) Pages 1 - 26
 6   J.T. POSEY COMPANY,           )
                                   )
 7            Defendant            )
```

8

9                    MOTION HEARING

10        BEFORE THE HONORABLE PATTI B. SARIS
                UNITED STATES DISTRICT JUDGE

11

12

A P P E A R A N C E S :

13

14        EDWARD J. DAILEY, ESQ. and PETER J. KAROL, ESQ.,
     Bromberg & Sunstein, 125 Summer Street, Boston,
     Massachusetts, 02110-1618, for the Plaintiff.

15

16        ANTHONY J. FITZPATRICK, ESQ., Duane Morris,
     470 Atlantic Avenue, Suite 500, Boston, Massachusetts, 02210,
     for the Defendant.

17

18        JEFFREY G. SHELDON, ESQ., Sheldon & Mak,
     225 South Lake Avenue, 9th Floor, Pasadena, California,
     91101, for the Defendant.

19

20                          United States District Court
                            1 Courthouse Way, Courtroom 19
                            Boston, Massachusetts
21                          July 12, 2005, 3:30 p.m.

22

23                    LEE A. MARZILLI
                 CERTIFIED REALTIME REPORTER
                 United States District Court
24               1 Courthouse Way, Room 3205
                    Boston, MA  02210
25                    (617)345-6787

2

1                  P R O C E E D I N G S

2          THE CLERK:  The case of the HipSaver Company,

3    Incorporated V. J.T. Posey Company, Civil Action

4    No. 05-10917, will now be heard before this Court.  Will

5    counsel please identify themselves for the record.

6          MR. DAILEY:  Good afternoon, your Honor.  I'm Ed

7    Dailey from Bromberg & Sunstein representing the plaintiff,

8    HipSaver Company.  With me is Peter Karol.  Mr. Karol is

9    going to argue for the plaintiffs this afternoon.  With me

10   also is Steve Ramsdell, and Mr. Goodwin, who is the president

11   of the plaintiff, is in the courtroom.

12         THE COURT:  Thank you.

13         MR. FITZPATRICK:  Good afternoon, your Honor.

14   Anthony Fitzpatrick from Duane Morris on behalf of the

15   defendant.  With me is lead counsel for J.T. Posey, Jeffrey

16   Sheldon from Sheldon & Mak in California.

17         THE COURT:  Let me start off by saying I am not

18   going to transfer the action.  This is my case.  I remember

19   it actually.  We had a motion for a preliminary injunction

20   hearing.  It was a settlement in this Court's jurisdiction,

21   and I don't see a good reason to transfer it at this point.

22   At some later point, if it becomes apparent to me that we

23   should transfer it, it would be one thing, but at least at

24   this point -- I remember the case actually, and if it weren't

25   for the settlement under my jurisdiction, you may well have

3

1    had a good point -- it's just I'm not going to transfer it.

2          But now let's get to the merits.  Let me turn to

3    HipSaver for a minute.  How can I grant summary judgment?  I

4    mean, I've read the stuff.

5          MR. KAROL:  Okay.

6          THE COURT:  And I don't know whether it's new

7    testing, old testing.  How could I grant summary judgment for

8    you?

9          MR. KAROL:  Your Honor, it's completely fine with

10   us if this Court decides not to grant summary judgment at all

11   at this stage.  We would certainly like the grant of summary

12   judgment going forward because we feel that, at least as

13   regards the exact provisions, it's clear from the face of the

14   agreement that it is a notice provision and that the only

15   issue here is whether or not there would be notice as to a

16   further advertisement.

17         THE COURT:  No, no, no.  No, no, not further

18   advertisement, as to additional testing, and I won't know

19   that.  "Further comparative testing," isn't that the word?

20         MR. KAROL:  Yes, it is, I believe.  So we're

21   comfortable with no grant of summary judgment in either way

22   at this point.  We don't know when the test was actually

23   done, your Honor.  Though it's cited in Posey's brief that

24   they feel that we've somehow consented to when the test was

25   done, that's a fact issue that we're not certain about.  We

4

1    just feel that it's relevant when the underlying impact study

2    was done, and that goes to when the actual advertisement was

3    put forward.  The advertisement that they dispute was January

4    of 2005.  Therefore we feel that it's clear from the face of

5    the agreement that there was notice that needed to be given

6    in order to keep us all out of this court.

7                 THE COURT:  Why?  Why did notice have to be given

8    if there was no additional testing?  Does the contract say

9    notice has to be given for an additional advertisement based

10   on old testing?

11                MR. KAROL:  Well, your Honor, we feel that they

12   would be reading into the Court and that Posey would be

13   reading into the agreement an exception for old testing.  We

14   feel that that paragraph covers in addition to --

15                THE COURT:  Let me say, you may have a cause of

16   action based on new stuff that postdates the settlement

17   agreement.  You may.  I mean, if there's inaccurate

18   statements being made, I'm not sure it was covered by the old

19   agreement.  But if it's no new testing --

20                MR. KAROL:  Oh, your Honor, it's not the new

21   testing -- (Inaudible).

22                THE REPORTER:  I'm sorry.  I'm having trouble

23   hearing you.

24                MR. KAROL:  Your Honor, it would be only on the new

25   ads that we're talking about as a violation of the breach, a

5

1    breach of the notice provision, not the actual underlying

2    testing, as to the date of that.  It's the advertisement that

3    put forth the false claims about the testing and

4    misrepresented the testing, which is of a later date than the

5    settlement agreement.

6            THE COURT:  Well, read the paragraph you're

7    referring to.  I thought it said notice of any further

8    comparative testing.

9            MR. KAROL:  Your Honor, "In the event of any

10   further or comparative testing" is the first phrase, and we

11   just think that that's a phrase that's kind of an

12   introductory phrase into the notice provision and that the

13   notice provision is really intended to apply to all

14   advertisements.

15           THE COURT:  Read the whole paragraph.

16           MR. KAROL:  "In the event of any further

17   comparative testing of Posey and consumer products by either

18   party, neither party shall make commercial advertising use of

19   the results or analysis related to such testing without first

20   giving the other party at least 30 days' advanced written

21   notice of the results or analysis."  And we would contend

22   that the centerpiece of that is the use of the --

23           THE COURT:  I'm not sure you win on that.  Now,

24   assuming you don't win that, what happens?  Do you still have

25   a cause of action for false advertisement?

6

1          MR. KAROL:  Oh, we certainly do, we do, and that's

2    very much at the heart of our complaint is the false nature

3    of this advertisement.

4          THE COURT:  All right.  Now, let me just jump to

5    you for a minute.  Let's assume that you win your argument

6    that the notice doesn't go to any old testing, it only goes

7    to new testing, but you still have false advertisement.

8          MR. SHELDON:  No, I don't, your Honor.  The release

9    in the prior settlement agreement released all claims that

10   could have been brought.  I refer you to the declaration of

11   Victoria Lewis that we filed.  This testing was done in

12   2002.  The ads were first placed in 2002.  She attaches the

13   ads.  They have a copyright notice.  I'm dealing with ads

14   that existed in 2002, not 2005.

15         THE COURT:  Well, let me say this:  I agree that

16   anything up until the date of the settlement is precluded by

17   the release; but if there was a new advertisement that had

18   the exact same stuff, I don't think it's included in the

19   release.

20         MR. SHELDON:  Well, that's inconsistent with

21   plaintiff's position that there was stuff on the Internet

22   which existed prior to the release they can't be sued on and

23   they don't even have to give us the backup data.

24         THE COURT:  I don't know what their position is,

25   and they may lose that too.  I'm simply saying, I'm not

7

1   prepared to resolve that at this stage of the proceedings.

2   I'm definitely not transferring it.  I don't believe either

3   side is entitled to summary judgment or a dismissal, and I

4   think it needs to go forward with what the new ad is, what's

5   in it, and whether or not that falls afoul of the settlement

6   agreement or not.

7            MR. SHELDON:  May I argue the Rule 12 dismissal

8   motion?

9            THE COURT:  Yes, you may.

10           MR. SHELDON:  And I'd like to go back and at least

11  give a shot on the transfer motion.

12           THE COURT:  I'm not doing it.  It's just not worth

13  your time.  I've read everything.  It's my settlement

14  agreement.  And I understand that, well, you know, absent the

15  existence of an agreement that happened in this court to

16  resolve a preliminary injunction here, which I actually even

17  remember, I might well say you're right, you know, if it was

18  just a sort of race-to-the-courthouse kind of thing for the

19  first-time round.  But it isn't, so don't waste your breath

20  on it.  But I will hear you on the motion to dismiss which I

21  haven't given you a chance to argue yet.

22           MR. SHELDON:  The problem with the complaint, it

23  doesn't make clear what advertisement they're complaining

24  to.  When you read all the papers, it does.  And I think this

25  was intentional.  All it says was, "In 2005, initiated an

8

1    enhanced advertising campaign."  That's all we know.  This

2    advertising campaign, as I said, started in 2002.  So we

3    weren't clear what they're complaining about.

4          The other thing, on the breach of contract claim,

5    they never alleged they have performed under that contract,

6    and that's important because if they say that we had to give

7    notice on ads that continued, why don't they have to give

8    notice on their temperature ad?  So that I think they should

9    be obliged to say that they have performed under the

10   contract.  That's an element of a breach of contract claim,

11   and it doesn't appear in the complaint.

12         THE COURT:  Well, let me ask you this:  If it's

13   just a question of them not specifying that there were things

14   that happened in 2005, do you want me just to make them amend

15   it?  Because that's really all it would involve.

16         MR. SHELDON:  I do.  When we filed our papers,

17   we're guessing what the complaint was directed to.

18         THE COURT:  In the papers you refer to ads that

19   happened after the date of the settlement agreement.  Maybe

20   I'm not remembering.  Does the complaint specifically

21   reference those?

22         MR. KAROL:  Yes, it does, your Honor.  In the

23   demand for relief, it specifically references it.  The actual

24   name of the impact study had references to it.  It's not in

25   the actual -- (Inaudible).

9

1          THE REPORTER:  I'm sorry, I didn't hear you.  "It's

2     not in the actual. . ."

3          THE COURT:  Don't forget, she's got to write this

4     down.

5          MR. KAROL:  I'm sorry.  I know I mumble at times.

6     It was in the demand for relief.  It was part of the

7     complaint, and it's cited on the page of the complaint.  In

8     our memorandum we do cite to --

9          THE COURT:  Your memorandum, that's not good

10    enough.

11         MR. KAROL:  No, no, no, in the actual complaint,

12    it's in there, as in the demand for relief, we ask them to

13    specifically -- we ask the Court to specifically halt that

14    particular ad.  It's in the complaint itself.

15         THE COURT:  Is it?

16         MR. SHELDON:  It's in the prayer for relief, but

17    it's not in the body of the complaint.  And let me add, on

18    the --

19         THE COURT:  Well, as far as I'm concerned then,

20    that's the only ad at issue here.  Is that right?

21         MR. KAROL:  Yes.

22         THE COURT:  All right, so then we don't need to

23    have an amendment here.  And if you want to add any other

24    ads, you have to change the complaint because that's the only

25    ad we're talking about, the only ad postsettlement, so

26

1  apologize.  I did not see that.  I am not aware of a revised

2  ad.  There was certainly back-and-forth colloquy or dialogue

3  between me and Mr. Sheldon, but I do not understand that

4  there was a revised ad.

5          MR. SHELDON:  I have the letter right here, your

6  Honor.

7          THE COURT:  You might want to confer afterwards.

8  We don't need to resolve that right now.  I hope you have a

9  nice rest of the summer.  I hope you resolve this, but if you

10  don't, I definitely remember this contest, and so I will

11  resolve it this time.  Okay, thank you.

12          MR. DAILEY:  Thank you, your Honor.

13          THE CLERK:  All rise.  Court is in recess.

14          (Adjourned, 4:00 p.m.)

15

16

17

18

19

20

21

22

23

24

25

27

1                    C E R T I F I C A T E

2

3

   UNITED STATES DISTRICT COURT )
4  DISTRICT OF MASSACHUSETTS    ) ss.
   CITY OF BOSTON               )

5

6

7

8           I, Lee A. Marzilli, Official Federal Court

9  Reporter, do hereby certify that the foregoing transcript,

10 Pages 1 through 26 inclusive, was recorded by me

11 stenographically at the time and place aforesaid in Civil

12 Action No. 05-10917-PBS, The HipSaver Company, Inc. Vs. J.T.

13 Posey Company, and thereafter by me reduced to typewriting

14 and is a true and accurate record of the proceedings.

15           In witness whereof I have hereunto set my hand this

16 18th day of July, 2005.

17

18

19

20

21

22          _____
            LEE A. MARZILLI, CRR
23          OFFICIAL FEDERAL COURT REPORTER

24

25

**EXHIBIT 3**

Print Window    Close Window

**Hipsters Incontinent Brief**

Product # WP1195



Details

## Hipsters Incontinent Brief

Designed to be used over adult diapers with a convenient snap front to simplify application and accommodate a wide range of incontinent products.

**FEATURES:**
- Convenient snap front for easy application over adult diapers
- Constructed of a comfortable poly/cotton material
- Secures using front snaps and includes comfortable elastic waist and leg bands
- Low profile foam pads are sewn into position over each hip
- Fits discreetly under men's and women's clothing
- Machine washable and dryable
- Available in 6 sizes (choose below)

Hipsters Proved Effective in Impact Testing:
In recent tests performed at UCLA, "Hipsters" were shown effective in reducing the force of impact in simulated falls to 36% below the average fracture threshold of the proximal femur, and Hipsters outperformed all other hip protectors tested.

| SIZE CHART | | |
|---|---|---|
| Size | Waist Size | Hip Size |
| X-Small | 26"-28" | 33"-35" |
| Small | 28"-30" | 35"-37" |
| Medium | 30"-34" | 37"-41" |
| Large | 34"-38" | 41"-45" |
| X-Large | 38"-42" | 45"-49" |
| XX-Large | 42"-46" | 49"-53" |

**Price:** $44.95

HS 000159

**EXHIBIT 4**



My Account    Contact Us    Shopping Cart

## Welcome to Elder Depot!

Click here to register with us now

**FREE Shipping on all orders over $50.00 within the Continental U.S.**

| Home | Incontinence | Bed | Bath | Dining | Clothing | Vision/Hearing | Mobility | Gift Shop |

Bookmark This Page

Search: [_____] GO

Tell a fri

**Shipping:**

Track your Order
Ship direct to Loved Ones
Shipping policy
Return policy

**HELP:**

How To Order
FAQ
Site Map
Contact us

**Our Company:**

About Us
Policies
Affiliate Program

Elder Depot :: Help zone :: Previous Page

**About Us**

### About Elder Depot

**Our Company:**
Elder Depot recognizes the important role that caregivers have being involved with the care of an elderly loved one. We are committed to providing a wide variety of innovative products to improve the quality of life for both the caregiver and receipient.

Elder Depot's primary goal is customer satisfaction through the continual improvement of our web site, so that we can offer our customers new and useful products, services, and information. Some of our newest time-saving features include personalized shopping through Elder Express Lane and convenient delivery options through our Automatic ReOrder Program. Our product selection and web site features will continue to expand and grow to fit our customers' needs.

If you cannot locate an item you need on our web site or have suggestions for products to be added, please contact customer service at service@elderdepot.com or call (800) 910-7790 Monday through Thursday, 9am-7pm EST or Friday 9am-3pm EST.

**About the Founder:**
Kristen Pipher has dedicated over five years to caring for her dependent grandparents. Both suffered from Alzheimer's Disease and other physical ailments. After her grandmother passed away from kidney failure in 2002, Kristen made the decision to develop a comprehensive web site to help others care for their aging relatives and friends; leading to the establishment of Elder Depot. Kristen is dedicated to providing other caregivers with quality products at reasonable prices, as well as convenient services to save time and make daily life easier for both the caregiver and recipient.

Vie

Ca

Chec

Delete C

Lo

Log
Regis
Forgot

**Special**
● About Auto
● About Elde
● Send A Gif

Sub

Sign up for the
**Newsletter** and
news for senior
special discoun

Enter your e-m
subscribe:

**Name:** [___]
**Email:** [___]



We respec
Your ema
never be s



### This site is dedicated to the Loving Memories of

**Rose Schaefer**
(August 27, 1908 - May 29, 2002)

**Ernest Schaefer**
(April 28, 1909 - February 21, 2004)

 

**Garden of Memory:** *"God's finger touched her and she slipped away From earth's dark shadows to a brighter day; God saw the road was getting rough, The hills were hard to climb; He gently closed her weary eyes, And whispered, "Peace be thine." To a beautiful garden this friend has gone, To a land of perfect rest; Though she is gone she still lives on In the garden of memory."*

Home | Incontinence | Bed | Bath | Dining | Clothing | Vision/Hearing | Mobility | Gift Shop | Caregigers (
Privacy Policy | Shipping Policy | Returns | CUSTOMER SERVICE | About Us | My Account | Site Map | (

Copyright © 2001-2005 by Elder Depot, Inc. All Rights Reserved.
Any use of this site is subject to the terms of use and policies that govern this site.
Copying or reproducing any of the content of this site without written permission from Elder Depot, Inc. is prohibited.