UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE HIPSAVER COMPANY, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>J.T. POSEY COMPANY,<br><br>    Defendant.<br><br>AND RELATED COUNTERCLAIM. | Civil Action No. 05-10917 PBS<br><br>ORAL HEARING REQUESTED |

### MEMORANDUM IN SUPPORT OF MOTION OF J.T. POSEY COMPANY FOR ORDER COMPELLING FURTHER DEPOSITION OF EDWARD GOODWIN

As the Court knows, this is a lawsuit between two competitors who make and sell hip protectors and who are accusing each other of engaging in false advertising and unfair trade practices.

On July 25, 2006, Defendant and Counterclaimant J.T. Posey Company ("Posey") served a first set of requests for production (the "Request") on Plaintiff and Counterclaim Defendant The HipSaver Company, Inc. *See* Exhibit "A". The Request asked HipSaver to produce, among other things: (i) documents relating to the testing of HipSaver's hip protection products or the components from which they are made (Request No. 2); (ii) documents concerning the testing of Posey's hip protection products or the materials from which they are made (Request No. 3); (iii) documents concerning any comparative testing of Posey and HipSaver hip protection products or the materials from which they

are made (Request No. 4); (iv) documents concerning HipSaver's contention that it had been damaged by Posey's actions that were the subject of the Complaint (Request No. 6); (v) documents relating to statements made on HipSaver's website regarding the relative durability of HipSaver's and its competitors' products (Request No. 11); (vi) documents regarding HipSaver's unit sales, revenues and costs associated with hip protection products during the period from 2001 through 2005 (Request No. 13); (vii) documents that demonstrated its damages and the method of calculating them (Request No. 17); and (viii) all documents concerning testing and studies that were referenced on HipSaver's website (Request No. 21).

HipSaver's written response (the "Response") to the Request was served on August 25, 2005. In the Response, HipSaver agreed to produce various documents and it objected to producing others. HipSaver ultimately produced a grand total of 87 pages of documents in response to the Request.

At deposition in November, 2005, Mr. Goodwin was questioned as to whether he was aware of any documents that would show how much HipSaver had been damaged by any of the acts alleged in the complaint (i.e, documents responsive to Request Nos. 6 and 17). Mr. Goodwin said yes, and in response to further questioning, he identified them as: (i) monthly sales documents; (ii) HipSaver's tax returns and their supporting schedules; and (iii) documents that "flowed into" HipSaver's tax returns. Except for partial copies of HipSaver's tax returns, none of these documents, had previously been produced.

On December 12, 2005, counsel for Posey wrote to counsel for HipSaver and requested a conference regarding, among other things, Hipaver's deficient production of

documents pursuant to the Request. The parties subsequently met and conferred regarding the subject.

On January 27, 2006, HipSaver produced additional documents in this matter. Among them were documents that should have been produced pursuant to the Request including (i) documents and articles relating to the testing of hip protector pads, including HipSaver pads (Bates Nos. HS2 000130-154; (ii) a "unit cost sheet" showing HipSaver's product costs for 2005 (Bates No. HS2 000326); (iii) documents relating to the purported degradation of Posey's hip protector products (Bates Nos. HS2 000328-365; (iv) documents supporting HipSavers tax returns (HS2 000387-590); and (v) correspondence relating to a proposed trial of Posey and HipSaver hip protectors (HS 000602-633).

Just this week, HipSaver finally produced complete copies of two invoices (designated as Exhibits 47 and 48) that had previously been produced with redactions. Posey had asked for unredacted copies of these exhibits months ago and, at his deposition in November, Mr.Goodwin refused to answer questions about them.

The bottom line is that all of the documents listed above should have been produced months ago. As a consequence of the late production, Posey could not have previously questioned Mr. Goodwin about these documents or about matters related to them. Thus, Posey requests that the Court order that the scope of the questioning at Mr. Goodwin's deposition on March 3, 2006 shall include matters disclosed by and related to the above documents.

//

//

The undersigned counsel for Posey hereby certifies that he has attempted to confer with HipSaver's counsel to resolve or narrow the issues raised by this motion.

Respectfully submitted,

Dated: February 24, 2006

J.T. POSEY COMPANY

By its attorneys,

/s/ Douglas H. Morseburg
Jeffrey G. Sheldon (CA Bar No. 67516)
Douglas H. Morseburg (CA Bar No. 26205)
Shannon S. Sheldon (CA Bar No. 216199)
SHELDON & MAK
225 South Lake Avenue, Suite 900
Pasadena, CA 91001
(626) 796-4000

Anthony J. Fitzpatrick (BBO # 564324)
DUANE MORRIS LLP
470 Atlantic Avenue, Suite 500
Boston, MA 02210
(617) 289-9200

## CERTIFICATE OF SERVICE

I certify that a copy of this document has been forwarded by electronic mail and USPS First Class mail today to Plaintiff's counsel of record, Edward J. Dailey, Esq., BROMBERG SUNSTEIN LLP, 125 Summer Street, 11th Floor, Boston, Massachusetts 02110-1618, Edailey@bromsun.com.

/s/ Donald K. Piper
Donald K. Piper

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HIPSAVER COMPANY, INC., ) | Case No. CV-05-10917 PBS |
| Plaintiff, ) | |
| v. ) | |
| J.T. POSEY COMPANY, ) | |
| Defendant. ) | |
| AND RELATED COUNTERCLAIM. ) | |

**DEFENDANT J.T. POSEY COMPANY'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO HIPSAVER COMPANY, INC.**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendant and Counterclaimant J.T. Posey Company ("Posey"), by and through its attorneys, Sheldon & Mak, requests that Plaintiff HipSaver Company, Inc. ("HipSaver") respond in writing to the following requests for production within te time permitted by law and HipSaver produce and make available for inspection and copying the documents and tangible things described in the following numbered paragraphs, at the offices of Posey's counsel on August 29, 2005, at 10:00 a.m.

Please read the following instructions and definitions carefully. They apply to all requests for production in this case.

//

//

## CLAIMS OF PRIVILEGE

If any information responsive to any of the following document requests is withheld on the basis of privilege and/or work-product, the following information is requested with respect to any such refusal:

1. The type of document (e.g. letter, memorandum, contract, etc.);

2. The date of the document and/or the date of its origination;

3. The length of the document (in pages);

4. An identification of any enclosures or attachments;

5. The identity (name and title or position) of any person(s) who prepared, signed, authored, or originated the document;

6. The identity (name and title or position) of the addressee(s) of the document;

7. The identity (name and title or position) of any other person(s) who is known or believed to have received a copy of or otherwise seen such document;

8. The nature of the privilege or immunity being invoked;

9. The basis for the invocation of the privilege or immunity;

10. A brief description of the general subject matter and contents of the document sufficient to enable a prima facie determination to be made as to the validity of the claim of privilege or immunity; and

11. The location of the document.

## INSTRUCTIONS

1. In responding to these requests, you are required to produce all documents (except for privileged documents) that are in your possession, custody or control, including

2

documents that are in the possession of any agent, employee, representative (including, without limitation, attorneys and accountants), or any other person acting or purporting to act for or on behalf of HipSaver or in concert with HipSaver.

    2.    Pursuant to Fed. R. Civ. P., Rule 26(e), the following requests are continuing so that if, at any time, HipSaver later obtains possession, custody or control of any documents (except for privileged documents) that fall within the scope of the following requests, HipSaver is required to make a supplemental response, as though Posey had served upon HipSaver a request to supplement HipSaver's prior response.

    3.    To the extent that an objection is made to any document request as overly broad or unduly burdensome, set forth the factual basis for that conclusion and specify which documents or categories of documents responsive to the request you agree to produce.

    4.    To the extent that any document request is objected to as vague or ambiguous, identify the particular words, terms or phrases that you assert make that request vague or ambiguous, and specify the meaning actually attributed by you to those words, terms, or phrases for purposes of your response to such request.

    5.    You are requested to produce documents in the form in which they are kept in the ordinary course of business. Documents should be produced in their original labeled file folders, or placed in separate file folders labeled (or otherwise identified) identically to the original file folders. Documents not retained in files or folders (such as documents specifically generated in response to any request) should be labeled or otherwise identified as to source.

    6.    If objection is made to any part of a particular request, that part should be specified (together with the grounds for the objection), and any other portion of the request to

3

**REQUESTS FOR PRODUCTION**

1. All documents identified in HipSaver's initial disclosure.

2. All documents concerning the testing of HipSaver products and/or the materials from which HipSaver's hip protectors are made.

3. All documents concerning the testing of Posey hip protectors and/or the materials from which Posey's hip protectors are made.

4. All documents concerning any comparative testing of HipSaver products and/or the materials from which they are made, on the one hand, and Posey products and/or the materials from which they are made, on the other.

5. All documents concerning your contention that "Posey uses its marketplace dominance and deceptive advertising to drive smaller companies from the marketplace", as stated on pages 1-2 of the Complaint.

6. All documents concerning your contention that HipSaver "has been damaged by Posey's advertising", as stated on page 2 of the Complaint.

7. All documents concerning the allegations contained in paragraph 11 of the Complaint.

8. With respect to each Posey advertisement that is the subject of the Complaint, all documents concerning your contention that each such ad is "false, misleading and deceptive", as alleged in paragraph 14 of the Complaint.

9. All documents concerning the truth or falsity of the claim that "[o]nly HipSaver hip protectors clearly meets (sic) the CDC Guidelines for infection control in the laundry" and that "HipSaver is machine wash/dry up to 250°F", as stated on HipSaver's website and as shown in the attached Exhibit "A".

which no objection is made should be answered and documents responsive to that portion produced.

## DEFINITIONS

1. The Definitions set forth in Rule 26.5(c) of the Local Rules of the United States District Court for the District of Massachusetts are incorporated into these requests by reference.

2. The terms "HipSaver," "your" and "you" means HipSaver Company, Inc. to the extent provided in Local Rule 26.5(c)(5).

3. The term "Posey" means J.T. Posey Company to the extent provided in Local Rule 26.5(c)(5).

4. The term "Complaint" means HipSaver's Complaint filed in the within matter.

5. The term "Garwood" means Garwood Laboratories, Inc., which is referred to in the prayer for relief in the Complaint, as well as, its officers, directors, employees, partners, corporate parent, subsidiaries and affiliates.

6. The term "Impact Study" means the Garwood study which is referred to in the prayer for relief in the Complaint.

7. The term "Goodwin" means Edward L. Goodwin, HipSaver's President.

8. The term "Hayes" refers to Wilson C. Hayes, Ph.D., an expert witness identified by HipSaver.

9. The terms "and" and "or" shall be construed to each mean "and/or."

10. The use of the singular includes the plural and the of the plural includes the singular.

11. The terms "all" and "each" shall be construed to each include all and each.

4

10. All documents concerning the truth or falsity of the claim that Posey's products can be washed up to a maximum of 160°Fahrenheit, as stated on the attached Exhibit "A".

11. All documents concerning the truth or falsity of the claim that "HipSaver hip protectors won't fall apart or degrade like our competitors", as stated on the attached Exhibit "A".

12. For each hip protector product sold or marketed by HipSaver during the period between January 1, 2001 and the present, documents sufficient to identify (i) the product model or SKU number of each such product, and (ii) the dates during which each such product was sold or marketed.

13. For each hip protector product sold or marketed by HipSaver during the period between January 1, 2001 and the present, documents sufficient to identify (i) the thickness of the foam pad that was incorporated into each such product, and (ii) the specific material out of which the pad was made.

14. For each hip protector product sold or marketed by HipSaver during the period between January 1, 2001 and the present, documents sufficient to identify (i) the number of hip protectors sold, (ii) the gross revenues realized from those sales, and (iii) HipSaver's cost of sales of those products for each month during the period from January 1, 2001 to the present.

15. Two exemplars of each hip protector product sold or marketed by HipSaver during the period between January 1, 2001 and the present.

16. Two exemplars of each foam pad used in each hip protector product sold or marketed by HipSaver during the period between January 1, 2001 and the present.

17. All documents concerning the total monthly profits made by HipSaver from sales of its hip protectors for each month during the period from January 1, 2001 to the present.

18. All documents that demonstrate (i) the total amount of damages HipSaver contends it has suffered as a consequence of any of the acts complained of in the Complaint, and (ii) the method by which that amount was calculated.

19. All documents concerning or mentioning Garwood or the Impact Study.

20. All document concerning communications between HipSaver, on the one hand, and Garwood, on the other.

21. Documents sufficient to show the name, address and telephone number of the host of HipSaver's website, www.hipsaver.com.

22. All documents concerning all tests and studies referred to in HipSaver's website, including but not limited to:

　　a. The 13 month long study published in the Sept/Oct. 2003 issue of the Journal of the American Medical Doctors Association;

　　b. Clinical study published in October 2000 in Advance for Physical Therapists;

　　c. Independent test conducted at Harvard University;

//

//

//

    d.  Independent test conducted at Tampere University of Technology in Finland; and

    e.  Biomechanical test published in August 1999 in Bone.

Dated: July 26, 2005

J.T. POSEY COMPANY
By its attorneys,

_/s/ Douglas H. Morseburg_
Jeffrey G. Sheldon, Admitted Pro Hac Vice
Douglas H. Morseburg
  Admitted Pro Hac Vice
Shannon S. Sheldon, Admitted Pro Hac Vice
SHELDON & MAK
225 South Lake Avenue, Suite 900
Pasadena, California 91101
(626) 796-4000

Anthony Fitzpatrick (BBO # 564324)
DUANE MORRIS LLP
470 Atlantic Avenue, Suite 500
Boston, Massachusetts 02210
(617) 289-9200



# Hip Saver
## Hip Protectors & The Laundry
### THE LEADER IN HIP PROTECTION

HOME|

HIPSAVER MODELS|

VALIDATION & TESTING|

INDUSTRY COMPARISONS|

HIP PROTECTORS & THE LAUNDRY|

TESTIMONIALS|

ORDER IN THE USA|

WORLDWIDE DISTRIBUTORS|

CONTACT US|

## HIP PROTECTORS & THE LAUNDRY
*Only HipSaver hip protectors clearly meets the CDC Guidelines for infection control in the laundry*



**HIPSAVER** **250°**
IS MACHINE WASH/DRY UP TO 250°F

**POSEY HIPSTER** IS MACHINE WASH UP **160°**
TO 165°F MAXIMUM DRY ON LOW

**ALIMED HIPSHIELD** **140°**
WASH IN WARM WATER, DO NOT DRY OR DRY ON LOW

AVERAGE WASH/DRY TEMPERATURE OF INSTITUTION LAUNDRIES (180

CDC GUIDELINES RECOMMENDED WASH TEMPERATURE RANGE **180°**

CDC GUIDELINES MINIMUM RECOMMENDED WASH TEMPERATURE **160°**

AVERAGE TEMPERATURE OF HOUSEHOLD LAUNDRY (140°) **140°**

*What happens if you wash or at a higher temperature than* History shows us that pads exp than recommended heat will cr even turn to dust.

Unfortunately this may not be e reached the extreme or unless from the underwear and inspec

*Why take the chance?*
Remember...even a partially de your residents and your regular

ALIMED HIPSHIELD
MACHINE WASH/DRY LOW TEMP

POSEY HIPSTER
MACHINE WASH/DRY UP TO 160°F

HIPSAVER
MACHINE WASH/DRY UP TO 250°F

**Compare:**

HipSavers® wash and dry up to 250° — well above the CDC guidelines.

Posey® Hipsters wash care instructions: Up to a *maximum* of 160°F *(CDC guideline suggested minimum)* Dry on low.

AliMed® HipShield wash in warm, not hot water and either air dry or dry on low.

*Only HipSaver can be laundered according to the CDC (Center for Disease Control) Guidelines for laundry.*

*And the track records prove it. HipSaver hip protectors won't fall apart or degrade like our competitors —we guarantee it!*

Click here to view the CDC Guidelines for Laundry in Health Care Facilities.