# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| THE HIPSAVER COMPANY, INC., | ) Civil Action No. 05-10917 PBS |
| Plaintiff, | ) |
| v. | ) ORAL HEARING REQUESTED |
| J.T. POSEY COMPANY, | ) |
| Defendant. | ) |
| AND RELATED COUNTERCLAIM. | ) |

**MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANT AND
COUNTERCLAIMANT J.T. POSEY COMPANY, INC. FOR SUMMARY JUDGMENT
ON PLAINTIFF'S COMPLAINT**

TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................- 1 -

II.   STATEMENT OF FACTS ....................................................................................- 2 -

   A.   The Parties and The Products At Issue ........................................................- 2 -

   B.   The Garwood Testing and Posey's Advertising Regarding It .......................- 2 -

   C.   Posey's Advertising Regarding the "White Paper" and Posey I....................- 3 -

   D.   The Parties Settle Posey I and Execute a Settlement Agreement ..................- 4 -

   E.   HipSaver Sues Again, This Time Over Posey's Garwood Advertising ........- 4 -

   F.   HipSaver Has No Evidence of Damages ......................................................- 6 -

III.  THE SUMMARY JUDGMENT STANDARD.......................................................- 6 -

IV.   ARGUMENT......................................................................................................- 7 -

   A.   Posey Is Entitled to Summary Judgment on All of HipSaver's Claims Because HipSaver
        Has Suffered No Damages As a Consequence of Any of the Acts Alleged in the
        Complaint........................................................................................................- 7 -

      1.  The Fact That HipSaver Has No Damages Is Fatal to Its Lanham Act Claim for False
          Advertising...................................................................................................- 7 -

      2.  The Fact That HipSaver Has No Damages Is Fatal to Its Claim for Violations Of the
          Unfair Or Deceptive Business Practices Act ................................................- 9 -

      3.  That Fact That HipSaver Suffered No Damage Is Fatal to Its Product Disparagement
          Claim............................................................................................................- 9 -

      4.  The Fact That HipSaver Suffered No Damage Is Fatal to Its Claim for Breach of
          Contract.......................................................................................................- 10 -

   B.  Posey Is Entitled to Summary Judgment on HipSaver's Second, Third and Fourth
       Claims Because They Are Precluded By the Terms of the Settlement Agreement in
       Posey I...........................................................................................................- 10 -

      1.   Claims Regarding Pre-Settlement Garwood Advertising Have Been Released.......- 10 -

      2.   Claims Regarding Post-Settlement Garwood Advertising Have Been Released .....- 12 -

C. HipSaver's Second and Third Claims For All Periods Preceding the Settlement In Posey I

   Are Barred By the Doctrine of *Res Judicata* ................................................................- 13 -

D.   HipSaver's Second and Third Claims Are Barred By Laches
     and Estoppel by Laches. .........................................................................................- 14 -

E.   Posey's First Claim for Breach of Contract Claim In The Present Case Is Barred Because
     It Is Contingent Upon Non-Existent "Further" Testing..............................................- 16 -

F.   Summary Judgment Should Be Granted on HipSaver's Second (Lanham Act) and Third
     (Unfair Competition) Claims Because The Statements Were Not Material........................- 17 -

G.   Summary Judgment Should Be Granted On Hipsaver's M.G.L. Ch. 93 Claim Because
     The Nexus Of Events Did Not Occur In Massachusetts..............................................- 18 -

H.   HipSaver Should  Be Barred on all of Its Non-Contract Claims Because of Its
     Unclean Hands.......................................................................................................- 19 -

V.   CONCLUSION............................................................................................................- 20 -

TABLE OF AUTHORITIES

FEDERAL CASES

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)....................................................10

*BASF Corp. v. Old World Trading Co.*,
41 F.3d 1081 (7th Cir. 1994) .......................................................................13

*Cashmere & Camel Hair Manufacturers Inst. v. Saks Fifth Avenue*,
284 F.3d 302 (1st Cir. 2002).................................................................10, 17, 18

*Castrol, Inc. v. Pennzoil Co.*,
987 F.2d 939 (3d Cir. 1993)..............................................................................12

*Castrol, Inc. v. Quaker State Corp.*,
977 F.2d 57 (2d Cir 1992) .................................................................................12

*Clorox Company Puerto Rico v. Proctor & Gamble Comm. Co.*,
228 F.3d 24 (1st Cir. 2000)...........................................................................12, 15

*Committee for Idaho's High Desert v. Yost*,
92 F.3d 814 (9th Cir. 1996) ............................................................................20

*Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*,
299 F.3d 1242 (11th Cir. 2002) ......................................................................12

*LeBlanc v. Great Am. Ins. Co.*,
6 F.3d 836 (1st Cir. 1993).................................................................................10

*Minnesota Mining and Manufacturing Co. v. Dentsply Int'l, Inc.*,
1994 WL 827735 (D. Del. 1994).......................................................................16

*Nat'l Basketball Ass'n v. Motorola, Inc.*,
105 F.3d 841 (2d Cir. 1997))............................................................................18

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co.*,
290 F.3d 578 (3d Cir. 2002)........................................................................13, 14

*Proctor & Gamble Co. v. Chesebrough-Pond's, Inc.*,
747 F.2d 114, 119 (2d Cir. 1984)) ..................................................................12

*Rhone-Poulenc Rorer Pharmaceuticals, Inc. v. Marion Merrill Dow, Inc.*,
93 F.3d 511 (8th Cir. 1996) ............................................................................11

*Rogers v. Fair*,
    902 F.2d 140 (1st Cir. 1990) ................................................................................. 10

*Royal Baking Powder Co. v. Federal Trade Commission*,
    281 F. 744 (2d Cir. 1922) ..................................................................................... 16

*Transgo, Inc. v. Ajac Transmission Parts Corp.*,
    768 F.2d 1001 (9th Cir. 1985) ............................................................................. 20

*United States v. Carroll*,
    105 F.3d 740 (1st Cir.), *cert. denied*, 520 U.S. 1258, 117 S. Ct. 2424, 138
    L.Ed.2d 187 (1997) ............................................................................................... 18

*Warner Lambert Co. v. Breathasure Inc.*,
    204 F.3d 87 (3d Cir. 2000) ................................................................................... 19

## FEDERAL STATUTES

Fed.R.Civ.P. 56(c) ...................................................................................................... 9

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) ...................................... 10, 11

## STATE STATUTES

Mass. G.L. ch. 93A, §11 ............................................................................................ 2, 4

## I.    <u>INTRODUCTION</u>

Plaintiff and Counterdefendant The HipSaver Company, Inc. ("HipSaver") has brought suit against Defendant and Counterclaimant J.T. Posey Company ("Posey") for alleged false advertising, unfair trade practices, breach of contract and product disparagement.  Generally, HipSaver claims that some Posey advertisements that mention some testing conducted for Posey by Garwood Laboratories Inc. (the "Garwood Advertising"), are false and misleading.  HipSaver further alleges that an email sent by a former Posey employee in 2001 that merely mentions HipSaver products is false and disparaging.

Summary judgment should be granted against HipSaver on five separate grounds.  These are: (1) all of HipSaver's claims are barred because it has suffered no damages as a consequence of any of the acts complained of in the complaint; (2) HipSaver's claims are contractually barred by the terms of a settlement agreement between the parties in a prior false advertising suit; (3) HipSaver's claims are barred by *res judicata*; (4) HipSaver's claims are barred by estoppel and estoppel by laches; (5) HipSaver cannot show that any of the statements were material to purchasing decisions; and (6) HipSaver, by virtue of its own false advertising, has unclean hands.  Accordingly, under <u>Fed. R. Civ. Proc.</u> 56, Posey requests that this Court grant Posey summary judgment and dismiss all of HipSaver's claims.

The operative pleadings are HipSaver's First Amended Complaint ("FAC"), Posey's Answer to the First Amended Complaint, Posey's Counterclaim, and HipSaver's Answer to Posey's Counterclaim.  HipSaver's FAC asserts claims of breach of the settlement agreement (Count I), violation of the Lanham Act (Count II), violation of the Massachusetts Unfair or Deceptive Business Practices Act (Count III), and product disparagement (Count IV).

II.    **STATEMENT OF FACTS**

    A.    **The Parties and The Products At Issue**

      Posey is a family-owned California corporation that sells a variety of medical-related products. Its products include a line of hip protectors that are sold under the name "Hipsters". Fact 1.[1] HipSaver is a Massachusetts corporation that makes and sells hip protectors under the name "HipSaver". Fact 2. Edward L. Goodwin ("Goodwin") is HipSaver's president. Fact 3. Posey and HipSaver are competitors in the hip protector market. Fact 4.

      A hip protector is generally a device that is designed to cover the hip and to help prevent hip fractures in elderly persons caused by falls. Fact 5. Hip protectors may be entirely soft, entirely hard comprising a shield, or a combination of both hard and soft materials. Fact 6. Both HipSaver and Posey currently manufacture and sell entirely soft hip protectors. Both use a foam pad encapsulated in an envelope which is sewn into clothing. Fact 7.

    B.    **The Garwood Testing and Posey's Advertising Regarding It**

      In 2001, Posey hired Garwood Laboratories, Inc., an independent testing company in Los Angeles to conduct some impact testing on some foam materials. Fact 8. Based upon the test results, Posey picked one of the materials Garwood tested and began using it to make the pads that go into its hip protectors. Fact 9.

      In 2002, Posey began disseminating advertising materials that made reference to the Garwood testing. Fact 10. These included product brochures that Posey distributed at trade shows and sent to people requesting information on its "Hipster" hip protectors. They also included Hipster instruction sheets that were packaged with each Hipster product and also posted

---

[1]    All "Fact" references are to the Statement Of Uncontroverted Facts In Support Of J.T. Posey Company's (1) Motion For Summary Judgment On The Claims Of The Hipsaver Company, Inc.; And (2) Motion For Partial Summary Judgment On Count I Of Posey's Counterclaims

on Posey's Internet website. Fact 11. Posey's advertising materials that made reference to the Garwood testing were disseminated continually from 2002 until 2005. Fact 12. HipSaver's president, Goodwin, learned in at least as early as 2002 that Posey was using the results of the Garwood testing in its advertising. Fact 13. HipSaver's president also wrote but apparently did not send a letter complaining about the testing. Fact 14.

## C.    Posey's Advertising Regarding the "White Paper" and Posey I

The Garwood testing was not the only testing Posey referred to in its advertising. In approximately late-2003 or early 2004, Posey disseminated advertising that referred to some testing results that were reported in a so-called "White Paper." Fact 15. The white paper had been written by a UCLA graduate student named Bimal Gandhi regarding some testing on hip protector materials he had preformed in connection with his master's thesis. Fact 16.

On June 10, 2004, HipSaver commenced an action ("Posey I") against Posey in this Court for false advertising under the Lanham Act and unfair and deceptive business practices under Massachusetts state law, G.L. c.93A, § 11. The gist of HipSaver's complaint in Posey I was that Posey was using false and misleading advertising, including advertising regarding the "White Paper" in an effort to drive HipSaver from business. Fact 17.

In connection with its claims in Posey I, HipSaver sought, among other things, damages and preliminary and permanent injunctive relief preventing Posey from publishing **any** statements that made reference to the superiority of its hip protection products over HipSaver's hip protection products. Fact 18. On or about July 19, 2004, Posey answered the complaint and counterclaimed against HipSaver for violations of the Lanham Act and unfair and deceptive business practices. Fact 19.

**D.**    **The Parties Settle Posey I and Execute a Settlement Agreement**

The parties settled Posey I in September 2004.  As part of the settlement, Posey paid

HipSaver $360,000 and it agreed not to disseminate any further advertising that made reference

to the White Paper.  In connection with the settlement, the parties also executed a written

settlement agreement (the "Settlement Agreement," Exh. 3) which recited their desire to settle

"all disputes among them concerning or in any way related to" Posey I.

The Settlement Agreement included mutual releases of, among other things, all claims

and causes of action, known or unknown, which arise from or are related to . . . [the claims]

which were asserted or which could have been asserted in [Posey I] for conduct which occurred

prior to the date of [the] Agreement."  As part of the settlement, the parties' claims and

counterclaims were also dismissed with prejudice.  Fact 20.

Although it is not specifically stated in the Settlement Agreement, when the parties

settled Posey I, they intended that, in the absence of any material changes in the facts or

circumstances that existed at the time, the settlement would permit the continued publication and

dissemination by each of them of advertisements and commercial statements that had been

published and disseminated in hard copy or electronically prior to the execution of the Settlement

Agreement.  They also intended that claims by either of them against the other based upon the re-

publication or dissemination of advertisements or commercial statements that were the same as,

or substantially similar to, any such earlier statements would be barred.  Fact 21.

**E.**    **HipSaver Sues Again, This Time Over Posey's Garwood Advertising**

Within months after dismissing Posey I, i.e., on May 3, 2005, HipSaver wrote to Posey

and demanded that it stop disseminating advertising that made reference to the Garwood testing

on the grounds that the advertising was false and misleading.  Fact 22.  HipSaver commenced

this action the following day, without even awaiting Posey's response. The gravamen of

HipSaver's complaint in this case is exactly the same as it was in Posey I, which is that Posey is

using false and misleading advertising in an effort to drive HipSaver from business. Fact 23.

In response to HipSaver's letter, Posey revised the "Garwood language" in its

advertisements as of May 2005. Fact 24. When HipSaver objected to the revised "Garwood

language", Posey stopped disseminating ads which mentioned Garwood as of August 2005. In

addition, it removed the product instructions which mentioned Garwood from its website. Fact

25.

The language in the ad to which HipSaver objected on May 3, 2005 which concerns the

Garwood testing is virtually identical to the language concerning the Garwood testing that was

contained in Posey advertisements that had been disseminated during the period from late 2001

through to the execution of the Settlement Agreement. Fact 26.

On June 17, 2005, Posey asked this Court to dismiss or, alternatively, to grant summary

judgment on, HipSaver's complaint. The request for summary judgment was made on the

grounds that since Posey has been making references to the Garwood testing in advertising

continuously since 2002, any claims against Posey based upon that advertising were barred by

the terms of the release. Fact 27. The Court denied Posey's motion without prejudice.

On July 26, 2005, Posey answered the complaint and counterclaimed against HipSaver

for false advertising under Section 43(a) of the Lanham Act, violations of G.L. ch.93A, § 11,

common law unfair competition and breach of the settlement agreement. Fact 28. HipSaver

subsequently moved to dismiss Posey's counterclaims on the grounds that Posey's claims had

been released. The motion was denied.

HipSaver subsequently amended its complaint to state a claim for product disparagement.

The claim is based upon a single email communication from a Posey employee to several

individuals who worked at a VA hospital in Los Angeles and which may have been accompanied by a chart which made reference to the Garwood testing.  Fact 29.

### F.    HipSaver Has No Evidence of Damages

During discovery, HipSaver was unable to identify any damages it suffered as a consequence of any of the acts alleged in the complaint.  Fact 30.  It was also unable to identify anyone who has purchased Posey's products as a consequence of the Garwood Advertising or any customers of its own who have ever ceased buying its products as a result of the Garwood Advertising.  Fact 31.

Posey's damages expert has concluded that Hipsaver had suffered no damages as a consequence of the Garwood advertising.  Fact 32.  HipSaver's own damages expert, Roy Epstein, has concluded that "[t]here is insufficient information to calculate damages in the form of lost profits for HipSaver."  Posey's marketing expert, Gary Reich, has determined that the Garwood advertising at issue would not have affected Posey's sales.  Fact 33.

## III.    THE SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  To succeed on a motion for summary judgment, the moving party may also show "that there is an absence of evidence to support the nonmoving party's position." *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990).

Once the moving party has properly supported its motion for summary judgment, the burden shifts to the non-moving party, who "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).  To defeat

the motion, "'the nonmoving party must establish a trial-worthy issue presenting enough competent evidence to enable a finding favorable to the nonmoving party.'" *Cashmere & Camel Hair Manufacturers Inst. v. Saks Fifth Avenue*, 284 F.3d 302, 308 (1st Cir. 2002) (quoting *LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 842 (1st Cir. 1993)). "'If the evidence is merely colorable or is not significantly probative, summary judgment may be granted.'" *Rogers*, 902 F.2d at 143 (quoting *Anderson*, 477 U.S. at 249-50, 106 S.Ct. at 2511) (citations and footnote in *Anderson* omitted).

## IV.   ARGUMENT

### A.   Posey Is Entitled to Summary Judgment on All of HipSaver's Claims Because HipSaver Has Suffered No Damages As a Consequence of Any of the Acts Alleged in the Complaint

HipSaver is suing on four claims. All of them require a showing of damages. However, during discovery, HipSaver was unable to identify any damages. *See* Facts 30 - 32. Generally, the dismissal of claims on a motion for summary judgment is proper where a plaintiff fails to show damages. *See Cummings v. HPG Int'l, Inc.*, 244 F.3d 16 (1st Cir. 2001) (Mass. ch.93A); *Schultz v. Kelly*, 188 F.Supp.2d 38, 57 (D. Mass. 2002) (defamation); *Flaherty v. Baybank Merrimack Valley, N.A.*, 808 F.Supp. 55, 66 (D. Mass. 1992) (negligence).

#### 1.   The Fact That HipSaver Has No Damages Is Fatal to Its Lanham Act Claim for False Advertising[2]

HipSaver's second claim is for false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(c) ("Section 43(a)"). The elements of this claim are: (1) a false or misleading description of fact or representation of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceives or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant placed the false or misleading statement in

---

[2] HipSaver may have grounds for an injunction, but that question is moot as the advertising is no longer used.

interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false

or misleading statement, either by direct diversion of sales from itself to defendant or by a

lessening of goodwill associated with its products. *Clorox Co. Puerto Rico v. Proctor & Gamble*

*Commercial Co.*, 228 F.3d 24, 33 n. 6 (1st Cir.2000); *accord Cashmere & Camel Hair Mfrs.*

*Inst. v. Saks Fifth Avenue*, 284 F.3d 302, 310-11 (1st Cir.2002).

To satisfy the fifth element and recover damages, HipSaver must demonstrate actual loss

or harm to its business. *See Cashmere*, 284 F.3d at 311; *Aktiebolaget Electrolux v. Armatron*

*Int'l.*, 829 F.Supp. 458, 465-66 (D. Mass. 1992) (the First Circuit has stated "without

qualification or distinction" that Lanham Act damages require actual business loss). Here,

however, HipSaver cannot demonstrate damages. Since it cannot do so, summary judgment is

appropriate. *See Holmes Group, Inc. v. RPS Products, Inc.*, 424 F.Supp.2d 271, 292 (D. Mass.

2006) (granting summary judgment on claim for money damages for false advertising where

there was no evidence the plaintiff lost any actual sales or that its goodwill and reputation

actually suffered as a result of any advertising claims made by defendant); *see also Quabaug*

*Rubber Co. v. Fabiano Shoe Co.*, 567 F.2d 154, 162 (1st Cir. 1977) (reversing monetary award to

Lanham Act plaintiff who suffered no financial damage).

In opposition to the instant motion, Posey expects HipSaver to argue that, in the absence

of its own actual business losses, it can recover Posey's profits by demonstrating (i) that Posey

made literally false statements, and (ii) that Posey acted in bad faith. *See Cashmere*, 284 F.3d at

315. This argument is without merit.

Without regard to whether Posey made any false statements, the undisputed evidence in

this case shows that Posey began publishing references to the Garwood testing in 2002, that

HipSaver never objected, and that, when HipSaver complained in 2005, Posey immediately

changed its ads, even though it had been making commercial references to the Garwood testing

- 8 -

for almost three years. When HipSaver complained about the revised ads, Posey stopped making references to Garwood at all. This demonstrates Posey's good faith and there is simply no evidence in this case from which a rational fact finder could conclude that there was any "bad faith" conduct on Posey's part. Accordingly, Posey is entitled to summary judgment in its favor on HipSaver's Section 43(a) claim.

### 2. The Fact That HipSaver Has No Damages Is Fatal to Its Claim for Violations Of the Unfair Or Deceptive Business Practices Act

HipSaver's third claim is against Posey for violating G.L. ch. 93A. In support of this claim, HipSaver alleges it suffered damages, but in discovery it was not able to point to any.

"For false or misleading statements to be actionable under M.G.L. ch. 93A, § 11, they must cause a loss to the plaintiff." *McKernan v. Burek*, 118 F.Supp.2d 119, 126 (D. Mass. 2000). A plaintiff who cannot demonstrate a "loss of money or property" supported by evidence lacks standing under Chapter 93A. M.G. L. ch. 93A, § 11; *Schwanbeck v. Federal-Mogul Corp.*, 31 Mass.App.Ct. 390, 578 N.E.2d 789, 804 (1991), *rev'd on other grounds*, 412 Mass. 703, 592 N.E.2d 1289); *U.S. ex rel. Metric Elec., Inc. v. Enviroserve, Inc.*, 301 F.Supp.2d 56, 70-71 (D. Mass. 2003).

Again, HipSaver has not provided any evidence that consumers selected Posey's Hipsters over HipSaver's hip protectors because of Posey's advertising, that HipSaver lost sales due to Posey's advertising, that HipSaver's sales have declined since the introduction of Posey's advertising or that HipSaver has suffered in any other manner. Thus, Posey is entitled to summary judgment on this claim.

### 3. That Fact That HipSaver Suffered No Damage Is Fatal to Its Product Disparagement Claim

HipSaver's fourth claim is for product disparagement. HipSaver alleges it has suffered "special damages" in connection with this claim. To succeed on this claim Hipsaver must not

only allege special damages, it must prove it.  *Marlin Firearms Co. v. Shields*, 64 N.E. 163

(1902).  "The plaintiff must allege and prove special damages - specific proof of pecuniary loss -

before being entitled to recover."  *Dooling v. Budget Publishing Co.*, 10 N.E. 809 (1887).  Again,

HipSaver has no evidence that it suffered any damages in connection with the **one**

communication **in 2001** that forms the basis for this claim.  Thus, the Court should grant

summary judgment in Posey's favor on this claim, as well.

      **4.**      <u>**The Fact That HipSaver Suffered No Damage Is Fatal to Its Claim for**</u>
              <u>**Breach of Contract**</u>

     HipSaver's first claim is for breach of contract for Posey's early 2005 failure to give

HipSaver advance notice of its intention to publish an ad that mentioned Garwood.  Posey

disagrees that it was required to give HipSaver any such notice.  But it does not matter because

HipSaver has been unable to articulate any damages it suffered as a consequence of its failure to

receive such notice.

     Damages are an essential element of a breach of contract claim.  *See Doyle v. Hasbro,*

*Inc.*, 103 F.3d 186, 194 (1st Cir. 1996); *Redgrave v. Boston Symphony Orchestra, Inc.*, 855 F.2d

888, 892 (1st Cir. 1988) (en banc).  Since HipSaver has not suffered any damage, Posey is

entitled to summary judgment on this claim.

    **B.**      **Posey Is Entitled to Summary Judgment on HipSaver's Second, Third and**
           **Fourth Claims Because They Are Precluded By the Terms of the Settlement**
           **Agreement in Posey I**

      **1.**      **Claims Regarding Pre-Settlement Garwood Advertising Have Been**
              **Released**

     HipSaver's second, third and fourth claims for false advertising under Section 43(a) and

violations of G.L. ch. 93A have already been released.  These claims will be discussed below by

time period, i.e., pre-settlement and post settlement.

As for pre-settlement claims, the unambiguous terms of the release provision of the

Settlement Agreement, at paragraph 11, provides:

> Except for the obligations contained in this Agreement, HipSaver releases Posey,
> and all of its officers, directors, employees, agents, . . . from any and all claims,
> liabilities or causes of action, known or unknown, fixed or contingent, which arise
> from or are related to the false advertising claims under 15 U.S.C. § 1125, 1117
> and G.L. c.93A, §§ 2, 11 which were asserted or **which could have been
> asserted in the Action for conduct which occurred prior to the date of this
> Agreement**.

Fact 20 (Exhibit 3).

Posey I was filed in June 2004 and settled in September 2004. At the time the case was

filed and at the time it was settled, HipSaver had known about Posey's advertising that

mentioned the Garwood testing for at least two years. Moreover, in Posey I, HipSaver contended

that Posey was falsely advertising regarding the "White Piper" in an effort to drive it out of

business, which is the same allegation it is making in this case with respect to the Garwood

Advertising. Since Posey's allegedly false White Paper advertising and its allegedly false

Garwood Advertising were going on at the same time, the two must be considered "related"

within the meaning of the Settlement Agreement. And had it wanted, HipSaver "could have

asserted [a claim against Posey] in the Action" based upon Posey's Garwood Advertising, just as

it did based upon the White Paper advertising. As a consequence any pre-settlement claims

arising out of Posey Garwood Advertising have been released.

As for HipSaver's product disparagement claim arising out of the 2001 email

communication between Posey's former employee, Jeff Yates, and individuals at the VA hospital

in West LA, HipSaver did not know about the email at the time. However, the release covers

known and unknown claims and, under Massachusetts law, a release is effective even if the

parties did not contemplate all wrongs existing at the time of the release. *See Naukeag Inn, Inc.*

*v. Rideout*, 220 N.E.2d 916, 918 (Mass. 1966); *Sword & Shield Restaurant v. Amoco Oil Co.*, 420 N.E.2d 32 (Mass.App.1981).

Federal courts in this district have also held that where, as here, an agreement releases known and unknown claims, all preexisting claims are released. *Smart v. Gillette Co. Long-Term Disability Plan*, 887 F.Supp. 383, 386 (D.Mass. 1995) (where release waives all claims "known and unknown" the fact that party was "unaware of the possibility of an ERISA claim is irrelevant").

Finally, HipSaver is alleging that Mr. Yates' email was just another aspect of Posey's attempt to drive HipSaver out of business and, since it concerned the Garwood testing, it must be considered "related" to the Garwood and White Paper advertising. Thus, the disparagement claim is also barred by the release.

## 2. Claims Regarding Post-Settlement Garwood Advertising Have Been Released

With regard to post-settlement claims based upon any Garwood Advertising, Posey's president, Ernest Posey, understood that, when the parties settled Posey I, they intended that, in the absence of any material changes in the facts or circumstances that existed at the time, the settlement would permit both sides to continue publishing and disseminating advertisements and commercial statements that had been published and disseminated in hard copy or electronically (e.g., on the parties' websites) prior to the execution of the Settlement Agreement. He also understood that the parties were agreeing not to assert against each other based upon the re-publication or dissemination of advertisements or commercial statements that were the same as, or substantially similar to, any earlier statements would be barred. Fact 20. HipSaver understood the Settlement Agreement the same way, as its counsel conceded at the hearing in this matter on October 11, 2005, Exh. 8. Surely, if that were not the parties' intention, Posey would never have paid HipSaver $360,000 as part of the settlement.

**C.    HipSaver's Second and Third Claims For All Periods Preceding the Settlement In Posey I Are Barred By the Doctrine of *Res Judicata***

Even if they were not covered by the release, HipSaver's second and third claims would be barred by the doctrine of claim preclusion, or *res judicata*, for the period preceding the Posey I settlement. Because *Posey I* was a federal case, federal rules of *res judicata* apply. *Porn v. National Grange Mut. Ins. Co.*, 93 F.3d 31, 33 -34 (1st Cir. 1996). Under federal law, a claim is precluded if there is: (1) a final judgment on the merits in an earlier action, (2) sufficient identity between the causes of action asserted in the earlier and later suits, and (3) sufficient identity between the parties in the two suits. *Porn*, 93 F.3d at 34.

With the exception of Goodwin, the parties in this action are the same as the parties in Posey I. Therefore, the focus is on the first and second elements. Regarding finality, a voluntary dismissal with prejudice, such as the one entered in *Posey I*, operates as a final judgment on the merits for purposes of res judicata. *U.S. v. Cunan*, 156 F.3d 110, 114 (1st Cir. 1998).[3] The only remaining question, then, is whether there is sufficient identity between the causes of action asserted in Posey I and the causes of action being asserted here.

In analyzing this factor, the First Circuit uses the "transactional" approach of the Restatement (Second) of Judgments. *Manego v. Orleans Bd. of Trade*, 773 F.2d 1, 5 (1st Cir.1985), *cert. denied*, 475 U.S. 1084 1986). A valid and final judgment in the first action will extinguish subsequent claims "'with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.'" *Porn*, 93 F.3d at 34 (quoting Restatement (Second) of Judgments § 24 (1982)). This question is pragmatic, "giving weight to such factors as 'whether the facts are related in time, space, origin, or motivation, whether they

---

[3]    The same rule applies in Massachusetts. *Bagley v. Moxley*,  555 N.E.2d 229, 231 - 232 (Mass. 1990).

form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations.'" *Id.* (quoting Restatement § 24).

The facts underlying HipSaver's claims against Posey arising out of the White Paper Advertising and the Garwood Advertising are obviously related in "time" since the advertisements were being run contemporaneously in 2003 and 2004. Facts 11, 12, 13 and 14. They are also related by the alleged "motivation" of Posey (according to HipSaver, anyway) to drive HipSaver from business. Fact 17. The two sets of tests also involved the same type of testing, i.e., drop impact. Thus, the advertising was "related in time, space, origin or motivation" and the claims would have been a "convenient trial unit." *Manego v. Orleans Bd. of Trade*, 773 F.2d at 5.

### D.     HipSaver's Second and Third Claims Are Barred By Laches and Estoppel by Laches.

Plaintiff's false advertising claims are also barred by the doctrine of estoppel by laches.[4] Estoppel by laches is found where, as here, Plaintiff knew about the purported false advertising, there is a period of delay, and Defendant will be prejudiced because of the delay. McCarthy, § 31:1. A court in this District recently stated that laches applies "'if the party so unreasonably delayed in bringing the claim that it caused some injury or prejudice to the defendant.'" *Micromuse, Inc. v. Micromuse, PLC*, 304 F.Supp.2d 202, 218 (D.Mass. 2004) (quoting *Polaroid Corp. v. The Travelers Indemnity Co.,* 610 N.E.2d 912 (1993)). The application of the doctrine of laches is within the sound discretion of the district court. *Puerto Rican-American Ins. Co. v. Benjamin Shipping Co., Ltd.,* 829 F.2d 281, 283 (1st Cir.1987). The defense applies equally in

---

[4]      As McCarthy explains, there is some confusion about these terms. "Laches" is unreasonable delay in filing suit. "Estoppel by laches" means "the type of delay in filing suit which causes prejudice to defendant and when weighted with all other relevant equitable factors, results in a bar to relief, either injunctive or monetary, or both." McCarthy, § 31:2.

infringement and false advertising cases. *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187 (2d Cir. 1986).

Here, HipSaver actually knew of the Garwood Testing Advertising and its allegedly detrimental effects before settling Posey I. Fact 13. Also, Posey's required showing of delay and prejudice for laches is lessened because Posey quit using the advertising at issue. Fact 25. Thus the only available remedy is monetary recovery. McCarthy, § 31:4 ("delay and resulting prejudice to defendant can bar monetary recovery but might not bar the issuance of an injunction against future acts").

Here, there has been both delay and prejudice to Posey. There is no question that Mr. Goodwin, HipSaver's president, knew about the Garwood Advertising, but he kept quiet about it for at least two years while Posey went about trying to build its hip protector business. When HipSaver brought Posey I - litigation which is identical to this one – it still said nothing. Then, it accepted $360,000, gave Posey a release of all "related" claims "known or unknown", Fact 20, and sat back and waited. For the next six months, Posey continued going about its business, making the same statements about the Garwood testing that it had been making for the past three years. Then, HipSaver brought a second action. Facts 12 and 13.

Goodwin's and HipSaver's actions don't smell quite right. Moreover, Posey has suffered monetary prejudice, most obviously, by paying HipSaver $360,000. Fact 20. The Declaration of Ernie Posey establishes that Posey understood it was getting a release for the Garwood Advertising, and that it relied on this understanding in going forward with its business and continuing to make statements regarding the Garwood advertising. Facts 20 and 21. Had it known HipSaver objected to its Garwood ads, or that HipSaver was itching to sue again, Posey could have stopped making the statements or commissioned new testing. *Minnesota Mining and Manufacturing Co. v. Beautone Specialties, Co., Ltd.*, 82 F.Supp.2d 997, 1004 (D.Minn. 2000)

(laches found because defendant spent money on product development and promotion and exposed itself to potential legal liability by continuing to use mark).

In addition to economic prejudice, Posey has also suffered evidentiary prejudice. HipSaver has continually criticized Posey because it does not have the actual pads that were used in the Garwood testing that occurred in 2001. Had Posey known that HipSaver objected to the Garwood testing and to the Posey ads that mentioned it, Posey would have maintained possession of those items. Thus, Posey has established the elements of estoppel by laches, and any claim regarding the Garwoods Testing Advertising should be barred.

For similar reasons, HipSaver is barred by estoppel. Estoppel arises where a party is (1) is misled to believe plaintiff did not intend to enforce its trademark against defendant, (2) that defendant relied on that conduct, and (3) that defendant will be materially prejudiced. *Minnesota Mining and Manufacturing Co.*, 82 F.Supp.2d at 1005 -1006 (D.Minn. 2000). Here, HipSaver (i) settled the first case for false advertising occurring before the settlement agreement. Apparently, HipSaver did not believe this release extended to the Garwood Advertising. Indeed, during discovery Goodwin refused to identify his understanding of the scope of the parties' settlement. "Misleading conduct may include specific statements, action, inaction, or silence where there was an obligation to speak." *Id.* Posey relied on the misrepresentation by continuing to advertise based on the Garwood Testing when it could have diverted its resources elsewhere or procured more tests.

### E.    Posey's First Claim for Breach of Contract Claim In The Present Case Is Barred Because It Is Contingent Upon Non-Existent "Further" Testing

Perhaps sensing that all of its claims should have been brought in *Posey I*, HipSaver has alleged a claim for breach of the first settlement agreement's requirement that the parties notify

each other of further testing.[5]  See Complaint, ¶ 20.  However, this claim is barred because the

Notice provision is contingent upon further testing.  There has been no further testing, so the

Notice provision never went into effect.  "Further" means "[m]ore distant in degree, time or

space."  See The American Heritage Dictionary of the English Language (4th ed. 2000).  Here,

that standard is not met, as the tests were conducted before the date of the Settlement Agreement.

Exhs. 19-21; Facts 12, 13, and 14.  Thus, Posey obviously was not required to give HipSaver

notice of the results because the study was completed prior to the date of the Settlement

Agreement.

Moreover, since HipSaver knew about the testing in 2002, it had received "notice" of the

testing even before the Settlement Agreement took effect.  Thus, even if the notice provision

applies, it was satisfied.  HipSaver knew about it—what additional notice was required?

**F.      Summary Judgment Should Be Granted on HipSaver's Second (Lanham
          Act) and Third (Unfair Competition) Claims Because The Statements Were
          Not Material**

Plaintiff cannot show that the statements were material to a purchasing decision.  To be

material, a misrepresentation must be "likely to influence the purchasing decision" and that it

"actually deceives or has the tendency to deceive a substantial segment of its audience."

*Cashmere & Camel Hair Mfrs. Institute v. Saks Fifth Ave.*, 284 F.3d 302, 310 -311 (1st Cir.

2002).  McCarthy points out that the materiality requirement is used to eliminate even cases

where statements are literally false.  McCarthy, § 27:35 ("courts increasingly use materiality as

a means of eliminating cases before trial, even where the court has held that the defendant's

---

[5]      The Settlement Agreement provides:  "In the event of any **further comparative testing**
of Posey and HipSaver products by either party, neither party shall make commercial advertising
use of the results or analysis related to such testing without first giving the other party at least
thirty (30) days advance written notice of the results or analysis."

- 17 -

factual representation is literally false"). As shown earlier by the lack of damages there has been

no change in sales due to the advertising, so none of the statements were material.

**G.    Summary Judgment Should Be Granted On Hipsaver's M.G.L. Ch. 93 Claim
       Because The Nexus Of Events Did Not Occur In Massachusetts**

Mass. Gen. Laws ch. 93A § 11 requires that the alleged unfair and deceptive act or

practice "occurred primarily and substantially within the Commonwealth." *Callahan v. Harvest*

*Bd. Intern., Inc.*, 138 F. Supp. 2d 147, 167 n13 (D. Mass. 2001).   It is not enough that HipSaver

is domiciled in Massachusetts.  If it were, every case with a party in Massachusetts would be

subject to ch. 93A, and the statute would quickly become unconstitutional.

The First Circuit uses the "center of gravity" test, which focuses on the transactions that

gave rise to the claims in the case.  *See Kenda Corp., Inc. v. Pot O'Gold Money Leagues, Inc.*,

329 F.3d 216, 236 (1st Cir. 2003).  Thus, when "virtually all the conduct that can be said to be

unfair or deceptive" occurs outside the Commonwealth, there can be no Chapter 93A liability.

*Kuwaiti Danish Computer Co. v. Digital Equipment Corp.*, 781 N.E.2d 787, 798 (2003) (despite

substantial business in Massachusetts, Chapter 93A claim dismissed where the deceptive conduct

mostly occurred in Washington).

Under the center of gravity test, HipSaver's Chapter 93A claim fails.  Virtually all of

Posey's alleged deceptive conduct complained of by HipSaver has occurred outside

Massachusetts.  The Garwood Laboratories testing occurred in California.  Fact 8.   The

advertising was developed and published in California. Fact 8.  Also, HipSaver has provided no

evidence of customer deception in Massachusetts or lost customers based in Massachusetts as a

result of Posey's advertisements.  Thus, Posey's alleged deceptive acts of fraudulently and

falsely biasing tests and presenting literally false test results are not acts occurring "primarily and

substantially within the Commonwealth."  Accordingly, HipSaver's Chapter 93A claim must be

dismissed.

**H.**     **HipSaver Should  Be Barred on all of Its Non-Contract Claims Because of Its Unclean Hands**

Lastly, HipSaver should not be entitled to any recovery under all of the non-contract claims because it is guilty of unclean hands by virtue of its own false advertising.  The equitable doctrine of unclean hands applies when a party seeking relief has committed an unconscionable act directly related to the merits of the controversy between the parties in respect to the litigation. *Texaco P.R., Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 880 (1st Cir. 1995), *citing, Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245 (1933). The doctrine is applicable in actions seeking relief under the Lanham Act.  *Ames Publ'g Co. v. Walker-Davis Publ'n, Inc.*, 372 F. Supp. 1, 13 (E.D. Pa. 1974).

HipSaver's complaint states: "Posey has been engaged in aggressive efforts to thwart its much smaller competitors, most of which, like Plaintiff. . .invent, design, manufacture, distribute, and sell a limited number of products.  Posey uses its marketplace dominance and deceptive advertising to drive smaller competitors from the marketplace.  This is the core issue in this lawsuit."  *See generally* first Amended Complaint, at page 1.

Ironically, HipSaver's advertising is saturated in completely false statements about its hip protectors, and its competitors' hip protectors.  For example, HipSaver lies that its hip protectors are "the only proven all-soft hip protector," and HipSavers outperform other soft and hard hip protectors.  *See* Posey's Motion for Summary Judgment II.  HipSaver also grossly misrepresents tests results relating to the effectiveness of its hip protectors in reducing impact force.

By blatantly lying about the effectiveness of its and competitors' hip protectors, HipSaver has committed unconscionable acts directly related to the merits of this case.  By HipSaver's own words, the "core" of the lawsuit is one company's dissemination of false advertising to drive its competitor out of the hip protector market.  By falsely advertising its products, while

attacking Posey's advertisements without supporting evidence, this is the exact thing HipSaver attempts to do.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Posey respectfully requests this Court to grant its motion for summary judgment in its favor and against HipSaver on HipSaver's claims.


Dated: December 11, 2006                J.T. POSEY COMPANY

                                        By its attorneys,


                                        /s/ Douglas H. Morseburg
                                        Jeffrey G. Sheldon (CA Bar No. 67516)
                                        Douglas H. Morseburg (CA Bar No. 26205)
                                        SHELDON MAK ROSE & ANDERSON PC
                                        225 South Lake Avenue, Suite 900
                                        Pasadena, CA  91001
                                        (626) 796-4000

                                        Anthony J. Fitzpatrick (BBO # 564324)
                                        DUANE MORRIS LLP
                                        470 Atlantic Avenue, Suite 500
                                        Boston, MA 02210
                                        (617) 289-9200

## CERTIFICATE OF SERVICE

I certify that this document has been filed through the Electronic Case Filing System of the United States District Court for the District of Massachusetts and will be served electronically by the court to the Registered Participants identified in the Notice of Electornic filing.

/s/ Donald K. Piper_____

December 11, 2006                        Donald K. Piper