# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE HIPSAVER COMPANY, INC., ) | Civil Action No. 05-10917 PBS |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORAL HEARING REQUESTED |
| ) | |
| J.T. POSEY COMPANY, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| AND RELATED COUNTERCLAIM. ) | |

**MEMORANDUM OF DEFENDANT AND COUNTERCLAIMANT
J.T. POSEY COMPANY, INC. IN OPPOSITIONTO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
FOR LITERALLY FALSE ADVERTISING UNDER
THE LANHAM ACT AND CHAPTER 93A**

## **TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................- 1 -

II.    CONSIDERATION OF HIPSAVER'S MOTION FOR SUMMARY JUDGMENT
SHOULD BE LIMITED TO THE ISSUES OF WHICH POSEY HAS HAD FAIR NOTICE
...................................................................................................................................- 1 -

III.    THE APPLICABLE LEGAL STANDARDS ..........................................................- 3 -

    A.    The Summary Judgment Standard ...............................................................- 3 -

    B.    The Legal Standards Governing HipSaver's Claim for False Advertising Under Section
43(a) Of The Lanham Act.............................................................................................- 3 -

        1.    The Elements of a Section 43(a) Claim ....................................................- 3 -

            a.    Assessing False Advertising Claims..........................................- 4 -

            b.    Statements of Fact, Statements of Opinion and Puffing ..............- 4 -

            c.    "Superiority" and "Tests Prove" Claims....................................- 4 -

    C.    The Legal Standards Governing HipSaver's State Law Claim For Unfair Trade Practices
Under Chapter 93A .......................................................................................................- 5 -

IV.    HIPSAVER'S LANHAM ACT CLAIM AND ITS CHAPTER 93A CLAIM ARE BOTH
BARRED BY THE POSEY I SETTLEMENT AGREEMENT..........................................- 6 -

    A.    HipSaver's Claims Against Posey Based Upon Posey's Publication and Dissemination of
Allegedly False Statements Prior to the Effective Date of the Settlement Agreement Are
Barred.................................................................................................................. - 7 -

    B.    HipSaver's Claims Against Posey Based Upon Posey's Post-Settlement Use of Any
Advertising Materials That It Was Publishing Or Disseminating On the Effective Date of the
Settlement Agreement Are Also Barred .......................................................................- 8 -

    C.    HipSaver's Claims Against Posey Based Upon Posey's Post-Settlement Publication Of
Statements In Any Advertising That Were Being Disseminated On the Effective Date of the
Settlement in Posey I Are Also Barred .........................................................................- 9 -

V.    EVEN IF HIPSAVER'S CLAIMS AGAINST POSEY WERE NOT BARRED, HIPSAVER
CANNOT MEET ALL OF THE ELEMENTS NECESSARY TO ESTABLISH LIABILITY
FOR FALSE ADVERTISING UNDER THE LANHAM ACT .....................................- 11 -

    A.    First Element – Literally False Statements ..................................................- 12 -

        1.    Exhibit "A" – "Posey Hipsters" Instruction Sheet.....................................- 13 -

a.   The "Simulated Fall" Criticism ...............................................................- 13 -

b.   The "Most Effective Impact Absorbing Material" Criticism .....................- 14 -

c.   The "Proven Effective In Laboratory Test" and "Excellent Impact Absorption" Criticisms ...................................................................................................- 15 -

d.   The "False Overall Impression" Criticism..............................................- 16 -

2.   Exhibit "B" – The "Tight Rope Walker Ad............................................- 16 -

3.   Exhibit "C" – The 2001 Email and Accompanying Page..........................- 17 -

B.   Second Element – Materiality..........................................................................- 17 -

C.   Third Element – Deception or Tendency to Deceive.........................................- 18 -

D.   Final Element – Injury Or Likelihood of Injury ..............................................- 18 -

VI.   HIPSAVER'S CHAPTER 93A CLAIM IS BARRED; NO UNFAIR ACTS OCCURRED "PRIMARILY AND SUBSTANTIALLY" IN MASSACHUSSETS AND IT HAS NO DAMAGES........................................................................................................- 18 -

VII.   CONCLUSION...............................................................................................- 20 -

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Cashmere and Camel Hair Mfrs. Inst. v. Saks Fifth Avenue,*
284 F.3d 302 (1st Cir. 2002)..............................................................................................19

*Castrol, Inc. v. Pennzoil Co.,*
987 F.2d 939 (3d Cir. 1993).................................................................................................4

*Castrol, Inc. v. Quaker State Corp.,*
977 F.2d 57 (2d Cir 1992)....................................................................................................5

*Clorox Company Puerto Rico v. Proctor & Gamble Committee Co.,*
228 F.3d 24 (1st Cir. 2000)..................................................................................................4

*Coastal Abstract Serv., Inc. v. First America Title Insurance Co.,*
173 F.3d 725 (9th Cir. 1999) .........................................................................................4, 15

*Datatrend, Inc. v. Jabil Circuit, Inc.,*
3 F. Supp. 2d 66 (D. Mass. 1998) .......................................................................................5

*Groden v. Random House, Inc.,*
61 F.3d 1045 (2d Cir. 1995)................................................................................................4

*Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.,*
299 F.3d 1242 (11th Cir. 2002) ....................................................................................4, 12,
13, 14

*L & F Products v. Proctor & Gamble, Co.,*
845 F. Supp. 984 (S.D.N.Y. 1994) ....................................................................................14

*Presidio Enterprises, Inc. v. Warner Brothers Distributing Corp.,*
784 F.2d 674 (5th Cir. 1986) ...............................................................................................4

*RJG Associates, Inc. v. Stainsafe, Inc.,*
338 F. Supp. 2d 215 (D. Mass. 2004) ........................................................................6, 19, 20

*Rhone-Poulenc Rorer Pharmaceuticals, Inc. v. Marion Merrill Dow, Inc.,*
93 F.3d 511 (8th Cir. 1996) .................................................................................................5

*Roche v. The Royal Bank of Canada,*
109 F.3d 820 (1st Cir.1997)..................................................................................................5

*Skinder-Strauss Associates, v. Massachusetts Continuing Legal Education,*
914 F. Supp. 665 (D. Mass. 1995) .....................................................................................21

*Straumann Co. v. Lifecore Biomedical Inc.,*
278 F. Supp. 2d 130 (D. Mass. 2003) ................................................................................20

**STATE CASES**

*Kuwaiti Danish Computer Co. v. Digital Equipment Corp.*,
    438 Mass. 459, 781 N.E.2d 787 (2003) .........................................................................6

**MISCELLANEOUS**

4 J. Thomas McCarthy, <u>McCarthy on Trademark and Unfair Competition</u>, § 27.38
    (4th ed. 2006) .........................................................................................................4

## I.     **INTRODUCTION**

In support of its motion for partial summary judgment on its claims under the Lanham Act and Massachusetts General Laws Chapter 93A ("Chapter 93A), The HipSaver Company, Inc. ("HipSaver") argues that there are no genuine issues of material fact regarding the liability of J.T. Posey Company, Inc. ("Posey") for false advertising.  This is simply not true.  HipSaver's claims are barred by a prior settlement agreement between the parties.  Posey's ads contain non-actionable statements.  And, HipSaver has no damages.

## II.    **CONSIDERATION OF HIPSAVER'S MOTION FOR SUMMARY JUDGMENT SHOULD BE LIMITED TO THE ISSUES OF WHICH POSEY HAS HAD FAIR NOTICE**

This motion raises matters that are not even before the Court.  As the Court knows, when the instant action commenced, Posey immediately brought a motion to dismiss and/or for summary judgment on HipSaver's claims and it also sought a more specific statement regarding the substance of HipSaver's complaint.  During the hearing on that motion, Posey argued that the complaint did not specifically identify the subject matter upon which HipSaver's claims were based.  In response to the Court's query as to whether the complaint identified the ad which was at issue, HipSaver's counsel, Mr. Karol, identified the advertisement referenced "in the demand for relief" in HipSaver's complaint.  *See* Posey Appendix of Exhibits in Opposition to HipSaver Motion for Summary Judgment (cited "Posey Opp. App. Exh. ___") Exh. 10, at 8:18-9:14 (transcript of July 12, 2005 hearing).  At that point, the following exchange took place between the Court and Mr. Karol:

THE COURT:  Well, as far as I'm concerned then, that's the only ad at issue here.  Is that right?

MR. KAROL:  Yes.

THE COURT:  All right, so then we don't need to have an amendment here.  And if you want to add any other ads, you have to change the complaint, because that's the only ad we're talking about, the only ad post-settlement, so they're on fair notice.

- 1 -

*    *    *

THE COURT:  Well, now you've got it specified down [to] that one ad, that's what we're talking about and that's enough to meet [FRCP] 9(b).  That's all we're talking about. Make it clear:  Their only fair notice is one advertisement, alright?  That's the only one that's not covered by the settlement agreement, since it's the only one that post-dates the settlement agreement, okay?

Posey Opp. App. Exh. 10, at 9:19-10:15.

Later, during the hearing, counsel for Posey, Mr. Sheldon, advised the Court that, in response to HipSaver's complaint, Posey had modified the advertisement in question.  *Id.*, at 17:24-18:6.  When Mr. Karol stated that he was not aware that Posey had changed the ad, the Court asked counsel for Posey to provide the changed ad to HipSaver.  It also ordered counsel for HipSaver to provide the Court with a written specification of its position with respect to the changed ad.  Opp. App. Exh. 10, at 18:7-20:19, 23:7-24:1.

Following the hearing, Posey provided the modified ad to HipSaver.  On or about July 19, 2005, HipSaver filed a "statement" concerning the revised ad which stated that it objected to that ad and that its complaint "stands against both the first of the Garwood Laboratories advertisements and against the revised advertisement."  *See* Posey App. Exh. 7, at p. 1.

HipSaver obviously took it seriously when the Court stated that making additional ads part of the case would require it to change its complaint because, upon Posey's production of an email dated July 27, 2001 sent by a former Posey employee to a third party that mentioned the Garwood Testing (the "2001 Email"), HipSaver moved to amend its complaint to state a claim for product disparagement based upon the email.

In support of the instant motion, HipSaver has presented the Court with a mish-mash of Posey promotional materials which cover the period from 2001 through 2005 (*see* HipSaver Exhibits 1 and 2) and which, it says, contain false statements.  These materials, some 40 pages in

- 2 -

all, include portions of Posey catalogs from 2002 and 2003, a "screenshot" from a 2001 video, the 2001 Email, several product instruction sheets for the period from 2003-2005, several sales flyers for the period from 2001-2005 and, even, fragments of some of the foregoing.

HipSaver never amended its complaint to put Posey on fair notice that it wanted to expand its case to include anything other than (i) the ad that was identified in its original complaint, (ii) the revised ad which was the subject of HipSaver's "statement" of July 19, 2005, and (iii) the 2001 Email. Therefore, consistent with its rulings at the hearing on July 12, 2005, the Court should limit the instant motion for partial summary judgment to a consideration of the issues raised by the First Amended Complaint with respect to those three documents. True and correct copies are attached to this memorandum as Exhibits "A", "B" and "C", respectively.

## III.   THE APPLICABLE LEGAL STANDARDS

### A.   The Summary Judgment Standard

The rules governing the resolution of motions for summary judgment are well known. They are set out in the parties' moving papers and will not be repeated.

### B.   The Legal Standards Governing HipSaver's Claim for False Advertising Under Section 43(a) Of The Lanham Act

#### 1.   The Elements of a Section 43(a) Claim

HipSaver's motion is not based upon a proper application of the law. To prevail on its Lanham Act claim, HipSaver must demonstrate (1) a false or misleading commercial statement of fact by Posey about its own or another's product; (2) that the misrepresentation is material, i.e., likely to influence purchasing decisions; (3) that the misrepresentation deceives or has the tendency to deceive, the intended audience; (4) that the statement was in interstate commerce; and (5) injury or likelihood of injury as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products." *Cashmere Camel Hair v. Saks Fifth Avenue,* 284 F.3d 302, 310-11 (1st Cir. 2002).

### a.    Assessing False Advertising Claims

In assessing a false advertising claim, a court first determines what is the actual claim made by an advertisement. It then determines whether that claim is false. *Clorox Company Puerto Rico v. Proctor & Gamble Comm. Co.*, 228 F.3d 24, 34 (1st Cir. 2000). When assessing an advertisement, the court views the message conveyed in context and in its entirety. *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1248 (11th Cir. 2002) (citing *Castrol, Inc. v. Pennzoil Co.*, 987 F.2d 939, 946 (3d Cir. 1993)). In its motion, HipSaver does not do this. Rather, it takes statements in isolation and out of context.

### b.    Statements of Fact, Statements of Opinion and Puffing

In assessing an advertisement, it is also essential to determine whether the challenged statement is one of fact or one of opinion. This is because liability under the Lanham Act may be based upon the former, but not the latter. *See Groden v. Random House, Inc.*, 61 F.3d 1045, 1051 (2d Cir. 1995). To be actionable, a statement must be a "specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact." *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999). As one court put it: "[A] statement of fact is one that (1) admits of being adjudged true or false in a way that (2) admits of empirical verification." *Presidio Ent., Inc. v. Warner Bros. Dist. Corp.*, 784 F.2d 674, 679 (5th Cir. 1986).

Another form of non-actionable advertising is "puffing." According to the leading authority on unfair competition, there are two types of puffing. The first is "exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely." The second is a "general claim of superiority over a comparative product that is so vague, it would be understood as a mere expression of opinion." 4 J. Thomas McCarthy, McCarthy on Trademark and Unfair Competition, § 27.38 (4th ed. 2006). Here, HipSaver's motion is based upon non-actionable statements.

### c.    "Superiority" and "Tests Prove" Claims

There are two types of false comparative advertising claims - the "my product is better than yours" type (i.e., a "superiority claim") and the "*tests prove* that my product is better than yours" type (i.e., an "establishment claim"). *Rhone-Poulenc Rorer Pharmaceuticals, Inc. v. Marion Merrill Dow, Inc.*, 93 F.3d 511, 514 (8th Cir. 1996) (italics in original).

Where a defendant makes a "my product is better than yours" claim, the plaintiff must prove that the defendant's claim of superiority is false. *Id.* Where a defendant makes a "tests prove" claim, the plaintiff must demonstrate that the tests relied upon are not sufficiently reliable to permit one to conclude with reasonable certainty that they establish the proposition for which they are cited. *Castrol, Inc. v. Quaker State Corp.*, 977 F.2d 57, 62-63 (2d Cir 1992).

### C. The Legal Standards Governing HipSaver's State Law Claim For Unfair Trade Practices Under Chapter 93A

Under Chapter 93A, § 11, a person "who engages in the conduct of any trade or commerce" may bring an action for damages or other relief against another party who, in the course of his trade or business, engages in an "unfair method of competition or an unfair or deceptive act or practice." In order to sustain an award of damages under Chapter 93A, § 11, the plaintiff must prove that (1) unfair or deceptive acts or practices occurred; (2) those acts or practices occurred "primarily and substantially" in Massachusetts; and (3) the plaintiff suffered a loss of money or property as a result of the defendant's unfair or deceptive acts. *Roche v. The Royal Bank of Canada*, 109 F.3d 820, 829 (1st Cir.1997). Where a defendant contends that alleged unfair and deceptive acts did not take place "primarily and substantially" in Massachusetts, the burden is on the defendant to show it. *Datatrend, Inc. v. Jabil Circuit, Inc.*, 3 F.Supp.2d 66 (D. Mass. 1998).

In determining whether wrongful conduct occurred "primarily and substantially" within Massachusetts, a court examines the facts of the case to determine "whether the center of gravity of the circumstances giving rise to the claim is primarily and substantially within the Commonwealth." *Kuwaiti Danish Computer Co. v. Digital Equipment Corp.*, 438 Mass. 459, 781 N.E.2d 787 (2003).

Factors which are relevant to the determination include "the source" of the wrongful conduct, where the misconduct was received, and where it was "acted on". *RJG Associates, Inc. v. Stainsafe, Inc.*, 338 F.Supp.2d 215, 234 (D. Mass. 2004) (citing *Kuwaiti Danish Computer Corp.*, 781 N.E.2d at 798-99).

The analysis examines actionable conduct as opposed to any benign conduct on the part of the alleged wrongdoer. Contacts with Massachusetts that are neither unfair nor deceptive play no part in assessing whether the alleged misconduct occurred "primarily and substantially" in Massachusetts. *RJG Associates*, 338 F.Supp.2d at 234 (citing *Kuwaiti Danish Computer Co.*, 781 N.E.2d at 800). The fact that the plaintiff may be located in Massachusetts is not determinative. *Garshman Co. v.* GE, 173 F.3d 1, 7 (1st Cir. 1999); *Korpacz v. WPFL*, 2006 WL 220762 (D. Mass. 2006) (Zobel, J.)

## IV.   HIPSAVER'S LANHAM ACT CLAIM AND ITS CHAPTER 93A CLAIM ARE BOTH BARRED BY THE POSEY I SETTLEMENT AGREEMENT

As the Court knows, Posey has brought a separate for summary judgment on HipSaver's claims based upon the fact that HipSaver commenced an action ("Posey I") against Posey in this Court on June 10, 2004, the fact that the gist of HipSaver's complaint in Posey I was the same as it is here, the fact that the parties settled Posey I in September 2004, at which time they executed a written settlement agreement (the "Settlement Agreement"); the fact that the Settlement Agreement recited the parties' desire to settle "all disputes among them concerning or in any way related to" Posey I, and the fact that the Settlement Agreement included mutual releases of, among other things, "all claims and causes of action, known or unknown, which arise from or are related to . . . [the claims] which were asserted or which could have been asserted in [Posey I] for conduct which occurred prior to the date of [the] Agreement."

On this motion, HipSaver has presented the Court with 40 pages of materials which are set out in HipSaver Exhibits 1 and 2 and which, HipSaver says, contain false commercial statements by Posey. Any claims based upon these documents are barred by the Settlement Agreement in Posey I.

In the analysis that follows, the documents that comprise HipSaver Exhibits 1 and 2 divided into three categories, namely (i) those whose use began and ended prior to the Settlement Agreement, (ii) those that Posey was actively disseminating on the effective date of the Settlement Agreement, and (iii) those that contain statements that are identical, or very nearly identical, to statements contained in advertising that Posey was actively disseminating on the effective date of the Settlement Agreement.[1]

**A.   HipSaver's Claims Against Posey Based Upon Posey's Publication and Dissemination of Allegedly False Statements Prior to the Effective Date of the Settlement Agreement Are Barred**

It is undisputed that Posey's publication and dissemination of the following materials <u>began and ended</u> prior to the effective date of the settlement:

| Opp. Exh. No. | Page No. | Description | Bates No. |
|---|---|---|---|
| 1 | 1.02 | Partial Posey Sales Flyer, part no. M6023 | PC 3009 |
| 1 | 1.03 | Partial Posey Sales Flyer, part no. M6023 | PC 3007 |
| 1 | 1.05-1.06 | Email from Yates to Weaver dated July 27, 2001 and accompanying chart | PC 0853, PC 0852 |
| 1 | 1.07 | Partial 2002 Posey Patient Safety and Restraints Catalog | PC 1805 |
| 1 | 1.08-1.09 | Complete Posey Sales Flyer, M6023 | PC 3006-07 |
| 1 | 1.10-1.11 | Partial 2002 Posey Restraint Alternatives Catalog | PC 1029-30 |

---

[1]     The pages of HipSaver Exhibits 1 and 2 are not individually numbered. Thus, referring to individual pages or documents is confusing and cumbersome. For ease of reference, HipSaver Exhibits 1 and 2 are contained in Posey's Opposition Appendix as Exhibits 1 and 2 and the individual pages are numbered 1.01 – 1.39 and 2.0, respectively. Page citations are to these exhibits.

| 1 | 1.12-1.13 | Partial 2002 Posey Restraint Alternatives Catalog | PC 1031-32 |
|---|---|---|---|
| 1 | 1.14-1.15 | Back cover and partial copy of page 17 of 2003 Posey catalog, CATLRF03 | PC 0410-11 |
| 1 | 1.16-1.19 | Complete 4-page Posey "Tight Rope Walker" Sales Flyer, M6079 | PC 1806-09 |
| 1 | 1.20-1.21 | Complete Posey Sales Flyer, MK1162 | PC 1025-26 |
| 1 | 1.22-1.23 | Partial Posey "Tight Rope Walker" Sales Flyer, M6079 | PC 0408-09 |
| 1 | 1.24-1.26 | Partial 2003 Posey Complete Healthcare Catalog | PC 1033-35 |

*See* Declaration of Victoria Gay Lewis, ¶¶ 9-10, 12-16 and 22-23.

The Lanham Act and Chapter 93A claims HipSaver is asserting in this case with respect to the foregoing materials are obviously "related" to the claims HipSaver asserted in Posey I. Moreover, the claims asserted here obviously "could have been asserted" in Posey I. Because Posey's use of these materials began and ended prior to the effective date of the Settlement Agreement, any claim based upon their publication or dissemination fails as a matter of law.

**B. HipSaver's Claims Against Posey Based Upon Posey's Post-Settlement Use of Any Advertising Materials That It Was Publishing Or Disseminating On the Effective Date of the Settlement Agreement Are Also Barred**

When the parties settled Posey I, they intended to release each other from any claims arising out of the post-settlement publication or dissemination of any advertising statements that either party was publishing or disseminating at the time of the settlement. After all, Posey would never have paid HipSaver $360,000 to settle Posey I if it thought it was subject to being sued the day after the settlement for making the very same statements it was making the day of the settlement. *See* Declaration of Ernest Posey, ¶¶ 6-7 (submitted in support of Posey's own motions for summary

judgment). As is pointed out above, counsel for HipSaver has already conceded the point. Posey App. Exh. 8, at 3:17-5:12.

It is undisputed that Posey was publishing and disseminating the following at the time of the settlement:

| Opp. Exh. No. | Page No. | Description | Bates No. |
|---|---|---|---|
| 1 2 | 1.04 2.01 | 2001 Promotional Videotape entitled "Hipsters III" | None |
| 5 | | Complete 4-page Tight Rope Walker Flyer, M6079 | PC 1810-13 |
| 1 | 1.27-1.28 | Complete 2-sided Posey "EZ On Hipsters" Instruction Sheet, M5017 | HS2-0818 HS2-0819 |

See Declaration of Victoria Gay Lewis, ¶¶ 11, 17, 25.

Since the parties intended to permit each other to continue disseminating advertising matter that they were publishing as of the effective date of the Settlement Agreement and since Posey was actively disseminating the promotional materials listed immediately above at the time of the Posey I settlement, Posey was completely within its rights to continue doing so following the settlement. Therefore, to the extent HipSaver's motion for partial summary judgment on its Lanham Act claim is based upon the continued publication of these materials, the motion must be denied.

### C.    HipSaver's Claims Against Posey Based Upon Posey's Post-Settlement Publication Of Statements In Any Advertising That Were Being Disseminated On the Effective Date of the Settlement in Posey I Are Also Barred

Any claim based upon advertisements that were first published after Posey I settled and which contain statements that are the same, as or substantially the same as, statements that were being published at the time of the settlement should also be barred. In this regard, the Posey "EZ On Hipsters" Instruction Sheet, Posey part no. M5017, see Opp. App. Exh. 1, Pages 1.27 and 1.28,

was actively being distributed by Posey at the time of the Posey I settlement. It stated the following

with respect to the Garwood Testing:



See Opp. Exh. 1, Page 1.28. (hereafter, the "Garwood Statement").

Moreover, the Tight Rope Walker Flyer, Posey part no. M6079, see Opp. App. Exh. 5,

which was being disseminated at the time of the settlement, stated the following regarding Posey

Hipsters:

# POSEY HIPSTERS
# PROTECT AGAINST INJURY
# FROM FALLS

See Opp. Exh. 5 (hereafter, the "Hipster Statement").

All of the following were published and disseminated after the Posey I settlement. They

each contain statements that are the same as, or substantially the same as, the Garwood and/or the

Hipster Statements that were being made at the time of the settlement:

| Opp. Exh. No. | Page No. | Description | Bates No. |
|---|---|---|---|
| 1 | 1.29-1.30 | "EZ On Hipsters" Instruction Sheet, M5017 (identical Garwood Statement) | PC 1071-72 |
| 1 | 1.32-1.35 | Complete 4-page "Tight Rope Walker" Flyer, M6079 (identical Garwood Statement; nearly identical Hipster Statement) | PC 1743-46 |
| 1 | 1.31 and 1.36-1.37 | Partial and Complete Posey 4-page "Tight Rope Walker" Flyer, M6079 (nearly identical Garwood and Hipster Statements) | HS-0063, PC 0400-01 |

| 1 | 1.38-1.39 | Hipsters Instruction Sheet, M5139 (nearly identical Garwood Statement) | HS-0058-59 |
|---|---|---|---|

Lewis Decl., ¶¶ 19, 20, 27, 28.

HipSaver's contention that it is entitled to partial summary judgment with respect to the documents set out immediately above, is based upon the fact that they all contain the Garwood Statement, the Hipster Statement, or both. However, as part of the settlement, the parties intended to permit each other to continue publishing those statements. Therefore, the publication of these materials is simply not actionable.

In sum, **all** of the documents that HipSaver contends entitle it to partial summary judgment on its claims because they contain literally false statements, were either (i) published and distributed prior to the settlement of Posey I, (ii) being actively published and disseminated at the time of the Posey I settlement, or (iii) contain statements that were identical to or virtually identical to statements that Posey was actively publishing and disseminating at the time of the Posey I settlement. Thus, HipSaver's motion for partial summary judgment of liability on its Lanham Act and Chapter 93A claims must be denied.

## V.   EVEN IF HIPSAVER'S CLAIMS AGAINST POSEY WERE NOT BARRED, HIPSAVER CANNOT MEET ALL OF THE ELEMENTS NECESSARY TO ESTABLISH LIABILITY FOR FALSE ADVERTISING UNDER THE LANHAM ACT

On its motion, HipSaver is asking the Court to adjudicate four of the five elements it must establish to prevail on this claim, i.e., (1) literally false statements by Posey, (2) materiality, (3) tendency to deceive, and (4) interstate commerce. It also says that adjudication of the final element, damages, should be deferred. Posey concedes the fourth (i.e., interstate commerce) element of this claim, but since HipSaver has no damages and Posey stopped making references to the Garwood

Testing in 2005, Posey disagrees that adjudication of the damages element should be deferred. Thus, the discussion below will address the first, second, third and fifth elements of this claim.

### A.   First Element – Literally False Statements

In support of its motion, HipSaver has simply lumped together 40 pages of materials that Posey has disseminated at various times over a five-year span and presented them to the Court as a whole. *See* HipSaver Exh. 1. These materials include portions of Posey catalogs from 2002 and 2003, a "screenshot" from a 2001 video, a single email from 2001, several product instruction sheets for the period from 2003-2005, several sales flyers for the period from 2001-2005 and, even, fragments of some of the foregoing. *See* Lewis Decl., ¶¶ 5-30. It has then extracted isolated sentences or partial sentences from these materials and then, having taken them completely out of context, asked the Court to rule that the materials out of which they are taken are literally false.

HipSaver's approach is completely wrong. First of all, the Court cannot consider all of Posey's materials as one. Doing so assumes that all purchasers will be exposed to all of those materials. *See, e.g., Johnson & Johnson*, 299 F.3d at 1248 (trial court's evaluation of three advertisements in concert was error because it assumed each consumer would be exposed to each advertisement). Second, the materials were distributed at various times over a five-year time frame and it is exceedingly unlikely that purchasers would, for example, use Posey's 2002 catalog to interpret a sales flyer from 2005. *See Johnson & Johnson*, 299 F.3d at 1248 n. 4 (material viewed at different times may not be analyzed together).

The correct approach in evaluating Posey's advertising materials is to look at the entirety of each piece of promotional matter, as it would likely have been viewed by purchasers or prospective purchasers. *Johnson & Johnson*, 299 F.3d at 1248 (citing *Castrol, Inc. v. Pennzoil Co.*, 987 F.2d 939, 946 (3d Cir. 1993)). Because HipSaver has completely failed to set forth any coherent analysis of Posey's materials as they were likely to have been viewed by likely purchasers, it has failed to sustain its burden on this motion. For this reason alone, its motion should be denied.

Notwithstanding the fact that HipSaver has failed to carry its burden on this motion, Posey will address the truth or falsity of the only three documents that are the subject of HipSaver's First Amended Complaint, i.e., Exhibits "A", "B" and "C", attached to this memorandum. The Court

should take particular note of the fact that all publication and distribution of these documents ceased long ago.

**1.        Exhibit "A" – "Posey Hipsters" Instruction Sheet**

The attached Exhibit "A" is identical to the instruction sheet shown on Pages 1.38 and 1.39 of Exhibit 1 of Posey's Opposition Appendix.  Garwood Statement appears inconspicuously on the back side at the bottom.  Taken as a whole, the Garwood Statement essentially says that Posey's Hipsters have been proven effective as a consequence of the Garwood Testing.  It also says "an independent laboratory study" (i.e., the Garwood Testing), was conducted "to determine the most effective impact absorbing material", that the Garwood Testing was intended to simulate a fall causing direct impact to the hip and that it was also intended to simulate the fall of a 120 lb. person from a height of 36".  It further generally describes the Garwood test methodology (a guided drop test).  It also makes statements comparing the "g's" generated during the test to the "g's" generated under various other scenarios.  It concludes with a statement that, "In this extreme test, the low profile Posey Hipster reduced the impact force on average by 90% and showed excellent energy absorption."  The advertisement does not mention any other companies or their products.

HipSaver criticizes the Garwood Statement on numerous grounds.  In order, they are:

**a.        The "Simulated Fall" Criticism**

HipSaver contends that the Garwood Testing was not a simulation of a fall causing impact to the hip.  HipSaver then says that because the Garwood Testing did not simulate a fall, all claims regarding the Garwood Testing must be literally false because the testing does not permit any conclusions about Posey's hip protectors.

There is no dispute that Posey's statement that the Garwood Testing simulated a fall was a poor choice of words.  However, the fact that the testing did not simulate a fall does not mean that the results of the Garwood Testing are invalid.  Neither does it mean that the test cannot be used to draw any conclusions about Posey's products.  *See, e.g., Johnson & Johnson Vision Care*, 299 F.3d at 1249 (the fact that a study is imperfect does not render the defendant's advertisements false); *L &*

Case 1:05-cv-10917-PBS   Document 182   Filed 01/08/07   Page 19 of 27

*F Prods. v. Proctor & Gamble, Co.*, 845 F.Supp. 984, 994 (S.D.N.Y. 1994) (tests were not biased because they were imperfect).

Courts need to give defendants leeway to advertise their test results, even imperfect ones, particularly where, as here, there is no intent to deceive. *Rhone-Poulenc*, 93 F.3d at ___. And here, Posey's technical expert, Mr. Ebramzadeh, has opined that despite the fact that the Garwood Testing did not simulate a fall, it was a valid method of determining the relative impact absorption properties of the various materials tested. Opp. App. Exh. 11, at unnumbered pages 2, 8 (Ebramzadeh Rebuttal Report).

HipSaver itself makes numerous statements on its Internet website about the effectiveness of its garments based upon the testing of its pads. Posey tested its pads and, if it is appropriate for HipSaver to draw conclusions and to make statements about its garments based upon the results of the tests on its pads, then it should be heard to complain that Posey is doing the same thing.[2]

Finally, Posey notes that both sides' experts agree that the Garwood Testing did not simulate the fall of a 120 lb. person falling from 36". The forces generated during the testing were many times greater that the forces reported in published studies and HipSaver has provided no authority that an advertiser may be held liable for false advertising for conducting a test that is **more** severe than it advertises.

### b.    The "Most Effective Impact Absorbing Material" Criticism

HipSaver says that the statement that "[a]n independent laboratory study was conducted to determine the most effective impact absorbing material" is literally false because the material Posey ultimately chose for its pads placed third in the Garwood Testing and the entire Posey Hipster garment was never tested. There is no merit to HipSaver's position.

First, Posey did not use just the relative rankings of the tested materials in making its decision of which one to use for its pads. As Victoria Lewis, Posey's Fall Management Products Product Manager, testified at deposition, the goal of the Garwood Testing was to help Posey select the "best" material to use in its hip protectors by determining the impact properties of the various

---

[2]    HipSaver's criticism of the Garwood Testing on this ground is another example of the fact that it is living in a glass house.

materials Posey was considering using in its Hipster pads. After looking at the impact properties of the various materials tested and taking into consideration other factors, such as comfort, Posey picked one of the materials tested to use in its pads. *See* Opp. App. Exh. 12, at 48:10-49:13 (partial transcript of Lewis deposition).

Taking into consideration the impact absorption properties of the materials, comfort and price, the term "most effective" is entirely subjective and a matter of opinion. Thus, the statement that Posey did a test to determine the "most effective" material is not even actionable. *See, e.g., Coastal Abstract Serv.*, 173 F.3d at 731 (to be actionable, statement must be "specific and measurable").

Second, the Garwood Statement says Posey conducted a test to determine the "most effective" material. It does not say that Posey picked the material that placed first in the relative rankings of those tested. Therefore, the statement is simply not false. Finally, as is noted above, the fact that entire Hipster garments were not tested is irrelevant. The pad is the protective element in a hip protector garment and when it is in place in the garment it is covered merely by a layer of fabric. Thus, it is entirely appropriate to draw conclusions from, and to make statements about Posey's products based upon, the results of tests on the pads.

c.      **The "Proven Effective In Laboratory Test" and "Excellent Impact Absorption" Criticisms**

In the Garwood Statement, HipSaver also objects to the banner "Posey Hipsters Proven Effective in Laboratory Test" and the phrase in the body of the Statement that in the Garwood Testing the "Posey Hipster . . . showed excellent energy absorption" on the grounds that (i) Posey's entire garments were not tested, and (ii) the Garwood Testing did not take into account the size or the positioning of the Posey pads in the garments.

Once again, the criticism of the Garwood Statement on the ground that Garwood did not test entire garments is not justified. The "garment" is akin to a pair of underwear with a protective pad. Posey tested its protective pads it is entirely appropriate to make statements about the garments based upon testing of the protective elements. As for HipSaver's criticism that the Garwood testing did not take into account the size or placement of the pads, HipSaver has cited absolutely no

evidence for its position that the results of the Garwood Testing is unreliable because it did not take into consideration the size or the placement of the pads.

The Garwood Testing was intended to, and it did, measure the ability of various materials to reduce impacts. The testing showed that the material chosen by Posey for its hip protector pads reduced impact by 90%. Posey's expert says that notwithstanding whatever flaws there may have been in the testing, the results are reliable. HipSaver's expert disputes it. Therefore, whether the "proven effective in laboratory testing" claim is false is for the trier of fact.

The statement that the Hipsters showed "excellent impact energy absorption", on the other hand, is entirely subjective. 90% may be considered "excellent" by some, but not by others. The same would be true if the reduction were only 50%. The bottom line is that the statement that the Hipsters showed "excellent impact energy absorption" is not actionable.

### d.      The "False Overall Impression" Criticism

HipSaver's final criticism is that the Garwood Statement creates a false overall impression that the Posey Hipster was lab tested in a fall simulation and found to be the most effective hip protector. Suffice it to say, if HipSaver had wanted to offer evidence of the "impression" an audience would receive from the ad, it should have done a survey.

### 2.      Exhibit "B" – The "Tight Rope Walker Ad

The Tight Rope Walker Ad attached as Exhibit "B" depicts the inside two pages of Posey's so-called Tight Rope Walker Flyer. The entire flyer is set forth on Pages 1.36 and 1.37 of Opp. Exh. 1 (bearing Bates nos. PC0400-01). The flyer was developed in response to HipSaver's complaints regarding Posey's references to the Garwood Testing. It was used from about May 2005 until August or September 2005, when it was replaced with a flyer that made no mention of Garwood or the Garwood Testing.

Taken as a whole, the flyer is printed on a single piece of paper measuring 11" by 17". The paper is folded lengthwise so that it becomes a brochure consisting of four pages measuring 8 ½" by 11". At the top of the inside left-page (i.e., page 2), there is a banner reading "POSEY HIPSTERS HELP PROTECT AGAINST INJURIES FROM FALLS". Immediately below the banner is a

layout that includes some text and some "bullet points" that tout the reduction in risk that can be achieved by wearing Hipsters with foam pads that cover the hips, the comfort of Hipsters, their washability and the fact that they can be worn discreetly under clothing.  There are also three pictures of people wearing Hipsters.  Neither the text, the "bullet points" nor the pictures makes any reference to any testing.

A modified version of the Garwood Statement appears at the very bottom of the page. However, the first sentence in the original was changed to read, "Posey engaged Garwood Laboratories to conduct testing to select a comfortable and effective impact absorbing material." Since the balance of the Garwood Statement is the same as the Garwood Statement described above, the points made above with respect to HipSaver's criticisms apply with equal force to this document.

As for the "POSEY HIPSTERS HELP PROTECT AGAINST INJURIES FROM FALLS" banner at the top of the page, Posey notes that pages 2 and 3 of the flyer would most likely be viewed at the same time (i.e., the flyer would be "open").  Considered in context, given the amount of information being presented on those pages, the banner is an immediate attention-grabber and it is clearly non-actionable puffing.  Even if it were not puffing, however, since the statement is not a "tests prove" claim, HipSaver's burden would be to affirmatively disprove it, which it has not done.

### 3.       Exhibit "C" – The 2001 Email and Accompanying Page

On its face, the 2001 Email expresses the author's opinion that the Hipster is the best product on the market.  The statement is not actionable.  But it makes no difference.  Any claim based upon the email or the accompanying page is barred by the Settlement Agreement.

### B.       Second Element – Materiality

HipSaver contends that the materiality of the allegedly false statements is not in issue. Posey disagrees.  The Garwood Statement contains two inaccuracies.  The first is the statement that the Garwood Testing simulated a fall; the second is that the weight in the guided-drop test simulated a 120 lb. person falling from 3 feet.  (It was actually a more extreme fall.)  These are misstatements about the test itself, not about an inherent quality of Posey's product.  Therefore, HipSaver must

present evidence that these statements would influence purchasing decisions, which it has not done. On this ground alone, its motion should be denied.

### C.      Third Element – Deception or Tendency to Deceive

Ordinarily, a false advertising claimant must demonstrate that the defendant's misrepresentations deceived or had a tendency to deceive a substantial portion of the consuming public. Where the defendant's advertising claims are literally false, however, consumer deception is presumed. *Cashmere*, 284 F.3d at 314-315. Posey contends that the only inaccuracies in its ads are the two "simulation" statements and, for purposes of this motion, it concedes that the presumption applies to those statements.

### D.      Final Element – Injury Or Likelihood of Injury

To prevail on its claim, HipSaver needs to establish injury or likelihood of injury as a consequence of Posey's accused advertising. Since HipSaver has suffered no injury, it is not entitled to recover any money on its Lanham Act claim. Moreover, Posey stopped making any references to the Garwood Testing in its advertising in August or September 2005 – almost 18 months ago. Therefore, there is no likelihood that it will be injured in the future.

There is no reason to further prolong the agony of litigating HipSaver's Lanham Act claim. Since HipSaver cannot establish the essential elements of the claim, the Court should summarily adjudicate it in Posey's favor now.

## VI.      HIPSAVER'S CHAPTER 93A CLAIM IS BARRED, NO UNFAIR ACTS OCCURRED "PRIMARILY AND SUBSTANTIALLY" IN MASSACHUSSETS AND IT HAS NO DAMAGES

HipSaver cannot prevail on its Chapter 93A claim unless the conduct about which it complains occurred "primarily and substantially" within Massachusetts. That requirement is lacking here because Massachusetts is not the "center of gravity" of the circumstances giving rise to this case.

As far as the factors relevant to the determination of the "center of gravity" are concerned, *see RJG Associates, Inc.*, 338 F.Supp.2d at 234, the "source" of the alleged wrongful conduct in this case is the actor about whom HipSaver complains, i.e., Posey. It is undisputed that Posey is a California corporation, that its place of business is in Arcadia, California, that it has no offices in Massachusetts, that the Garwood Testing about which it complains occurred in California, that the advertising at issue was developed by Posey personnel in California and that the advertising was disseminated from California.

Where the misconduct was "received", *see id.*, may be construed as the places to which the accused advertising has been sent or in which it has been distributed. As is set forth in the accompanying declaration of Charles Nail, Posey distributes products and advertising nationwide. However, even assuming Posey sent allegedly false advertising to every single one of its Hipster customers, 3% of them – a total of 98 - are located in Massachusetts. Nail Decl., ¶¶ 4-6.

Where the alleged misconduct was received might also be construed as the place where HipSaver suffered a loss. However, as is set forth in Posey's separate motion for summary judgment on Hipsaver's claims, HipSaver has never identified any losses it has suffered as a consequence of Posey's allegedly false advertising.

The place where the accused conduct was "acted on", *see id.*, can only be construed as the place where people were influenced by Posey's allegedly false advertising to purchase Posey Hipsters. As is set forth in the accompanying Nail declaration, Posey's sales of Hipsters for the entire period from September 2004 through the end of 2005 totaled $1,902,482. Nail Decl., ¶ 6. However, only $86,796, or 4.6%, of these sales were to Massachusetts customers. One of those customers, Alimed, is a distributor. Nail Decl., ¶¶ 4-6.

Alimed is one of the leading suppliers to the rehabilitation industry in the nation, *id.*, and no serious claim can be made that this major distributor buys Posey's Hipsters on the strength of its allegedly false advertising. On the contrary, as Posey's marketing expert, Gary Reich, has opined, Posey's sophisticated customers purchase on the basis of quality, cost, reputation, market penetration and acceptance. *See* Posey App. Exh. 27, ¶ 26 (Expert Report of Gary Reich).

When Alimed's purchases of Hipsters (totaling $41,997) are subtracted from Posey's Massachusetts sales, Posey's Hipster sales in Massachusetts equal a mere **2.4%** of its Hipster sales. *Id.* As a matter of law, this miniscule percentage of sales is not sufficient to establish that any unfair conduct occurred "primarily and substantially" in Massachusetts. *See Straumann Co. v. Lifecore Biomedical Inc.*, 278 F.Supp2d 130, 140 (D. Mass. 2003) (where only 2.3% of sales occurred in Massachusetts, alleged unfair competition did not occur primarily and substantially in Massachusetts). Even if the Alimed sales were not subtracted, Posey's sales would still be insufficient to permit a find that the challenged conduct occurred "primarily and substantially" within Massachusetts.

Finally, an aggrieved commercial entity has standing under Chapter 93A only if it has suffered a "loss of money or property". *Skinder-Strauss Associates, v. Massachusetts Continuing Legal Education*, 914 F.Supp. 665, 682 (D. Mass. 1995) (Saris, J.). HipSaver wants to defer the issue of damages. This is because it has suffered none. Thus, the Court should adjudicate the issue in Posey's favor now.

HipSaver is not entitled to partial summary judgment on its Lanham Act and Chapter 93A claims. Posey is. At the very least, however, there are material issues of fact that preclude any grant of summary judgment in HipSaver's favor.

## VII.   **CONCLUSION**

For the foregoing reasons, HipSaver's motion for partial summary judgment must be denied.

Dated: January 8, 2007                    J.T. POSEY COMPANY

By its attorneys,

/s/ Douglas H. Morseburg
Jeffrey G. Sheldon (CA Bar No. 67516)
Douglas H. Morseburg (CA Bar No. 126205)
SHELDON MAK ROSE & ANDERSON PC
225 South Lake Avenue, Suite 900
Pasadena, CA  91001
(626) 796-4000

Anthony J. Fitzpatrick (BBO # 564324)

DUANE MORRIS LLP
470 Atlantic Avenue, Suite 500
Boston, MA 02210
(617) 289-9200

## CERTIFICATE OF SERVICE

I certify that this document has been filed through the Electronic Case Filing System of the United States District Court for the District of Massachusetts and will be served electronically by the court to the Registered Participants identified in the Notice of Electornic filing.

January **8**, 2007

/s/ Donald K. Piper
Donald K. Piper