# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

_____
                                              )
THE HIPSAVER COMPANY, INC.,                    )
                Plaintiff / Counterclaim Defendant,    )
                                              )
v                                             )        Civil Action No. 05-10917 PBS
                                              )
J.T. POSEY COMPANY,                            )
                Defendant / Counterclaim Plaintiff.    )
                                              )
_____)

**HIPSAVER'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR PARTIAL
SUMMARY JUDGMENT ON THE COMPLAINT AND IN FURTHER OPPOSITION
TO POSEY'S CROSS MOTION ON THE COMPLAINT**

## INTRODUCTION

This lawsuit challenges Posey's nationwide campaigns of literally false advertising, begun in 2001, revived in late 2004, and intent on capturing the market by materially misrepresenting the effectiveness of the Posey knock off hip protector. Posey's Garwood ads pursued common themes; keyed to laboratory testing for apparent legitimacy, and were repeated thousands upon thousands of times—in catalogs, flyers, video, and on the Internet.

While this Reply addresses a number of issues raised by Posey's effort to sew confusion and distract the court from Summary Judgment for HipSaver, it is important to remain focused on the undisputed and dispositive fact: HipSaver, Posey, and the parties' biomechanical experts agree that <u>Posey's fundamental advertising claim that it created a test that "would simulate a fall causing direct impact to the greater trochanter" is false</u>. *See* HipSaver's Memorandum in Support of its Motion for Summary Judgment on the Complaint [**D.N.** 156] at 8-9; Posey's Opposition [**D.N**. 182] at 13, 17. Accordingly, every statement purportedly supported by this alleged scientific testing is literally false. No amount of misdirection or confusion will change the outcome.

## ARGUMENT

### A.    Posey Has Fair Notice of All Claims In This Lawsuit

Posey leads off its Opposition to HipSaver's Motion for Partial Summary Judgment on the Complaint by claiming that it was not given fair notice of HipSaver's challenge to all versions[1] of the Garwood ads that comprise Posey's false advertising campaign. This is a recycled misdirection ploy that surfaced a year and a half ago in a hearing on Posey's Motion to Dismiss HipSaver's Complaint for alleged failure to plead "all of the required elements of" the

---

[1]  Prior to discovery, HipSaver had only two examples of the Garwood ads and did not appreciate the full extent of Posey's campaign. In discovery, Posey produced more than 50 print, Internet, and video versions of the Garwood ads.

claims set out in the Complaint. Posey's Motion to Dismiss [**D.N.** 4]. At the Motion Hearing on July 12, 2005, the court denied Posey's Motion to Dismiss. *See* July 12, 2005, Hearing Transcript [**D.N**. 29] at 7. This court should now reject Posey's argument a second time.

Posey's argument is without merit. HipSaver identified the Garwood ads and the literally false statements contained in the ads in the demand letter process preceding this lawsuit. When Posey declined to withdraw the Garwood ads, HipSaver's Complaint challenged the Garwood ads and Posey's "nationwide campaigns of false, deceptive, misleading advertising aimed at the HipSaver Company" dating from 2001. *See* Complaint [D.N. 1] at ¶¶ 11,12,14,22,24,26. [2]

Following filing of the Complaint, Posey engaged the court in a plaintive and tortuous argument that it did not know what advertising was at issue in this lawsuit—ignoring the two versions of the challenged Garwood ad produced by HipSaver in connection with the demand letter and the language in HipSaver's Complaint. To allay Posey's feigned confusion, the court directed HipSaver to review the Garwood ads it was then aware of together with the so-called "revised" ad called out by Posey at the hearing. In response, HipSaver declared, in part:

> The HipSaver Company objects to the revised advertisement as literally false and as simply *the latest iteration in a chronic campaign of false and deceptive advertising*. The HipSaver Company's Complaint stands against both the first of the Garwood Laboratories advertisements and against the revised advertisement.

Plaintiff's July 19, 2005, Statement [**D.N.** 25] at 6 (emphasis added). HipSaver's July 19, 2005, Statement continued for six pages with a comprehensive specification of the literally false statements then identified in the Garwood ads. Posey never responded to the Statement and never again, prior to this Opposition, suggested, implied, or otherwise claimed lack of fair notice.

---

[2]  As a matter of law, all that is required of a complaint to satisfy the fair notice requirement of federal pleading is sufficient factual allegation "either direct or inferential" of the elements of the claim needed for recovery under "some actionable legal theory". *Centro Medico Del Turabo, Inc. v Feliciano De Melecio*, 406 F. 3d 1, 5 (1st Cir. 2005). Unquestionably, HipSaver has far exceeded this modest requirement. Moreover, since the purpose of discovery is to obtain substantive disclosure of all facts at issue and Posey has had extensive discovery, there is no basis for the Defendant's groundless objection. *See Swierkiewicz v Sorema N.A.*, 534 U.S. 506, 514 (2002).

Eighteen months later and after exhaustive discovery, Posey again pleads lack of fair notice. Given the demand letter process, the Complaint, and HipSaver's July 19, 2005, Statement, Posey cannot have failed to recognize that HipSaver's challenge in this lawsuit applies to all versions of the Garwood ads. Posey's objection should be rejected.

**B.    HipSaver's Literally False Advertising Challenge is Not a Challenge to "Extracted, Isolated" or "Out of Context" Statements**

Although the Garwood ads vary in form from one to another, the ads contain almost identical statements and claims. HipSaver provided the court with multiple versions of the advertisement for the very purpose of demonstrating Posey's pervasive advertising campaigns. *See* **Exh**.1 to HipSaver's Memorandum [**D.N**. 156]. With the exception of one ad sent to the Veterans Health Administration and pleaded separately in the Amended Complaint, every Garwood ad incorporates the six common themes briefed in HipSaver's summary judgment papers. HipSaver's Memorandum [**D.N.** 156] at 7. HipSaver challenges each false statement as well as the advertisement as a whole. To suggest that HipSaver has challenged the ads in an "isolated, extracted", or "out of context" fashion is a gross misstatement of both the Garwood ads and HipSaver's challenge.[3]

**C.    The Garwood Test is Invalid; Every Advertising Claim Based on the Test is False**

All advertising claims explicitly or implicitly related to the Garwood test are literally false establishment claims. An establishment claim "can be proven false by showing that the cited tests do not, in fact, establish the proposition claimed." *BASF Corp. v. Old World Trading Co., Inc.*, 41 F.3d 1081, 1090 (7th Cir. 1994). Posey's establishment claims reference a test simulating a fall with impact to the hip bone, and all of the challenged advertising claims key to this unsupported scientific claim. Posey and its expert have conceded that the tests do not

---

[3]  The advertisements also contain false claims related to launderability and fit. HipSaver also challenges these claims; however, these challenges are not raised on Summary Judgment.

simulate a fall. *See* **Exh.** 17, HipSaver's Opposition to Defendant J.T. Posey Co.'s Motion for Summary Judgment on Plaintiff's Complaint [**D.N**. 179]; Nov. 10, 2006, Deposition of Edward Ebramzadeh, PhD at 46-48; Posey's Opposition [**D.N**. 182], pp. 13, 17. Therefore, the test cannot establish *any* of Posey's claims relating to effectiveness or protection against falls or impact energy absorption related to falls. Accordingly, each and every claim is literally false.

Posey argues that its flagrantly false claims are merely a "poor choice of words" and that the study is in fact valid for some purpose. But, even if the tests were valid or reliable support for some other proposition (they are neither), "[i]f the plaintiff can show that the tests…do not establish the proposition asserted by the defendant, the plaintiff has obviously met its burden" of showing literal falsehood. *Castrol, Inc. v. Quaker State Corp.*, 977 F.2d 57, 63 (2d Cir. 1992). Here, tests claiming to simulate a fall do not simulate a fall and simply cannot support claims relating to the effectiveness of Posey's hip protector in a fall. These unsupported claims are literally false.

Furthermore, because Posey's advertising claims are literally false, HipSaver is not required to submit survey evidence to show consumer reaction. *Cashmere & Camel Hair Mfrs. Inst.*, 284 F.3d 302, 314 (1st Cir. 2002)("When a plaintiff demonstrates that a defendant has made a material misrepresentation that is literally false, there is no need to burden the plaintiff with the onerous task of demonstrating how consumers perceive the advertising.")

**D**. **HipSaver Agrees that HipSaver's Damages Claim is Disputed**

HipSaver has been seriously injured by Posey's false advertising. HipSaver's evidence of injury and damage has been fully briefed in HipSaver's Opposition to Defendant J.T. Posey Company's Motion for Summary Judgment on Plaintiff's Complaint [**D.N**. 179] at 15-18. However, HipSaver's Motion for Summary Judgment seeks only *partial* summary judgment,

acknowledging that the parties dispute injury and damages, and recognizing that this issue is appropriately reserved for trial.  [**D.N**. 154, 156]

E.    **HipSaver's Claim under Chapter 93A Survives**

Recognizing that issues of fact remain, HipSaver has *not* moved for summary judgment on its c. 93A claim for unfair and deceptive advertising.  These issues remain for trial. And while it is Posey's burden to prove there is no claim under c.93A, *Compagnie de Reassurance d'lle de France v New England Reinsurance Corp.*, 57 F. 3d 56, 90 (1st Cir. 1995), HipSaver has briefed these issues and demonstrated that Massachusetts is the "center of gravity" for Posey's false advertising and the focal point of impact and injury: Posey's advertising is aimed at HipSaver, a Massachusetts business and Posey's only significant competitor; Posey has repeatedly papered Massachusetts distributors and customers with its false Garwood ads; and, HipSaver has suffered significant loss of business from potential Massachusetts customers.  *See* HipSaver's Opposition to Defendant J.T. Posey Company's Motion For Summary Judgment on Plaintiff's Complaint [**D.N**. 179] at 17-19.  Moreover, as Posey notes in the Declaration of its comptroller, Mr. Nail, Posey enjoyed hip protector sales of more than $86,000 to some 98 customers in the Commonwealth from September 2004 through the end of 2005 alone.  *See* Jan. 8, 2007, Nail Declaration (filed under seal).  About half of these sales were to Alimed, the Massachusetts based health care giant with some 600 health care facility customers in the Commonwealth.  This is the same company refused to distribute HipSaver products.  *See* Jan 8, 2007, Declaration of Edward Goodwin [**D.N**. 183], Exh. 2 at ¶ 14 ("Goodwin Decl.").

Omitted from Mr. Nail's declaration is the extent of Posey's false Garwood advertising, which undoubtedly blanketed *all* of its customers and prospective customers in Massachusetts, stand alone facilities and national health care chain operators and distributors alike, including Manor Care, LifeCare, Kindred, McKesson, Cardinal Health, Medline, and Gulf South, all of

5

which operate in Massachusetts and largely refuse to purchase from HipSaver.  Goodwin Decl. at ¶¶ 15-16. Without doubt, Posey's efforts to generate, sustain, and increase sales in Massachusetts have been and remain intense, thus underscoring the fact that the center of gravity is Massachusetts.

**F.      HipSaver's Claims Are Not Barred by the 2004 UCLA Litigation and Settlement Agreement**

      1.    HipSaver's 2005 Garwood Claims are Not Related to HipSaver's 2004 UCLA Claims

In 2004, HipSaver challenged Posey's "UCLA White Paper" false advertising campaign. The matter was litigated, settled, and dismissed with prejudice.  As fully briefed in HipSaver's Opposition to Posey's Cross Motion For Summary Judgment on the Complaint [**D.N**. 179] at 3, 7-8, the 2004 litigation was limited to HipSaver's challenge to Posey's distribution of the UCLA advertisement and Posey's counterclaim against HipSaver's web-site.  HipSaver's Complaint specifically challenged the UCLA advertising campaign; the parties efforts to resolve this case focused exclusively on the UCLA ad; and, the parties settlement agreement focused exclusively on Posey's UCLA ad. Neither the litigation nor the settlement agreement contemplated any issues beyond Posey's UCLA ads and HipSaver's web-site statements.

      2.    The Garwood Advertisements Were Not in Circulation during Distribution of the UCLA Advertisement or the 2004 Litigation/Settlement

In an effort to argue that at least one version of the Garwood ads was in circulation during the 2004 litigation, Posey's product manager, Victoria Lewis, declares that Posey distributed a Garwood flyer during the litigation period even though the Garwood ads were not circulated in Posey's 2004 nationwide catalog. Jan. 8, 2007, Declaration of Victoria Lewis at ¶17 [**D.N**. 188](under seal).  But, the facts belie Ms. Lewis' declaration.  The flyer that Ms. Lewis cites is dated September 2003, placing it *before* launch of the UCLA ads; she does not cite any Garwood flyer dated 2004.  Moreover, Ms. Lewis is hard pressed to speak knowledgeably about

Posey's advertising. During her deposition, she testified to limited advertising knowledge, "I don't know. I don't sell. I'm not on the sales team. I don't know." **Exh**.1, Dec. 15, 2005, Deposition of Victoria Lewis at 22-25, 53-54. She testified further that, as far as she knows, Hipster information was only distributed through Posey catalogs. *Id.* at 24. So, how can Ms. Lewis now declare that a flyer, admittedly not part of the 2004 catalog and bearing a 2003 date, was "disseminated" during the 2004 litigation? Ms. Lewis' declaration must be questioned.

## CONCLUSION

For the reasons stated in HipSaver's Memorandum of Law in Support of its Motion for Partial Summary Judgment [**D.N.** 156] and restated here, Posey's advertising claims are literally false and the Court should grant HipSaver's motion for partial summary judgment on the issues of literal falsehood, materiality, customer confusion and distribution through interstate commerce in violation of the Lanham Act and c. 93A.

Respectfully submitted
The HipSaver Company, Inc.
By its Attorneys,

/s/ Edward J. Dailey
Lee Carl Bromberg, BBO No.: 058480
Edward J. Dailey, BBO No.: 112220
Courtney M. Quish, BBO No.: 662288
BROMBERG SUNSTEIN, LLP
125 Summer Street - 11th floor
Boston, Massachusetts 02110-1618
617.443.9292
617.443.0004 Fax
edailey@bromsun.com
January 18, 2007

### CERTIFICATE OF SERVICE

I certify that this document has been filed through the Electronic Case Filing System of the United States District Court for the District of Massachusetts and will be served electronically by the court to the Registered Participants identified in the Notice of Electronic filing.

/s/ Edward J. Dailey
January 18, 2007                                                          02820/00502 602288.1

# Exhibit 1

UNITED STATES DISTRICT COURT

FOR THE STATE OF MASSACHUSETTS

THE HIP SAVER COMPANY, INC.,            )
                                        )
            PLAINTIFF,                   )
                                        )
      VS.                               )
                                        )  NO. 05-10917 PBS
J.T. POSEY COMPANY,                     )
                                        )
            DEFENDANT.                   )
_____)
J.T. POSEY COMPANY, INC.,               )
                                        )
            COUNTERCLAIM PLAINTIFF,     )
                                        )
      VS.                               )
                                        )
THE HIP SAVER COMPANY, INC.; AND        )
EDWARD L. GOODWIN,                      )
                                        )
            COUNTERCLAIM DEFENDANTS.    )
_____)

**CONFIDENTIAL**

**CERTIFIED COPY**

DEPOSITION OF VICTORIA LEWIS

CERRITOS, CALIFORNIA

THURSDAY, DECEMBER 15, 2005

REPORTED BY:

DENISE HERFT
CSR NO. 12983

JOB NO.:
A0413NCV

*Kennedy*

C O U R T   R E P O R T E R S ,   I N C .

(800) 231-2682

**MAILING ADDRESS**
Orange County
920 W. 17th Street, Second Floor
Santa Ana, CA 92706

Los Angeles                        Central Coast
523 West Sixth Street              1610 Oak Street
Los Angeles, CA 90014              Solvang, CA 93463

UNITED STATES DISTRICT COURT

FOR THE STATE OF MASSACHUSETTS


THE HIP SAVER COMPANY, INC.,                    )
                                                )
              PLAINTIFF,                         )
                                                )
      VS.                                        )
                                                ) NO. 05-10917 PBS
J.T. POSEY COMPANY,                              )
                                                )
              DEFENDANT.                         )
                                                )
J.T. POSEY COMPANY, INC.,                        )
                                                )
              COUNTERCLAIM PLAINTIFF,            )
                                                )
      VS.                                        )
                                                )
THE HIP SAVER COMPANY, INC.; AND                 )
EDWARD L. GOODWIN,                               )
                                                )
              COUNTERCLAIM DEFENDANTS.           )
_____  )


DEPOSITION OF VICTORIA LEWIS,

TAKEN ON BEHALF OF THE PLAINTIFF, AT,

17871 PARK PLAZA DRIVE, SUITE 200,

CERRITOS, CALIFORNIA, COMMENCING AT

2:06 P.M., ON THURSDAY, DECEMBER 15, 2005,

REPORTED BY DENISE HERFT, CSR NO. 12983, A

CERTIFIED SHORTHAND REPORTER IN AND FOR

THE STATE OF CALIFORNIA, PURSUANT TO NOTICE.

APPEARANCES:

        FOR THE PLAINTIFF/          LAW OFFICES OF
        COUNTERCLAIM DEFENDANT:     BROMBERG & SUNSTEIN
                                    BY:   EDWARD J. DAILEY
                                    125 SUMMER STREET
                                    BOSTON, MASSACHUSETTS
                                              02210-1618

        FOR THE DEFENDANT/          LAW OFFICES OF
        COUNTERCLAIM PLAINTIFF:     SHELDON & MAK
                                    BY:   DOUGLAS H. MORSEBURG
                                    225 SOUTH LAKE AVENUE
                                    SUITE 900
                                    PASADENA, CALIFORNIA
                                              91101


        THE VIDEOGRAPHER:           NANCY HOTALING


        ALSO PRESENT:               ERNEST POSEY

1    IMPACT ABSORPTION PROPERTIES OF THE FOAM, THE GARMENT

2    ITSELF.

3        Q    OKAY.  IS EXHIBIT 87, IS THAT GARMENT SOLD AS

4    YOUR INSTITUTIONAL MODEL?

5        A    WHAT DO YOU MEAN BY "INSTITUTIONAL MODEL"?

6        Q    LET ME ASK YOU, NOT A TRICK QUESTION, BUT DO

7    YOU SEE THE PACKAGE THAT IT CAME IN?  IF YOU LOOK AT THE

8    BAR CODED LABEL, YOU SEE A REFERENCE TO "INSTITUTIONAL

9    MODEL."  DO YOU SEE WHERE IT SAYS "POSEY HIPSTERS

10   INSTITUTIONAL MODEL"?

11       A    STANDARD BRIEF, YES.

12       Q    YEAH.  OKAY.  WHAT DOES THAT MEAN WITH RESPECT

13   TO "INSTITUTIONAL MODEL"?

14       A    I DON'T KNOW.  THIS PRODUCT IS OUR -- WE CALL

15   THIS OUR HIGH-DURABILITY PRODUCT.

16       Q    OKAY.  DO YOU SELL EXHIBITS 85 AND 86 TO

17   INSTITUTIONS AS WELL?

18       A    YES,

19            (WHEREUPON MR. POSEY ENTERED THE DEPOSITION

20        PROCEEDINGS.)

21       MR. DAILEY:  GOOD AFTERNOON, MR. POSEY.

22       MR. POSEY:  GOOD AFTERNOON, MR. DAILEY.  HAPPY

23   HOLIDAYS.

24       MR. DAILEY:  MERRY CHRISTMAS TO YOU, SIR.

25

                                                    22

1    BY MR. DAILEY:

2        Q    CAN YOU TELL ME, IF YOU KNOW, MS. LEWIS,

3    WHETHER OR NOT YOUR COMPANY HAS STOPPED SELLING EITHER

4    EXHIBIT 85 OR 86 TO INSTITUTIONS?  AND, AGAIN, BY

5    "INSTITUTIONS" I MEAN LONG-TERM CARE FACILITIES, NURSING

6    HOMES, REHABILITATION HOSPITALS.

7        A    OKAY.  I'M SORRY, WHAT EXHIBITS ARE YOU

8    REFERRING TO?

9        Q    EXHIBIT 85 AND EXHIBIT 86, HAS YOUR COMPANY

10   STOPPED SELLING THOSE MODELS TO INSTITUTIONS?

11       A    EXHIBIT 85?

12       Q    YES.

13       A    WE HAVE STOPPED SELLING THAT PRODUCT

14   ALTOGETHER.

15       Q    OKAY.

16       A    AND IT HAS NOW BECOME EXHIBIT 86.

17       Q    OKAY.  HAVE YOU STOPPED SELLING THE PRODUCT

18   THAT IS EXHIBIT 86 TO INSTITUTIONS?

19       A    NO, WE HAVE NOT.

20       Q    WHY NOT?

21       A    BECAUSE INSTITUTIONS LIKE THE PRODUCT AND WANT

22   TO PURCHASE IT.

23       Q    DO YOU INFORM INSTITUTIONS THAT THERE ARE

24   DIFFERENT LAUNDERING INSTRUCTIONS ON THESE PRODUCTS; THAT

25   IS, 86 AND 87?

                                                        23

1          MR. MORSEBURG:  OBJECT; VAGUE AND AMBIGUOUS.

2     BY MR. DAILEY:

3          Q     IF YOU UNDERSTAND THE QUESTION.

4          A     WHAT DO YOU MEAN BY "INFORM"?

5          Q     THE TWO PRODUCTS LOOK ALIKE; IS THAT A FAIR

6     STATEMENT?

7          A     YES.

8          Q     86 AND 87; HOW IS AN INSTITUTION ABLE TO

9     DISTINGUISH WHICH PRODUCT TO PURCHASE?

10         A     THAT'S UP TO THE INSTITUTION TO DECIDE.

11         Q     DO YOU -- DOES YOUR COMPANY GIVE THE

12    INSTITUTION ANY INFORMATION?

13         A     WE GIVE THEM OUR CATALOG WITH THE PRODUCT

14    INFORMATION IN IT.

15         Q     DO YOU GIVE THEM ANY OTHER INFORMATION?

16         A     I DON'T KNOW.  I DON'T SELL.  I'M NOT ON THE

17    SALES TEAM.  I DON'T KNOW.

18         Q     THAT'S FAIR ENOUGH.  BUT YOUR TESTIMONY IS, I

19    GATHER, THAT AS FAR AS YOU KNOW YOUR COMPANY SELLS BOTH

20    EXHIBIT 86, THAT PRODUCT, AND THE PRODUCT THAT'S

21    EXHIBIT 87 TO INSTITUTIONS; IS THAT CORRECT?

22         A     YES.

23         Q     AND DO YOU KNOW OF ANY INFORMATION OTHER THAN

24    WHAT IS IN THE CATALOG THAT WOULD DISTINGUISH ONE PRODUCT

25    FROM THE OTHER?

                                                          24

```
 1          A     I'M SORRY.  CAN YOU REPEAT THAT?
 2          Q     DO YOU KNOW OF ANY INFORMATION OTHER THAN WHAT
 3     IS IN THE CATALOG -- THAT IS, YOUR COMPANY SALES
 4     CATALOG -- THAT WOULD DISTINGUISH THE PRODUCT THAT IS
 5     MARKED EXHIBIT 86 FROM THAT WHICH IS MARKED EXHIBIT 87?
 6          A     THE PRODUCT LABEL.
 7          Q     AND WHAT LABEL ARE YOU REFERRING TO?
 8          A     WITH THE CATALOG NUMBER ON IT.
 9          Q     OKAY.
10          A     ONE IS LABELED "HIGH-DURABILITY" AND THE OTHER
11     IS NOT.
12          Q     OKAY.  BUT YOU DON'T KNOW WHAT THE DIFFERENCE
13     IS BETWEEN HIGH-DURABILITY AND THE OTHER; IS THAT CORRECT?
14          MR. MORSEBURG:  OBJECT; MISSTATES HER TESTIMONY.
15     BY MR. DAILEY:
16          Q     DO YOU KNOW THE DIFFERENCE?
17          A     I BELIEVE I ANSWERED THAT ALREADY.
18          Q     OKAY.  AND WHAT ARE THOSE DIFFERENCES, IF ANY?
19          A     THAT THE PRODUCT LABELED AS HIGH-DURABILITY
20     WAS DESIGNED TO BE A MORE DURABLE PRODUCT.
21          Q     SO THAT WAS THE LITANY YOU GAVE ME BEFORE; IS
22     THAT CORRECT?
23          A     CORRECT.
24          Q     OKAY.  FINE.
25                I'M GOING TO ASK THAT ONE MORE PHYSICAL
```

25

1    CORNER IT SAYS "VICTORIA WALTERS, PRODUCT MANAGER" AND

2    THAT'S YOU; CORRECT?

3         A    YES.

4         Q    AND DID YOU PREPARE THIS DOCUMENT?

5         A    YES, I DID.

6         Q    AND TELL ME HOW YOU PREPARED THIS DOCUMENT,

7    AND IN PARTICULAR, WITH REGARD TO THE BAR CHART THAT'S

8    SHOWN ON THE PAGE?

9         A    THIS WAS THE TEST PROCEDURE FOR TESTS THAT

10   WERE -- IMPACT TESTS THAT WERE PERFORMED BY GARWOOD

11   LABORATORIES FOR POSEY COMPANY, AND THE BAR CHART IS THE

12   RESULT OR SOME OF THE RESULTS OF THOSE TESTS.

13        Q    HOW DID YOU COME TO PREPARE THIS DOCUMENT?

14        A    I DON'T RECALL.

15        Q    DO YOU KNOW TO WHOM THIS DOCUMENT WAS SENT,

16   OTHER THAN THE PARTIES THAT ARE SHOWN ON THE NEXT TWO

17   PAGES?

18        MR. MORSEBURG:  OBJECT; ASSUMES FACTS NOT IN

19   EVIDENCE, NO FOUNDATION.

20        THE WITNESS:  NO, I DON'T.

21   BY MR. DAILEY:

22        Q    OKAY.  WAS THIS DOCUMENT -- THAT IS, THE FIRST

23   PAGE OF EXHIBIT 90 -- WAS THIS GIVEN TO MARKETING AND

24   SALES PEOPLE?

25        A    TO MY KNOWLEDGE, NO, IT WAS NOT.

                                                    53

1        Q      TO WHOM WAS IT GIVEN?

2        MR. MORSEBURG:  OBJECT; NO FOUNDATION.

3        THE WITNESS:  OTHER THAN THE PEOPLE LISTED ON THIS

4   EMAIL, I DO NOT KNOW.

5   BY MR. DAILEY:

6        Q      WHO ARE -- YOU'RE GOING TO HAVE TO HELP ME

7   HERE, BECAUSE YOU KNOW NAMES BETTER THAN I DO.  WHO ARE

8   GARY PLATZMAN AND JEFFREY YATES?

9        A      GARY PLATZMAN IS THE VICE PRESIDENT OF SALES

10  FOR THE POSEY COMPANY.

11       Q      OKAY.

12       A      AND JEFFREY YATES IS A FORMER DIRECTOR OF

13  MARKETING WITH THE POSEY COMPANY.  HE'S NO LONGER WITH THE

14  COMPANY.

15       Q      WHEN DID MR. YATES LEAVE THE COMPANY?

16       A      I DON'T KNOW.

17       Q      WITHIN THE LAST YEAR?

18       A      I DON'T KNOW.

19       Q      OKAY.  AND MR. RASH IS THE PRODUCT DEVELOPMENT

20  VICE PRESIDENT?

21       A      NO.

22       Q      OR DID I PROMOTE HIM?

23       A      NO, HE'S NO LONGER PART OF DEVELOPMENT.

24       Q      HE WAS AT THE TIME?

25       A      YES.

                                                            54

STATE OF CALIFORNIA          )
                             )
COUNTY OF                    )


        I AM THE WITNESS IN THE FOREGOING DEPOSITION.

I HAVE READ THE FOREGOING DEPOSITION AND HAVING MADE

CHANGES AND CORRECTIONS AS I DESIRE, I CERTIFY THAT THE

SAME IS TRUE OF MY OWN KNOWLEDGE, EXCEPT AS TO THOSE

MATTERS WHICH ARE THEREIN STATED UPON MY INFORMATION OR

BELIEF, AND AS TO THOSE MATTERS, I BELIEVE IT TO BE TRUE.

        I DECLARE UNDER PENALTY OF PERJURY THAT THE

FOREGOING IS TRUE AND CORRECT.

        EXECUTED ON _____

AT _____, CALIFORNIA.


                _____

                    VICTORIA LEWIS

113

REPORTER'S CERTIFICATE


I, LORI ODELL KENNEDY, CSR NO. 3320,

PRESIDENT OF KENNEDY COURT REPORTERS, INC., DO HEREBY

CERTIFY:

THAT THE FOREGOING DEPOSITION WAS TAKEN

BEFORE ___DENISE HERFT_____ ON ___THURSDAY, DECEMBER 15, 2005___,

AT THE TIME AND PLACE SET FORTH, AND WAS TAKEN DOWN BY

HIM/HER IN SHORTHAND, AND THEREAFTER TRANSCRIBED INTO

TYPEWRITING UNDER MY DIRECTION AND SUPERVISION.

AND I HEREBY CERTIFY THAT THE FOREGOING

DEPOSITION IS A FULL, TRUE AND CORRECT TRANSCRIPT OF

HIS/HER SHORTHAND NOTES SO TAKEN, TO THE BEST OF OUR

ABILITY.

I CERTIFY THAT I AM NEITHER COUNSEL FOR NOR

RELATED TO ANY PARTY IN SAID ACTION, NOR IN ANYWISE

INTERESTED IN THE OUTCOME THEREOF.

IN WITNESS WHEREOF, I HAVE HEREUNTO

SUBSCRIBED MY NAME THIS ___3RD___ DAY OF ___JANUARY_____,

20__06__ .


_Lori Odell Kennedy_

LORI ODELL KENNEDY, CSR NO. 3320
CERTIFIED SHORTHAND REPORTER
FOR THE STATE OF CALIFORNIA

114