UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE HIPSAVER COMPANY, INC., | ) Civil Action No. 05-10917 PBS |
| Plaintiff, | ) |
| v. | ) |
| J.T. POSEY COMPANY, | ) |
| Defendant. | ) ORAL HEARING REQUESTED |
| AND RELATED COUNTERCLAIM. | ) |

**DEFENDANT AND COUNTERCLAIMANT J.T. POSEY COMPANY, INC.'S REPLY TO HIPSAVER, INC.'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON HIPSAVER'S COMPLAINT**

I.  **ARGUMENT**

    A.  **HipSaver's Damages Arguments Are Meritless**

HipSaver's case is completely undercut by its lack of damages. There is no basis for a monetary award because HipSaver has not shown lost sales, and Posey has stopped using the accused advertisements, so there can be no claim for injunctive relief. HipSaver attempts in vain to create questions of fact with respect to the issue of damages by producing a last minute, self-serving declaration from its President, Edward Goodwin. However, all of HipSaver's new "facts" are undercut by the record, so its damage position remains untenable.

    1.  **Mr. Goodwin's Declaration Must Be Disregarded**

HipSaver concedes that Posey abandoned its accused advertising long ago. Yet, in paragraphs 14-21 of his declaration, Mr. Goodwin purports to recount the numerous ways HipSaver has been hurt by these ads. Mr. Goodwin's averments contradict Mr. Goodwin's sworn deposition testimony and HipSaver's sworn interrogatory responses. *See* generally, Posey Objections to paragraphs 14-21 of Goodwin Declaration. However, it is well settled that a party may not resist a motion for summary judgment on the strength of an affidavit that contradicts prior sworn statements. The cases of *Orta-Castro v. Merck, Sharp & Dohme Quinica P.R., Inc.*, 447 F.3d 105, 110-111 (1st Cir. 2006) and *Colantuoni v. Alfred Calcagni & Sons*, 44 F. 3d 1, 4-5 (1st Cir. 1994) are directly on point.

Since it waited until after Posey made its motion for summary judgment to come forward with this "evidence", it must be disregarded. *Id.*

    2.  **HipSaver Has No Evidence of Causation**

On this motion, it is not enough for HipSaver merely to show that it has lost contracts, that its sales are flat, or that it has been "shut out" of markets. See Goodwin Decl., ¶¶ 14-21. Rather, it must show that those "losses" were **caused** by Posey's accused advertising. *Cashmere and Camel Hair Mfrs. Inst. v. Saks Fifth Avenue*, 284 F. 3d 302, 318 (1st Cir. 2002).

1

Lacking any evidence that its alleged damages were caused by Posey's advertising, HipSaver argues that its Lanham Act claim survives because the Court can make a "common sense inference of harm." *See HipSaver Memorandum in Opposition to Posey Motion for Judgment On HipSaver's Complaint*, at 16 (hereafter "HipSaver Memo, at __"). In support of this argument, HipSaver cites *Cashmere*. However, even HipSaver concedes that it must show at least a diversion of sales with "reasonable certainty." *Id*. This it has not done.

In *Cashmere* there was uncontradicted evidence of lost sales from the testimony of a sales agent identifying three customers who would not purchase plaintiff's goods because of the defendant's pricing practices. 284 F.3d at 318. Here, HipSaver has made no such showing. Thus, HipSaver's reliance on that case is misplaced because the Court there inferred *causation* only after finding direct evidence of plaintiff's injury by defendant's pricing practices. Therefore, there is no "common sense" ground to infer that Posey's advertising resulted in any negative impact.

Further, HipSaver's position regarding damages is undercut by its own expert, Dr. Roy Epstein, who testified that he did not know if HipSaver had suffered any lost profits. Reply Appendix, Exhibit 15 (Epstein Depo., at 75:15 – 77:11). Dr. Epstein also testified that it would be possible to pinpoint lost sales by interviewing potential customers, but he admitted that this was not even attempted in this case. Exhibit 15 (Epstein Depo. at 76:16—77:3).

HipSaver's attempt to posit causation in the absence of damage was rejected under similar circumstances in *Air Turbine Technology v. Atlas Copco AB*, 410 F.3d 701, 710 (Fed. Cir. 2005). In that case, the plaintiff also tried to rely on *Cashmere*, but the court found the case inapposite because plaintiff had not shown a diversion of sales. The plaintiff there also argued that the defendant "poisoned the entire tool industry" against the product in question. *Id*. Similarly, here, HipSaver argues that because of Posey's "defective" product, customers will not purchase any hip protector product. HipSaver Memo, at 16. Just as in *Air Turbine Technology*, this Court should

2

find that HipSaver's lack of lost sales and conclusory allegations regarding the entire market do not warrant an inference of causation, and summary judgment should be granted.

### 3. HipSaver's ch. 93A Claim Also Fails For Lack of Damage

HipSaver argues that its state law unfair competition claim succeeds because it has suffered a "loss of money," even if the amount is not quantifiable. HipSaver Memo. at 17. Again, HipSaver ignores the fact that the loss of money must be *caused* by something that Posey did. HipSaver instead alleges that it was excluded from the private healthcare marketplace, that Posey grew faster than HipSaver, and that "common sense" suggests a false advertising campaign would harm HipSaver. HipSaver Memo, at 18. However, "common sense" is just not enough where HipSaver cannot show any lost sales or diversion of trade as a result of Posey's advertisements. Further, HipSaver's reliance on this Court's ruling in *Skinder-Strauss Assocs. v. M.C.L.E.*, 914 F.Supp. 665, 682 (D. Mass. 1995) is misplaced. In that case, this Court found on a motion for judgment on the pleadings that the plaintiff may have stated a claim but that it showed no damages. Since the case was in the pleading stage, it permitted the plaintiff's claim to go forward. *Skinder-Strauss Associates*, 914 F.Supp. at 668, 682. Here, by contrast, HipSaver has had a full chance at discovery and it still cannot show it suffered a loss. It should not be allowed to proceed to trial on the vague hope that it will finally be able to muster some evidence.

### B. HipSaver Has Released Its Claims

According to the plain wording of the Settlement Agreement in Posey I, the parties released one another from all claims "known or unknown, fixed or contingent, which arise from or are related to the false advertising claims under 15 U.S.C. § 1125, 1117 and G.L. c.93A, §§ 2, 11 which were asserted or which could have been asserted in the [Posey I] for conduct which occurred prior to the date of this Agreement." Despite the fact that the release says that it covers conduct up to the date of the Settlement Agreement, the parties agree that the release was intended to bar future claims arising out of commercial statements the parties were making at the time of the settlement.

3

Posey contends that the release bars the parties' claims against one another. HipSaver contends that Posey's claims against it are barred, but that its claims are not because it only intended to release claims related to the so-called UCLA White Paper. HipSaver does not cite any case law supporting its position. Nor does HipSaver take issue with the undisputed fact that it knew about the Garwood advertising. Rather, it argues that the phrase "could have been brought" is limited to the UCLA White Paper because Posey had stopped making references to the Garwood testing in 2003.

First, as a factual matter, HipSaver is simply wrong that Posey stopped disseminating the Garwood advertising in 2003. Posey's advertising materials made reference to the Garwood testing continually from 2002 until 2005. *See* Fact 12 in Posey's Separate Statement. Second, Goodwin learned of the Garwood advertising as early as 2002 and he knew about it when he signed the release. Thus, there is no doubt that the claims regarding Posey's pre-settlement, known advertisements are covered by HipSaver's release of "known" claims.

However, the release also covers unknown claims and, under Massachusetts law, a release is effective even if the parties did not contemplate all wrongs existing at the time of the release. For instance, in *Naukeag Inn, Inc. v. Rideout*, 220 N.E.2d 916, 918 (Mass. 1966) the court found that a general release is to be honored "even if the parties did not have in mind all the wrongs which existed at the time of the release." *Naukeag Inn, Inc.* 220 N.E.2d at 918. Moreover, if the release were read to include only claims relating to the UCLA White Paper, the language providing for the release of claims "known or unknown" and claims "which could have been asserted" would be unnecessary.

If HipSaver had wanted to exclude claims relating to Posey's advertising concerning the Garwood testing, it should have said something before it signed the Settlement Agreement. "If exceptions to the release were intended, they should have been stated." *Sword & Shield Restaurant, Inc. v. Amoco Oil Co.,* 420 N.E.2d 32, 33 (Mass.App. 1981). Also, as to past claims, there is no

4

evidence that Mr. Goodwin ever communicated to Posey his intention *not* to release claims relating to the Garwood advertising and it is hornbook law that an agreement is to be construed according to its plain meaning and not according to the unstated intention of one party.

Finally, HipSaver argues that the claims based on post-settlement Garwood advertising could not have been released because "no reading of the settlement agreement could lead to that understanding" and because Posey itself was preparing for another lawsuit with HipSaver. HipSaver Memo, at 11. First, HipSaver agrees that the release was intended to insulate it from post-settlement claims regarding its website. Since the release Posey gave HipSaver is co-extensive with the release HipSaver gave Posey, as a matter of logic, Posey is insulated from post-settlement claims relating to the Garwood advertising.

Second, HipSaver's cited email and the idea that Posey was preparing to "pick on" it ignores the context of that email. In truth, the parties continued to have trade disputes immediately after the settlement of Posey I. HipSaver's Exhibits 4, 5 and 6 show that the parties continued to compete with and threaten each other with legal actions. It is disingenuous for HipSaver to now take an off-the-cuff internal email out of context. Further, the email in question was not even written by Mr. Posey or a person in the control group of the company. The random remarks of a low level Posey employee can not be used to establish the scope of the release.

C. **HipSaver's Claims Are Barred By *Res Judicata***

HipSaver's argument regarding *res judicata* fails because both lawsuits relate to the same "transaction," *i.e.*, allegedly false advertisements based upon testing and comparison on Posey and HipSaver products. *See Pignons S.A. de Mecanique v. Polaroid Corp.*, 701 F.2d 1, 2 (1st Cir. 1982) (holding that second false advertising claim was barred by collateral estoppel because (i) new advertisements did not differ significantly from old advertisements and (ii) plaintiff had a full and fair opportunity to raise arguments in prior case).

5

HipSaver's argument is simply that this second lawsuit was not the same "transaction" involved in Posey I. HipSaver Memo at 12. This same argument has been rejected in other false advertising cases. For example, *The Kitchen Connection, Inc. v. The Pampered Chef*, 1999 WL 1101231, *7 (N.D. Ill.) was one of a series of lawsuits involving statements in a catalog regarding competing kitchen utensils. Plaintiff argued that *res judicata* did not apply because different products were at issue in the second case. The court disagreed, finding that the second suit was part of the same transaction because the cases involved the same question: "false, misleading and deceptive claims regarding the nature of the products and their exclusivity. . . ." 1999 WL 1101231, *7.

The same result should obtain here. Both this case and Posey I involve claims for unfair competition based upon false advertising for statements made regarding testing that was completed before the settlement of the first suit. Posey may have re-cast the statements in new ads, but the underlying statements are the same.

**D.    HipSaver's Laches Argument Is Conclusory**

HipSaver's laches argument cites no law but amounts to simple "David vs. Goliath" name calling. It is irrelevant whether Posey makes more money than HipSaver. If HipSaver had promptly asserted any claim regarding the 2001 Garwood testing when it was first disseminated or in Posey I, Posey would not have paid HipSaver $360,000 or continued advertising the Garwood results into 2005. Moreover, HipSaver's contention that it dismissed the Garwood advertising as "junk science" is simply another way of saying it thought Posey's ads were false. In *Minnesota Mining and Manufacturing Co. v. Beautone Specialties Co.*, 82 F.Supp.2d 997, 1004 (D.Minn. 2000), the court applied laches because, had the defendant been on notice, it would not have spent money on product development and promotion or exposed itself to liability. The same result should apply here.

E.  **HipSaver's Ch. 93A Claim Is Not Based On Activity Occurring "Primarily and Substantially" in Massachusetts**

Posey's position on this issue is set forth fully elsewhere and, in the interest of brevity, will not be repeated here.

F.  **HipSaver's Claims Are Barred by Unclean Hands**

To show unclean hands, Posey does not need evidence of unconscionable conduct "rising to the level of fraud, perjury or suppression of evidence or intentional concealment." HipSaver Memo., at 14. HipSaver's statement of the law involves unclean hands in a patent case and related questions of inequitable conduct. *Zeneca Ltd. v. Pharmachemie B.V.*, 37 F.Supp.2d 85, 93 (D.Mass. 1999). The First Circuit has stated that unclean hands—essentially, the doctrine that a party who seeks equity must do equity—is limited only by the principal that it applies "when the claimant's misconduct is directly related to the merits of the controversy between the parties." *Texaco Puerto Rico, Inc. v. Department of Consumer Affairs*, 60 F.3d 867, 880 (1st Cir. 1995). Here, HipSaver has committed the exact types of false advertising—misrepresentations of testing and the efficacy of its products—of which it has accused Posey. It cannot seek relief against Posey on the thin fiction that its misrepresentations are permitted but that Posey's are actionable.

II.  **CONCLUSION**

For the foregoing reasons, Posey respectfully requests this Court to grant Posey's motion for summary judgment.

Dated: January 18, 2007                     J.T. POSEY COMPANY

                                            By its attorneys,


                                            /s/ Douglas H. Morseburg
                                            Jeffrey G. Sheldon (CA Bar No. 67516)
                                            Douglas H. Morseburg (CA Bar No. 26205)
                                            SHELDON MAK ROSE & ANDERSON
                                            225 South Lake Avenue, Suite 900
                                            Pasadena, CA  91001