UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE HIPSAVER COMPANY, INC., | Civil Action No. 05-10917 PBS |
| Plaintiff, | |
| v. | ORAL HEARING REQUESTED |
| J.T. POSEY COMPANY, | |
| Defendant. | |
| AND RELATED COUNTERCLAIM. | |

**REPLY MEMORANDUM OF DEFENDANT AND COUNTERCLAIMANT
J.T. POSEY COMPANY, INC. IN SUPPORT OF ITS MOTION FOR PARTIAL
SUMMARY JUDGMENT ON COUNT I OF ITS COUNTERCLAIMS**

I. **IF THE DOCTRINE OF RES JUDICATA BARS COUNT I OF POSEY'S COUNTERCLAIM, IT ALSO BARS HIPSAVER'S CLAIMS**

HipSaver's contention that Posey's false advertising claim is barred by *res judicata* is based upon the fact that, in Posey I, Posey challenged the same statements on HipSaver's Internet website that Posey is challenging here. In support of its position, HipSaver cites *U.S. v. Cunan*, 156 F.3d 110 (1st Cir. 1998). *See* HipSaver's Opposition to Posey's Motion for Partial Summary Judgment on Its Counterclaims, at pp. 8-10 (hereafter "HipSaver Memo, at __.").

Under doctrine of *res judicata*, or claim preclusion, an earlier action bars a later action whenever: (1) there is a final judgment on the merits in the earlier action; (2) there exists a "sufficient identity" between the parties in the two suits; and (3) there exists a "sufficient identity" between the causes of action in the two suits. *Cunan*, 156 F.3d at 114 (citing *Porn v. National Grange Mut. Ins. Co.*, 93 F.3d 31, 34 (1st Cir.1996) and *Kale v. Combined Ins. Co. of America*, 924 F.2d 1161, 1165 (1st Cir.1991)). Here, the first two elements of *res judicata* are met. However, in connection with this motion, the Court must decide whether the third element, identity of the causes of action, is also present.

In defining a "cause of action" for purposes of *res judicata*, the First Circuit adheres to a broad "transactional" approach that embraces all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the prior action arose. *Cunan*, 156 F.3d at 114 (citing *Manego v. Orleans Bd. of Trade*, 773 F.2d 1, 5 (1st Cir.1985)). HipSaver contends that the "cause of action" in this case is the same as the "cause of action" in Posey I because this action involves the same advertising that was the subject of Posey I. HipSaver's simplistic analysis, however, ignores the fact that Posey's false advertising claim in this case is expressly limited to the period of time following the dismissal of Posey I.

As is set forth in HipSaver's own opposition papers, following the dismissal of Posey I, HipSaver introduced a new product, i.e., the "Open-Bottom 3-Snap", which is presently included on its website. HipSaver Memo, at p. 9 n. 2. Following the dismissal of Posey I, Posey also introduced a new product, i.e., its "High Durability Hipster". All of the false "laundry" and "testing and validation" claims on HipSaver's website apply to its new "Open-Bottom 3-Snap" product. Likewise, all of the false "laundry" statements on HipSaver's Internet website regarding Posey's products apply to Posey's new "High Durability Hipster".

As a matter of logic, Posey could not have brought a false advertising claim with respect to any product which did not exist at the time it filed its claims in Posey I. Nor could the dismissal in Posey I have included any claim as to any products which did not exist as of the date of the settlement. Nonetheless, if the Court decides that the "transactions" out of which this case arises are the same "transactions" out of which Posey I arose, it should dismiss Posey's claim and HipSaver's claims on the grounds that they are **all** barred by *res judicata*.

II. **THERE IS NO BONA FIDE DISPUTE THAT HIPSAVER'S INTERNET WEBSITE IS RIDDLED WITH LITERALLY FALSE CLAIMS**

    A. **The Undisputed Facts Establish That Posey Is Likely To Be Injured From HipSaver's Continued False Advertising**

HipSaver contends that the false advertising statements on its website have been there since 2002 and that, because Posey has not yet suffered any damages as a consequence of them, there is no likelihood that it will be injured in the future. HipSaver Memo, at pp. 10-11. Not so. Posey and HipSaver are competitors. HipSaver's advertising claims are literally false. Those false claims mention Posey and Posey's products by name. Posey came out with a line of High Durability Hipsters in late 2004. HipSaver's false claims apply to that new product and they will apply with equal force to any new product Posey introduces in the future.

Based upon these undisputed facts, the likelihood that Posey will suffer injury to its name and/or its goodwill in the future from the continued publication of HipSaver's false statements is

- 2 -

obvious. *See Warner Lambert Co. v. Breathasure Inc.,* 204 F.3d 87, 97 (3d Cir. 2000) (where plaintiff and defendant were competitors, defendant's "Breathasure" name was literally false and defendant's ads made direct comparisons to plaintiff's product, trial court's refusal to enjoin use of name was an abuse of discretion).

**B.    HipSaver's Laundry Claims Are Literally False**

**1.    The CDC Guidelines' "Minimum Temperature" Claims**

In several places on its website, both in text and in graphics, HipSaver proclaims that CDC guidelines for infection control in the laundry require high-temperature washing at 160 degrees F. for 25 minutes. As is set forth in Posey's moving papers, however, the CDC's guidelines specify **two** standards for the washing of laundry, i.e., high-temperature washing and low-temperature washing. HipSaver attempts to sidestep this "inconvenient truth" by claiming that the low-temperature standard is "not widely used because of its complexity and limited validation", as a consequence of which the high-temperature standard "is the only relevant CDC guideline for any customer with institutional laundering." HipSaver Memo, at pp. 11-12.

The only evidence HipSaver has proffered regarding the purported "complexity" and "limited validation" of the low-temperature washing standard and regarding the alleged "fact" that institutional laundries use only the high-temperature standard is the declaration of its president, Edward Goodwin. That declaration, however, is completely lacking in foundation on these points and it has been tendered in bad faith in a desperate attempt to contradict Posey's laundry expert who has opined (i) that institutional use of the low-temperature washing standard is the norm, and (ii) that the average wash temperatures at institutional laundries is between 100 and 160 degrees F., with an average of about 130 degrees F., not 180 degrees F., as HipSaver claims on its website.

Mr. Goodwin's unsupported contention that institutional launderers use only the high-temperature standard is also demonstrably false. In fact, the Department of Veterans Affairs (the "VA") which HipSaver contends is its largest customer has, since 1989, **required** all VA medical

- 3 -

facilities to process their laundry "using low-temperature (*not to exceed 120 degree* F) washing formulas" using detergents, bleaches, softeners and bacteriostats suitable for low-temperature washing. *See* Reply Appendix, Exhibit 14, at Bates no. PC5919 (italics in original). The VA's policy extends to **all** laundry, including all articles belonging to the VA such as textiles and uniforms and all apparel and special clothing worn by patients receiving care at VA facilities. *Id.*

The statements and graphics on HipSaver's website regarding the CDC's "minimum" recommended wash temperature and the "average" wash temperatures at institutional laundries are literally false. The unsupported, conclusory declaration of HipSaver's president to the contrary is not sufficient to create *bona fide* dispute regarding the falsity of these claims.

    2.    **HipSaver's Claims That Only Its Products Meet CDC Guidelines and That Only Its Products Can Be Washed According to Those Guidelines**

Posey contends that HipSaver's claims that "only" its products "clearly" meet the CDC's guidelines for infection control in the laundry and that "only" its products can be washed according to the CDC's guidelines are "test prove" claims. HipSaver contends that they are "superiority" claims. In support of their positions, both parties cite *BASF Corp. v. Old World Trading Co.*, 41 F.3d 1081 (7th Cir. 1994) in which the court found that the defendants' statement that its product met certain specifications was a "tests prove" claim. This issue is one for the Court.

Notwithstanding the fact that HipSaver says its "CDC Guidelines" claims are not "tests prove" claims, it also says that it bases these claims on the wash labels in Posey's garments, the CDC guidelines and *a study purportedly conducted by the VA*. HipSaver Memo, at p. 13. HipSaver's contention that its "CDC Guidelines" claims are supported by a VA study sounds suspiciously like a contention that the claims are supported by testing.

Indeed, Mr. Goodwin even claims that "Posey's hip protectors failed the wash test." *Id.* Once again, however, HipSaver's "evidence" regarding the alleged VA testing consists of nothing more than the unsupported hearsay declaration of Mr. Goodwin. Having failed to provide any

- 4 -

admissible evidence regarding the alleged VA tests or any competent evidence that these tests were intended to determine whether the parties' products could be washed according to the CDC guidelines. Indeed, the accompanying reply declaration of Victoria Lewis, at paragraphs 2-4, establishes that the VA testing had nothing to do with the CDC Guidelines. Thus, HipSaver has failed to raise a triable issue regarding its "CDC Guidelines" claims.

The remaining "evidence" that HipSaver contends supports its CDC Guidelines claims consists of the CDC guidelines themselves and the wash labels in Posey's products. According to HipSaver, Posey's wash labels state that Hipsters can be washed up to a maximum of 160 degrees F. Even assuming this is true, HipSaver still has pointed to no evidence (i) that the Hipsters can not be washed at that temperature for 25 minutes (in accordance with the high-temperature standard), or (ii) that Posey's Hipsters cannot be washed at lower temperatures in combination with bleach and other chemicals (in accordance with the low-temperature standard).

HipSaver points to some internal Posey memos from 2002 which discuss some issues relating to the laundering of Hipsters in exceedingly high heat. HipSaver says that these memos constitute evidence that Posey's Hipsters cannot be laundered according to the CDC's high temperature wash guidelines. This argument misses the mark for two reasons.

First, while the issues discussed in Posey's internal memos in question relate to the issue of the launderability of Posey's Hipsters, they do not relate to the issue of whether Posey's products can be laundered *according to CDC guidelines*. Second, even if these memos did raise an issue as to whether Posey's products could be washed according to the CDC guidelines (and they do not), HipSaver has still adduced **no** evidence on this motion (i) that its own products **can** be washed according to the guidelines, or (ii) that the products of other companies such as Alimed, whose products are also mentioned on HipSaver's website, cannot. Without evidence to support these propositions, HipSaver cannot truthfully claim (i) that "only" its products meet the CDC guidelines, or (ii) that "only" its products can be washed according to those guidelines.

C.  **HipSaver's "Validation and Testing" Claims Are Literally False**

1.  **The Compliance Study and the Gross Study**

On its website, HipSaver cites both the Compliance Study and the Gross Study as support for its claim that the effectiveness of its products in preventing injury has been "clinically validated". As Posey has pointed out in its moving papers, Dr. Burl, the author of the report concerning the Compliance Study, has testified that the fact that people fell but suffered no hip fractures during the course of the Compliance Study was neither a significant, a statistically significant nor, even, an important result of the study. In short, the Compliance Study can support **no** claim regarding the effectiveness of HipSaver's products in preventing injury. Posey has also pointed out in its moving papers that the product that people wore during the Gross Study was a prior iteration of HipSaver's product and not the product it presently sells.

In response to Posey's criticisms, HipSaver contends that Posey is misreading HipSaver's advertising claims regarding the Compliance Study. According to HipSaver, those claims constitute mere "opinion about the importance of [the] secondary finding" of the Compliance Study. HipSaver Memo, at p. 15. HipSaver also concedes that the hip protectors subjects wore during the Gross Study incorporated a prior version of its pads. *Id.* However, it says (yet again by way of the totally unsubstantiated declaration of Mr. Goodwin), the previous iteration of its pads was a "substantial equivalent" of its present pads. Moreover, it argues, the effectiveness of its present pads is evidenced by *the secondary results of the Compliance Study. Id.*, at 16.

As usual, HipSaver wants it both ways. On the one hand, it recognizes that the testimony of Dr. Burl undermines any claim that the results of the Compliance Study demonstrate the effectiveness of its hip protectors. Therefore, it contends that its claim regarding the Compliance Study constitutes mere opinion. On the other hand, it also recognizes that the Gross Study did not involve its present products and, in an effort to find some "clinical validation" supporting the effectiveness of its products, it points to the Compliance Study.

The Compliance Study and the Gross Study say zip, nada, nothing about the effectiveness of HipSaver's present products in preventing injury and all claims to the contrary are literally false.

Finally, as is set forth in Posey's moving papers, it is also undisputed that HipSaver is misrepresenting the compliance rates set out in the report of the Compliance Study.

### 2. The Tampere Testing and the Alleged Harvard Testing

As far as the truthfulness of the HipSaver's "testing" claims is concerned, it might be accurate to say that, based upon the results of the Tampere Testing, "a HipSaver wearer receives 20% less force from a fall than a Safehip wearer." *See* HipSaver Memo, at p. 16. However, the issue is irrelevant because that is simply not what HipSaver claims on its website regarding the Tampere Testing. Moreover, the question of whether HipSaver's website claims that the Alleged Harvard Testing demonstrates the effectiveness of HipSaver's current product is one for the Court. If (as Posey says) it does, HipSaver concedes that the claim is literally false.

## III. THERE IS NO BONA FIDE DISPUTE REGARDING MR. GOODWIN'S INDIVIDUAL LIABILITY

Citing several "alter ego" cases, HipSaver argues that a corporate officer such as Mr. Goodwin cannot be personally liable on Count I absent extreme facts such as fraud. This argument need not detain us long, for it is well-settled that "a corporate officer who commits a tort is personally liable for his actions and [he] cannot seek refuge in the fact that he was acting for the corporation." *Bond Leather Co., Inc. v. Q.T. Shoe Mfg. Co., Inc.*, 764 F.2d 928, 938 (1st Cir. 1985) (citations omitted). The undisputed facts show that Mr. Goodwin participated in and directed HipSaver's false advertising so he is personally liable on Count I of Posey's counterclaims.

## VI. CONCLUSION

For the foregoing reasons and for the reasons set forth in its moving papers, Posey's motion for partial summary judgment on Count I of its counterclaims should be granted.

Dated: January 18, 2007         J.T. POSEY COMPANY

                                By its attorneys,

                                /s/ Douglas H. Morseburg
                                Jeffrey G. Sheldon (CA Bar No. 67516)

Douglas H. Morseburg (CA Bar No. 126205)
SHELDON MAK ROSE & ANDERSON PC
225 South Lake Avenue, Suite 900
Pasadena, CA 91001
(626) 796-4000

Anthony J. Fitzpatrick (BBO # 564324)
DUANE MORRIS LLP
470 Atlantic Avenue, Suite 500
Boston, MA 02210
(617) 289-9200