UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE HIPSAVER COMPANY, INC., | ) Civil Action No. 05-10917 PBS |
| Plaintiff, | ) |
| v. | ) ORAL HEARING REQUESTED |
| J.T. POSEY COMPANY, | ) |
| Defendant. | ) |
| AND RELATED COUNTERCLAIM. | ) |

**OBJECTIONS TO DECLARATION OF EDWARD L. GOODWIN**

J. T. Posey Company, Inc. ("Posey") hereby objects to the following portions of the Declaration of Edward L. Goodwin on the following grounds:

### General Objection Regarding Contradictions Between Declaration and Deposition

Posey generally objects to the Goodwin Declaration as an improper attempt to create triable issues of fact in order to survive a motion for summary judgment. A party cannot create a triable issue with a declaration that contradicts earlier deposition testimony. *Orta-Castro v. Merck, Sharp & Dohme Quimica P.R., Inc.*, 447 F.3d 105, 110-111 (1st Cir. 2006). It is black letter law that "[w]hen an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed." *Colantuoni v. Alfred Calcagni & Sons*, 44 F.3d 1, 4-5 (1st Cir.1994). There are additional reasons to distrust the Goodwin declaration. In *Orta-Castro*, the First Circuit disregarded a declaration that contradicted earlier testimony in part because, as here, the declaration was submitted in response to a motion for summary judgment and the declarant was deposed multiple times.

Apparently, HipSaver has now recognized that its evidentiary showing is deficient in several respects, particularly: (i) attempts to prove damages; (ii) attempts to prove lost sales; (iii) attempts to substantiate its own "testing"; and (iv) attempts to prove that Posey discontinued the Garwood advertising. In his depositions, Goodwin made key admissions that undercut all of these points; he now tries to correct those problems with an improper declaration. Where Goodwin's declaration directly contradicts his prior deposition or other information adduced in discovery, Posey has so indicated.

### Specific Objections

| Portion Objected To | Basis for Objection |
|---|---|
| 1.   I am president of HipSaver Company. In 1994, I informally surveyed a number of nursing homes and | FRE 701: Goodwin's testimony is improper lay opinion. |

- 1 -

| | |
|---|---|
| nursing home suppliers. I found that none offered a hip protector to help prevent the 60,000 hip fractures that occurred from falls in the 17,000 nursing homes each year. | |
| 3. Prior to developing HipSaver, I worked as an engineer in the rubber and textile industry for 20 years and thus had the requisite technical background to develop such a product, and I understood and was familiar with equipment and machinery necessary for manufacture. | FRE 701: Goodwin's testimony regarding his qualifications is improper lay opinion.<br><br>FRE 702: To the extent Goodwin is offering expert opinion, it is not trustworthy, because his competence as an expert has not been established, and he is the President of plaintiff. |
| 5. In 1995, I met with Harvard researchers about hip protectors and discussed a variety of topics relating to epidemiology, etiology, hip protector construction, proper pad positioning and biomechanics. Since hip protectors were a new product category, there was no American Society of Testing and Materials (ASTM) standard to test a hip protector. Therefore, university researchers were constructing a biomechanical test that included all of the known factors in the dynamic fall to the hip. These included soft tissue modeling, trochanteric anatomy modeling, pelvic rebound compliance and literature established fall forces to the hip bone. Such a test could then reveal if a given protective pad could lower the simulated fall force sufficiently to protect the osteoporatic trochanter of an older person. Beginning with testing initiated at Harvard in 1996 through the Tampere testing conducted in 2000 and internal testing conducted since 2004, HipSaver has tested and confirmed the ability of our original and improved hip protector pads to reduce impact forces of a fall. All of HipSaver's testing is verifiable and scientifically simulates a dynamic fall impacting the hip. | FRE 802: Testimony regarding what was said with any researchers is inadmissible hearsay.<br><br>FRE 701: Goodwin's testimony regarding the verifiability of HipSaver's testing is improper lay opinion.<br><br>FRE 702: To the extent Goodwin is offering expert opinion, it is not trustworthy, because his competence as an expert has not been established, and he is the President of plaintiff.<br><br>FRE 104: As the President of plaintiff, Goodwin's testimony is unduly biased and does not meet the threshold requirements for admissibility. |
| 6. HipSaver is also the subject of a published clinical study directed by a physician at the Fallon Clinic in Worcester. And HipSaver was the subject of one of the first published clinical studies to statistically confirm effectiveness against hip injury which was directed by George Gross, PT, and colleagues at the Elder Service Plan of East Boston. Since 2001, I have invested some $350,000 in sophisticated manufacturing and test equipment for HipSaver. | FRE 802: The studies are hearsay.<br><br>Best Evidence Rule (FRE 1001 – 1008): Published studies are the best evidence of their content. |
| 8. In 1999, the Posey Company introduced a hip protector product with removable (non-washable) pads. | FRE 701: Goodwin's testimony regarding the verifiability of HipSaver's |

| | |
|---|---|
| This product did not receive a significant response in the marketplace and was not a competitive threat to HipSaver. | testing is improper lay opinion.<br><br>FRE 702: To the extent Goodwin is offering expert opinion, it is not trustworthy, because his competence as an expert has not been established, and he is the President of plaintiff. |
| 9. Based on what I have learned in the present lawsuit with the Posey Company, it appears that the Posey Company embarked in an effort to develop a lower cost but inferior copy of our HipSaver product early in 2001. Unknown to us at the time, this development effort included comparative testing of materials, secretive purchase of our products, false claims to our largest customer, the Veterans Administration about the superiority of Posey's new hip protector pad, and development of the 2001 version of the Garwood ads. | FRE 602: Goodwin lacks foundation to opine on Posey's business strategy.<br><br>FRE 403 and FRE 701: This statement is argumentative and unduly prejudicial and constitutes lay opinion. |
| 10. Late in 2001, the Posey Company launched its new hip protector product, known as Hipster III. In essence, Posey created in 5 months the "appearance" of a hip protector offering the same benefits that HipSaver had worked on for the previous seven years. It was markedly distinct in appearance from Posey's earlier product, contained what was represented as a washable pad, and looked remarkably like our HipSaver. If you place the two products side by side, it is difficult to distinguish the Posey copy from our HipSaver. In fact, after Posey Hipsters began to fail routinely in health care facility laundries during 2002 and 2003, Posey's products were, on a number of occasions, mistakenly returned to our company - with complaints and demands for refunds. | FRE 602: Goodwin lacks foundation to opine on Posey's business strategy and the complaints.<br><br>FRE 403 and FRE 701: This statement is argumentative and unduly prejudicial and constitutes lay opinion.<br><br>FRE 802: The alleged complaints are hearsay.<br><br>Best Evidence Rule (FRE 1001 – 1008): The hip protectors are the best evidence of their characteristics. |
| 11. Although we learned that Posey had blatantly copied our product and were aware also of its initial Garwood advertising in 2002 and 2003, I dismissed the advertising as junk science. I was not aware of the national scope of this advertising. I was not aware that Posey had made comparison claims of superiority to the Veterans Administration in July 2001, and I was not aware of similar claims made in a Posey advertising video. I was not alarmed by Posey's advertising until its "UCLA" advertising appeared in 2004. | FRE 602: Goodwin lacks foundation to opine on Posey's intent.<br><br>FRE 403 and FRE 104: This statement is argumentative and unduly prejudicial and lacks basic indicia of trustworthiness.<br><br>FRE 701: The statements regarding "junk science" are inadmissible lay opinion.<br><br>FRE 702: To the extent Goodwin is offering expert opinion, it is not trustworthy, because his competence as |

| | |
|---|---|
| | an expert has not been established, and he is the President of plaintiff. |
| 12. During 2002 and 2003, I was working to counter Posey's aggressive marketing to the Veterans Administration and its false claims to the VA about the durability and launderability of its hip protector product. Our company was also working very hard to expand sales of HipSaver to nursing and rehab facilities and to obtain agreements with major heath care product distributors and health care chains. | FRE 602: Goodwin lacks foundation to opine on Posey's intent.<br><br>FRE 403 and FRE 104: This statement is argumentative and unduly prejudicial and lacks basic indicia of trustworthiness.<br><br>FRE 701: The statements regarding launderability are inadmissible lay opinion. |
| 14. HipSaver secured an agreement to be sold by Alimed, a large, Massachusetts based multi-line supplier with national distribution to some 600 nursing and rehab facilities in Massachusetts and about 15,000 across the country. This would have been HipSaver's first opportunity to obtain a vehicle for widespread national distribution. Working with John Bretz, the marketing manager, and his staff we supplied artwork and photos in anticipation of a HipSaver catalog launch during 2002. Mr. Bretz told me that although Alimed had reviewed an earlier Posey hip protector, they wanted to try HipSaver because of its design and testing validation. We built inventory in anticipation the large sales increase, only to be told at the last minute that HipSaver was dropped from Alimed's catalog and replaced by the Posey copy. | FRE 802: Mr. Bretz's statements are hearsay.<br><br>Best Evidence Rule (FRE 1001 – 1008): Any "agreements" should be evidenced by writings and/or speak for themselves.<br><br>FRE 403 and FRE 104: This statement is argumentative and unduly prejudicial and lacks basic indicia of trustworthiness.<br><br>FRE 401: This statement is irrelevant because it alleges a contract with Alimed in 2002. |
| 15. Since then, although we have tried repeatedly, we have been frozen out of all of the major catalog distributors and resellers of hip protectors, including McKesson, Cardinal Health, Medline, and Gulf South which have operations in Massachusetts. Posey is sold by these distributors and resellers. In other cases, one major chain and some facilities have refused to purchase HipSaver because of their experience with Posey's product. The Posey Hipster failed at high rate in the laundry, customers believed that Posey's advertising misrepresented launderability, and we could not overcome the perception that all hip protector products would fail in the laundry. But, we still pursued the large chains. | FRE 403 and FRE 104: This statement is argumentative and unduly prejudicial and lacks basic indicia of trustworthiness.<br><br>FRE 802: Statements by distributors and resellers are hearsay.<br><br>FRE 701: The statements regarding launderability are inadmissible lay opinion.<br><br>FRE 702: To the extent Goodwin is offering expert opinion, it is not trustworthy, because his competence as |

|  | an expert has not been established, and he is the President of plaintiff.<br><br>FRE 602: Goodwin lacks foundation to opine on the reasons for decisions by retailers and distributors. |
|---|---|
| 16. We tried to secure an agreement to supply Manor Care, a major nursing home chain, only to be told by its senior buyer, Bill Cusack, that he would not buy HipSaver because his company had entered into an exclusive arrangement with Posey. Similarly, we worked with Life Care, another national nursing home chain with facilities in Massachusetts, but were rejected by the company's corporate buyer for Posey. And again, in 2003 the corporate purchaser for Kindred, which has a number of health care facilities in Massachusetts, informed us that the company was under exclusive contract with Posey for hip protectors. Recently, we learned that LifeCare Corporation has largely abandoned hip protectors because of the poor quality of Posey's product. LifeCare refused to consider HipSaver as an alternative. | FRE 403 and FRE 104: This statement is argumentative and unduly prejudicial and lacks basic indicia of trustworthiness.<br><br>FRE 802: Statements by distributors and resellers are hearsay.<br><br>FRE 602: Goodwin lacks foundation to opine on the reasons for decisions by retailers, distributors and healthcare facilities.<br><br>FRE 401: This statement is irrelevant because it is made in regard to conduct in 2003. |
| 17. Numerous individual facilities have also refused to purchase HipSaver. In a number of cases; these facilities have refused to purchase HipSaver hip protectors because of their experience with Posey's product and its repeated failures in the laundry. Included are Bangor Mental Health Institute, Bangor, ME; Truman Medical Center at Lakewood, Kansas City MO; Peaks Care Center, Longmont CO; Dunn County Health Care Center, Menomonie WI; VA Medical Center Bedford, Bedford MA; Resthaven Yark, York PA; Pleasant Meadows Christian Village, Chrisman IL; Friendship Village, Schaumburg IL; Pisgah Manor, Candler NC; Golden View, Meredith NH; Seneca Place, Verona PA; Phoebe Ministries, Allentown PA; Dow Rummel Village, Sioux Falls SD; Eaglewood Care Center, Springfield OH; Baptist medical Center, Little Rock AR; Cedar Wood Health Care, Colorado Springs CO; Park River States Care Center, Coon Rapids MN; Regency at the Park, College Place WA; Kennedy Park Medical & Rehab, Schofield WI; River Mede Health Care, Binghamton NY; and Sacred Heart Home, | FRE 403 and FRE 104: This statement is argumentative and unduly prejudicial and lacks basic indicia of trustworthiness.<br><br>FRE 802: Statements by distributors and resellers are hearsay.<br><br>FRE 701: The statements regarding launderability are inadmissible lay opinion.<br><br>FRE 702: To the extent Goodwin is offering expert opinion, it is not trustworthy, because his competence as an expert has not been established, and he is the President of plaintiff.<br><br>FRE 602: Goodwin lacks foundation to opine on the reasons for decisions by retailers, distributors and healthcare |

| | |
|---|---|
| Hyattsville MD. | facilities. |
| 18. Between 2002 and the end of 2005, HipSaver spent almost $200,000 on advertising primarily to the private market and yielded a total of only 20 nursing homes as customers. We have realized we don't have the capacity to counter Posey's false advertising. By the end of 2005 Posey had captured at least one half of the hip protector market in the United States. | FRE 403 and FRE 104: This statement is argumentative and unduly prejudicial and lacks basic indicia of trustworthiness. |
| 19. By the end of 2005, it was clear also that HipSaver has been completely frozen out of every private sector nursing and health care facility chain and every private distribution chain. Our rate of growth in the private marketplace has declined every year since 2002, and we maintain our business largely on the basis of sales to the Veterans Administration which accounts for more than 40% of our U.S. sales and almost all of our growth offsetting other losses in the United States. | FRE 403 and FRE 104: This statement is argumentative and unduly prejudicial and lacks basic indicia of trustworthiness.<br><br>FRE 602: Goodwin lacks foundation to opine on the reasons for decisions by retailers, distributors and healthcare facilities.<br><br>The damages testimony is contradicted by Posey's Undisputed Fact No. 30 and Goodwin's deposition, specifically at Goodwin Depo., Vol. 1, 60:7-62:24, 86:21-24, 140:19-23, 141:1-12, 148:12-152:12, 156:2-157:5; Goodwin Depo., Vol. 2, 23:2-24:6; and in Exh. 9 (Suppl. Response to Interrog. No. 2).<br><br>Lost sales testimony is contradicted by Posey's Undisputed Fact No. 31 and Goodwin's deposition, specifically at Goodwin Depo., Vol. 1, 86:21-24, 137:14-20; Goodwin Depo., Vol. 2, 22:22-24, 23:2-24:6.<br><br>Additional admissions showing no lost sales or damage are attached as Exhibit 16 and found at: Goodwin Depo. Vol. 1, 135:15-18 (nobody has admitted purchasing a Posey product because of Garwood advertisement); 137:11-14 (Goodwin cannot identify a customer that was stolen because of a Garwood ad); 138:13-23 (Goodwin cannot identify a customer who has not purchased hip protectors because of Posey, though he "has some notes" on them). |

| | |
|---|---|
| 20. Some of our lost business is due to the fact that the Posey Company's advertising and sale of a defective product has led a number of health care facilities to abandon hip protection products altogether. Since at least the early spring of 2002, less than six months from introduction of the Hipster III product, Posey has been aware that its product is defective and has a high rate of failure. In fact, notes from an internal Posey meeting to evaluate its defective product in April 2003 indicate that Posey was concerned that it "could lose the market" if it failed to resolve this issue. Posey knew early on that its hip protector failed in institutional laundries but continued to advertise that it could be laundered at high temperature. Some health care facilities have not distinguished between Posey's defective product and our sound product. So, a number of facilities have simply refused to buy any hip protection products. | FRE 403 and FRE 104: This statement is argumentative and unduly prejudicial and lacks basic indicia of trustworthiness.<br><br>FRE 602: Goodwin lacks foundation to opine on the reasons for decisions by retailers, distributors and healthcare facilities, as well as internal statements by Posey.<br><br>Best Evidence Rule (FRE 1001 – 1008): Posey's documents should be evidenced by writings and/or speak for themselves.<br><br>FRE 701: The statements regarding launderability are inadmissible lay opinion.<br><br>FRE 702: To the extent Goodwin is offering expert opinion, it is not trustworthy, because his competence as an expert has not been established, and he is the President of plaintiff.<br><br>The damages testimony is contradicted by Posey's Undisputed Fact No. 30 and Goodwin's deposition, specifically at Goodwin Depo., Vol. 1, 60:7-62:24, 86:21-24, 140:19-23, 141:1-12, 148:12-152:12, 156:2-157:5; Goodwin Depo., Vol. 2, 23:2-24:6; and in Exh. 9 (Suppl. Response to Interrog. No. 2).<br><br>Lost sales testimony is contradicted by Posey's Undisputed Fact No. 31 and Goodwin's deposition, specifically at Goodwin Depo., Vol. 1, 86:21-24, 137:14-20; Goodwin Depo., Vol. 2, 22:22-24, 23:2-24:6.<br><br>Additional admissions showing no lost sales or damage are attached as Exhibit 16 and found at: Goodwin Depo. Vol. 1, 135:15-18 (nobody has admitted purchasing a Posey product because of Garwood advertisement); 137:11-14 |

| | |
|---|---|
| | (Goodwin cannot identify a customer that was stolen because of a Garwood ad); 138:13-23 (Goodwin cannot identify a customer who has not purchased hip protectors because of Posey, though he "has some notes" on them). |
| 21. When Posey misrepresented the effectiveness and durability and launderability of its product in national campaigns year in and year out, our company simply didn't have the resources and ability to mount a counter campaign. We have been able to maintain most of our business with the Veterans Administration because it is not as susceptible to Posey's advertising. The VA system purchases independently, seeks the best value products, is open to new sources, and conducts its own product evaluation and testing - unlike the private sector. Since at least late 2003, our company has spent most of its marketing resources dealing with the VA and fending off Posey's false claims about the superiority, launderability, and effectiveness of its hip protector copy in protecting patients from hip injury. | FRE 701: The statements regarding launderability are inadmissible lay opinion. FRE 702: To the extent Goodwin is offering expert opinion, it is not trustworthy, because his competence as an expert has not been established, and he is the President of plaintiff. FRE 403 and FRE 104: This statement is argumentative and unduly prejudicial and lacks basic indicia of trustworthiness. FRE 602: Goodwin lacks foundation to opine on the reasons for decisions by the Veterans Administration. The damages testimony is contradicted by Posey's Undisputed Fact No. 30 and Goodwin's deposition, specifically at Goodwin Depo., Vol. 1, 60:7-62:24, 86:21-24, 140:19-23, 141:1-12, 148:12-152:12, 156:2-157:5; Goodwin Depo., Vol. 2, 23:2-24:6; and in Exh. 9 (Suppl. Response to Interrog. No. 2). Lost sales testimony is contradicted by Posey's Undisputed Fact No. 31 and Goodwin's deposition, specifically at Goodwin Depo., Vol. 1, 86:21-24, 137:14-20; Goodwin Depo., Vol. 2, 22:22-24, 23:2-24:6. Additional admissions showing no lost sales or damage are attached as Exhibit 16 and found at: Goodwin Depo. Vol. 1, 135:15-18 (nobody has admitted purchasing a Posey product because of |

| | |
|---|---|
| | Garwood advertisement); 137:11-14 (Goodwin cannot identify a customer that was stolen because of a Garwood ad); 138:13-23 (Goodwin cannot identify a customer who has not purchased hip protectors because of Posey, though he "has some notes" on them). |
| 23. The Posey Company withdrew its first version of the Garwood advertising in the fall of 2003 and blanketed distributors, chains, and facilities with a new campaign, the false UCLA advertising which was distributed in catalogs, newsletters, and mailers, and on the Internet. The UCLA ads were based on a flawed testing protocol conducted by a UCLA graduate student and a white paper which was written or edited by Posey and misrepresented as a "UCLA" study. In this advertising, Posey claimed that its "UCLA" tests demonstrated the superiority of the Posey hip protector over HipSaver. In fact, even though the UCLA tests were flawed, they showed that HipSaver was superior. Nevertheless, Posey utterly misrepresented the tests and embarked on an 11 month campaign against HipSaver. | FRE 701: The statements regarding the UCLA tests are inadmissible lay opinion.

FRE 702: To the extent Goodwin is offering expert opinion, it is not trustworthy, because his competence as an expert has not been established, and he is the President of plaintiff.

FRE 403 and FRE 104: This statement is argumentative and unduly prejudicial and lacks basic indicia of trustworthiness.

Best Evidence Rule (FRE 1001 – 1008): The advertising speaks for itself.

This fact is contradicted by Posey's Undisputed Fact No. 12, establishing that Posey continually referred to the Garwood testing between late 2001 and 2005. |
| 24. In the spring of 2004, HipSaver filed a lawsuit in the federal court in Boston, seeking to halt Posey's false "UCLA" advertising. At the time, the false advertising consisted only of the UCLA ads; there was no Garwood advertising. So, of course, we challenged only what was being advertised at the time. When our company challenged the UCLA ads, we thought Posey had abandoned the Garwood ads for good and, instead, was trying to use the UCLA brand name to attack us. | Best Evidence Rule (FRE 1001 – 1008): The advertising and lawsuit speak for themselves.

FRE 401: What HipSaver believed about stopping the Garwood ads is irrelevant.

FRE 403 and FRE 104: This statement is a self-serving explanation for HipSaver's decision to sue twice on the same claims; it is argumentative and |

| | |
|---|---|
| | unduly prejudicial and lacks basic indicia of trustworthiness.<br><br>This fact is contradicted by Posey's Undisputed Fact No. 12, establishing that Posey continually referred to the Garwood testing between late 2001 and 2005. |
| 25.    Posey filed a "tit for tat" countersuit to our lawsuit in 2004, challenging claims made by HipSaver in our website.  After mediation, Posey agreed to a settlement which included withdrawal of all UCLA ads, a corrective advertising statement repudiating the false advertising, payment of attorney fees and associated costs, and dismissal of all claims with prejudice.  In conjunction with the settlement, Posey did not request any changes to our website. | FRE 602: Goodwin lacks foundation to opine on Posey's intent.<br><br>Best Evidence Rule (FRE 1001 – 1008): The settlement agreement and lawsuit speak for themselves.<br><br>FRE 401: This statement is irrelevant. |
| 26.    Posey's corrective advertising statement explicitly admitted that UCLA did not sponsor, authorize, or endorse Posey's advertising, that our expert, Wilson C. Hayes, PhD is a recognized biomechanical engineering expert, and that he found that the "UCLA" tests were not reliable and could not sustain "any of the claims" in Posey's advertising. The corrective advertising statement noted Posey's regret at "comparisons with HipSaver products and confusion this may have caused in the marketplace" | Best Evidence Rule (FRE 1001 – 1008): The corrective advertising speaks for itself.<br><br>FRE 802: Statements in the corrective advertising are hearsay.<br><br>FRE 401: This statement is irrelevant. |
| 27.     I agreed to the settlement because I thought that corrective advertising would put an end to Posey's false advertising.  I understood that the settlement agreement barred any further claims by us against the UCLA ads in return for withdrawal of those ads and corrective advertising, and I understood also that Posey could not challenge our website - unless we made material new statements or claims in the website. | Best Evidence Rule (FRE 1001 – 1008): The settlement agreement speaks for itself.<br><br>This fact is contradicted by Posey's Undisputed Fact No. 21, establishing that in settlement would permit continued publication of the Garwood advertisements.<br><br>FRE 401: This statement is irrelevant. |
| 28.  Since the settlement in September 2004, HipSaver has not made any changes to the claims and statements in its website.  We have updated several color product photos and added one garment to our HipSaver line, but not so much as a comma has changed in the statements and claims in our website. | Best Evidence Rule (FRE 1001 – 1008): The advertisements speak for themselves. |
| 29. The Posey Company's regret for its false UCLA ads | FRE 602: Goodwin lacks foundation to |

- 10 -

| | |
|---|---|
| was short lived. I understand that less than a month after the settlement, Posey's president issued a marketing statement to Manor Care, a 300 facility nursing home chain in which he undercut the corrective advertising settlement by suggesting that the "UCLA" testing was valid and that he had settled only because our lawsuit was a nuisance. More important, however, Mr. Posey revived the Garwood test advertising with a new version which included additional testing done on Posey's new PORON® based pad. This new advertising began sometime late in 2004. | opine on Posey's intent.<br><br>Best Evidence Rule (FRE 1001 – 1008): The advertisements speak for themselves.<br><br>FRE 802: Any marketing statement is hearsay.<br><br>FRE 403 and FRE 104: This statement is argumentative and unduly prejudicial and lacks basic indicia of trustworthiness. |
| 30. I became aware of the new Garwood ads in the late winter of 2005 after some correspondence with Mr. Posey. I was unaware until recently that in March 2005, Mr. Posey had ordered further testing of Posey's hip protector products in an effort to prepare for filing a lawsuit against HipSaver. | FRE 802: Correspondence with Posey is hearsay.<br><br>FRE 602: Goodwin lacks foundation to opine on Posey's intent.<br><br>FRE 401: When Goodwin became aware of Posey's continued advertising campaign is irrelevant. |
| 31. In any case, once we reviewed the new Garwood ads, we instructed our lawyer to demand an immediate retraction. This lawsuit followed. | FRE 802: Goodwin's instructions to his attorney are hearsay. |
| 32. While Posey finally withdrew the new Garwood advertising in the late summer of 2005, four years of false advertising by a company with the means to repeat its false claims again and again to customers has left HipSaver with little opportunity beyond the Veterans Administration. Our rate of growth is less than half Posey's. We are losing market share. Our revenue for 2006 was flat. We have no ability to access the private health care distribution and facility chains. The corrective advertising of 2004 might have reversed the trend against us, but it was undercut by Mr. Posey's marketing statement and the new Garwood ads. Posey's regret is meaningless. We remain frozen out, and we even face skeptical buyers who will no longer purchase from Posey because its product proved defective but will no longer consider us either. | FRE 602: Goodwin lacks foundation to opine on Posey's intent.<br><br>Best Evidence Rule (FRE 1001 – 1008): The marketing statements and advertisements speak for themselves.<br><br>FRE 802: Any marketing statement or advertisement is hearsay.<br><br>FRE 403 and FRE 104: This statement is argumentative and unduly prejudicial and lacks basic indicia of trustworthiness.<br><br>The damages testimony is contradicted by Posey's Undisputed Fact No. 30 and Goodwin's deposition, specifically at Goodwin Depo., Vol. 1, 60:7-62:24, 86:21-24, 140:19-23, 141:1-12, 148:12- |

| | |
|---|---|
| | 152:12, 156:2-157:5; Goodwin Depo., Vol. 2, 23:2-24:6; and in Exh. 9 (Suppl. Response to Interrog. No. 2).<br><br>Lost sales testimony is contradicted by Posey's Undisputed Fact No. 31 and Goodwin's deposition, specifically at Goodwin Depo., Vol. 1, 86:21-24, 137:14-20; Goodwin Depo., Vol. 2, 22:22-24, 23:2-24:6.<br><br>Additional admissions showing no lost sales or damage are attached as Exhibit 16 and found at: Goodwin Depo. Vol. 1, 135:15-18 (nobody has admitted purchasing a Posey product because of Garwood advertisement); 137:11-14 (Goodwin cannot identify a customer that was stolen because of a Garwood ad); 138:13-23 (Goodwin cannot identify a customer who has not purchased hip protectors because of Posey, though he "has some notes" on them). |
| 33. Since I began my work with soft hip protection garments, I have routinely conducted laundry and drying tests of numerous materials. I have tested all of the pads used by HipSaver and all of the pads used by Posey. And as noted above, I have participated in a large scale test by the Veterans Administration. Based on my experience with institutional laundries operated by the VA and a number of private health care facilities and based on temperature readings I have taken at commercial laundries, the average wash temperature is 180°F and is frequently higher. I understand that the American Institute of Architects industry standard for health care facility construction calls for laundry temperatures at 160°F. The CDC high temperature wash guideline is for a minimum temperature of 160°F. HipSaver hip protectors are labeled to be washed at 200°F while Posey labeled its product at a minimum temperature of 160°F until 2005. And while I am aware of a low temperature CDC guideline, this guideline cannot be competently recommended for institutional settings because it requires use of bleach to offset the lower temperature. The hip protectors which are the subject of this lawsuit contain Lycra/Spandex stretch fibers and a urethane pad pouch covering. Bleach | Best Evidence Rule (FRE 1001 – 1008): Testing protocols speak for themselves.<br><br>FRE 701: Goodwin's opinions are inadmissible lay opinion.<br><br>FRE 702: To the extent Goodwin is offering expert opinion, it is not trustworthy, because his competence as an expert has not been established, and he is the President of plaintiff.<br><br>The testimony regarding launderability of both Posey and HipSaver garments is contradicted by HipSaver's own deposition testimony, which established that HipSaver never conducted any studies. Specifically, the lack of study on Posey products is established at Posey's Undisputed Fact No. 44 (citing the Brogna Depo. at 20:16-22:11).<br><br>The lack of study on HipSaver's products is established at Posey's |

| | |
|---|---|
| manufacturers recommend against bleach use on these components since routine use of bleach rapidly degrades the molecular structure of the base polymers. | Undisputed Fact No. 45 (citing the Brogna Depo., at 23:6-16; Goodwin Depo., Vol. 1, 96:8-16, 99:18-100:18, 105:3-23). |
| 34. As noted above in paragraph 6, HipSaver has participated in two clinical studies. The purpose of the study conducted by Jeffry B. Burl, MD, a physician at the Fallon Clinic, was to determine the extent to which a high compliance rate can be achieved among an elder group at high risk of hip injury. The compliance rate for patients who completed the study exceeded 93%. Moreover, it is significant as a matter of fact that not a single high risk patient was injured while wearing a HipSaver hip protector '- even though patients experienced 126 falls during the course of the study. While the Fallon study did not evaluate the statistical significance of zero injury, this was demonstrated and confirmed in a related study by George Gross and his colleagues in the Elder Service Plan study. Gross' study of frail elders over the course of 26 months determined that a zero hip injury rate among HipSaver wearers was statistically significant. | Best Evidence Rule (FRE 1001 – 1008): Testing protocols and results speak for themselves.<br><br>FRE 701: Goodwin's opinions are inadmissible lay opinion.<br><br>FRE 702: To the extent Goodwin is offering expert opinion, it is not trustworthy, because his competence as an expert has not been established, and he is the President of plaintiff. |

| | |
|---|---|
| 35. The HipSaver pad used in the Gross Study was substantially a design equivalent of the current HipSaver pad. Both pads use the same basic technology of an encapsulated visco-elastic damping urethane pad which I invented. In 2002, two years after the study ended, the physical therapists who ran the Gross Study informed us that they now used HipSaver's that use the current HipSaver pad and that they had an additional 200 falls on the current HipSavers with no fractures. | Best Evidence Rule (FRE 1001 – 1008): The pads speak for themselves.<br><br>FRE 701: Goodwin's opinions are inadmissible lay opinion.<br><br>FRE 702: To the extent Goodwin is offering expert opinion, it is not trustworthy, because his competence as an expert has not been established, and he is the President of plaintiff. |
| 36. HipSavers were also tested at Tampere University in 2000. The pads in the hip protectors tested at Tampere use the same foam as the current HipSaver pad. The foam material is the determinant of the force absorption of a hip protector pad. To add an extra margin of safety, current hip protector pads are even thicker than the pads tested at Tempere. | Best Evidence Rule (FRE 1001 – 1008): The pads and testing speak for themselves.<br><br>FRE 701: Goodwin's opinions are inadmissible lay opinion.<br><br>FRE 702: To the extent Goodwin is offering expert opinion, it is not trustworthy, because his competence as an expert has not been established, and he is the President of plaintiff. |

Dated: January 18, 2007

J.T. POSEY COMPANY

By its attorneys,

/s/ Douglas H. Morseburg
Jeffrey G. Sheldon (CA Bar No. 67516)
Douglas H. Morseburg (CA Bar No. 126205)
SHELDON MAK ROSE & ANDERSON PC
225 South Lake Avenue, Suite 900
Pasadena, CA 91001
(626) 796-4000

Anthony J. Fitzpatrick (BBO # 564324)
DUANE MORRIS LLP
470 Atlantic Avenue, Suite 500
Boston, MA 02210
(617) 289-9200