UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE HIPSAVER COMPANY, INC., | ) Civil Action No. 05-10917 PBS |
| Plaintiff, | ) |
| v. | ) |
| J.T. POSEY COMPANY, | ) |
| Defendant. | ) |
| AND RELATED COUNTERCLAIM. | ) |

**FURTHER SUBMISSION OF DEFENDANT AND COUNTERCLAIMANT
J.T. POSEY COMPANY, INC. IN RESPONSE TO COURT REQUEST FOR
CLARIFICATION REGARDING PUBLICATION OF POSEY PROMOTIONAL
MATERIALS**

At the recent hearing on the parties' respective motions for summary judgment and/or partial summary judgment on the claims and counterclaims, the Court requested clarification regarding the publication of the various Posey materials that contained any of the statements that were the subject of HipSaver's motion for partial summary judgment on its complaint. Specifically, the Court asked Posey to identify: (i) those materials that had been published and disseminated only before the date of the Posey I settlement, i.e., September 22, 2004, (ii) those materials that were being disseminated both at the time of, and following, the settlement, and (iii) those materials that were first published following the settlement.

As set forth in detail below, the promotional materials that Posey disseminated before and after the settlement agreement and which contain any accused statement consist of 19 separate items. Generally, these include:

- Posey product catalogs for 2002 and 2003;
- Several advertising flyers;
- Several product instruction sheets;
- A 2001 promotional video; and
- An email communication dated July 27, 2001 written by Posey's former director of marketing.

Copies of each of these items are set forth in the accompanying evidentiary appendix.[1] For the convenience of the Court, and for ease of reference by the parties, they are numbered as Exhibits 501 through 519. Preceding the evidentiary appendix is an index which (i) contains a description of each exhibit, (ii) provides the exhibit number assigned to each document by the

---

[1] Every attempt was made to locate an original of each item. However, this was not possible due to the passage of time.

parties in their respective papers, (iii) identifies the dates of use of each document, and (iv) references the evidentiary support for the dates of use.

I. **THE DATES OF PUBLICATION OF THE MATERIALS AT ISSUE**

    A. **Promotional Materials the Publication and Dissemination of Which Began and Ended Prior to the Effective Date of the Settlement Agreement**

Posey's publication and dissemination of the following materials began and ended prior to the effective date of the settlement agreement in Posey I:

| Ex. No. | Description | Dates of Dissemination (Supporting Evidence) |
|---|---|---|
| | **Posey Product Catalogs** | |
| 501 | 2002 Posey Product Catalog (Cover and p. 25 only) (Newly produced in color as Bates Nos. PC5927-PC5928; Previously produced in black & white as Bates Nos. PC1804-PC1805) | Late 2001 through 2002 (Declaration of Victoria Lewis, paragraph 13 (hereafter cited "Lewis Decl., ¶ ___.")). |
| 502 | 2002 Posey Product Catalog (Alternative Cover and p. 25 only) (Bates Nos. PC1029-PC1030) | Late 2001 through 2002 (Lewis Decl., ¶ 13). |
| 503 | 2003 Posey Product Catalog (Cover, pp. 16-17 and back cover only), Part No. CATL03 (Newly produced in color as Bates Nos. PC5929-PC5932; Previously produced in black & white as Bates Nos. PC1033-PC1035 and PC0410) | Late 2002 through 2003 (Lewis Decl., ¶¶ 15 and 24). |
| | **Posey Hipsters Flyer, Part No. MK 1162** | |
| 504 | Posey Hipsters Flyer, Part No. MK 1162 (Newly produced in color as Bates Nos. PC5933-PC5934; Previously produced in black & white as Bates Nos. PC1025-PC1026) | September/October 2001 through November/December 2001 (Lewis Decl., ¶ 22). |
| | **Posey Hipsters Flyer, Part No. 6023** | |
| 505 | First Generation of Posey Hipsters Flyer, Part No. MK 6023 (Bates Nos. PC3006-PC3007) | November/December 2001 through April/May 2002 (Lewis Decl., ¶ 14). |
| 506 | Second Generation of Posey Hipsters Flyer, Part | April/May 2002 through |

| Ex. No. | Description | Dates of Dissemination (Supporting Evidence) |
|---|---|---|
| | No. MK 6023 (Bates Nos. PC3008-PC3009). | February/March 2003 (Lewis Decl., ¶ 9). |
| **Posey "Tight-Rope Walker" Flyer, Part No. 6079** | | |
| 507 | First Generation of Posey "Tight-Rope Walker Flyer", Part No. 6079 (Bates Nos. PC1806-PC1809) | December 2002 or January 2003 until September or October 2003 (Lewis Decl., ¶¶ 8 and 16). |
| **Email Communication Between Posey Employee and Third Parties** | | |
| 519 | Email dated 07/27/01 from Jeffrey Yates (Posey Marketing Director) to Robert Weaver (VA Hospital in Los Angeles) re impact tests conducted in 2001 on Posey Hipsters, together with information sheet depicting graph comparing results of various protectors (Bates Nos. PC0853 & PC0852) | July 2001 (Lewis Decl., ¶ 12). |

**B.    Promotional Materials That Posey Was Publishing Or Disseminating On the Effective Date of the Settlement and Which Continued Following the Date of the Settlement Agreement**

Posey was publishing and disseminating the following at the time of the settlement agreement. The dissemination of these materials continued following the settlement agreement:

| Ex. No. | Description | Dates of Dissemination (Supporting Evidence) |
|---|---|---|
| **Posey "Tight-Rope Walker" Flyer, Part No. 6079** | | |
| 508 | Second Generation of Posey "Tight-Rope Walker Flyer", Part No. 6079 (Newly produced in color as Bates Nos. PC5935-PC5938; Previously produced in black & white as Bates Nos. PC1810-PC1813) | September or October 2003 through November 2004 (Lewis Decl., ¶ 17). |
| **Posey EZ On Hipsters Instruction Sheet, Part No. 5017** | | |
| 513 | First Generation of Posey EZ On Hipsters | June/July 2003 through October 2004 |

- 4 -

| Ex. No. | Description | Dates of Dissemination (Supporting Evidence) |
|---|---|---|
| | Instruction Sheet, Part No. 5017 (Produced by Posey as Bates Nos. PC0406-PC0407; Produced by HipSaver as Bates Nos. HS2 0818-19) | (Lewis Decl., ¶¶ 25 and 26). |
| **Posey "Hipsters III" Promotional Video** | | |
| 518 | Screen Shot from Hipsters III Videotape (No Bates No.) | Beginning in 2001; stopped dissemination as a consequence of the commencement of the instant litigation (Lewis Decl., ¶ 11). |

C.  **Promotional Materials That Were First Published Following the Effective Date of the Settlement Agreement**

The following materials were first published following the effective date of the settlement agreement in Posey I:

| Ex. No. | Description | Dates of Dissemination (Supporting Evidence) |
|---|---|---|
| **Posey "Tight-Rope Walker" Flyer, Part No. 6079** | | |
| 509 | Third Generation of Posey "Tight-Rope Walker Flyer", Part No. 6079 (Bates Nos. PC1739-PC1742) | November 2004 through March 2005 (Lewis Decl., ¶ 18). |
| 510 | Fourth Generation of Posey "Tight-Rope Walker Flyer", Part No. 6079 (Bates Nos. PC1743-PC1746) | March 2005 until early May 2005 (Lewis Decl., ¶ 19). |
| 511 | Fifth Generation of Posey "Tight-Rope Walker Flyer", Part No. 6079 (Bates Nos. PC0400-PC0401) | May 2005 until August/September 2005 (Lewis Decl., ¶ 20). |
| 512 | Sixth Generation of Posey "Tight-Rope Walker Flyer", Part No. 6079 (Bates Nos. PC1093-PC1096) | August/September 2005 until the present (Lewis Decl., ¶ 21). |
| **Posey EZ On Hipsters Instruction Sheet, Part No. 5017** | | |

| Ex. No. | Description | Dates of Dissemination (Supporting Evidence) |
|---|---|---|
| 514 | Second Generation of Posey EZ On Hipsters Instruction Sheet, Part No. 5017 (Bates Nos. PC1071-PC1072) | October 2004 through January 2005 (Lewis Decl., ¶¶ 25, 26 and 27). |
| **Posey Hipsters Instruction Sheet, Part No. 6139** | | |
| 515 | First Generation of Posey Hipsters Instruction Sheet, Part No. 6139 (Produced by Posey as PC0404-PC0405; Produced by HipSaver as Bates Nos. HS2 0058-59) | January/February 2005 until April/May 2005 (Lewis Decl., ¶ 28). |
| 516 | Second Generation of Posey Hipsters Instruction Sheet, Part No. 6139 (Bates Nos. PC0402-PC0403) | April/May 2005 until September 2005 (Lewis Decl., ¶¶ 28 and 29). |
| 517 | Third Generation of Posey Hipsters Instruction Sheet, Part No. 6139 (Bates Nos. PC1051-PC1052) | September 2005 through the present (Lewis Decl., ¶¶ 29). |

### II. THE PROMOTIONAL MATERIALS WHICH CONTAIN EACH OF THE ACCUSED STATEMENTS AT ISSUE ON HIPSAVERS MOTION

Not all of Posey's promotional materials contain each of the statements to which HipSaver has objected in connection with its motion. To assist the Court in deciding the parties' motions, each of the statement to which HipSaver has objected on this motion and each piece of promotional material in which each statement appears is set forth in the sections which follow. As is set forth below, all of the statements in Posey's advertising to which HipSaver objects were disseminated long before the settlement in Posey I. All of those statements were also contained in promotional materials that were being disseminated at the time of the settlement.

### A. The Statement That "A Test Was Created That Would Simulate A Fall Causing Direct Impact to the Greater Trochanter"

The statement "A test was created that would simulate a fall causing direct impact to the greater trochanter" appears in the following promotional materials:

| Materials Whose Publication and Dissemination Began and Ended Prior to the Settlement in Posey I | Materials Whose Publication and Dissemination Began Prior to the Settlement and Continued After the Settlement | Materials Whose Publication and Dissemination Began After the Settlement |
|---|---|---|
| Exs. 501, 502, 503, 504, 505, 506 | Ex. 513 | Exs. 510, 511, 514, 515 |

**B.     The Statement That "An Independent Laboratory Test Was Conducted To Determine the Most Effective Impact Absorbing Material"**

The statement "An independent laboratory test was conducted to determine the most effective impact absorbing material" appears in the following promotional materials:

| Materials Whose Publication and Dissemination Began and Ended Prior to the Settlement in Posey I | Materials Whose Publication and Dissemination Began Prior to the Settlement and Continued After the Settlement | Materials Whose Publication and Dissemination Began After the Settlement |
|---|---|---|
| Exs. 504, 505, 506 | Ex. 513 | Exs. 510, 511, 514, 515 |

**C.     The Statement That "In an Independent Laboratory Test Designed to Simulate A Fall Causing Direct Impact to the Greater Trochanter, the Posey Hipster Reduced the Impact Force By 90%, the Best Results of Any Hip Protector Available"**

The statement "In an independent laboratory test designed to simulate a fall causing direct impact to the greater trochanter, the Posey Hipster reduced the impact force by 90%, the best results of any hip protector available" appears in the following promotional matter:

| Materials Whose Publication and Dissemination Began and Ended Prior to the Settlement in Posey I | Materials Whose Publication and Dissemination Began Prior to the Settlement and Continued After the Settlement | Materials Whose Publication and Dissemination Began After the Settlement |
|---|---|---|
| None | Ex. 518 | None |

### D. The Statement "Posey Hipsters Proven Effective in Laboratory Test"

The statement "Posey Hipsters Proven Effective in Laboratory Test" appears in the following promotional matter:

| Materials Whose Publication and Dissemination Began and Ended Prior to the Settlement in Posey I | Materials Whose Publication and Dissemination Began Prior to the Settlement and Continued After the Settlement | Materials Whose Publication and Dissemination Began After the Settlement |
|---|---|---|
| Exs. 501, 502, 503, 504, 505, 506 | Ex. 513 | Exs. 510, 511, 514, 515 |

### E. The Statement That "Posey Hipsters Help Protect Against Injury From Falls"

In approximately December 2002, Posey began advertising that "Posey Hipsters Protect Against Injury From Falls". In November 2004, Posey modified the claim to read "Posey Hipsters Help Protect Against Injury From Falls". The two statements appear in the following promotional materials:

| Materials Whose Publication and Dissemination Began and Ended Prior to the Settlement in Posey I | Materials Whose Publication and Dissemination Began Prior to the Settlement and Continued After the Settlement | Materials Whose Publication and Dissemination Began After the Settlement |
|---|---|---|
| Ex. 507 (protect against injury) | Ex. 508 (protect against injury) | Exs. 509, 510, 511, 512 (help protect against injury) |

F.  **The Statement That Posey Hipsters "Showed Excellent Impact Energy Absorption"**

The statement that, in the Garwood testing, Posey Hipsters "showed excellent impact energy absorption" appears in the following promotional materials:

| Materials Whose Publication and Dissemination Began and Ended Prior to the Settlement in Posey I | Materials Whose Publication and Dissemination Began Prior to the Settlement and Continued After the Settlement | Materials Whose Publication and Dissemination Began After the Settlement |
|---|---|---|
| Exs. 501, 502, 503, 504, 505, 506 | Ex. 513 | Exs. 510, 511, 514, 515 |

III.  **THE LEWIS DECLARATION DOES NOT CONTRADICT HER DEPOSITION TESTIMONY**

At the hearing on February 14, 2007, HipSaver's counsel contended that Ms. Lewis' declaration should be disregarded because "she has deposition testimony that says she had no idea about the details or the specifics of any [of Posey's] advertising. She didn't know and she testified to a lack of knowledge, so an affidavit now seems kind of convenient." 02/14/07 Hearing Tr., at 9:11-14 [D.N. 214].

Counsel's statement was a complete misrepresentation of the witness' testimony. Specifically, at the deposition, counsel for HipSaver questioned Ms. Lewis about the *laundering instructions* for Posey's Standard and High Durability Hipster models. During questioning by Mr. Dailey, the following exchange took place:

> Q: Do you inform institutions that there are different laundering instructions on these products; that is, [exhibits] 86 and 87 [i.e., Posey's "Standard" and "High Durability" Hipster models]?
>
>                 \*      \*      \*
>
> A: What do you mean by "inform"?
>
> Q: The two products look alike; is that a fair statement?
>
> A: Yes.
>
> Q: 86 and 87; how is an institution able to distinguish which product to purchase?
>
> A: That's up to the institution to decide.
>
> Q: Do you – Does your company give the institution any information?
>
> A: We give them our catalog with the product information in it.
>
> Q: Do you give them any other information?
>
> A: I don't know. I don't sell. I'm not on the sales team. I don't know.
>
>                 \*      \*      \*
>
> Q: Do you know of any information other than what is in the catalog – that is, your company's sales catalog – that would distinguish the product that is marked exhibit 86 from that which is marked exhibit 87?
>
> A: The product label.
>
> Q: And what label are you referring to?

> A:   With the catalog number on it.
>
> Q:   Okay.
>
> A:   One is labeled "High-Durability" and the other is not.

See Exhibit 1 to HipSaver Reply Brief in Support of Motion for Partial Summary Judgment on Complaint, Excerpt of Lewis Deposition, at 23:23-25:11 [D.N. 198-1].

Ms. Lewis testified at deposition that she did not know what the sales team gave institutional purchasers to inform them that the washing instructions on Posey's Standard Hipsters were different from the washing instructions on Posey's High Durability Hipsters. However, she never testified that she knew nothing about Posey's advertising. In fact, she was never even asked if she knew anything about Posey's advertising and counsel's statement that she testified that "she had no idea about the details or the specifics of any [of Posey's] advertising" mischaracterizes what actually took place at the deposition.

Moreover, insofar as the substance of the Lewis declaration is concerned, it specifically states that the facts set forth in it were based upon, among other things, Ms. Lewis' general personal knowledge of the way Posey has marketed Hipsters over the past 7 or 8 years and of the documents Posey has used in connection with that marketing and, most importantly, upon a review of the business records Posey keeps in connection with its advertising of Hipster products. Lewis Decl., ¶¶ 3-6 [D.N. 188].

Thus, even if there were a discrepancy between Ms. Lewis' declaration and her deposition testimony (and there is not), the discrepancy would be easily explained by the fact that Ms. Lewis had no opportunity to review documentation regarding Posey's advertising at her deposition. However, in connection with these motions, she specifically reviewed Posey's advertising documents.

## IV.     CONCLUSION

For the foregoing reasons and for the reasons set forth in Posey's moving and reply papers, Posey's motions for summary judgment on the complaint and partial summary judgment on the counterclaims should be granted, while HipSaver's motions for summary judgment on the counterclaims and partial summary judgment on the complaint must be denied.

Dated: February 28, 2007                            J.T. POSEY COMPANY

                                                    By its attorneys,

                                                    /s/ Douglas H. Morseburg
                                                    Jeffrey G. Sheldon (CA Bar No. 67516)
                                                    Douglas H. Morseburg (CA Bar No. 126205)
                                                    SHELDON MAK ROSE & ANDERSON PC
                                                    225 South Lake Avenue, Suite 900
                                                    Pasadena, CA  91001
                                                    (626) 796-4000

                                                    Anthony J. Fitzpatrick (BBO # 564324)
                                                    DUANE MORRIS LLP
                                                    470 Atlantic Avenue, Suite 500
                                                    Boston, MA 02210
                                                    (617) 289-9200

**CERTIFICATE OF SERVICE**

    I certify that this document has been filed through the Electronic Case Filing System of the United States District Court for the District of Massachusetts and will be served electronically by the court to the Registered Participants identified in the Notice of Electronic filing.

February 28, 2007

/s/ Donald K. Piper
Donald K. Piper