# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| THE HIPSAVER COMPANY, INC., ) | Civil Action No. 05-10917 PBS |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORAL HEARING REQUESTED |
| ) | |
| J.T. POSEY COMPANY, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| AND RELATED COUNTERCLAIM. ) | |

## THIRD MOTION IN LIMINE OF J.T. POSEY COMPANY FOR ORDER PRECLUDING TESTIMONY OF ROY J. EPSTEIN REGARDING DAMAGE IN FACT TO THE HIPSAVER COMPANY, INC.

By this third motion in limine, defendant and counterclaimant J.T. Posey Company

("Posey") seeks an order pursuant to Rules 403 and 702 of the Federal Rules of Evidence and

Rules 26(a)(2)(B), 26(e)(1) and 37(c) precluding Roy J. Epstein, Ph.D. ("Dr. Epstein") from

providing any oral or written evidence on the subject of whether HipSaver in fact suffered any

damage as a consequence of Posey's publication of the advertisements which are the subject of

HipSaver's First Amended Complaint ("FAC").

Pursuant to Local Rule 7.1(A)(2), counsel for Posey has conferred with the plaintiff's

counsel regarding this motion.

I.    **FACTS**

In the event the Court denies Posey's pending motion for summary judgment on HipSaver's claims, one of the primary issues in this case will be whether HipSaver in fact suffered any damages as a consequence of the advertisements which are the subject of the FAC.

In his expert report dated, September 25, 2006, HipSaver's financial expert, Dr. Epstein opined that "I do not believe there are sufficient data to calculate lost profits damages of HipSaver reliably, even though there are indications of an effect of the challenged conduct on HipSaver's sales." Expert Report of Roy J. Epstein, Ph.D., dated September 25, 2006 ("Epstein Report"), ¶ 21, excerpts of which are attached as Exhibit "A". Dr. Epstein's statement that "there are indications of an effect of [Posey's] challenged conduct" is based upon the mere fact that Posey's average monthly sales increased by 8.8% in the nine months following September 2004 relative to the previous nine months while HipSaver's sales increased by 4.2%. *Id.*

Dr. Epstein's assertion that Posey's "challenged conduct" affected HipSaver's growth rate in the 9 months following September 2004 is total speculation. In fact, Dr. Epstein acknowledged in his report that the difference in the parties' growth rates was more than likely due to other factors such as Posey's size, its resources, its product mix and its presence in the market. See Epstein Report, ¶ 22. ("It is also my understanding that Posey has greater marketing resources due to its size and ability to offer other types of medical garments and equipment.").

In his report, Dr. Epstein also recognizes that HipSaver could have, but apparently did not, conduct any surveys, even informal ones, to determine whether Posey's accused advertisements affected any customers' purchasing decisions. See Epstein Report, ¶ 23 ("No litigation-related surveys of Posey and HipSaver customers have been undertaken to determine

directly whether actual purchasing decisions were influenced by the challenged conduct and the resulting implications for sales.")

At deposition, counsel for Posey asked Dr. Epstein whether it was possible to determine whether HipSaver had, in fact, been adversely affected by Posey's accused ads. Dr. Epstein confirmed that it was not possible. Specifically, Dr. Epstein was asked the following questions and he gave the following answers:

> Q. In your initial report you said that you can't determine whether HipSaver suffered any lost profits because you didn't have sufficient information; is that your opinion?

> A. I don't know if I said those exact words, but that I didn't, I don't think there was enough data, that's right.

> Q. What additional information would you need in order to determine whether HipSaver suffered any lost profits?

> A. Well, I don't know that I could give a list of information that would be sufficient. A determination of lost profits requires, in my mind, a comparison between an actual world and a but for world; where there's profits in the actual world and profits in the but for world. And the difference in profits would be a measure of lost profits. In this instance, one of the liability theories, as I understand it, is that Posey would be liable for certain conduct commencing in 2001, and under that theory the entire period for which we have data would be tainted by the conduct, so there wouldn't be any data in a purely untainted period. So to come up with a benchmark for lost sales I think would be a difficult problem. As I indicated in my report one possible way, although there is certainly no guarantee that it would be useful, is to basically interview potential customers and try to assess the reasons for their purchasing decisions or lack of purchasing decisions, but in this case I gather that type of information was never gathered and I think it would be, it's in my experience difficult to frame those inquiries so that the responses are reliable also, but that is at least one possible avenue. So it's . . .

> Q. Is it fair to say that you're not aware of any information that HipSaver has in its possession at present which would permit you to conclude whether they had lost profits or not?

> A. Yeah, I'm not prepared to offer an opinion on lost profits at all, because I think it wasn't really proper, it wasn't really possible to do a proper study, so I just can't go there.

Deposition of Roy J. Epstein, taken November 7, 2006 (hereafter, "Epstein Depo., 11/06/07") at 75:15-77:11, excerpts of which are attached as Exhibit "B".

Finally, at the hearing on the parties' motions for summary judgment on February 14, 2007, this Court flatly stated that, by itself, evidence of the difference in the parties' growth rates, was not evidence of direct harm to HipSaver caused by Posey.  See Hearing Transcript dated February 14, 2007 (hereafter, "Hearing Tr., 02/14/07"), at 28:15-29:16, excerpts of which are attached as Exhibit "C".

## I.    ARGUMENT

The Court should preclude Dr. Epstein from providing any evidence or testimony on the subject of whether HipSaver suffered any injury as a consequence of Posey's accused ads.

### A.    Dr. Epstein Should Be Precluded From Testifying That The Differential Growth Rates Are an "Indication" Of Damage In Fact to HipSaver Because Such Evidence Is Likely to Mislead the Jury.

Dr. Epstein's statement that the parties' different growth rates in the 9 months following September 2004 is an "indication" of damage in fact to HipSaver is sheer speculation.  After all, HipSaver is contending in this litigation that Posey made false statements in its advertising for the entire period from late 2001 through August 2005.  If Posey's accused ads had any effect on HipSaver (and they did not), HipSaver would have felt those effects for this entire period, not just for the 9 months following September 2004.

In his report, Dr. Epstein has not articulated any reason for concluding that the parties' different growth rates for the 9 months following September 2004 was caused by Posey's ads.

And the fact that Posey's accused ads began prior to this period and ended following this period means that the differential growth rate must have been caused by something other than Posey's accused ads. Moreover, this Court has already recognized that, by themselves, these different growth rates are not indicative of harm to HipSaver. Hearing Tr., 02/14/07, at 28:17-29:16. Therefore, any testimony or argument to the effect that the differential growth rates of Posey and HipSaver were caused by Posey's ads would mislead the jury.

Accordingly, at trial Dr. Epstein should be precluded pursuant to Rule 403 from offering evidence and testimony regarding damage in fact to HipSaver and, in the event his expert report is received into evidence at trial, any reference to the parties' different growth rates or injury in fact to HipSaver should be stricken from his report.

**B.**    **Dr. Epstein Should Be Precluded From Testifying Regarding Damage In Fact To HipSaver and HipSaver's Lost Profits Because Such Testimony Does Not Meet The Standards of Rule 702**

Testimony by Dr. Epstein regarding damage in fact to HipSaver and HipSaver's lost profits is not based upon sufficient facts or data, and is not the product of reliable principles and methods, and therefore does not meet the admissibility requirements of Rule 702. In *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the U.S. Supreme Court provided a non-exclusive list used to assess reliability of expert testimony. These factors include: (1) whether the expert's technique or theory can be tested; (2) whether the technique or theory has been subject to peer review; (3) the known or potential rate of error of the technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) whether the technique or theory has been generally accepted in the scientific community. Dr. Epstein's

conclusory statement that Posey and HipSaver's different growth rates is an "indication" of damage to HipSaver meets none of the *Daubert* factors.

Dr. Epstein himself acknowledged at his deposition that there was insufficient data to determine whether HipSaver had suffered any damage. Thus, any opinion that HipSaver had, in fact, suffered damage as a consequence of Posey's ads would be speculation. Expert opinion based on speculation rather than investigation is properly excluded. *See Polaino v. Bayer Corp.*, 122 F.Supp.2d 63, 69 (D. Mass., 2000). Moreover, Dr. Epstein himself made clear that any such opinion would not be the product of reliable principles. Epstein Depo., at 75:15-77:11 ("I'm not prepared to offer an opinion on lost profits at all, because I think it wasn't really proper, it wasn't really possible to do a proper study, so I just can't go there.")

Accordingly, testimony by Dr. Epstein regarding damage in fact to HipSaver would not meet the admissibility requirements of Rule 702 and should be excluded.

**C.**     **The Court Should Preclude Dr. Epstein From Testifying That HipSaver Was Damaged By Posey's Accused Ads Because Dr. Epstein's Report Does Not State That HipSaver Has, In Fact, Been Damaged By Those Ads.**

Federal Rule of Civil Procedure 26(a)(2)(B) provides that a written expert report "shall contain a complete statement of all opinions to be expressed and the basis and reasons therefore." Rule 26(e)(1) provides, among other things, that any party wishing to change any of the information contained in an expert report is under a duty to supplement the report by the time the party makes its final pretrial disclosures (which time has already passed). Rule 37(c)(1) precludes the use at trial of any information not disclosed pursuant to Rules 26(a) and 26(e)(1).

In his expert report, Dr. Epstein does not state that he has concluded to a reasonable degree of certainty that HipSaver has been damaged as a consequence of Posey's ads. He merely

states that it is not possible to calculate HipSaver's damages as an alternative to disgorgement. Epstein Report, ¶ 26 (see Exhibit "A").  Moreover, HipSaver has never supplemented Dr. Epstein's report with any information that would indicate that Dr. Epstein is prepared to offer an opinion that HipSaver has, in fact, been damaged by Posey's ads.

Accordingly, pursuant to Rule 26(a)(2)(B), Rule 26(e)(1) and 37(c), this Court should preclude Dr. Epstein from testifying at trial that HipSaver suffered any damage as a consequence of Posey's accused ads.

## II.    CONCLUSION

For the forgoing reasons, Posey's third motion in limine should be granted.

Dated: May 15, 2007

J.T. POSEY COMPANY

By its attorneys,

/s/ Douglas H. Morseburg
Jeffrey G. Sheldon (CA Bar No. 67516)
Douglas H. Morseburg (CA Bar No. 126205)
SHELDON MAK ROSE & ANDERSON
100 E. Corson Street, 3d Floor
Pasadena, CA  91103-3842
626.796.4000

Anthony J. Fitzpatrick (BBO # 564324)
DUANE MORRIS LLP
470 Atlantic Avenue, Suite 500
Boston, MA 02210
857.488.4200

## CERTIFICATE OF SERVICE

I certify that this document has been filed through the Electronic Case Filing System of the United States District Court for the District of Massachusetts and will be served electronically by the court to the Registered Participants identified in the Notice of Electronic filing.

May 15, 2007

/s/ Donald K. Piper
Donald K. Piper

**EXHIBIT "A"**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| The HipSaver Co. Inc., | § | Civil Action No. 05-10917 PBS |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | |
| | § | |
| | § | |
| J.T. Posey Co., | § | |
| | § | |
| Defendant. | § | |

# Expert Report of Roy J. Epstein, PhD

## September 25, 2006

that information and not rely on the invoice data.  If other, more reliable financial information is provided by Posey, I reserve the right to revisit this issue.

19. Counsel for HipSaver have asked me to prepare two alternative measures of disgorgement damages that correspond to two alternative liability theories.  The first measure applies to a finding that Posey is liable for damages for the period August 1, 2001 to the present.  My understanding is that August 2001 is the earliest known date of allegedly improper Hipster advertising.  Data are only available through 2005, however, so this measure will be understated by omitting 2006.  The second measure applies to a finding that Posey is liable for damages for the period September 21, 2004 to the present.  Again, since data are only available through 2005, this measure will be understated by omitting 2006.

20. The damages using the first measure are $1,534,791.  See Exhibit 5.  The damages using the second measure are $756,828.  See Exhibit 6.

## IV.    LOST PROFITS DAMAGES

21. I do not believe there are sufficient data to calculate lost profits damages for HipSaver reliably, even though there are indications of an effect of the challenged conduct on HipSaver's sales.  For example, Hoffman/Green report that Posey's average monthly sales increased by 8.8% in the nine months following September 2004 relative to the nine months prior.  See Hoffman/Green at 7.  The same comparison for HipSaver, using data from Hoffman/Green Exhibit G, shows that HipSaver's sales increased by only 4.2%.

22. Nonetheless, other factors make it too difficult to measure lost profits reliably when data, as in this case, are limited.  For example, I understand that product specifications were changing (see Hoffman/Green at 7).  It is also my understanding that Posey has greater marketing resources due to its size and ability to offer other types of medical garments and equipment.

23. Moreover, no litigation-related surveys of Posey and HipSaver customers have been undertaken to determine directly whether actual purchasing decisions were influenced by the challenged conduct and the resulting implications for sales.

## V.     CONCLUSION

24. Hoffman/Green use an economically incorrect methodology by improperly allocating SG&A overhead expenses to Hipster as if they were direct expenses of production and sale.  They artificially depress Hipster profitability to the point where they claim Hipster has lost money for Posey.  This is not credible.

25. I find that Hipster has been profitable, so that disgorgement damages would be greater than zero.  Given a finding of liability on the part of Posey from August 2001 to the present, I calculate Hipster's profits to be $1,534,791 over this period.  This is actually understated because data are available only through 2005.  Alternatively, given a finding of liability for the period September 21, 2004 to the present, I calculate Hipster's profits to be $756,828, again omitting 2006 for lack of data.  If data for 2006 become available, I reserve the right to supplement my conclusions.

26. There is not sufficient information to perform a reliable calculation of HipSaver's lost profits as an alternative to disgorgement damages.

Roy J. Epstein

September 25, 2006

**EXHIBIT "B"**

1

1                        Volume:   I

2                        Pages:   1 - 96

3                      Exhibits: 143 - 153

4        IN THE UNITED STATES DISTRICT COURT

5          FOR THE DISTRICT OF MASSACHUSETTS

6    -----------------------------------x

7    THE HIPSAVER COMPANY, INC.,

8             Plaintiff,    C.V. No. 05-10917 PBS

9        v.

10    J.T. POSEY COMPANY, INC.,

11             Defendant.

12    -----------------------------------x

13    -----------------------------------x

14    J.T. POSEY COMPANY, INC.,

15             Plaintiff,

16        v.

17    THE HIPSAVER COMPANY, INC.,

18             Defendant.

19    -----------------------------------x

20        VIDEOTAPED DEPOSITION of ROY J. EPSTEIN,

21    Ph.D., a witness called for examination by the

22    Defendant/Counter claimant, taken pursuant to

23    Rule 30 of the Massachusetts Rules of Civil

24    Procedure, before Laurie K. Langer, Registered

2

1        Professional Reporter and Notary Public in and

2        for the Commonwealth of Massachusetts, at the

3        offices of Duane Morris, 470 Atlantic Avenue,

4        Boston, Massachusetts, on Tuesday, November 7,

5        2006, commencing at 9:34 a.m.

6

7        APPEARANCES

8

9            BROMBERG & SUNSTEIN LLP

10           By Courtney M. Quish, Esq.

11           Edward J. Dailey, Esq.

12           125 Summer Street

13           Boston, Massachusetts 02110

14           (617) 443-9292

15           For the Plaintiff

16

17           SHELDON & MAK

18           By Douglas H. Morseburg, Esq.

19           225 South Lake Avenue, 9th Floor

20           Pasadena, California 91101

21           (626) 796-4000

22                   and

23           HOFFMAN ALVARY & COMPANY LLC

24           By Joel Wacek, Esq.

1        remaining SG&A expenses have any relation to

2        Hipster sales.

3    Q.  Have you reviewed any financial information

4        produced by HipSaver since your initial report?

5    A.  No.

6    Q.  You understand I've switched gears on you now, I

7        didn't do it intentionally without warning you,

8        I'm talking about HipSaver now as opposed to

9        Posey?

10   A.  Yes, I heard you.

11   Q.  I just wanted to be sure.

12   A.  Yeah.  Thank you.

13   Q.  What information would you need -- let me

14       withdraw that.

15            In your initial report you said that you

16       can't determine whether HipSaver suffered any

17       lost profits because you didn't have sufficient

18       information; is that your opinion?

19   A.  I don't know if I said those exact words, but

20       that I didn't, I don't think there was enough

21       data, that's right.

22   Q.  What additional information would you need in

23       order to determine whether HipSaver suffered any

24       lost profits?

76

A.    Well, I don't know that I could give a list of

information that would be sufficient.  A

determination of lost profits requires, in my

mind, a comparison between an actual world and a

but for world; where there's profits in the

actual world and profits in the but for world.

And the difference in profits would be a measure

of lost profits.  In this instance, one of the

liability theories, as I understand it, is that

Posey would be liable for certain conduct

commencing in 2001, and under that theory the

entire period for which we have data would be

tainted by the conduct, so there wouldn't be any

data in a purely untainted period.  So to come

up with a benchmark for lost sales I think would

be a difficult problem.  As I indicated in my

report one possible way, although there is

certainly no guarantee that it would be useful,

is to basically interview potential customers

and try to assess the reasons for their

purchasing decisions or lack of purchasing

decisions, but in this case I gather that type

of information was never gathered and I think it

would be, it's in my experience difficult to

1           frame those inquiries so that the responses are

2           reliable also, but that is at least one possible

3           avenue.  So it's....

4    Q.     Is it fair to say that you're not aware of any

5           information that HipSaver has in its possession

6           at present which would permit you to conclude

7           whether they had lost profits or not?

8    A.     Yeah, I'm not prepared to offer an opinion on

9           lost profits at all, because I think it wasn't

10          really proper, it wasn't really possible to do a

11          proper study, so I just can't go there.

12   Q.     Okay.  Let's mark as Exhibit 146 a multi-page

13          document purporting to be an Amended Notice of

14          Deposition.  Well, it is an Amended Notice of

15          Deposition.  It's not purporting to be one.

16              (Deposition Exhibit 146 marked for

17          identification.)

18   Q.     Have you had a chance to look at the document

19          that's been marked as Exhibit 146?

20   A.     Yes.

21   Q.     Have you seen it before?

22   A.     Yes, I have.

23   Q.     When you -- did you see it sometime around

24          October 20th?

**EXHIBIT "C"**

1

1      IN THE UNITED STATES DISTRICT COURT
       FOR THE DISTRICT OF MASSACHUSETTS
2

3   THE HIPSAVER COMPANY, INC.,   )
                                  )
4              Plaintiff          )
                                  )
5              -VS-               ) CA No. 05-10917-PBS
                                  ) Pages 1 - 36
6   J.T. POSEY COMPANY,           )
                                  )
7              Defendant          )

8

9                  MOTION HEARING

10        BEFORE THE HONORABLE PATTI B. SARIS
             UNITED STATES DISTRICT JUDGE
11

12

13  A P P E A R A N C E S:

14      EDWARD J. DAILEY, ESQ. and COURTNEY M. QUISH, ESQ.,
    Bromberg & Sunstein, 125 Summer Street, Boston,
    Massachusetts, 02110-1618, for the Plaintiff.
15

16      DANIEL B. WINSLOW, ESQ., Duane Morris,
    470 Atlantic Avenue, Suite 500, Boston, Massachusetts,
    02210, for the Defendant.
17

18      JEFFREY G. SHELDON, ESQ. and DOUGLAS H. MORSEBURG, ESQ.,
    Sheldon, Mak, Rose & Anderson, P.C., 225 South Lake Avenue,
    9th Floor, Pasadena, California, 91101, for the Defendant.
19

20                      United States District Court
                        1 Courthouse Way, Courtroom 19
                        Boston, Massachusetts
21                      February 14, 2007, 2:45 p.m.

22

23                  LEE A. MARZILLI
               CERTIFIED REALTIME REPORTER
               United States District Court
24             1 Courthouse Way, Room 3205
                 Boston, MA  02210
25                 (617)345-6787

28

1    before we received their financial information.

2            THE COURT:  Then you move to open discovery.

3            MS. QUISH:  Their financial data came in.  We did

4    our expert report, and our expert report incorporated their

5    financial information.

6            MR. SHELDON:  But they're claiming that Alamed

7    occurred in 2002, and these customers, Mr. Goodwin is saying,

8    "I lost them."  Our financial documents have nothing to do

9    with that.  He's saying, "I lost these opportunities."

10   Clearly, if he knew this, he should have told us this at the

11   time of the deposition early in discovery.

12           THE COURT:  You said there was an early expert

13   report that didn't include it?

14           MS. QUISH:  No, there was not.  The expert report

15   focused only on the financials.  Even if you take Alamed and

16   anecdotal evidence out of the picture, you have evidence of

17   direct harm caused by Posey.  We are growing at half the rate

18   of Posey.  We put that into the expert report that came right

19   after Posey produced their financials in August of 2005.

20           THE COURT:  There are lots of things that can cause

21   that without any evidence of a hookup.

22           MS. QUISH:  You have evidence of a freeze-out with

23   Alamed.  You have evidence of diverted sales with this

24   extreme growth by a company that has a faulty product, where

25   the VA says it's a faulty product, and then you have our

1   expert who says there's --

2          THE COURT:  Maybe they have a better sales team.

3          MS. QUISH:  If they have a better sales team and

4   they don't dominate the marketing, then these are even more

5   important.

6          THE COURT:  Well, maybe they're just -- aren't they

7   bigger than you?  They are, right?

8          MS. QUISH:  They are bigger than us, but it's --

9          THE COURT:  They're already in a million places, so

10  maybe they're --

11         MS. QUISH:  If you have a crummy product, I think

12  that's hard to believe, but I also think that's an issue of

13  fact.

14         THE COURT:  Well, we'll see.  Okay, so the question

15  at the end of the day is, I'm going to have to take this

16  under advisement.

17         MR. SHELDON:  One request, your Honor.  If for some

18  reason you're going to let that declaration in, we do request

19  to open discovery --

20         THE COURT:  Yes.

21         MR. SHELDON:  -- so we can go after each one of

22  those people, and then resubmit our motion to show that none

23  of these people identified were affected by the Garwood ad.

24         THE COURT:  I would absolutely, if I relied on it,

25  let you do that.