**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| THE HIPSAVER COMPANY, INC., | ) Civil Action No. 05-10917 PBS |
| Plaintiff, | ) |
| v. | ) ORAL HEARING REQUESTED |
| J.T. POSEY COMPANY, | ) |
| Defendant. | ) |
| AND RELATED COUNTERCLAIM. | ) |

**FOURTH MOTION IN LIMINE OF J.T. POSEY COMPANY FOR AN ORDER**
**PRECLUDING TRIAL OF ISSUES INVOLVING THE TRUTH OR FALSITY OF**
**ADVERTISING STATEMENTS NOT INVOLVING THE GARWOOD TESTING**

By this fourth motion in limine, defendant and counterclaimant J.T. Posey Company

("Posey") seeks an order pursuant to Rules 402 and 403 of the Federal Rules of Evidence

precluding The HipSaver Company, Inc. ("HipSaver") and its counsel from presenting evidence

at trial regarding the truth or falsity of Posey advertising statements which relate to subjects other

than the Garwood testing.

Pursuant to Local Rule 7.1(A)(2), counsel for Posey has conferred with the plaintiff's

counsel regarding this motion.

I.    **FACTS**

HipSaver commenced an action ("Posey I") against Posey in this Court on June 10, 2004.

The gist of HipSaver's complaint in Posey I was the same as it is here.  The parties settled Posey

I in September 2004, at which time they executed a written settlement agreement (the

"Settlement Agreement") which recited the parties' desire to settle "all disputes among them concerning or in any way related to" Posey I. The Settlement Agreement included mutual releases of, among other things, "all claims and causes of action, known or unknown, which arise from or are related to . . . [the claims] which were asserted or which could have been asserted in [Posey I] for conduct which occurred prior to the date of [the] Agreement." See attached Exhibit "A", at paragraphs 10, 11.

When HipSaver commenced this action, Posey immediately brought a motion for summary judgment or, in the alternative, a more specific statement regarding the substance of HipSaver's complaint. The Court held a hearing on HipSaver's Motion to Dismiss or for Summary Judgment (D.N. 4) on July 12, 2005. At the hearing, Posey argued that the complaint did not specifically identify the subject matter upon which HipSaver's claims were based.

HipSaver's counsel, Mr. Karol, responded that HipSaver was complaining about the ad referenced in the demand for relief in its complaint. See Transcript of Hearing, 07/12/05, at 8:18-9:14, excerpts of which are attached as Exhibit "B". The prayer for relief, of course, seeks an injunction preventing Posey from making reference to "an independent laboratory study" performed for Posey by Garwood Laboratories, Inc. See Complaint, at p. 7, a copy of which is attached as Exhibit "C". Later during the hearing, Mr. Karol re-affirmed that the subject matter of HipSaver's complaint concerned Posey's statements regarding the testing Garwood had performed for Posey (the "Garwood Testing"). See Transcript, at 11:17-13:6 (Exhibit "B").

Still later during the hearing, counsel for Posey advised the Court that, in response to HipSaver's complaints about Posey's statements regarding to the Garwood testing, Posey had modified the statements in question. Id., at 17:24-18:6. When Mr. Karol stated that he was not aware that Posey had modified the statements, the Court asked counsel for Posey to provide the

changed ad to HipSaver. It also ordered counsel for HipSaver to provide the Court with a written specification of its position with respect to Posey's modified ad. Transcript, at 23:5-24:1 (Exhibit "B"). Finally, it also said that, if HipSaver wanted to add any issues to the case, it would need to amend the complaint. Transcript, at 9:19-10:1 (Exhibit "B").

Following the hearing, Posey provided the modified ad to HipSaver. On or about July 19, 2005, HipSaver filed a "statement" concerning the revised ad which stated that it objected to that ad and that its complaint "stands against both the first of the Garwood Laboratories advertisements and against the revised advertisement." *See* generally Plaintiff's Statement Concerning the Defendant's Revised "Laboratory Test" Advertising, attached as Exhibit "D".

On its face, the Plaintiff's "statement" regarding its issues with respect to the advertising in question sets out 8 specific points of contention. Seven of them center around Posey's advertising regarding the Garwood Testing. One concerns the fact that the advertisement in question states that Posey's products are "washable to CDC standards for soiled linen", which HipSaver characterized as an "outright misrepresentation" on the grounds that most of Posey's products have "a wash temperature limit of only 120˚F".

HipSaver obviously took it seriously when the Court stated that making additional issues part of the case would require it to change its complaint because, upon Posey's production of an email dated July 27, 2001 sent by a former Posey employee to a third party that mentioned the Garwood Testing, HipSaver moved to amend its complaint to state a claim for product disparagement. (D.N. 58.) The motion was granted. (Electronic Order dated 12/20/05.) However, HipSaver never moved to amend to add any other issues.

On May 1, 2007, the parties filed the Joint Pretrial Memorandum. A review of page 8 of that document discloses that at trial HipSaver intends to pursue two claims which have never

been made part of this case.  Specifically, HipSaver says that "for years" Posey has advertised that its Hipster products can be washed at temperatures of 160°F, despite the fact that as early as 2002, it knew, or should have known, that its products could not withstand this temperature and that "years after the fact" (i.e., in 2004) it reduced the wash temperature on its laundry instructions to 120°F.  HipSaver also says that for years Posey routinely advertised that its Hipster product "fits precisely over" the hip, a claim which HipSaver says Posey never verified.

The problem with HipSaver's stated intention to try these two issues at trial, is that it never sought leave to amend its complaint so as to make them part of the case.  Therefore, consistent with its rulings at the hearing on July 12, 2005, the Court should preclude HipSaver from presenting evidence regarding them.


**II.    ARGUMENT**

   **1.    HipSaver Should Be Precluded Under FRE 402 and 403 From Offering Evidence Of Posey's Advertising Statements Regarding Pad Placement and Wash Temperature Because Those Statements Are Irrelevant, Will Cause Unfair Prejudice, and Confusion**

Federal Rule of Evidence 402 states, in pertinent part, that evidence which is not relevant is not admissible.  Federal Rule of Evidence 403 provides, in part, that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of confusion of the issues.

Here, Posey asked at the commencement of this case for a specific statement of HipSaver's claims.  In response, HipSaver swore up and down that the issue was the truthfulness of the advertising claims Posey was making regarding the Garwood testing.  The Court and

Posey both understood that the case involved the truthfulness of Posey's statements regarding the Garwood testing and the Court ruled that if HipSaver wanted to add claims, it would need to amend its complaint so as to give Posey fair notice.

HipSaver amended its complaint to state a product disparagement claim, but it never sought leave to amend to state a "false laundry label" claim dating back to 2002. Nor did it seek leave to amend to state a "false fits over the hip" claim.

The "false laundry label" and "false fits over the hip" claims are simply not part of the case and, pursuant to Rules 402 and 403 of the Federal Rule of Evidence, the Court should order that at trial, HipSaver is precluded from introducing evidence or argument in support of them.

2.    **Permitting HipSaver to Try Its "False Laundry Label" and "False Fits Over the Hip" Claims Would Be Unfair Because Posey Tailored Its Case to the Claims Pleaded In HipSaver's Complaint.**

In preparing for trial in this case, Posey was guided by the claims pleaded in HipSaver's complaint. Had HipSaver pleaded a "false laundry label" claim, Posey would have had its laundry expert conduct tests on Posey's products from 2002, 2003 and 2004 to see if they were launderable in accordance with Posey's published laundry instructions (assuming of course that products from those years were even available). Posey would also have conducted discovery, including damages discovery, from HipSaver regarding this claim.

Similarly, if HipSaver had pleaded a "false fits over the hips" claim, Posey could have commissioned outside testing to defend against this claim. It would also have conducted discovery from HipSaver in connection with this claim.

Permitting HipSaver to proceed with its unpleaded claims would be fundamentally unfair. Therefore, pursuant to Rules 403 of the Federal Rules of Evidence, the Court should rule that, at trial, HipSaver may proceed with its false advertising claims only insofar as they involve Posey's advertising statements regarding the Garwood testing.

3.    **HipSaver Should Be Precluded From Offering Evidence Regarding Its "False Laundry Label" and "False Fits Over the Hip" Claims Because Those Claims Are Barred By the Settlement Agreement In Posey I.**

By HipSaver's own admission, Posey began at least as early as 2001 putting laundry labels on its products stating that they were launderable to temperatures of up to 160°F. At the same time, it started advertising that its products were launderable at those temperatures. However, it changed its laundry labels and its advertising in September 2004, that is, at the same time the parties entered into the Posey I settlement agreement.

Moreover, Posey has been including the statement that its hip protectors have pads that are "precisely positioned" over the hip continuously since at least 2001. In those ads in which the statement has appeared, the statement has never changed.

The Posey I settlement agreement recites the parties' desire to settle "all disputes among them concerning or in any way related to" Posey I. That agreement includes mutual releases of, among other things, "all claims, liabilities or causes of action, known or unknown, fixed or contingent, which arise from or are related to . . . [the claims] which were asserted or which could have been asserted in [Posey I] for conduct which occurred prior to the date of [the] Agreement." See attached Exhibit "A", at paragraphs E, 10 and 11.

HipSaver's "false laundry label" and "false fits over the hip" claims could have brought

in Posey I and those claims are clearly "related" to the claims HipSaver asserted in Posey I.

Therefore, even assuming for the sake of argument that the First Amended Complaint in this case

raised the "false laundry label" and "false fits over the hip" claims (and it does not), those claims

have been released.  Thus, they are irrelevant and evidence regarding them should be precluded

under Federal Rule of Evidence 402.


## III.     CONCLUSION

For the forgoing reasons, Posey's fourth motion in limine should be granted.

Dated: May 15, 2007                         J.T. POSEY COMPANY

                                            By its attorneys,

                                            /s/ Douglas H. Morseburg
                                            Jeffrey G. Sheldon, Admitted Pro Hac Vice
                                            Douglas H. Morseburg, Admitted Pro Hac Vice
                                            SHELDON MAK ROSE & ANDERSON
                                            100 E. Corson Street, 3d Floor
                                            Pasadena, CA  91103-3842
                                            626.796.4000

                                            Anthony J. Fitzpatrick (BBO # 564324)
                                            DUANE MORRIS LLP
                                            470 Atlantic Avenue, Suite 500
                                            Boston, MA 02210
                                            857.488.4200

## CERTIFICATE OF SERVICE

I certify that this document has been filed through the Electronic Case Filing System of
the United States District Court for the District of Massachusetts and will be served
electronically by the court to the Registered Participants identified in the Notice of Electronic
filing.

May 15, 2007                                /s/ Donald K. Piper
                                            Donald K. Piper

**EXHIBIT "A"**

# SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into between The HipSaver Company, Inc. ("HipSaver") and J.T. Posey Company, Inc. ("Posey") with reference to the following facts:

## RECITALS

A.     HipSaver has filed an action in the United States District Court for the District of Massachusetts entitled *The HipSaver Company, Inc. v. J.T. Posey Company, Inc.*, as Civil Action No. 04-11294 PBS (the "Action"), in which HipSaver accuses Posey among other things of having violated the Lanham Act and the Massachusetts Unfair or Deceptive Business Practices Act by disseminating certain materials, including a document entitled "A Solution to Hip Fractures Using Performance Tested Hip Protectors" (the "White Paper") and including in Posey catalogs and promotional materials certain bar charts comparing the relative effectiveness of hip protectors (the "Bar Charts") and statements derived from the White Paper.

B.     Posey denies the allegations asserted by HipSaver in the Action.

C.     Posey filed an answer and counterclaim in the Action in which Posey asserts among other things that HipSaver has made false representations about Posey products on HipSaver's website

D.     HipSaver denies the allegations asserted by Posey in the Counterclaim.

E.     The Parties desire to settle all disputes among them concerning or in any way related to the Action.

NOW, THEREFORE, in consideration of the promises, covenants and conditions set forth in this Agreement, the Parties hereto agree as follows:

1.     Posey shall pay to HipSaver the sum of $360,000.00 by check payable to The BROMBERG SUNSTEIN LLP Client Account to be delivered to BROMBERG SUNSTEIN within fourteen (14) days of the filing of the Stipulation for Dismissal of the Action as set forth in paragraph 12 below (the "Stipulation for Dismissal").

2.     Posey shall not distribute the White Paper or make any advertising claims based on or derived from the White Paper.

**PC 0365**

3.   Posey shall permanently comply with the terms of the Undertaking filed in the Action by Posey on August 26, 2004, a copy of which is attached hereto as Exhibit "A".

4.   In all future catalogs and other promotional materials Posey shall eliminate the Bar Charts and statements based on or derived from the White Paper and references to UCLA.

5.   Within ten days from the filing of the Stipulation for Dismissal Posey shall provide all its sales representatives, distributors, and dealers who have purchased or sold Posey Hipster hip protectors at any time since January 1, 2001 a copy of the "Special Announcement: HipSaver® and Posey Hipster® brand Hip Protectors" a copy of which is attached hereto as Exhibit "B" (the "Special Announcement").

6.   Within ten days from the filing of the Stipulation for Dismissal Posey shall post a link to a copy of the "Special Announcement: HipSaver and Posey Hipster brand Hip Protectors" on the first screen of the home page of the Posey web site immediately below the heading, "Resources for Healthcare Professionals".  This posting shall continue until Posey has published and distributed its next editions of its Posey's "full line" catalogs and its "falls management and bed safety products" catalogs.

7.   When Posey next distributes any of its annual catalogs advertising hip protectors, including Posey's "full line" catalogs and its "falls management and bed safety products" catalogs, it shall include therewith in the same envelope a copy of the Special Announcement: HipSaver and Posey Hipster brand Hip Protectors".

8.   In the event of any further comparative testing of Posey and HipSaver products by either party, neither party shall make commercial advertising use of the results or analysis related to such testing without first giving the other party at least thirty (30) days advance written notice of the results or analysis.

9.   This Agreement represents the compromise of disputed claims. Nothing contained here may be construed as an admission of wrongdoing or liability by any party.

10.   Except for the obligations contained in this Agreement, Posey releases HipSaver, and all of its officers, directors, employees, agents, representatives, dealers, distributors, shareholders, attorneys, predecessors, successors, assigns, affiliates, related companies, or corporations connected with them from any and all claims, liabilities or

2

**PC 0366**

causes of action, known or unknown, fixed or contingent, which arise from or are related to the false advertising claims under 15 U.S.C. §§ 1125, 1117 and G.L. c.93A, §§ 2, 11 which were asserted or which could have been asserted in the Action for conduct which occurred prior to the date of this Agreement.

11.    Except for the obligations contained in this Agreement, HipSaver releases Posey, and all of its officers, directors, employees, agents, representatives, dealers, distributors, shareholders, attorneys, predecessors, successors, assigns, affiliates, related companies, or corporations connected with them from any and all claims, liabilities or causes of action, known or unknown, fixed or contingent, which arise from or are related to the false advertising claims under 15 U.S.C. §§ 1125, 1117 and G.L. c.93A, §§ 2, 11 which were asserted or which could have been asserted in the Action for conduct which occurred prior to the date of this Agreement.

12.    Concurrently with the counter-execution of this Agreement the Parties agree that their respective counsel will execute and file a Stipulation for Dismissal of the Action with prejudice substantially in the form of Exhibit "C" attached.

13.    HipSaver acknowledges and agrees that it will not initiate any legal action against Vijay Gupta, Bimal P. Gandhi, or the University of California for any claim related to the false advertising claims under 15 U.S.C. §§ 1125, 1117 and G.L. c.93A, §§ 2, 11 which were asserted or which could have been asserted in the Action for conduct which occurred prior to the date of this Agreement.

14.    The terms of this Agreement shall remain confidential except that they are binding and enforceable and are admissible for the purposes of enforcement. In addition, either party may truthfully report that the Action has been settled to the mutual satisfaction of the Parties. It is expressly understood and agreed that HipSaver may distribute and publish the "Special Announcement: HipSaver and Posey Hipster brand Hip Protectors" and may state that Posey will distribute that document in its new catalogs and to its sales representatives, distributors, and dealers. Except as provided in this paragraph, no Party shall, without notice to and the prior written consent of the other Party, disclose any of the terms and conditions of this Agreement to any person or entity, including, without limitation, to any customers or potential customers of a Party, provided, however, that any Party may disclose such information to the extent required

3

by law or order of a court or government agency; and the Parties may inform their attorneys and independent public accountants of the terms and conditions of this Agreement.

15.    Each party shall bear its own costs, expenses and attorneys' fees in connection with the Action and the negotiation, preparation, and execution of this Agreement.

16.    Any notices or other communications under this Agreement shall be in writing, and shall be sent by facsimile and/or by email attachment, with a copy by hand-delivery or overnight courier service, as follows:

Notice Addresses:

To HipSaver:
    The HipSaver Company, Inc.
    7 Hubbard Street
    Canton, Massachusetts 02021
    Attention: Edward L. Goodwin
    Fax: 1.781.821.6514
With a copy to:
    BROMBERG SUNSTEIN LLP
    125 Summer Street
    Boston, Massachusetts 02110-1618
    Attention: Edward J. Dailey, Esq.
    Fax: (617) 443-0004

To: Posey:
    J.T. Posey Company
    5635 Peck Road
    Arcadia, CA 91006
    Attention: Ernest Posey
    Fax: (626) 443-9886

With a copy to:
    SHELDON & MAK
    225 South Lake Avenue, 9th Floor
    Pasadena, California 91101
    Attention: Jeffrey G. Sheldon, Esq.
    Fax: (626) 795-6321

17.    The Parties, and each of them, acknowledge that they have completely read the terms of this Agreement, and fully understand the terms and consequences of this Agreement. All Parties further acknowledge that they have been represented by

4

PC 0368

counsel with respect to the negotiation and execution of this Agreement and that their counsel has explained the terms and the significance of this Agreement.

18.    The failure of any party to insist upon the strict compliance by any other party to this Agreement of the performance of any covenant, condition or promise herein shall not invalidate this Agreement nor shall any such failure be construed as a waiver or relinquishment of the performance of any other covenant, condition or promise in this Agreement.

19.    This Agreement is the entire agreement between and among the Parties hereto with respect to the subject matter set forth herein.

20.    Each party has cooperated in the drafting and preparation of this Agreement. Hence, neither this Agreement nor any part of it shall be construed against either party merely because such party may have drafted all or part of it.

21.    The Parties to this Agreement, and each of them, agree to perform such further and other acts and to execute and deliver such further and other documents as may be reasonably necessary to carry out the provisions of this Agreement.

22.    Each party hereto represents and warrants that it has full power and authority to enter into this Agreement and to perform any and all transactions or other matters contemplated to be performed under this Agreement.

23.    This Agreement may be amended or modified only by a written instrument signed by all of the Parties.

24.    This Agreement shall be binding on and shall inure to the benefit of the Parties hereto, and their respective officers, directors, shareholders, legal representatives, assignees and successors-in-interest.

25.    This Agreement may be executed by facsimile and in counterparts all of which taken together shall constitute a single instrument.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date set forth next to their respective signatures below.

THE HIPSAVER COMPANY, INC.        J.T. POSEY COMPANY, INC.

By: _Edward Goodwin_              By: _Ennet M Posey_

PC 0369

Edward L. Goodwin, President
Its: _President_                          Its: _President_

Dated: _9/22/04_ , 2004               Dated: _9/21/2004_ , 2004

APPROVED AS TO FORM:

BROMBERG SUNSTEIN LLP                 SHELDON & MAK PC

By: _Edward J. Dailey_                By: _Jeffrey G. Sheldon_
Edward J. Dailey                      Jeffrey G. Sheldon
Attorneys for HipSaver                Attorneys for Posey

Dated: _9.21.04_ , 2004               Dated: _9/21_ , 2004

**PC 0370**

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 04-11294-PBS

| | |
|---|---|
| HIPSAVER COMPANY, INC., | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| J.T. POSEY COMPANY, | ) |
| Defendant. | ) |

## UNDERTAKING BY DEFENDANT J.T. POSEY COMPANY

During the pendency of the above action Posey undertakes and agrees as follows:

1.    Posey has discontinued distribution of the White Paper authored by Bimal P. Gandhi ("White Paper");

2.    Posey has discontinued distribution of catalogs and all other materials containing information derived from the White Paper;

3.    Posey has instructed all its employees, sales representatives, and distributors who have purchased Hipsters since 2001, to discontinue all reference to the White Paper and information derived from the White Paper, nor represent that its hip protectors have been validated by scientific research at UCLA, in communications with

**EXHIBIT A**
(page 1 of 2)

7

**PC 0371**

customers or potential customers, including written correspondence, emails, telephonic or face-to-face conversations, sales pitches, and the like;

4.    Posey will not include the White Paper or information derived from the White Paper in any future catalogs, brochures, or other advertising materials.

5.    Posey will not represent that its hip protectors have been validated by scientific research at UCLA.

This undertaking is not made as any admission of liability or wrongdoing, but because Posey values its reputation, and does not engage in activities that are in any way questionable.

Dated: August 26, 2004

J.T. POSEY COMPANY

By:  _s/Ernest M. Posey/_
      Ernest M. Posey

**EXHIBIT A**
(page 2 of 2)

8

PC 0372

**EXHIBIT B**

**Special Announcement:**
**HipSaver® and Posey Hipster® brand Hip Protectors**

In the fall of 2003, Posey began distributing an article (also known as the "White Paper") entitled "A Solution to Hip Fractures Using Performance Tested Hip Protectors." In its catalogs and newsletters, Posey included statements derived from the White Paper and bar charts comparing the relative effectiveness of Posey's Hipsters.

The White Paper was written by a UCLA graduate student working on his Master's Thesis. UCLA did not sponsor, authorize, or endorse the tests or the results reported in the White paper or the Master's Thesis.

The HipSaver Company, Inc. challenged the accuracy of the White Paper and the statements and bar charts in Posey's catalogs and newsletters. HipSaver's claims included: (a) a flawed testing methodology used by the graduate student; (b) testing of some products which were no longer offered in the marketplace; and (c) test conclusions which were subject to unreliable or false interpretation.

The HipSaver Company retained Wilson C. Hayes, PhD, a recognized biomechanical engineering expert, to review the White Paper, the graduate student's thesis, and Posey's advertising. Dr. Hayes determined that the research is not reliable and cannot sustain any of the claims in the White Paper and our advertising with reasonable certainty.

Posey values its hard-earned reputation and does not advocate the use of any material that may be inaccurate or out of date, and expressly regrets comparisons with HipSaver products and confusion this may have caused in the marketplace.

Posey has eliminated the bar charts and all statements based on the White Paper from its catalogs.

If by chance you have a copy of the White Paper or any advertising material referring to testing at UCLA, please do not use it or to rely on any statements in it.

If you have any questions about anything in this announcement, please contact Posey at [telephone number]

**EXHIBIT B**
(page 1 of 1)

9

**PC 0373**

**EXHIBIT "B"**

1

1        IN THE UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF MASSACHUSETTS
2


3    THE HIPSAVER COMPANY, INC.,    )
                                    )
4                   Plaintiff       )
                                    )
5            -VS-                    ) CA No. 05-10917-PBS
                                    ) Pages 1 - 26
6    J.T. POSEY COMPANY,            )
                                    )
7                   Defendant       )


8


9                    MOTION HEARING


10      BEFORE THE HONORABLE PATTI B. SARIS
              UNITED STATES DISTRICT JUDGE
11


12

A P P E A R A N C E S:
13

        EDWARD J. DAILEY, ESQ. and PETER J. KAROL, ESQ.,
14   Bromberg & Sunstein, 125 Summer Street, Boston,
     Massachusetts, 02110-1618, for the Plaintiff.
15

        ANTHONY J. FITZPATRICK, ESQ., Duane Morris,
16   470 Atlantic Avenue, Suite 500, Boston, Massachusetts, 02210,
     for the Defendant.
17

        JEFFREY G. SHELDON, ESQ., Sheldon & Mak,
18   225 South Lake Avenue, 9th Floor, Pasadena, California,
     91101, for the Defendant.
19

                            United States District Court
20                          1 Courthouse Way, Courtroom 19
                            Boston, Massachusetts
21                          July 12, 2005, 3:30 p.m.

22

                       LEE A. MARZILLI
23               CERTIFIED REALTIME REPORTER
                 United States District Court
24                1 Courthouse Way, Room 3205
                     Boston, MA  02210
25                    (617)345-6787


                  Court Hearing - 071205

2

```
1                    P R O C E E D I N G S
2            THE CLERK:  The case of the HipSaver Company,
3    Incorporated V. J.T. Posey Company, Civil Action
4    No. 05-10917, will now be heard before this Court.  Will
5    counsel please identify themselves for the record.
6            MR. DAILEY:  Good afternoon, your Honor.  I'm Ed
7    Dailey from Bromberg & Sunstein representing the plaintiff,
8    HipSaver Company.  With me is Peter Karol.  Mr. Karol is
9    going to argue for the plaintiffs this afternoon.  With me
10   also is Steve Ramsdell, and Mr. Goodwin, who is the president
11   of the plaintiff, is in the courtroom.
12           THE COURT:  Thank you.
13           MR. FITZPATRICK:  Good afternoon, your Honor.
14   Anthony Fitzpatrick from Duane Morris on behalf of the
15   defendant.  With me is lead counsel for J.T. Posey, Jeffrey
16   Sheldon from Sheldon & Mak in California.
17           THE COURT:  Let me start off by saying I am not
18   going to transfer the action.  This is my case.  I remember
19   it actually.  We had a motion for a preliminary injunction
20   hearing.  It was a settlement in this Court's jurisdiction,
21   and I don't see a good reason to transfer it at this point.
22   At some later point, if it becomes apparent to me that we
23   should transfer it, it would be one thing, but at least at
24   this point -- I remember the case actually, and if it weren't
25   for the settlement under my jurisdiction, you may well have
```

8

1  enhanced advertising campaign."  That's all we know.  This

2  advertising campaign, as I said, started in 2002.  So we

3  weren't clear what they're complaining about.

4        The other thing, on the breach of contract claim,

5  they never alleged they have performed under that contract,

6  and that's important because if they say that we had to give

7  notice on ads that continued, why don't they have to give

8  notice on their temperature ad?  So that I think they should

9  be obliged to say that they have performed under the

10  contract.  That's an element of a breach of contract claim,

11  and it doesn't appear in the complaint.

12        THE COURT:  Well, let me ask you this:  If it's

13  just a question of them not specifying that there were things

14  that happened in 2005, do you want me just to make them amend

15  it?  Because that's really all it would involve.

16        MR. SHELDON:  I do.  When we filed our papers,

17  we're guessing what the complaint was directed to.

18        THE COURT:  In the papers you refer to ads that

19  happened after the date of the settlement agreement.  Maybe

20  I'm not remembering.  Does the complaint specifically

21  reference those?

22        MR. KAROL:  Yes, it does, your Honor.  In the

23  demand for relief, it specifically references it.  The actual

24  name of the impact study had references to it.  It's not in

25  the actual -- (Inaudible).

9

1              THE REPORTER:  I'm sorry, I didn't hear you. "It's

2    not in the actual. . ."

3              THE COURT:  Don't forget, she's got to write this

4    down.

5              MR. KAROL:  I'm sorry.  I know I mumble at times.

6    It was in the demand for relief.  It was part of the

7    complaint, and it's cited on the page of the complaint.  In

8    our memorandum we do cite to --

9              THE COURT:  Your memorandum, that's not good

10    enough.

11              MR. KAROL:  No, no, no, in the actual complaint,

12    it's in there, as in the demand for relief, we ask them to

13    specifically -- we ask the Court to specifically halt that

14    particular ad.  It's in the complaint itself.

15              THE COURT:  Is it?

16              MR. SHELDON:  It's in the prayer for relief, but

17    it's not in the body of the complaint.  And let me add, on

18    the --

19              THE COURT:  Well, as far as I'm concerned then,

20    that's the only ad at issue here.  Is that right?

21              MR. KAROL:  Yes.

22              THE COURT:  All right, so then we don't need to

23    have an amendment here.  And if you want to add any other

24    ads, you have to change the complaint because that's the only

25    ad we're talking about, the only ad postsettlement, so

10

1   they're on fair notice.

2           MR. SHELDON:  On the request that they specify 9(b)

3   with fraudulent conduct was -- the response was, well,

4   there's 43(a) cases that say a plain claim under 43(a) is not

5   a fraud claim, and therefore 9(b) doesn't apply, except in

6   the complaint on Line 2 alleges fraud.  So if they're going

7   to be alleging fraud and the remedies that you can get for

8   fraud, they should specify the --

9           THE COURT:  Well, now that you've got it specified

10  down with that one ad, that's what we're talking about, and

11  that's enough to meet 9(b).  That's all we're talking about.

12  Make it clear:  Their only fair notice is one advertisement,

13  all right?  That's the only one that's not covered by the

14  settlement agreement, since it's the only one that postdates

15  the settlement agreement, okay?

16          So just refresh me.  Let's get beyond all this.

17  What's the real issue here?  I'm trying to understand.  Are

18  we just back to square one?

19          MR. SHELDON:  No.  It's completely -- it has

20  nothing to do with the original case except they're alleging

21  breach in the settlement agreement.  It's a completely

22  different ad.  It has nothing to do with the UCLA study.

23          THE COURT:  I want to understand really what the

24  meat of what's going on here is.  It has to do with a

25  different study?

11

1          MR. SHELDON:  I wouldn't even call it a study.  In

2    2002 or 2001, I'm not sure when, Posey had some testing done

3    to try to select the material.  It selected the material and

4    released stuff in 2002 about it, and just has continued the

5    same ad in 2002, 2003, 2004, 2005.  That's it.  And what

6    they're complaining about --

7          THE COURT:  It's the exact same ad?

8          MR. SHELDON:  Yes.  Well, I mean, the surrounding

9    materials may be different, but the statement they're

10   complaining about has not changed one iota.

11         MR. KAROL:  Your Honor, may I be heard on that

12   point?

13         THE COURT:  Well, let him finish.  You sit down.

14   You're an eager beaver here.  Let him finish, and then I'll

15   give you your time in the sun, okay?

16         MR. KAROL:  Fair enough.

17         MR. SHELDON:  If I refer to the complaint, they

18   say, "An independent laboratory study that was conducted to

19   determine the most effective impact absorbing material."

20   That's what the prayer is complaining about.  That same

21   language has been used since 2002 based on the very same

22   study that was conducted by Garwood in either 2001 or 2002.

23         THE COURT:  And this is not the UCLA study that was

24   so bitterly contested last time?

25         MR. SHELDON:  It has absolutely nothing to do with

12

1    the UCLA study.

2            THE COURT:  All right, thank you.  Now, that's not

3    a motion to dismiss issue.  But let me turn to you.  Is that

4    what this is all about?

5            MR. KAROL:  Your Honor, to begin with, they are

6    materially different ads, very much so, the January ad and

7    the one before it.  In the first instance -- I have copies of

8    this if the Court needs it.  This is from the Morseburg

9    declaration that just came out.  It's Exhibit D from their

10   memorandum on Friday, and it's clear that this juxtaposes one

11   of the paragraphs from the ad.  And keep in mind, this is in

12   the larger context of a greater ad with a lot of different

13   references in it.  This actually has a specific date than the

14   earlier ad that they keep saying is the same, the July 1,

15   2001.  That date is completely redacted from the current ad.

16           Now, this is extremely relevant because this is

17   about the most effective impact absorbing material.  This has

18   changed dramatically since July 1, 2001, and to make a

19   conscious decision to redact the date from the ad is

20   certainly part of a material issue here.

21           THE COURT:  Help me.  What's changed dramatically?

22   Is there different kinds of foam used today than -- I don't

23   know right word -- a different kind of pad used today than --

24           MR. KAROL:  Yes.  For example, in the Posey

25   advertisement they talk about a hydra-ability pad.  This did

13

1    not exist at the time of 2001.  So the fact that that's

2    incorporated with the impact study is a very different

3    impression upon the viewer, saying that they have the most

4    effective impact absorbing material and then citing to these

5    hydra-ability pads which didn't exist at the time that they

6    claim the study was made.

7            THE COURT:  So basically -- you know, by the way, I

8    say you speak quickly.  That's an amazing thing because Lee

9    here accuses me of speaking quickly.  I win some awards in

10   the courthouse, so you must win some award for attorneys.  So

11   both of us need to learn to speak more slowly.

12           MR. KAROL:  I just wanted to get you home quicker,

13   your Honor.

14           THE COURT:  Thank you.  Good comeback.

15           So the gist of what's going on here is that there's

16   a dispute over this January, 2005 ad as to whether it's fair

17   advertising because it's referring to pads, and there's a

18   dispute about whether these are the current pads or the old

19   pads.  That the gist of it.

20           MR. KAROL:  That's part of it, yes.

21           THE COURT:  So that seems like a pretty narrow

22   issue; in other words, that we can get through quick

23   discovery and a quick either trial or motion for summary

24   judgment.

25           MR. SHELDON:  I think it's -- well, we think it's

17

1    the key percipient witnesses that you would have to prove

2    some sort of false ad with are going to be just the

3    deposition transcripts.  That's not a good place for you to

4    be in.  We don't have to make that ultimate decision now, but

5    if he's right that all we have is one person here and all the

6    test takers out there, what are you going to do?

7              MR. KAROL:  Your Honor, we feel that the case will

8    revolve around expert testimony more than anything else, and

9    our experts will certainly be here in court arguing in

10   person.

11             THE COURT:  Maybe.  So all the depositions should

12   be taken out there of Posey people, and all the HipSaver

13   people should be here.  I think that we're not talking about

14   very many, so why don't we say all fact discovery will be

15   done by October 31.  Then plaintiff's experts will be by

16   11/15, defendant's expert by 12/15, expert discovery deadline

17   by 1/15, motion for summary judgment by 1/30/06, opposition

18   by 2/15/06.  And obviously, if these things come on the

19   weekend, you'll just push it off to the following Monday.

20   Hearing on motion for summary judgment in March.

21             I'm highly unlikely to grant a motion for

22   preliminary injunction.  We've been down that route.

23             MR. KAROL:  Yes, your Honor, understood.

24             MR. SHELDON:  Let me add, your Honor, we think the

25   ad was fine to begin with.  We made minor modifications

18

1    almost immediately.

2         THE COURT:  Say it again.

3         MR. SHELDON:  We modified it almost immediately.

4    In our view, it wasn't worth fighting about.

5         THE COURT:  That's talking about the one 2005 ad?

6         MR. SHELDON:  Yes.

7         THE COURT:  Well, have you looked at their new ad?

8    Do you have problems with their new ad?  Is this even worth

9    the dime?

10        MR. KAROL:  Your Honor, are you talking about the

11   ad campaign from January, 2005, or are you talking about --

12   if we're talking about whether or not they pulled the ad, I'm

13   not sure.  I don't know.

14        THE COURT:  They didn't.

15        MR. KAROL:  If that's what they're suggesting --

16        THE COURT:  He didn't say they pulled it.  He said

17   they modified it.  Have you looked at the modification?

18        MR. KAROL:  I haven't seen the modification.

19        THE COURT:  What did it do?

20        MR. SHELDON:  It eliminated the word "independent."

21   They seemed to object to calling Garwood "independent," even

22   though they are.  And they objected to the language of the

23   "most effective," and I think we changed it to "determine an

24   effective and comfortable."  The most effective is a rigid

25   piece of steel that will keep your hips, but nobody's going

23

1  ever advised him to bring that case to court.  That risk

2  analysis was not premised on, what can Bromberg & Sunstein

3  recover?  It was, was there an opportunity to prevail on the

4  merits?

5          THE COURT:  I got it, but if this ad is fine --

6          MR. DAILEY:  Which we haven't even seen.

7          THE COURT:  Right.  I want some statement and a

8  review from you in a week what the offending piece of the

9  current ad is because there are two different issues.  If

10  we're battling over an ad and whether it's good or bad,

11  that's one thing.  But if we're only talking about an ad that

12  was out from January, 2005, until today, which is July of

13  2005, and whatever damage to reputation, if you can even

14  prove it, that's a different kind of dispute.

15          MR. DAILEY:  We certainly appreciate that, your

16  Honor.  And all I want to say is that the first time I

17  heard -- and I pay attention to this on a daily basis -- the

18  first time I heard that there was a revised ad was this

19  afternoon.

20          THE COURT:  Okay, I'm not blaming you.  That may

21  well be, but here we are.  So I've set a discovery schedule.

22  I'm going to hear from you in a week what your position is

23  with respect to the new ad.  If you think something is still

24  offensive, you need to tell me what it is.  What form should

25  it be in?

24

1          MR. DAILEY:  We can file a memorandum, that's fine.

2          THE COURT:  Okay.  And if in fact it makes sense to

3    then -- I will send you to mediation forthwith, and if in

4    fact that doesn't work, we'll go forward with this whole

5    thing.  In the meantime, the depositions of the Posey people

6    and the Garwood people will be in California, and the

7    depositions of the HipSaver people will be here.  The Posey

8    expert will be -- do you have an expert here, or do you have

9    an in-house person?  Do you know?  Are you going to have an

10   independent expert?

11         MR. SHELDON:  We'll have to contemplate that.

12         THE COURT:  Do you already have an expert?

13         MR. DAILEY:  Yes, we do.

14         THE COURT:  Who is it?

15         MR. DAILEY:  Dr. Hayes, the same expert we had in

16   the earlier case.

17         THE COURT:  Where is he from?

18         MR. DAILEY:  He's from Oregon, and he will be

19   deposed on the West Coast.  We made him available for

20   deposition on the West Coast the last time.

21         THE COURT:  Great.  And this will be about the new

22   study, right?

23         MR. DAILEY:  Correct, correct.

24         THE COURT:  Are you the only two people in the

25   market?

**EXHIBIT "C"**

RECEIPT #
AMOUNT $
SUMMONS ISSUED
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK.
DATE

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No.

|  |  |
|---|---|
| The HipSaver Company, Inc., | ) |
| Plaintiff, | ) |
|  | ) |
| v | ) |
|  | ) |
| J.T Posey Company, | ) |
| Defendant | ) |
|  | ) |

# 05 - 10917 PB

MAGISTRATE JUDGE Collings

## COMPLAINT

This action seeks preliminary and permanent injunctive relief, damages, costs, and attorney fees for breach of a Settlement Agreement and intentional, fraudulent, and bad faith misrepresentation and literally false comparative advertising in violation of the Lanham Act, 15 U.S.C. §§1125, 1117, and the Massachusetts Business Practices Act, G.L. c.93A, §§ 2, 11. The Defendant, J.T. Posey Company ("Posey") is the dominant, nationwide distributor of patient safety and support equipment and devices. The relevant market includes some 17,000 nursing homes and 3,000 rehabilitation hospitals. For some time, Posey has been engaged in aggressive efforts to thwart its much smaller competitors, most of which, like Plaintiff, the HipSaver Company, Inc. ("the HipSaver Company") invent, design, manufacture, distribute, and sell a limited number of products. Posey uses its marketplace dominance and deceptive advertising to drive smaller

1

companies from the marketplace. That is the core issue in this lawsuit. An earlier lawsuit filed in this court in 2004, Civil Action Number 04-11294 PBS, contested another advertising campaign conducted by Posey.

The HipSaver Company has been damaged by Posey's advertising and faces immediate and irrevocable harm without injunctive relief to halt Posey's advertising, to compel withdrawal of all catalogs and website advertising materials containing the false, misleading, and deceptive claims, and to require corrective advertising to counter those claims.

## Parties

1.    The HipSaver Company is a small, closely held company incorporated in the Commonwealth and operating from offices in Canton, Massachusetts. The HipSaver Company has been in business since 1995.

2.    The HipSaver Company's primary business is to invent, develop, manufacture, and sell soft hip protector garments which reduce the potential for critical hip fractures in elder patients. The HipSaver Company's soft hip protector garments were invented by the company's president, Edward Goodwin. The soft hip protector garments incorporate an open cell foam pad enclosed in an expandable air pouch. Together, the pad and pouch constitute a device with a substantial capacity to absorb energy associated with a fall and provide fracture protection to the femur. The device is washable and is sewn into

clothing and positioned geometrically to cover the femur in the event of a fall or other impact.

3.    HipSaver garments incorporate Mr. Goodwin's inventive technology for air-holding protective foam pad construction.

4.    HipSaver garments are marketed under the HIPSAVER® and SLIMFIT™ trademarks.

5.    The Defendant, Posey, is a long established company and dominant supplier of patient safety and support products.  Posey operates from home offices in Arcadia, California.  Posey markets hip protector garments under the HIPSTER® trademark.

### Jurisdiction and Venue

6.    Posey operates nationwide through catalogs, internet sales, and a national network of representatives and distributors.  In the Commonwealth of Massachusetts, Posey is represented by Dennis Damato.  Nationwide, Posey markets to 17,000 nursing homes and 3,000 rehabilitation hospitals.  In Massachusetts, Posey markets routinely to more than 100 health care facilities.  The HipSaver Company markets to the same facilities.

7.    Posey is engaged in substantial business in and contact with the Commonwealth of Massachusetts.  Further, Posey has and is carrying out the acts complained of here in Massachusetts; is therefore subject to the trial court's personal jurisdiction; and may be served and brought before the trial court under the Massachusetts Long-Arm Statute, G.L. c.223A, §3.

3

8.      Pursuant to 28 U.S.C. § 1331, the court has subject matter jurisdiction over the HipSaver Company's federal claims for violation of the Lanham Act.  Pursuant to 28 U.S.C. § 1332, the court has diversity jurisdiction over the HipSaver Company's state law claims for violation of the Massachusetts Business Practices Act.

9.      Pursuant to L.R. 40.1 (C), venue is proper in the Eastern Division of the United States District Court for the District of Massachusetts where the Plaintiff is domiciled.

### Statement of Factual Claims

10.     In late 1998 or early 1999, three years after the HipSaver Company introduced its soft hip protector garments, Posey introduced a hip protector product under the mark, HIPSTER.  This product was a soft, removable pad but was poorly designed and not well accepted in the marketplace.

11.     Beginning in early 2001, Posey secretively purchased samples of HIPSAVER hip protectors from the Plaintiff.  Posey then copied much of the design and placement of the HIPSAVER protector and introduced a knock-off marketed initially as the HIPSTER III.

12.     After introducing its knock off, Posey undertook and continues nationwide campaigns of false, deceptive, misleading advertising aimed at the HipSaver Company and other small competitors.

13.     After the earlier lawsuit filed in this court in 2004, Posey withdrew advertising aimed at the HipSaver Company and other small competitors and published corrective advertising.

4

14.    Now, in 2005, Posey has initiated an enhanced advertising campaign which again targets the HipSaver Company and other small competitors with false, misleading, and deceptive advertising.

15.    The HipSaver Company has demanded withdrawal of this latest advertising, but Posey continues its false, misleading, and deceptive advertising aimed at the HipSaver Company and other small competitors.

16.    Posey's misrepresentations, deception, and product disparagement are aimed at HipSaver, intended to undercut the integrity of the HipSaver Company's products, and directed to overwhelm the HipSaver Company in the marketplace – all by unlawful means.

17.    Posey's misrepresentations, deception, and product disparagement are particularly damaging because of the relative lack of knowledge among health care buyers.  Hip protection products are relatively new; neither the biomechanics nor the relative performance of competing products has been well understood in the marketplace. Lacking a strong understanding of performance and safety, buyers are susceptible to being misled by deceptive advertising masked as pseudo science, precisely the strategy pursued by Posey.

## Causes of Action

### Count I – Breach of Settlement Agreement

18.    The HipSaver Company restates and incorporates by reference all of the allegations in paragraphs 1 through 17 of the Complaint as if set forth fully here.

5

19.    In settlement of the HipSaver Company's earlier lawsuit against the Posey

Company, the parties entered into a Settlement Agreement.

20.    Posey has willfully breached the Settlement Agreement by embarking on its

current commercial advertising campaign in violation of the notice and disclosure

provisions of the Settlement Agreement.

### Count II – Violation of the Lanham Act

21.    The HipSaver Company restates and incorporates by reference all of the

allegations in paragraphs 1 through 20 of the Complaint as if set forth fully here.

22.    Posey's false or misleading description of facts, false or misleading

representation of facts, misrepresentation of product test protocol, and its distorted

misrepresentations, literally false representations, statements, and product comparisons in

a nationwide advertising campaign violate the Lanham Act, 15 U.S.C. §§1125(a)(1)(B).

23.    Posey's actions alleged here have been undertaken in bad faith and with the intent

to misrepresent, harm, and damage the HipSaver Company.

24.    Without intervention of the trial court, the HipSaver Company cannot counter

Posey's false advertising campaign and faces immediate loss of its business.

### Count III – Violation of the Unfair or Deceptive Business Practices Act

25.    The HipSaver Company restates and incorporates by reference all of the

allegations in paragraphs 1 through 24 of the Complaint as if set forth fully here.

26.    Posey's misrepresentation of product test protocol and its distorted

misrepresentations, literally false representations, statements, and product comparisons in

an advertising campaign directed at more than 100 Massachusetts health care facilities violate the Massachusetts Unfair or Deceptive Business Practices Act, G.L. c.93A, §§2, 11.

27.    Posey's actions alleged here have been undertaken in bad faith and with the intent to misrepresent, harm, and damage the HipSaver Company.

28.    Without intervention of the trial court, the HipSaver Company cannot counter Posey's false advertising campaign and faces immediate loss of its business.

**THEREFORE**, pursuant to 15 U.S.C. §1117 and G.L. c.93A, §11, Plaintiff, the HipSaver Company, Inc., respectfully requests the trial court to grant the following relief:

- A preliminary injunction halting all further publication, display, distribution, or reference to "an independent laboratory study that was conducted to determine the most effective impact absorbing material";
- A preliminary injunction halting all further publication, distribution, or reference to disputed parts of the Garwood Laboratories study;
- A preliminary injunction requiring Posey to publish and pay for distribution of a corrective statement to its entire sales forces and to all customers and persons and entities set out in its marketing lists;
- A preliminary injunction requiring Posey to pay for publication of corrective advertising;
- Judgment for HipSaver on all claims before the court;
- Damages and multiple damages, including three times Posey's Profits to be awarded to HipSaver;
- Interest, costs and attorney fees;
- A permanent injunction; and
- Such further relief as the trial court deems just and proper.

## JURY DEMAND

**Plaintiff, the HipSaver Company, Inc., requests a jury for all issues so triable.**

THE HIPSAVER COMPANY, INC.
By its Attorneys,

Lee Carl Bromberg
BBO no. 058480
Edward J. Dailey
BBO no. 112220
Peter J. Karol
BBO no. 660338
BROMBERG SUNSTEIN, LLP
125 Summer Street - 11th floor
Boston, Massachusetts 02110-1618
617.443.9292
617.443.0004 (fax)
Dated: 5.4.05
02820/00501  383553.1

8

**EXHIBIT "D"**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| The HipSaver Company, Inc., | ) | Civil Action No. 05-10917 PBS |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v | ) | |
| | ) | |
| J.T. Posey Company, | ) | |
| Defendant | ) | |
| | ) | |
| | ) | |

### PLAINTIFF'S STATEMENT CONCERNING THE DEFENDANT'S REVISED "LABORATORY TEST" ADVERTISING

At the July 12, 2005 hearing on the Defendant, J.T. Posey Company's Motions to Transfer and Dismiss, counsel for Posey informed the trial court that a revised "Garwood Laboratories" advertisement has been published. The trial court asked the HipSaver Company to review the revised advertisement and to provide a statement of agreement with or objection to the revised advertisement. Following the hearing, counsel produced the revised advertisement, copy enclosed at Tab A.

The HipSaver Company objects to the revised advertisement as literally false and as simply the latest iteration in a chronic campaign of false and deceptive advertising. The HipSaver Company's Complaint stands against both the first of the Garwood Laboratories advertisements and against the revised advertisement.

1

The revised advertisement no longer suggests that Posey's HIPSTER contains the "most effective impact absorbing material" for preventing hip injury and no longer proclaims that the Garwood Laboratories test is as an "independent study". Nevertheless, the revised advertising continues the underlying theme of misrepresentation of the test, its purpose, the materials tested, and the results. The revised advertisement is little more than a restatement of the literally false claims of the first advertisement, all of which violate the Lanham Act, 15 U.S.C. §§1125, 1117; G.L. c.93A, §§2, 11; and the provisions of the earlier Settlement Agreement.

Specifically, the revised advertising is objectionable, false, and deceptive in at least the following respects:

1. The revised advertising presents the Garwood Laboratories testing as if some minimally credible, legitimate, and empirically valid testing of Hipster products was conducted. This is an outright deception. Garwood Laboratories set up the testing equipment but disclaimed everything else associated with testing. Indeed, Garwood Laboratories did not verify identity of the products tested, did not maintain independent custody of products tested, did not assess the results, and made no findings with respect to the recorded results. This was not a legitimate laboratory test by any measure. The laboratory was simply a backdrop, much as UCLA was for Posey's tests in 2004, for a deceptive and literally false advertising campaign crafted by Posey.

2

2.  The revised advertising states that Posey has retained "Garwood Laboratories to conduct testing to select a comfortable and effective impact absorbing material." Posey's statement is false. Garwood Laboratories has not conducted testing for any such purpose and had no role in selecting a "comfortable and effective impact absorbing material". The reference to Garwood is a deception intended solely to create the appearance of a credible test protocol and empirically valid tests where none exists.

3.  The revised advertising clearly states and suggests that "Garwood Laboratories" conducted testing to "select a comfortable and effective impact absorbing material". The advertisement then proclaims that this testing has confirmed that the "low profile Hipster" is an "excellent" impact absorbing material. This is literally false. Posey has withheld and misrepresented the material fact that it alone, not Garwood Laboratories, declared that the testing demonstrates the alleged excellence of the Hipster products. Garwood Laboratories expressly disclaimed any such purpose in the testing and any such conclusion from the testing.

4.  The revised advertising appears under the banners, "Posey Hipsters Help Protect Against Injury from Falls" and "Posey Hipsters Proven Effective In laboratory Test". As noted, the advertisement then presents the Garwood Laboratories test as one which demonstrates the effectiveness of the Posey Hipster to protect against hip injury and validates the Hipster product. This is literally false. The

3

test is not an empirically valid measure of effectiveness against hip injury and has not been presented by Garwood Laboratories as such.

5. The revised advertisement claims that "a test was created that would simulate a fall causing direct impact to the greater trochanter" [the hip joint]. This is literally false. The test is nothing more than a rudimentary, mechanical impact test. It is not a biomechanical test and has no empirically valid capacity to assess a "fall" or to demonstrate effectiveness against hip injury in humans.

6. The revised advertisement refers directly to "high durability" Hipsters, represents this product as if it has been tested in the Garwood Laboratories test, and then presents this product as having "excellent" impact absorption and demonstrated effectiveness against hip injury. This is false and a deceptive misrepresentation of what was tested.

7. The revised advertisement misrepresents the Hipster products as "washable to CDC standards for soiled linen". This is literally false. The CDC washable temperature standard is 160°F for 25 minutes. In fact, in the same advertisement Posey displays a wash label for most of its Hipster products with a wash temperature limit of only 120°F. Clearly, this fails the CDC standard, yet Posey maintains this outright misrepresentation of its failure to meet a significant safety standard. This is exacerbated by Posey's failure to notify nursing and rehabilitation facility purchasers and patients that its products do not meet the CDC standard.

8. The revised advertisement continues to note that test data is on file with Posey. From information provided by Posey, the HipSaver Company understands that the data includes alleged test results for HipSaver products. These test results are literally false, and Posey's specific references to and comparisons with HipSaver products irreparably harm the HipSaver Company.

The Garwood Laboratories advertising and the revised Garwood Laboratories advertising challenged in this lawsuit must be understood in the context of Posey's longstanding campaign of false advertising, including the "UCLA" advertising carried on in 2003 and 2004 which was contested last year in this court. Posey's false advertising is directed at its only real competitor in the soft hip protection garment marketplace, the HipSaver Company.

And while the target is the HipSaver Company, the method is to achieve "believability" through persistent claims put before a purchasing audience that is relatively unsophisticated and cannot readily distinguish a false claim or junk science. Nevertheless, the long term repetition of these false claims clothed in "laboratory testing" or an "independent laboratory study" or a "UCLA study" for that matter is deception as a matter of law. *See*, for example, *Schick manufacturing Inc. v The Gillette Company*, 372 F. Supp.2d 273 (D. Conn. 2005) And that deception violates the Lanham Act and c.93A.

The immediate consequence of this deception to HipSaver, a small focused product company, is, of course, the lost opportunity for sales. More important, there is the risk that Posey's campaign of chronically false advertising will continue to mislead

5

health care facility purchasers to believe that Posey's product has been proven to be effective against injury to humans and that it maintains a durable level of effectiveness after use and washing. Hip protection garments are not a casual consumer product where false and deceptive advertising is of no particular consequence. Here, the consequence is injury to often frail patients.

Finally, there is the risk that the consequences of Posey's false advertising of inferior products will retard, shrink, or even destroy the marketplace for soft hip protection garments. At some point, purchasers will recognize that Posey's claims for effectiveness and durability are indeed false. Yet, the HipSaver Company does not have the marketing and advertising resources to counter with a demonstration that its products are durable and effective. In the face of Posey's persistently false claims, purchasers may simply assume that no soft hip protector is durable or effective and turn to other products and strategies to safeguard patients from hip injury. That result will be devastating to the HipSaver Company but is of no particular consequence to Posey which can use its monopoly vendor status to turn to 600 other products it peddles to nursing and rehabilitation facilities.

## CONCLUSION

In the fall of 2004, the HipSaver Company halted Posey's "UCLA" advertising campaign which made much the same false claims at issue now. In the fall of 2004, Posey retracted its "UCLA" advertising, issued a public statement of regret, and

committed itself to accurate data and fair advertising.  Within four months of the 2004

settlement, however, Posey returned with its false claims of Laboratory Testing at

Garwood Laboratories, complete with a bar chart display similar to that used in the

"UCLA" campaign, an "independent Laboratory study" reminiscent of its "laboratory

testing at UCLA" claims from last year, and alleged comparative data for HipSaver

products.  This new campaign, including the revised advertising released last week, is no

less objectionable, false, damaging, or unlawful.


Respectfully submitted,

THE HIPSAVER COMPANY, INC.
By its Attorneys,


/s/ Edward J. Dailey
Lee Carl Bromberg
BBO no. 058480
Edward J. Dailey
BBO no. 112220
Peter J. Karol
BBO no. 660338
BROMBERG SUNSTEIN, LLP
125 Summer Street - 11th floor
Boston, Massachusetts  02110-1618
617.443.9292
617.443.0004  (fax)
Dated: July 19, 2005

### CERTIFICATE OF SERVICE

I certify that a copy of this document has been forwarded by electronic filing and USPS First Class
mail today to Defendant's counsel of record, Anthony J. Fitzpatrick, Esq., DUANE MORRIS LLP, 470
Atlantic Avenue, Boston, Massachusetts  02210 and by USPS First Class  mail to Jeffrey G. Sheldon, Esq.,
SHELDON & MAK, 225 South Lake Avenue, 9th Floor, Pasadena, California  91101

Dated:   7.19.05        /s/ Edward J. Dailey
                        Edward J. Dailey

02820/00502  418989.1

7

TAB A

# POSEY HIPSTERS HELP PROTECT AGAINST INJURY FROM FALLS

It's a long way down for residents at risk of injury from falls. You can greatly reduce that risk with Posey Hipsters. The Hipsters' high energy-absorbing foam pads are positioned precisely over the hip bones, increasing the odds of surviving a fall uninjured. The Hipsters are comfortable and slim enough to be virtually undetectable under clothing. By offering increased protection, Hipsters relieve residents' anxiety about falling and enhance their quality of life.





*Low Profile.
All styles fit discreetly under men's and women's clothing.*

- **High impact-absorbing viscoelastic pads protect hip bones against injury from falls**
- **Soft, comfortable pads improve compliance versus hard-shelled products**
- **Washable to CDC standards for soiled linen without removing the pads**
- **100% latex-free**
- **Five sizes for correct fit**
- **Discreet, low-profile pads are virtually undetectable under clothing**

## Posey Hipsters Proven Effective in Laboratory Test

Posey engaged Garwood Laboratories to conduct testing to select a comfortable and effective impact absorbing material. A test was created that would simulate a fall causing direct impact to the greater trochanter. In this study, a weight was released in a guided drop to simulate a 120 lb. subject falling from a height of 36", or the estimated height of the hip above the floor for a typical nursing home resident. The baseline measurement of impact force was determined in a fall directly onto concrete. The G-force of a fall under this scenario was 2,600G's and, for purposes of comparison, is just slightly less impact force than that of a baseball being struck by a bat. In this extreme case, the low profile Posey Hipster reduced the impact force on average by 90% and showed excellent impact energy absorption.



**Special offer: 30-day no-risk free trial.**
Test the Posey Hipsters for yourself with no obligation to buy.





### POSEY #6016 HIPSTERS STANDARD BRIEF
- Easily fits over undergarments, or can be worn as underwear.
- Unisex sizing.
- #6016H Standard Brief with high durability pads.

### POSEY #6017 INCONTINENT BRIEF
- Snap front for easier application over diaper. Unisex sizing.
- #6017H Incontinent Brief with high durability pads.

### POSEY #6018 MALE FLY BRIEF
- Easily fits over undergarments, or can be worn as underwear.
- Fly front for improved compliance in male residents.
- #6018H Male Fly Brief with high durability pads.

### POSEY #6019 EZ-ON BRIEF
- Residents can wear their own undergarments.
- Can be worn in the shower.
- Hip pads can be removed for laundering or replacement.
- #6019H EZ-ON Brief with high durability pads.

Posey High Durability Hipsters contain denser foam than the standard Hipsters. This increased density aids in its ability to withstand higher hot washing and drying cycles.

**LAUNDERING INSTRUCTIONS:**

### SIZING CHART
| Size | Waist Measurement | Hip Measurement |
|---|---|---|
| S | 28" - 30" or 71 - 76cm | 35" - 37" or 88 - 93cm |
| M | 30" - 34" or 76 - 86cm | 37" - 41" or 93 - 104cm |
| L | 34" - 38" or 86 - 96cm | 41" - 45" or 104 - 114cm |
| XL | 38" - 42" or 96 - 106cm | 45" - 49" or 114 - 124cm |
| XXL | 42" - 46" or 106 - 116cm | 49" - 53" or 124 - 134cm |

**J T Posey Company**
Arcadia, CA 91006 USA
Tel: 800-447-6739
www.posey.com