# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE HIPSAVER COMPANY, INC., | ) |
| Plaintiff, | ) |
| v | ) Civil Action No. 05-10917 PBS |
| J.T. POSEY COMPANY, | ) |
| Defendant. | ) |

## HIPSAVER'S SUPPLEMENTAL SUBMISSION OF EVIDENCE SUPPORTING ITS CLAIM OF CAUSATION AND INJURY

By its Memorandum and Order dated May 15, 2007, this Court requested that HipSaver supplement its evidence of fact of damages to show causation and fact of injury that occurred after the September 2004 settlement agreement. In response, HipSaver provides this Court with three sets of additional data, including two sets of 2006 sales data each compiled recently and only now available to HipSaver. This evidence is comprised of the following: (1) 2006 domestic sales data for the HipSaver product ("2006 HipSaver sales data"); (2) a comparison of the growth rates of Posey Hipster sales and HipSaver sales during the 9-month period following the September 2004 Settlement Agreement; and (3) 2006 sales data of a new HipSaver product sold under the trade name DermaSaver ("2006 DermaSaver sales data").

As discussed below, the 2006 sales data proves with reasonable certainty that HipSaver was injured as a result of Posey's false Garwood advertising, conforming to Posey's own expert economic analysis.

**HIPSAVER'S BURDEN**

HipSaver must prove causation and fact of injury, "[t]he aggrieved party must demonstrate that the false advertisement actually harmed its business. A precise showing is not required, and a diversion of sales, for example, would suffice. *Cashmere & Camel Hair Mfgs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 318 (1st Cir. 2002).

HipSaver may meet this burden by showing that HipSaver and Posey are direct competitors and that HipSaver has been harmed by Posey's false advertising. *Vermont Pure Holdings Ltd. v. Nestle Waters North America Inc.*, No. Civ.A.03-11465 DPW, 2006 WL 839486 (D. Mass. March 28, 2006). Because the parties stipulate and this Court has made a finding of fact that the parties are direct competitors, Memorandum and Order [D.N. 228] at 3, HipSaver's submission must show that HipSaver has suffered injury as a result of Posey's false advertising. *Id.* at 31. HipSaver meets its burden if it presents evidence of causation and damages such that a rational fact finder could draw a "reasonable inference" of a causal connection between the false advertising and the harm sustained. *Cashmere*, 284 F.3d at 319 (1st Cir. 2002).

Where, as here, HipSaver and Posey are direct competitors, a less definite showing of injury is required. Memorandum and Order [D.N. 228] at 31, *citing Ortho Pharmaceutical Corp. v. Cosprophar, Inc.,* 32 F.3d 690, 694 (2d Cir. 1994); *Balance Dynamics Corp. v. Schmitt Indus.,* 204 F.3d 683, 691 (7th Cir. 2000)(noting that consumer confusion tends to show "hard to prove" marketplace damages, like lost profits or lost sales, "probably exist").

With respect to the comparative advertising claims contained in the Garwood advertisements and already found literally false by this Court, no further evidence of injury is required because where the defendant is found to have made false comparative statements with

knowledge of their false nature, a presumption arises that consumers were deceived by such statements and that the plaintiff suffered damages as a result of such deception. *Porous Media Corp. v. Pall Corp.,* 110 F.3d 1329 (8th Cir. 1997).

Once the plaintiff has provided a reasonable basis for damages, the plaintiff need only prove the amount of damages with as much certainty as the circumstances of the case permit. *Ricky Smith Pontiac, Inc. v. Subaru of New England, Inc.*, 14 Mass.App.Ct. 396, 426-427. With respect to the amount of damages sought by HipSaver, HipSaver seeks Posey's lost profits as a proxy for its own damages. Dr. Epstein assesses Posey's profits of its Hipster sales at $756,828.[1] Expert Report of Dr. Epstein, September 26, 2006 at 6. It is Posey's burden to show if and to what extent HipSaver should not be awarded all of Posey's Hipster profits. *Tamko Roofing Products, Inc. v. Ideal Roofing Co., Ltd,* 282 F.3d 23, 36-37 (1st Cir. 2002)(stating that once infringement and direct competition are established, the burden of showing that not all profits should be awarded falls on the defendant).

### HIPSAVER'S PROFFERED EVIDENCE OF CAUSATION AND INJURY IN FACT

Through this submission, HipSaver presents two sets of 2006 data, each compiled recently and only now available to HipSaver, as well as evidence of 2004-2005 sales growth that has already been submitted to the Court. This evidence is comprised of the following: (1) 2006 HipSaver sales data, together with the Supplemental Expert Report of Roy J. Epstein, May 24, 2006; (2) a comparison of the growth rates of Posey Hipster sales and HipSaver sales during the 9-month period following the September 2004 Settlement Agreement; and (3) 2006 sales data of

---

[1] HipSaver wishes to correct an error in this Court's Memorandum and Order. This Court stated that HipSaver's expert calculated its lost profits damage claim with **all profits earned by Posey**. *See* Memorandum and Order at p. 30. But, HipSaver's damages expert's calculations were based **only** on Hipster sales, and **not** on **all** profits earned by Posey. Dr. Epstein calculates Posey's profits for Hipster sales as $756,828 for the period of October 2004 through December 2005.

a new HipSaver product sold under the trade name DermaSaver ("2006 DermaSaver sales data"), together with the declaration of Mr. Goodwin.

**1.    The 2006 HipSaver Sales Data Shows that HipSaver Sales Rebounded After the Garwood Ad was Discontinued and Supports a Strong Inference of Causation and Injury**

The 2006 HipSaver sales data shows a marked increase in sales that began in December 2005 and continued to grow throughout 2006. **Exhibit A**, 2006 Domestic Sales Data for the HipSaver product ("2006 HipSaver sales data"). This sales increase shows that once the Garwood advertisement was discontinued, HipSaver sales rebounded. Specifically, during the period of accused advertising, HipSaver's monthly sales averaged $58,769 per month. From September 2005 through December 2005, HipSaver's sales averaged $69,461 per month. And, for the 2006 calendar year, HipSaver's average monthly sales further increased to $75,057 per month. *See* **Exhibit B,** Supplemental Expert Report of Roy J. Epstein, May 24, 2006 at ¶5.

As Posey's own damages expert posited in his expert report, such a reaction strongly supports the inference of causation:

> **[I]f the allegedly false Garwood references resulted in lower HipSaver sales, it would be expected that higher monthly sales would occur when the references were discontinued.**

Report of Creighton Hoffman, February 16, 2005, at p. 6. [2] HipSaver's December 2005 and 2006 sales data show precisely the response Mr. Hoffman predicted if injury had occurred:

---

[2] In their report, Mssrs. Hoffman and Green did not find an increase in HipSaver sales immediately following removal of the advertisement. However, Mssrs. Hoffman and Green excluded data from December 2005 which would have shown an increase in sales. Furthermore, Hoffman's implication that an increase in sales would follow immediately after removal of the ads is challenged by Dr. Epstein and defies common sense. As Dr. Epstein states in his report, "one would expect HipSaver's sales to require some time before ramping up to a level that is free of the lingering effect of the advertising." Supplemental Expert Report of Dr. Epstein, May 24, 2007, at ¶6.

4

HipSaver sales rebounded after the Garwood Advertisement was discontinued and continued to grow in the following months. **Exhibit B**, Supplemental Expert Report of Roy Epstein.



| Oct. 2004 – Aug. 2005 (During Garwood Advertising) | Sept. 2005 – Dec. 2005 (4-month period directly following removal of Garwood ad) | Jan. 2006 – Dec. 2006 (Period beginning 4 months after the Garwood ad was removed) |

Because this growth coincides with Posey's removal of the Garwood advertisement, the data supports a reasonable inference that HipSaver's growth rate would have been higher absent the marketplace disruption of false advertising and accordingly, that HipSaver was injured as a result of Posey's false Garwood advertising, conforming to Posey's own expert's economic analysis. By Posey's own expert statement, "higher monthly sales [occurring] when the references were discontinued" shows that "the allegedly false Garwood references resulted in lower HipSaver sales." Report of Creighton Hoffman, February 16, 2005, at p. 6.

5

2.  **Posey's Growth Rate was Almost Twice That of HipSaver During the Period of the Garwood Advertising and Supports a Strong Inference that the Garwood Advertising Caused Injury to HipSaver**

As previously stated in Dr. Epstein's Expert Report, dated October 31, 2006, and restated in the attached Supplemental Report, the parties' growth rates *during* the period of the false advertising are markedly different. Posey's average monthly sales increased by 8.8% in the nine months following September 2004 relative to the nine months prior. *See* Expert Report of Hoffman and Greeen, February 16, 2006, at 7. This same comparison for HipSaver, using data from Hoffman and Green's exhibits, shows that HipSaver's sales increased by only 4.5%. *See* Supplemental Expert Report of Dr. Epstein, May 24, 2007, at ¶8. This comparison creates a reasonable inference that HipSaver experienced a depressed rate of growth as a result of the false advertising.

3.  **The 2006 DermaSaver Sales Data Shows that External Factors such as Formulary Restrictions or Brand Loyalty Cannot Alone Account for the Disparity in HipSaver and Posey Sales**

HipSaver also offers 2006 sales data for a new product designed and manufactured by HipSaver and sold under the trade name DermaSaver. DermaSaver was first sold in the Summer of 2005. This product directly competes with a number of Posey products. **Exhibit C**, Declaration of Mr. Goodwin, May 24, 2007 ("Goodwin declaration") at ¶3. The 2006 DermaSaver sales data provides an alternative 'but for' scenario with respect to HipSaver's access to long term healthcare chains and catalogs.

In contrast to the HipSaver product, which has been frozen out of the national healthcare facilities, DermaSaver has been successfully sold to the same customers. **Exhibit C**, Goodwin Declaration at ¶¶4-5. Because all other variables are held equal (the products directly compete; the product providers are the same; the sales and customer services are the same), the

6

comparison between the HipSaver and DermaSaver market penetration shows that, absent a marketplace disruption such as the Garwood advertising, HipSaver would have had the ability to sell in large chains where Posey products were already sold.  This data counters Posey's suggestion (*see e.g.* Expert Report of Gary Reich, February 16, 2006 at ¶¶ 26-27) that it is formulary restrictions, brand loyalty, or Posey's tenure in the marketplace, rather than false advertising, that kept HipSaver out of the healthcare chains and large distributors.  This 2006 DermaSaver sales data 'but for' scenario shows HipSaver's access to healthcare institutions but for the marketplace disruption.

## CONCLUSION

Based on HipSaver's submissions of newly available 2006 sales data and for the reasons stated here and it the accompanying Supplemental Expert Report of Dr. Epstein, HipSaver submits to this Court that it has met its burden of proof with respect to causation and injury because a rational fact finder could reasonably infer that Garwood advertisements caused actual harm to HipSaver. *Cashmere & Camel Hair Mfgs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302 (1st Cir. 2002); *see generally Vermont Pure Holdings Ltd. v. Nestle Waters North America Inc.*, No. Civ.A.03-11465 DPW , 2006 WL 839486 (D. Mass. March 28, 2006).

HIPSAVER COMPANY, INC.
By its Attorneys,


/s/  Courtney M. Quish
Lee Carl Bromberg
BBO No.:  058480
Edward J. Dailey
BBO No.:  112220
Courtney M. Quish
BBO No.:  662288
BROMBERG SUNSTEIN, LLP
125 Summer Street - 11th floor
Boston, Massachusetts 02110-1618
617.443.9292
cquish@bromsun.com
May 24, 2007


## CERTIFICATE OF SERVICE

I certify that this document has been filed through the Electronic Case Filing System of the United States District Court for the District of Massachusetts and will be served electronically by the court to the Registered Participants identified in the Notice of Electronic filing.


/s/  Courtney M. Quish
May 24, 2007


02820/00502  673592.1

# EXHIBIT A

# FILED UNDER SEAL

# EXHIBIT B

# FILED UNDER SEAL

# EXHIBIT C

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE HIPSAVER COMPANY, INC., ) | |
| Plaintiff, ) | |
| v ) | Civil Action No. 05-10917 PBS |
| J.T. POSEY COMPANY, ) | |
| Defendant. ) | |

## DECLARATION OF EDWARD L. GOODWIN IN SUPPORT OF
### HIPSAVER'S SUPPLEMENTAL SUBMISSION OF EVIDENCE SUPPORTING ITS CLAIM OF CAUSATION AND INJURY

I, Edward L. Goodwin, make this Declaration on the basis of personal knowledge and under penalty of perjury.

1.   I am president of the HipSaver Company.

2.   In 2005, I invented the DermaSaver product, a soft free-floating device that protects fragile skin and reduces shear and pressure.

3.   Posey sells a number of directly competing products, such as the Posey Heel Pillow; Posey Quilted Long Boot; Posey Knitted Heel/Elbow Protectors; and Posey Skinsleeves.

4.   Since we began selling the DermaSaver product in June of 2005, we have sold to 118 large chain homes. The list of these chains is attached as **Exhibit 1** and marked as Trial Exhibit 658. Because HipSaver is not a large multi-product provider, many of these

chains need to take extra steps to purchase from HipSaver. Despite these additional steps, these providers have elected to purchase the DermaSaver product.

5. DermaSaver's U.S. sales were $62,000 for the period of June 2005 through December 2005. DermaSaver's U.S. sales were $493,764 in 2006. DermaSaver's sales in the first quarter of 2007 are already $168,683. *See* **Exhibit 1**.

6. Our experience marketing and selling the HipSaver product to these same large institutions has been very different. We have made efforts to sell the HipSaver product to all of these institutions but we have had very little success. In fact, since September 2004, only five of the institutions in any of these large chains have become new HipSaver customers, despite our direct advertising efforts regarding the HipSaver product to these facilities.

_Edward L. Goodwin_    Dated: 5-24-07

02820/00502 673650.1

# EXHIBIT 1

# FILED UNDER SEAL