# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

_____
                              )
THE HIPSAVER COMPANY, INC.,      )
                              )
Plaintiff,                   )
                              )
v                      )     Civil Action No. 05-10917 PBS
                              )
J.T. POSEY COMPANY,         )
                              )
Defendant.               )
                              )
_____)

## PLAINTIFF'S TRIAL BRIEF

Lee Carl Bromberg, BBO No.:  058480
Edward J. Dailey, BBO No.:  112220
Courtney M. Quish, BBO No.:  662288
BROMBERG SUNSTEIN, LLP
125 Summer Street - 11th floor
Boston, Massachusetts 02110-1618
617.443.9292
617.443.0004  Fax

Jeffrey G. Sheldon (CA Bar No. 67516)
Douglas H. Morseburg (CA Bar No. 126205)
SHELDON MAK ROSE & ANDERSON PC
225 South Lake Avenue, Suite 900
Pasadena, CA 91001
(626) 796-4000

Anthony J. Fitzpatrick (BBO # 564324)
DUANE MORRIS LLP
470 Atlantic Avenue, Suite 500
Boston, MA 02210
(617) 289-9200

*Attorneys for Plaintiff,*
*The HipSaver Company.*

*Attorneys for the Defendant,*
*J.T. Posey Company.*

# TABLE OF CONTENTS

I.    STATEMENT OF PENDING PRETRIAL MOTIONS..........................................................1

II.   STATEMENT OF THE CASE AND ISSUES TO BE TRIED............................................1

    1.    Concise Summary Of The Evidence To Be Offered By HipSaver.............................1

    2.    Stipulated Facts...................................................................................................7

    3.    HipSaver's Statement Of Contested Issues Of Fact .................................................12

    4.    HipSaver's Statement of Issues of Law .................................................................13

        A.    HipSaver Will Prevail On Its Lanham Act False Advertising Claim (Count II) ..............................................................................................13

            1.    Posey's Garwood Advertisements Make Literally False Claims ..................................................................................14

                a.    Posey's Advertising Claim Showing Posey Hipster's Performance in a Test Simulating "a Fall Causing Direct Impact to the Greater Trochanter" is Literally False Because the Garwood Test Did Not Simulate a Fall...................................................................15

                b.    Posey's Advertising Claim that Posey Hipsters Are "Proven Effective in Laboratory Tests" and Have "Excellent Impact Absorption" Cannot Be Supported by the Garwood Test and Therefore, is Literally False .........16

                c.    Posey's Advertising Claim That "Posey Hipsters Help Protect Against Injury from a Fall" Cannot Be Supported by the Garwood Test and Is Therefore Literally False...................................................................17

                d.    The Statement that "Posey engaged Garwood Laboratories to conduct testing to select a comfortable and effective impact absorbing material" is literally false...................................................................17

                e.    Posey's Advertisement is Literally False in its Entirety Because the Overall Impression of the Garwood Advertisement Strongly Falsely Suggests That the Garwood Test Results Prove That Posey Hipsters Help Protect Against Hip Fractures from Falls ...........................17

2.    Posey's False Advertisements Actually Deceives or Has the Tendency to Deceive a Substantial Segment of its Audience .......... 18

3.    Posey's False Advertisements Are Material ..................................... 19

4.    Posey's Garwood Advertising was Distributed in Interstate Commerce ....................................................................................... 19

5.    Posey's False Garwood Advertisement Caused Harm to HipSaver And Is Likely To Cause Future Harm to HipSaver .......... 19

     a.    The 2006 HipSaver Sales Data Shows that HipSaver Sales Rebounded After the Garwood Ad was Discontinued and Supports a Strong Inference of Causation and Injury ........................................................... 21

     b.    Posey's Growth Rate was Almost Twice That of HipSaver During the Period of the Garwood Advertising and Supports a Strong Inference that the Garwood Advertising Caused Injury to HipSaver ............... 23

     c.    The 2006 DermaSaver Sales Data Shows that External Factors such as Formulary Restrictions or Brand Loyalty Cannot Alone Account for the Disparity in HipSaver and Posey Sales ..................................... 24

     d.    A Reasonable Fact Finder Can Infer That Posey's False Advertisements Caused Harm to HipSaver ................ 25

6.    HipSaver Seeks an Accounting of Posey's Profits as a Proxy for Its Injury ................................................................................... 25

7.    Posey's False Advertising was Willful ........................................... 27

B.    HipSaver Will Prevail On Its Chapter 93A Claim (Count III) .................... 27

C.    HipSaver Will Prevail On Its Breach Of Contract Claim (Count I) ............. 28

1.    The Settlement Agreement Between the Parties is Valid and Binding ........................................................................................ 28

2.    HipSaver Complied with the Contract and Performed all Obligations under the Contract ........................................................ 29

3.    Posey Breached the Notice Provision of the Settlement Agreement ...................................................................................... 29

        4.     Posey's Breach of the Settlement Agreement Caused Damage to HipSaver ....................................................................................... 30

III.    PLAINTIFF'S PROPOSAL REGARDING VOIR DIRE ..................................................... 31

IV.    PLAINTIFF'S PROPOSAL REGARDING PRETRIAL JURY CHARGE ........................ 31

V.    PLAINTIFF'S PROPOSED JURY INSTRUCTIONS ....................................................... 31

VI.    PLAINTIFF'S PROPOSED JURY VERDICT FORM ...................................................... 31

VII.   PLAINTIFF'S PROPOSAL REGARDING FINDINGS OF FACT AND CONCLUSIONS OF LAW ............................................................................................... 31

Plaintiff The HipSaver Company, Inc. ("HipSaver") submits this Trial Brief pursuant to the Court's February 14, 2007, Pretrial Order [**D.N.** 213]. Trial in this matter is currently scheduled to begin on June 4, 2007.

## I.    STATEMENT OF PENDING PRETRIAL MOTIONS

On May 15, 2007, HipSaver filed the following three motions *in Limine*:

- HipSaver's Motion *in Limine* to Exclude the 2006 Tampere Test and Test Results [**D.N.** 241];
- HipSaver's Motion *in Limine* to Exclude Expert Testimony of Kevin Minissian [**D.N.** 243];
- HipSaver's Motion *in Limine* to Exclude Opinion Testimony of Gary Reich by [**D.N.** 247];

On May 25, 2007, HipSaver filed a Motion *In Limine* To Exclude Posey's Affirmative Defense of Unclean Hands [**D.N.** 272]

On May 15, 2007, J.T. Posey Company ("Posey") filed seven motions *in limine*:

- Posey's First Motion *in Limine* For Order Precluding Use of Certain Terms To Refer To Posey, Its President And Its Products [**D.N.** 231];
- Posey's Second Motion *in Limine* For Order Precluding Evidence That HipSaver Has Been Harmed As A Consequence Of Posey's Accused Ads [**D.N.** 232];
- Posey's Third Motion *in Limine* For Order Precluding Testimony Of Roy J. Epstein Regarding Damage In Fact To The HipSaver Company, Inc. [**D.N.** 233];
- Posey's Fourth Motion *in Limine* For An Order Precluding Trial Of Issues Involving The Truth Or Falsity Of Advertising Statements Not Involving The Garwood Testing [**D.N.** 234];
- Posey's Fifth Motion *in Limine* For Order Precluding Expert Testimony By Edward Goodwin [**D.N.** 235];
- Posey's Sixth Motion *in Limine* For An Order Precluding HipSaver From Juxtaposing Portions Of Different Advertisements Or Presenting Portions Of Advertisements Out Of Context [**D.N.** 236];
- Posey's Seventh Motion *in Limine* For Order Limiting Use Of Information Regarding Posey I At Trial [**D.N.** 237].

On May 22, 2007, both parties filed oppositions to the other's motions *in limine*.

## II.    STATEMENT OF THE CASE AND ISSUES TO BE TRIED

### 1.    Concise Summary Of The Evidence To Be Offered By HipSaver

Plaintiff The HipSaver Company ("HipSaver") is a small, closely-held Massachusetts

1

corporation that develops, manufactures, and distributes hip protector garments. These garments consist of a foam pad enclosed in an expendable air pouch, which absorbs energy associated with the impact from a fall and provides fracture protection to the hip/femur in the elderly and disabled. The device is washable, sewn into clothing, and positioned over the hip. HipSaver's President, Edward Goodwin, invented the product in 1995.

Until recently, HipSaver was a single product company that only sold the HipSaver product. Starting in June 2005, HipSaver began selling a second product under the trade name DermaSaver. The DermaSaver product line consists of a series of skin cover or skin protection products that are designed to protect fragile skin and reduce shear and pressure by using a revolutionary MicroSpring™ textile in the product. These products are sold to the same customer base: long-term care facilities and nursing homes.

Posey is a large, multi-product California corporation. Posey, with annual revenues in excess of $40 million, is the dominant nationwide distributor of patient safety and support equipment devices. One of Posey's product lines is a line of hip protectors ("Hipsters") which compete directly with the HipSaver garment.

Together, Posey and HipSaver dominate the hip protector market in the United States. The hip protector garments are used in nursing homes, rehabilitation hospitals and private residences to protect against hip fractures in the elderly caused by falls. The relevant market includes some 17,000 nursing homes and 3,000 rehabilitation hospitals.

The dispute between these parties is the result of a failed settlement between HipSaver and Posey. In 2004, HipSaver challenged Posey's deceptive advertising tactics in an earlier action before this court, Docket Number 04-11294-PBS ("2004 Litigation"). After mediation before Judge Mazzone, the parties attempted to resolve the issues by settlement. In September 2004, the parties executed a written Settlement Agreement ("Settlement Agreement"). By the terms of the

2

Settlement Agreement Posey withdrew its so-called "UCLA White Paper" advertisements, circulated a corrective advertising statement, and paid $360,000 to HipSaver. The Settlement Agreement resolved the underlying dispute over the UCLA advertisements, but it fell short of its goal to halt Posey's general market strategy of positioning itself in the marketplace for soft hip protector garments through false and deceptive advertising.

Now, for the second time in three years, HipSaver again challenges Posey's false and deceptive advertising practices. Given Posey's contumacious acts in the face of the earlier settlement, HipSaver seeks a fair and final resolution of this dispute.

In this case, HipSaver challenges a series of Posey advertisements making claims related to effectiveness and superiority of its hip protector product ("Garwood Advertisement/s"). Specifically, HipSaver challenges claims related to effectiveness and superiority that explicitly or implicitly rely on a test conducted at Garwood Laboratories in July, 2001 ("Garwood Test").

In the 2005 Complaint presently before the trial court, HipSaver claims that Posey conducted a literally false, deceptive and misleading advertising campaign with distribution of numerous versions of an advertisement referencing the Garwood Test. HipSaver complains that this nationwide advertising campaign violates the Lanham Act, 15 U.S.C. §1125(a)(1)(B) and the Massachusetts Unfair and Deceptive Business Practices Act, G.L. c. 93A, §§2, 11. HipSaver also complains that Posey breached the Settlement Agreement by distributing its false advertising based on new testing without notifying HipSaver of the new advertising as required by the Settlement Agreement.

The challenged nationwide advertising campaign includes variations of the following advertisements (shown below).[1] Throughout this Memorandum, these advertisements in all forms

---

[1] The Court has already determined that some of the claims in the Garwood Advertisements listed below are literally false, namely, (1) "An independent laboratory study was conducted to determine the most effective impact absorbing material," and (2) "In an independent laboratory test designed to simulate a fall causing direct impact to the greater

are referred to as the "Garwood Advertisement/s."



(highlighting inserted to identify challenged portions of the Advertisement).

---

trochanter, the Posey Hipster III reduced the impact force below 90%, the best results of any hip protector available." Memorandum and Order [**D.N.** 228] at pp. 27-28.

4

# POSEY HIPSTERS HELP PROTECT AGAINST INJURY FROM FALLS



It's a long way down for residents at risk of injury from falls. You can greatly reduce that risk with Posey Hipsters. The Hipsters' high energy-absorbing foam pads are positioned precisely over the hip bones, increasing the odds of surviving a fall uninjured. The Hipsters are comfortable and slim enough to be virtually undetectable under clothing. By offering increased protection, Hipsters relieve residents' anxiety about falling and enhance their quality of life.

- High impact-absorbing viscoelastic pads protect hip bones against injury from falls
- Soft, comfortable pads improve compliance versus hard-shelled products
- Washable to CDC standards for soiled linen without removing the pads
- 100% latex-free
- Five sizes for correct fit
- Discreet, low-profile pads are virtually undetectable under clothing



*Low Profile - All styles fit discreetly under men's and women's clothing.*

## Posey Hipsters Proven Effective in Laboratory Test

An independent laboratory study was conducted to determine the most effective impact absorbing material. A test was created that would simulate a fall causing direct impact to the greater trochanter. In this study, a weight was released in a guided drop to simulate a 120 lb. subject falling from a height of 36", or the estimated height of the hip above the floor for a typical nursing home resident. The baseline measurement of impact force was determined to be a fall directly onto concrete. The G-Force of a fall under this scenario was 2,660G's and, for purposes of comparison, is just slightly less impact force than that of a baseball being struck by a bat. In this extreme test, the low profile Posey Hipster reduced the impact force on average by 90% and showed excellent impact energy absorption.



Testing was conducted by Garwood Laboratories.
Data on file at J.T. Posey Company *Source: www.madsci.org

**Special offer: 30-day no-risk free trial.**
Test the Posey Hipsters for yourself with no obligation to buy.

PC 1744

Thousands of printed versions of these advertisements were distributed in Posey catalogs and mailers from August 2004 through Summer 2005 to Posey's nationwide list of corporate

customers as well as to an unknown number of potential Posey customers.  Posey also posted the Garwood Advertisement on its website, www.posey.com.

A version of this Garwood Advertisement was also distributed in videotape form.  In the video, the bar chart from the printed Garwood Advertisement is shown on the screen (as shown below) while a narrator simultaneously states the following, "In an independent laboratory test *designed to simulate a fall* causing direct impact to the greater trochanter, the Posey Hipster III reduced the impact force by 90%, **the best results of any hip protector available."**(emphasis added).



"In an independent laboratory test designed to simulate a fall causing direct impact to the greater trochanter, the Posey Hipster III reduced the impact force by 90%, the best results of any hip protector available."

HipSaver challenges the following statements made in the Garwood Advertisements as literally false and further challenges the entire advertisement as literally false based on the overall impression of the advertisement.

- **"A test was created that would simulate a fall causing direct impact to the greater trochanter."**

- **"An independent laboratory study was conducted to determine the most effective impact absorbing material**."[2]

- "In an independent laboratory test designed to simulate a fall causing direct impact to the greater trochanter, the Posey Hipster III reduced the impact force below 90%, **the best results of any hip protector available**."[3]

- "Posey Hipsters **Proven Effective in Laboratory Tests"**

- "Posey Hipsters **Help Protect Against Injury from Falls"**

- "Posey Hipster ... **showed excellent impact energy absorption."**

- "Posey engaged Garwood Laboratories to **conduct testing to select a comfortable and effective impact absorbing material**."

These statements are all made in connection to or with reference to the Garwood Test. Because the Garwood Advertisement cites the Garwood Test as support for its claims, the parties focus on the Garwood Test to determine whether the challenged establishment claims are proven by the Garwood Test or are, alternatively, literally false.

The undisputed facts show that Posey distributed thousands upon thousands of copies of these advertisements in interstate commerce, using catalogs, mailers, and video. Posey also posted these advertisements on its website, www.posey.com. The parties agree that Posey's Garwood Test cannot support critical claims in the advertisements for which the Garwood Test is referenced. And Posey cannot dispute that the claims are material.

2.    **Stipulated Facts**

The parties, Plaintiff HipSaver and Defendant Posey have previously stipulated to the

---

[2]  The Court has already determined that this advertising claim is literally false, that it deceived consumers, and that it is material.  Memorandum and Order [**D.N.** 228] at pp. 27-28.  To the extent necessary, HipSaver will further prove at trial that this claim caused harm to HipSaver.
[3]  The Court has already determined that this advertising claim is literally false, that it deceived consumers, and that it is material.  Memorandum and Order [**D.N.** 228] at pp. 27-28.  To the extent necessary, HipSaver will further prove at trial that this claim caused harm to HipSaver.

following facts.  Joint Pretrial Memorandum [**D.N.** 223].

1.     HipSaver was founded in 1995. HipSaver is a company headquartered in Canton, Massachusetts. HipSaver had annual revenues in 2005 and 2006 of about $1.5 million. HipSaver is organized and registered as a Massachusetts corporation.

2.     Mr. Edward Goodwin founded the HipSaver Company and is the co-owner and President of HipSaver. He developed the HipSaver® hip protector, a soft foam washable encapsulated protective pad sewn into a garment.  Mr. Goodwin has sold HipSaver hip protectors since about 1995.  His product is sold in the United States, Canada, Europe, and Australia.

3.     Ms. Helen Brogna is the majority owner and Executive Vice President of HipSaver.

4.     Until 2006, HipSaver was a single product company, designing, developing, and manufacturing the HipSaver hip protector product.

5.     HipSaver's hip protector garment is sold under the HipSaver trademark.  HipSavers are sold to nursing homes, long term care facilities, rehabilitation hospitals, and consumers.

6.     HipSaver maintains a web-site at www.hipsaver.com.

7.     Posey was founded in 1937.  Posey is a California corporation headquartered in Arcadia, California.

8.     Mr. Ernest Posey is President of Posey.

9.     Ms. Victoria Lewis serves as a product manager for Posey.

10.    Mr. Charles Nail serves as the Controller for Posey.

11.    Posey is in the business of selling healthcare/safety products for patient restraint, fall safety, wound prevention, and wheelchair seating, among others.  Posey sells its products to nursing homes, long term care facilities and hospitals.  Posey's annual revenue for 2005 was slightly more than $40 million dollars.  Posey maintains a website at www.posey.com.

12.     A hip protector product is a product designed to protect at-risk individuals, primarily the elderly, against hip fractures caused by falls by reducing the force of the impact of the fall.

13.     Hip protectors may be comprised of entirely soft materials, entirely hard materials consisting essentially of a shield, or a combination of both hard and soft materials.

14.     Posey introduced its first soft hip protector into the market in the year 2000. It was sold under the name "Hipster". Posey later re-designed its soft hip protector. Its re-designed soft hip protector was introduced into the market in approximately October 2001.

15.     HipSaver and Posey currently manufacture and sell entirely soft hip protectors.

16.     HipSaver and Posey are direct competitors in the hip protector market.

17.     This lawsuit challenges a series of advertisements published and distributed by J.T. Posey containing references to tests conducted by Garwood Laboratories. These advertisements are referred to as the "Garwood Advertisement/s" or the "Garwood Ad/s". Distribution of the ads in question commenced approximately in the latter part of 2001.

18.     Garwood Laboratories, Inc. is a California corporation that conducts various types of testing.

19.     In 2001, Posey paid Garwood to conduct some testing on some foam materials that Posey was considering using in the pads that are incorporated into its hip protectors. Since 2001, Posey contracted with and retained Garwood Laboratories on a number of occasions to conduct material or product testing, including impact tests on hip protector materials and products in 2005.

20.     Garwood Laboratories conducted the "independent laboratory test" referred to in the

Garwood ads.  The tests conducted by Garwood Laboratories are referred to as the "Garwood Test/s."

21.    Garwood performed two different types of tests for Posey.  In one of the tests, Garwood tested samples of raw materials.  Each material sample was placed under a 6" diameter weight weighing 72 lbs.  The weight was then raised in a guide to the specified height of twenty-four (24) inches, and dropped on the sample.  This drop was repeated on each sample.  Impact amplitudes, measuring the force attenuation properties of the samples, were recorded.  This type of test is referred to as a "direct impact test."  Upon completion of each test, the test samples were inspected by a Posey representative and returned to Posey.

22.    Following the testing, Garwood produced reports to Posey detailing the results of the testing.

23.    In late 2001, Posey began disseminating advertising materials that made reference to the Garwood Test.  In these early advertisements, Posey stated that the tests were conducted in 2001.  These early advertisements contained the following statements:

a)    "A test was created that would simulate a fall causing direct impact to the greater trochanter."

b)    "An independent laboratory study was conducted to determine the most effective impact absorbing material."

c)    "In an independent laboratory test designed to simulate a fall causing direct impact to the greater trochanter, the Posey Hipster III reduced the impact force by 90%, the best results of any hip protector available."

d)    "Posey Hipsters Proven Effective in Laboratory Tests"

e)    "Posey Hipsters Help Protect Against Injury from Falls"

       f)     "Posey Hipster … showed excellent impact energy absorption."

24.     The Garwood Ads were contained in Posey product catalogs, product instruction sheets and brochures.  These materials were mailed to customers and prospective customers, distributed at trade shows and sent to people who requested information on Posey's Hipster hip protectors.

25.     Posey also distributed materials containing the Garwood Ads in late 2004.  These materials repeated the same statements that were contained in the earlier Garwood Ads.

26.     At some point, Posey deleted the reference to the 2001 date.

27.     Beginning in 2004, the Garwood Ad was often placed on a flyer which included references to Posey's High Durability Hipster product.

28.     Posey's Garwood Advertisements were withdrawn in the fall of 2005.

29.     HipSaver's President, Mr. Goodwin, learned of Posey's Garwood Ads at least as early as 2002.

30.     Late in 2003, Posey distributed advertising that made reference to a so-called "UCLA White Paper."

31.     On June 10, 2004, HipSaver filed a lawsuit in the United States District Court for the District of Massachusetts, claiming, among other things, that the UCLA ads were false ("Posey I").

32.     In connection with its claims in Posey I, HipSaver sought, among other things, damages and preliminary and permanent injunctive relief halting and preventing further publication, distribution, or reference to the challenged UCLA advertisement or so-called "UCLA White Paper" or the false testing conducted in support of the UCLA White Paper.  HipSaver also sought an injunction halting all further publication or distribution of, or reference to, materials that claimed Posey's hip protector products were superior to HipSaver's.

33.     In Posey I, Posey counterclaimed against HipSaver for, among other things, false advertising.  Posey's counterclaims arose out of HipSaver's publication of various statements regarding the parties' respective products on HipSaver's internet web-site.  On September 21, 2004, the parties settled the Posey I lawsuit.  As part of the settlement, the parties dismissed with prejudice the claims and counterclaims asserted in Posey I and entered into a written settlement agreement.

34.     After the Posey I settlement, HipSaver challenged Posey's Garwood advertising by way of a "cease and desist" letter dated May 3, 2005.  HipSaver filed this lawsuit on May 4, 2005.

35.     In May 2005, in response to HipSaver's letter objecting to Posey's advertising statements regarding the results of the Garwood Test, Posey changed some of the language in its advertisements.

36.     In August 2005, Posey eliminated any reference to the results of the Garwood advertising.  In addition, it removed the product instructions which mentioned Garwood from its web-site.

### 3.     HipSaver's Statement Of Contested Issues Of Fact

1.     Whether statements made by Posey and published in the Garwood Ads were literally false:[4]

   a)      "A test was created that would simulate a fall causing direct impact to the greater trochanter."

   b)      "An independent laboratory study was conducted to determine the most effective impact absorbing material."

   c)      "In an independent laboratory test designed to simulate a fall causing direct

---

[4]  The Court has already determined that statements b) and c) below are literally false, that they deceived consumers, and that they are material.  Memorandum and Order [**D.N.** 228] at pp. 27-28.

impact to the greater trochanter, the Posey Hipster III reduced the impact force by 90%, the best results of any hip protector available."

    d)      "Posey Hipsters Proven Effective in Laboratory Tests"

    e)      "Posey Hipsters Help Protect Against Injury from Falls"

    f)      "Posey Hipster … showed excellent impact energy absorption."

2.     Whether Posey's literally false statements are material.

3.     Whether Posey's advertising was unfair or deceptive.

4.     Whether Posey's literally false statements deceived or have the tendency to deceive consumers.

5.     Whether Posey's literally false statements have damaged HipSaver.

6.     Whether Posey's unfair or deceptive statements have damaged HipSaver.

7.     The extent of such damages.

8.     The extent of Posey's profits for its Hipster hip protector product.

9.     Whether Posey's literally false and unfair or deceptive statements were made maliciously, fraudulently, deliberately, or willfully.

10.    Whether Posey has breached the Notice provision of the 2004 Settlement Agreement.

11.    Whether Posey's breach of the Notice provision of the 2004 Settlement Agreement has damaged HipSaver.

12.    The extent of such damages.

**4.    HipSaver's Statement of Issues of Law**

    **A.    HipSaver Will Prevail On Its Lanham Act False Advertising Claim (Count II)**

The Lanham Act §43(a) prohibits false advertising by prohibiting any "false or misleading representation of fact, which . . . in commercial advertising or promotion,

misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another

person's goods, services, or commercial activities."  15 U.S.C. §1125(a)(1)(B).  HipSaver will

prevail on this claim by showing that:

> (1) Posey made a false or misleading description of fact in a commercial advertisement; (2) the statement actually deceives or has the tendency to deceive a substantial segment of its audience; (3) the deception is material (*i.e.*, it is likely to influence the purchasing decision); (4) Posey placed the statement into interstate commerce; and (5) HipSaver has been or is likely to be injured as a result of the statement, either by direct diversion of sales to Posey and by a lessening of goodwill associated with HipSaver's products.

*See* Memorandum and Order [**D.N.** 228] at p. 21 (quoting *Cashmere and Camel Hair*

*Manufacturer's Institute v. Saks Fifth Avenue,* 284 F.3d 302, 310-11 (1st Cir. 2002)).

### 1.    Posey's Garwood Advertisements Make Literally False Claims

Posey's Garwood Advertisement is literally false because the Garwood Test results do

not support the proposition for which they were cited.  To determine whether an ad is literally

false, "[f]irst, a factfinder must determine the claim conveyed by the advertisement. Once the

claim made by the advertisement has been determined, the factfinder must then evaluate whether

that claim is false."  Memorandum and Order [**D.N.** 228] at p. 22 (quoting *Clorox Co., P.R. v.*

*Proctor & Gamble Commercial Co.,* 228 F.3d 24, 34 (1st Cir. 2000)).

A plaintiff can succeed on a false advertising claim by proving either that the defendant's

advertisement is literally false or implicitly false.  *Cashmere,* 284 F.3d at 311.  Where the

challenged ad explicitly or implicitly represents that tests or studies prove its claims, "plaintiff

satisfies its burden of showing [literal falsehood] by showing that the tests did not establish the

proposition for which they were cited."  Memorandum and Order [**D.N.** 228] at p. 22 (quoting

*Castrol, Inc. v. Quaker State Corp.,* 977 F.2d 57, 63 (2nd Cir 1991)).  A plaintiff can meet this

14

burden by establishing either (a) that the tests were not sufficiently reliable to permit the conclusion for which it was cited; or (b) that the tests, even if reliable, do not establish the proposition for which they were asserted. Memorandum and Order [**D.N.** 228] at p. 23 (quoting *Spalding Sports Worldwide, Inc. v. Wilson Sporting Goods Co., 198 F. Supp. 2d 59*, 67 (D. Mass. 2002)); *Castrol,* 977 F.2d at 63. Posey's claims are literally false because the Garwood Test results do not support Posey's claims.

The Court has already determined that Posey's two relative product quality advertising claims are literally false: (1) "An independent laboratory study was conducted to determine the most effective impact absorbing material," and (2) "In an independent laboratory test designed to simulate a fall causing direct impact to the greater trochanter, the Posey Hipster III reduced the impact force below 90%, the best results of any hip protector available." Memorandum and Order [**D.N.** 228] at pp. 27-28.

     **a.**     **Posey's Advertising Claim Showing Posey Hipster's Performance in a Test Simulating "a Fall Causing Direct Impact to the Greater Trochanter" is Literally False Because the Garwood Test Did Not Simulate a Fall**

Of course, the very purpose of a hip protection garment is to protect a person, particularly elders and disabled persons, from hip fracture in the event of a fall. Keying directly to this purpose, the Garwood Advertisement states, "An independent laboratory study was conducted to determine the most effective impact absorbing material. A test was created that would *simulate a fall causing direct impact to the greater trochanter.*" But the parties and Posey's expert agree that the Garwood Test did not simulate a fall causing direct impact to the greater trochanter. Posey's expert stated that the Garwood Tests "do not model the intricacies of the bone and soft tissue geometries and material properties" Memorandum and Order [**D.N.** 228] at p. 26 (quoting Ebramzadeh Rebuttal Expert Report, October 18, 2006, at unnumbered p. 8)) and

accordingly that, "[the Garwood test] is not the proper way to simulate a fall." *Id.* (quoting Ebramzadeh Depo. at 51). Dr. Ebramzadeh stated that, "Since the Garwood test is not a valid simulation . . . it should not be analyzed as one . . . . Treating the Garwood Test as a full simulation rather than a materials test exaggerates the difference in outcome between the Garwood test and [tests that have simulated a fall]." Ebramzadeh Rebuttal Expert Report, October 18, 2006, at unnumbered p. 9. The statement in the Garwood Advertisement that "A test was created that would simulate a fall causing direct impact to the greater trochanter" is literally false.

Not only is the claim that the test "simulated a fall" literally false, all claims purportedly established by the Garwood Test must also be literally false because the Garwood Test does not permit any conclusions about the effectiveness or performance of any tested matter in a simulation of a fall. *Castrol,* 977 F.2d at 63.

Furthermore, the test was not even a reliable materials test. The parties agree that the testing did not follow the precise specifications of the ASTM F355-95, the industry standard protocol specified in the Garwood Test procedures. *See* Memorandum and Order [**D.N.** 228] at p. 26. Therefore, all claims in the Garwood advertisement are literally false.

> **b.** **Posey's Advertising Claim that Posey Hipsters Are "Proven Effective in Laboratory Tests" and Have "Excellent Impact Absorption" Cannot Be Supported by the Garwood Test and Therefore, is Literally False**

In addition to the Garwood Test deficiencies discussed above, the Garwood Test cannot prove that the Hipster is effective or has excellent impact absorption. Where an advertising claim makes implicit or explicit references to tests, the plaintiff may satisfy its burden by showing that *those* tests do not prove the proposition for which they were asserted. *BASF Corp. v. Old World Trading Co., Inc.,* 41 F.3d 1081, 1091 (7th Cir. 1994). The Garwood Test cannot

be used to draw any conclusions about the effectiveness of the Hipster hip protector because it did not test the actual garment and did not consider the size of the pad and/or the positioning of the pad in the garment, two significant factors in the ability of the Hipster to absorb impact.

Accordingly, the Garwood Advertisement's claims that Posey Hipsters are "proven effective in laboratory tests" have "excellent impact absorption" cannot be supported by the Garwood Test results and is therefore, literally false.

      **c.**      **Posey's Advertising Claim That "Posey Hipsters Help Protect Against Injury from a Fall" Cannot Be Supported by the Garwood Test and Is Therefore Literally False**

One of the variations of the Garwood Advertisement is titled "Posey Hipsters Help Protect Against Injury from a Fall."  When the Advertisement is considered in its entirety, the claim of protection against injury in a fall looks to be supported by the Garwood Test results. However, this claim is also literally false because the Garwood Test does not simulate a fall and cannot substantiate the claim that the Hipster garment protects against injury from a fall.

      **d.**      **The Statement that "Posey engaged Garwood Laboratories to conduct testing to select a comfortable and effective impact absorbing material" is literally false.**

Evidence will show that the Garwood test did not test comfortability.  Furthermore, for the reasons stated above, the the impact energy absorbition test was invalid and therefore, could not even prove the effectiveness of a raw material.

      **e.**      **Posey's Advertisement is Literally False in its Entirety Because the Overall Impression of the Garwood Advertisement Strongly Falsely Suggests That the Garwood Test Results Prove That Posey Hipsters Help Protect Against Hip Fractures from Falls**

Posey's Garwood Advertisement is literally false in its entirety because the overall impression of the Garwood Advertisement suggests that the Posey Hipster was laboratory tested in a fall simulation and was proven to be not only effective but, the most effective hip protector.

17

An advertisement conveys a claim by "necessary implication" under the Lanham Act when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated.  Lanham Trade Mark Act, § 43(a), 15 U.S.C.A. § 1125(a); *Clorox,* 228 F.3d at 35.  Here, the Garwood Advertisement taken as a whole is literally false because (a) neither the garment nor the raw material was tested in a study simulating a fall; (b) the study did not test the Hipster garment and is therefore, incapable of making any assessment as to the ability of the garment; (c) neither the garment nor the material was proven effective in preventing injury from a fall in the test; and (d) the pad was not the most effective at reducing force in a pure materials comparison.  Accordingly, when considering the advertisement as a whole, the entire Garwood Advertisement is literally false.

### 2.    Posey's False Advertisements Actually Deceives or Has the Tendency to Deceive a Substantial Segment of its Audience

To the extent HipSaver demonstrates Posey's literally false advertising, it is entitled to a "presumption of consumer deception, irrespective of the type of relief sought."  *Cashmere*, 284 F.3d at 309.  Also, to the extent HipSaver demonstrates Posey's intent to deceive consumers, HipSaver is entitled to a presumption of consumer deception:  "It is well established that if there is proof that a defendant intentionally set out to deceive or mislead consumers, a presumption arises that consumers in fact have been deceived."  *Cashmere*, 284 F.3d at 316.

The Court has already determined that Posey's two relative product quality advertising claims are literally false:  (1) "An independent laboratory study was conducted to determine the most effective impact absorbing material," and (2) "In an independent laboratory test designed to simulate a fall causing direct impact to the greater trochanter, the Posey Hipster III reduced the impact force below 90%, the best results of any hip protector available."  Memorandum and Order [**D.N.** 228] at pp. 27-28.  Because these claims are literally false, HipSaver is entitled to a

presumption that these claims deceived consumers.

### 3.     Posey's False Advertisements Are Material

False or misleading statements relating to an "inherent quality or characteristic" of the product are material.  *Cashmere,* 284 F.3d at 311-312 (finding that statement relating to the quality and characteristics of a cashmere garment would likely be found material by a rational fact finder) (internal citations omitted).   The Court has already determined that "impact absorption is an 'inherent quality or characteristic' of hip protector garments -- reducing the impact from a fall is, after all, the point."  Memorandum and Order [**D.N.** 228] at p. 28.  All of Posey's Garwood advertising statements are therefore material, because they all make impact absorption claims based on the Garwood impact absorption tests.

In particular, the Court has already determined that Posey's two relative product quality advertising claims are material: (1) "An independent laboratory study was conducted to determine the most effective impact absorbing material," and (2) "In an independent laboratory test designed to simulate a fall causing direct impact to the greater trochanter, the Posey Hipster III reduced the impact force below 90%, the best results of any hip protector available." Memorandum and Order [**D.N.** 228] at p. 28.

### 4.     Posey's Garwood Advertising was Distributed in Interstate Commerce

Posey concedes that it placed the Garwood Advertisement in interstate commerce. Posey's Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment [D.N. 182] at p. 11.

### 5.     Posey's False Garwood Advertisement Caused Harm to HipSaver And Is Likely To Cause Future Harm to HipSaver

HipSaver suffered harm as a result of Posey's false Garwood Advertisement.  HipSaver

must prove causation and fact of injury: "[t]he aggrieved party must demonstrate that the false advertisement actually harmed its business. A precise showing is not required, and a diversion of sales, for example, would suffice." *Cashmere*, 284 F.3d at 318.

HipSaver may meet this burden by showing that HipSaver and Posey are direct competitors and that HipSaver has been harmed by Posey's false advertising. *Vermont Pure Holdings Ltd. v. Nestle Waters North America Inc.*, No. Civ.A.03-11465 DPW, 2006 WL 839486 (D. Mass. March 28, 2006). Because the parties stipulate and this Court has made a finding of fact that the parties are direct competitors, Memorandum and Order [**D.N.** 228] at 3, HipSaver must show that HipSaver has suffered injury as a result of Posey's false advertising. Memorandum and Order [**D.N.** 228] at 31. HipSaver meets its burden if it presents evidence of causation and damages such that a rational fact finder could draw a "reasonable inference" of a causal connection between the false advertising and the harm sustained. *Cashmere*, 284 F.3d at 319 (1st Cir. 2002).

Where, as here, HipSaver and Posey are direct competitors, a less definite showing of injury is required. Memorandum and Order [**D.N.** 228] at 31, *citing Ortho Pharmaceutical Corp. v. Cosprophar, Inc.,* 32 F.3d 690, 694 (2d Cir. 1994); *Balance Dynamics Corp. v. Schmitt Indus.,* 204 F.3d 683, 691 (7th Cir. 2000)(noting that consumer confusion tends to show "hard to prove" marketplace damages, like lost profits or lost sales, "probably exist").

With respect to the comparative advertising claims contained in the Garwood advertisements and already found literally false by this Court, no further evidence of injury is required because where the defendant is found to have made false comparative statements with knowledge of their false nature, a presumption arises that consumers were deceived by such statements and that the plaintiff suffered damages as a result of such deception. *Porous Media*

*Corp. v. Pall Corp.,* 110 F.3d 1329 (8th Cir. 1997).

Once the plaintiff has provided a reasonable basis for damages, the plaintiff need only prove the amount of damages with as much certainty as the circumstances of the case permit. *Ricky Smith Pontiac, Inc. v. Subaru of New England, Inc.*, 14 Mass.App.Ct. 396, 426-427. With respect to the amount of damages sought by HipSaver, HipSaver seeks Posey's lost profits as a proxy for its own damages. Dr. Epstein assesses Posey's profits of its Hipster sales at $756,828.[5] Expert Report of Dr. Epstein, September 26, 2006 at 6. It is Posey's burden to show if and to what extent HipSaver should not be awarded all of Posey's Hipster profits. *Tamko Roofing Products, Inc. v. Ideal Roofing Co., Ltd,* 282 F.3d 23, 36-37 (1st Cir. 2002)(stating that once infringement and direct competition are established, the burden of showing that not all profits should be awarded falls on the defendant).

### a. The 2006 HipSaver Sales Data Shows that HipSaver Sales Rebounded After the Garwood Ad was Discontinued and Supports a Strong Inference of Causation and Injury

The 2006 HipSaver sales data shows a marked increase in sales that began in December 2005 and continued to grow throughout 2006. This sales increase shows that once the Garwood advertisement was discontinued, HipSaver sales rebounded. Specifically, during the period of accused advertising, HipSaver's monthly sales averaged $58,769 per month. From September 2005 through December 2005, HipSaver's sales averaged $69,461 per month. And, for the 2006 calendar year, HipSaver's average monthly sales further increased to $75,057 per month. *See* Supplemental Expert Report of Roy J. Epstein, May 24, 2006 at ¶ 5.

As Posey's own damages expert posited in his expert report, such a reaction strongly

---

[5] HipSaver wishes to correct an error in this Court's Memorandum and Order. This Court stated that HipSaver's expert calculated its lost profits damage claim with **all profits earned by Posey**. *See* Memorandum and Order [**D.N.** 228] at p. 30. But, HipSaver's damages expert's calculations were based **only** on Hipster sales, and **not** on **all** profits earned by Posey. Dr. Epstein calculates Posey's profits for Hipster sales as $756,828 for the period of

supports the inference of causation:

> **[I]f the allegedly false Garwood references resulted in lower HipSaver sales, it would be expected that higher monthly sales would occur when the references were discontinued.**

Report of Creighton Hoffman, February 16, 2005, at p. 6. [6]  HipSaver's December 2005 and 2006 sales data show precisely the response Mr. Hoffman predicted if injury had occurred: HipSaver sales rebounded after the Garwood Advertisement was discontinued and continued to grow in the following months.  Supplemental Expert Report of Roy Epstein, May 24, 2007.

---

October 2004 through December 2005.

[6]  In their report, Mssrs. Hoffman and Green did not find an increase in HipSaver sales immediately following removal of the advertisement.  However, Mssrs. Hoffman and Green excluded data from December 2005 which would have shown an increase in sales.  Furthermore, Hoffman's implication that an increase in sales would follow immediately after removal of the ads is challenged by Dr. Epstein and defies common sense.  As Dr. Epstein states in his report, "one would expect HipSaver's sales to require some time before ramping up to a level that is free of the lingering effect of the advertising."  Supplemental Expert Report of Dr. Epstein, May 24, 2007, at ¶6.



Oct. 2004 – Aug. 2005
(During Garwood Advertising)

Sept. 2005 – Dec. 2005
(4-month period directly
following removal of Garwood
ad)

Jan. 2006 – Dec. 2006
(Period beginning 4 months
after the Garwood ad was
removed)

Because this growth coincides with Posey's removal of the Garwood advertisement, the data

supports a reasonable inference that HipSaver's growth rate would have been higher absent the

marketplace disruption of false advertising and accordingly, that HipSaver was injured as a result

of Posey's false Garwood advertising, conforming to Posey's own expert's economic analysis.

By Posey's own expert statement, "higher monthly sales [occurring] when the references were

discontinued" shows that "the allegedly false Garwood references resulted in lower HipSaver

sales."  Report of Creighton Hoffman, February 16, 2005, at p. 6.

b.    **Posey's Growth Rate was Almost Twice That of HipSaver During the Period
      of the Garwood Advertising and Supports a Strong Inference that the
      Garwood Advertising Caused Injury to HipSaver**

As previously stated in Dr. Epstein's Expert Report, dated October 31, 2006, and restated

in the attached Supplemental Report, the parties' growth rates *during* the period of the false advertising are markedly different. Posey's average monthly sales increased by 8.8% in the nine months following September 2004 relative to the nine months prior. *See* Expert Report of Hoffman and Green, February 16, 2006, at 7. This same comparison for HipSaver, using data from Hoffman and Green's exhibits, shows that HipSaver's sales increased by only 4.5%. *See* Supplemental Expert Report of Dr. Epstein, May 24, 2007, at 8  This comparison creates a reasonable inference that HipSaver experienced a depressed rate of growth as a result of the false advertising.

   c.    **The 2006 DermaSaver Sales Data Shows that External Factors such as Formulary Restrictions or Brand Loyalty Cannot Alone Account for the Disparity in HipSaver and Posey Sales**

HipSaver also offers 2006 sales data for a new product designed and manufactured by HipSaver and sold under the trade name DermaSaver. DermaSaver was first sold in June 2005. This product directly competes with a number of Posey products. The 2006 DermaSaver sales data provides an alternative 'but for' scenario with respect to HipSaver's access to long term healthcare chains and catalogs.

In contrast to the HipSaver product, which has been frozen out of the national healthcare facilities, DermaSaver has been successfully sold to the same customers. Because all other variables are held equal (the products directly compete; the product providers are the same; the sales and customer services are the same), the comparison between the HipSaver and DermaSaver market penetration shows that, absent a marketplace disruption such as the Garwood advertising, HipSaver would have had the ability to sell in large chains where Posey products were already sold. This data counters Posey's suggestion (*see e.g.* Expert Report of Gary Reich, February 16, 2006 at ¶¶ 26-27) that it is formulary restrictions, brand loyalty, or

Posey's tenure in the marketplace, rather than false advertising, that kept HipSaver out of the healthcare chains and large distributors. This 2006 DermaSaver sales data offers an alternative 'but for' scenario, showing HipSaver's access to healthcare institutions but for the marketplace disruption.

### d.    A Reasonable Fact Finder Can Infer That Posey's False Advertisements Caused Harm to HipSaver

In addition to HipSaver's illustrations of actual harm, Posey's false advertising of the quality and effectiveness of its hip protection product creates a common sense inference of lost sales. *Cashmere,* 284 F.3d at 318-19 (1st Cir. 2002).

HipSaver has been harmed seriously, perhaps fatally in this case. And there can be no doubt that Posey is the source—the single competitor with an *admitted* history of false advertising, the competitor with a history of marketing a defective product, and the competitor which set out in 2001 to knock off HipSaver's product and capture the market by any means available.

### 6.    HipSaver Seeks an Accounting of Posey's Profits as a Proxy for Its Injury

Once the plaintiff has provided a reasonable basis for damages, the plaintiff need only prove the amount of damages with as much certainty as the circumstances of the case permit. *Ricky Smith Pontiac, Inc. v. Subaru of New England, Inc.*, 14 Mass.App.Ct. 396, 422-423 (1982)(awarding lost profits for loss of additional sales even though plaintiff's sales increased over time) at 426-427; *see also Cahill v. TIG Premier Ins. Co.*, 47 F.Supp. 2d 87, 89 (D. Mass. 1999)(affirming jury award for lost profits because expert testimony provided "sufficient certainty" and stating that while lost profits cannot be recovered when they are "remote, speculative, hypothetical, and not within the realm of reasonable certainty," they need not be

"susceptible of calculation with mathematical exactness")(internal citations omitted).

As a small closely-held corporation, HipSaver does not have the accounting or bookkeeping facilities to enable it to quantify its actual damages. Accordingly, Posey seeks an accounting of Posey's Hipster profits for the period of injury, September 2004 through December 2005 as a proxy for its own damages. The damages provision under the Lanham Act expressly provides that plaintiff may recover damages in the form of lost profits and corrective advertising:

> When a violation shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled ... to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed at its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed.

15 U.S.C. § 1117(a).

Based on Posey's financial data, Dr. Epstein assesses Posey's profits of its Hipster sales at $756,828.[7] Expert Report of Dr. Epstein, September 26, 2006 at 6. It is Posey's burden to show if and to what extent HipSaver should not be awarded all of Posey's Hipster profits. *Tamko Roofing Products, Inc. v. Ideal Roofing Co., Ltd,* 282 F.3d 23, 36-37 (1st Cir. 2002)(stating that once infringement and direct competition are established, the burden of showing that not all profits should be awarded falls on the defendant).

In addition to money damages, HipSaver seeks injunctive relief, permanently enjoining Posey from bringing back the Garwood Advertisement for a third time or making any reference to the tests conducted by Garwood or reference to the results of the 2001 tests. Finally, HipSaver

---

[7] HipSaver wishes to correct an error in this Court's Memorandum and Order. This Court stated that HipSaver's expert calculated its lost profits damage claim with all profits earned by Posey. See Memorandum and Order at p. 30. But, HipSaver's damages expert's calculations were based only on Hipster sales, and not on all profits earned by Posey. Dr. Epstein calculates Posey's profits for Hipster sales as $756,828 for the period of October 2004 through December 2005.

requests that Posey publish corrective advertising to be posted on the Posey web-site and Posey catalog and to be made in writing to Posey sales staff and sales representatives and to every person and entity on Posey's customer and solicitation lists in an attempt to mitigate or reverse any lasting effects of the Garwood Advertisement.

### 7.    Posey's False Advertising was Willful

Under the Lanham Act, false advertising with a "malicious, fraudulent, deliberate, or willful" intent creates an "exceptional case." *See Tamko Roofing Prods., Inc. v. Ideal Roofing Co., Ltd.*, 282 F.3d 23, 31 (1st Cir. 2002) (affirming attorney's fees award based on an advisory jury finding that Lanham Act violation was willful). "A finding of bad faith or fraud is not a necessary precondition.  Willfulness short of bad faith or fraud will suffice when equitable considerations justify an award and the district court supportably finds the case exceptional." *Id.* at 32.  A finding of intent for a Lanham Act "exceptional case" is based on the "totality of the circumstances." *Tamko Roofing*, 282 F.3d at 33.  Whether a case is an "exceptional case" within the meaning of the Lanham Act determines whether a plaintiff may recover attorney's fees as part of its recovery.  15 U.S.C. § 1117(a).

HipSaver will present evidence that, given the history between these parties and Posey's awareness of the concern of false advertising, and given the facts of the case which show that the Garwood claims are literally false and that such false claims were made knowingly by Posey, this false advertising case should be considered exceptional and attorney fees and costs should be awarded to HipSaver.

### B.    HipSaver Will Prevail On Its Chapter 93A Claim (Count III)

HipSaver will prevail on its Chapter 93A claim because Posey's false advertising in violation of the Lanham Act also constitutes a violation of G.L. c. 93A. §§ 2, 11.  Chapter 93A

makes misleading or false advertising actionable by a competitor damaged by such advertising. *Skinder-Strauss Associates v. Massachusetts Continuing Legal Educ. Inc.,* 914 F.Supp. 665, 681-682 (D. Mass. 1995)(finding that using the word "official" where it did not have any endorsement supported a 93A claim because it "could reasonably be found to have caused a person to act differently from the way he otherwise would have acted"); 940 C.M.R. § 6.04(1) (1995) (providing that "[i]t is an unfair or deceptive act for a seller to make any material representations of fact in an advertisement if the seller knows or should know that the material representation is false or misleading or has the tendency or capacity to be misleading").  The Court has already determined that, "[b]ecause the distribution of these materials occurred in-state, HipSaver has produced sufficient evidence that the 'center of gravity' of the claim occurred Posey's false advertising occurred 'primarily and substantially' in of the Commonwealth."  Memorandum and Order [**D.N.** 228] at p. 34.

Under Ch. 93A, HipSaver seeks money damages as well as attorney fees and costs.

### C.    HipSaver Will Prevail On Its Breach Of Contract Claim (Count I)

To prevail on a breach of contract claim, a party must show (1) the existence of a valid and binding contract; (2) that the complaining party has complied with the contract and performed his own obligations under it; and (3) that the breach of contract caused damages. *Persson v. Scotia Prince Cruises, Ltd.,* 330 F.3d 28, 34 (1st Cir. 2003) *(citing 5* Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure §* 1235, at 268-70 (2d ed. 2002)).

### 1.    The Settlement Agreement Between the Parties is Valid and Binding

In 2004, HipSaver filed suit against Posey in the District Court of Massachusetts, challenging Posey's distribution of the so-called "UCLA White Paper." Following mediation with Mazzone, J., HipSaver and Posey entered into a settlement agreement. Both parties signed

the agreement and gave consideration for the agreement.

**2.    HipSaver Complied with the Contract and Performed all Obligations under the Contract**

The Court already determined that Posey failed to allege any facts that HipSaver has not complied with the terms of the settlement agreement.  Memorandum and Order [**D.N.** 228] at pp. 20 – 21 (dismissing Posey's breach of contract counterclaim).

**3.    Posey Breached the Notice Provision of the Settlement Agreement**

The notice provision of the Settlement Agreement required that, "[i]n the event of any further comparative testing of Posey and HipSaver products by either party, neither party shall make commercial advertising use of the results or analysis related to such testing without first giving the other party at least thirty (30) days advance written notice of the results or analysis." "Posey did not provide HipSaver with advanced notice of its intent to disseminate [the Garwood Advertisement]."  Memorandum and Order [**D.N.** 228] at p. 7.

The clear purpose of the notice provision in the Settlement Agreement was to give HipSaver an advanced opportunity to review comparative studies (shown previously to be flawed, faulty and, misrepresented) suddenly pulled out of thin air by Posey and asserted as fact. This works in tandem with provisions such as those of paragraphs 5-8 in the Settlement Agreement, requiring corrective advertising, and paragraph 4, preventing the future use of flawed studies.  These preventative measures were essential for a small company like HipSaver, which can survive only so many attacks of false advertising, no matter how much corrective advertising follows.

Posey offers a crabbed reading of the opening phrase of paragraph 8 which would allow it to scuttle the Agreement by recycling old, flawed tests or by offering new comparisons from

old testing.[8] Posey's argument would contradict and undercut the very purpose of the Settlement Agreement. An exception for a new advertising campaign grounded in "old testing" has no purpose and certainly was not contemplated or intended by the parties. Indeed, the passive preamble to paragraph 8 and its reference to *further* testing could not have been and never was intended as a crippling limitation to be applied only to *new* testing. Rather, the opening phrase should be construed, in light of its purpose, to mean: "In the event of any further application of comparative testing of Posey and HipSaver products by either party . . .". *Fay, Spofford & Thorndike, Inc. v. Massachusetts Port Authority*, 387 N.E.2d 206, 210 (Mass. App. Ct. 1979) (refusing to construe sentence in contract as limitation where a literal interpretation would undercut "the general purpose manifested by the entire contract, and by circumstances existing at the time of execution").

As is evident from the context of the Settlement Agreement (which settled a prior false advertising claim based on a different flawed study and which compelled corrective advertising) the point to paragraph 8 is notice of the further use of comparative tests in advertising, and Posey should not be allowed to evade its duties by finely parsing a provision with an otherwise obvious objective. Had Posey complied with the notice provision, this lawsuit might well have been avoided. Its failure to comply with the notice provision is material and a direct breach of the Settlement Agreement.

4.      **Posey's Breach of the Settlement Agreement Caused Damage to HipSaver**

Posey's failure to notify HipSaver of the Garwood Advertising deprived HipSaver of the

---

[8] When Posey developed its High Durability product, Posey supplemented the original 2001 Garwood Test with new testing of the High Durability product. Memorandum and Order [**D.N.** 228] at p. 7. The Court has already determined that this new Garwood testing falls within the plain meaning of the notice provision of the Settlement Agreement. Memorandum and Order [**D.N.** 228] at p. 20. Accordingly, to the extent that this new testing is referenced or relied upon in the Garwood advertisement, Posey breached the Settlement Agreement by distributing

opportunity to object to the advertisements before they were circulated to thousands of hip protector customers. Furthermore, without knowledge of the advertisements, HipSaver was not even aware of the false statements and was unable to counter the statements in the advertisements even after the advertisements were distributed. Accordingly, all harm to HipSaver caused by the false advertising was suffered as a result of Posey's breach of the notice provision of the Settlement Agreement.

## III.    PLAINTIFF'S PROPOSAL REGARDING VOIR DIRE

HipSaver defers to the Court's usual practices for conducting voir dire and recommends that the Court include the relevant questions filed with the Court on May 15, 2007.

## IV.    PLAINTIFF'S PROPOSAL REGARDING PRETRIAL JURY CHARGE

HipSaver defers to the Court's usual practices for determining the appropriate pretrial jury charge, if any.

## V.    PLAINTIFF'S PROPOSED JURY INSTRUCTIONS

The Plaintiff filed Proposed Jury Instructions with the Court on May 15, 2007.

## VI.    PLAINTIFF'S PROPOSED JURY VERDICT FORM

The Plaintiff will file a Proposed Jury Verdict Form with the Court at the close of evidence unless the Court requests it sooner.

## VII.    PLAINTIFF'S PROPOSAL REGARDING FINDINGS OF FACT AND CONCLUSIONS OF LAW

HipSaver proposes a conclusion of law that Posey's impact absorption advertising claims are material. The Court has already determined that "impact absorption is an 'inherent quality or characteristic' of hip protector garments -- reducing the impact from a fall is, after all, the point -- HipSaver has met its burden of producing evidence that the representations are material."

---

the Garwood Advertisement without giving the required notice to HipSaver.

Memorandum and Order [**D.N.** 228] at p. 28.  False or misleading statements relating to an "inherent quality or characteristic" of the product are material.  *Cashmere,* 284 F.3d at 311-312. Specifically, the Court has determined that the following claims related to impact absorption and are material: (1) "An independent laboratory study was conducted to determine the most effective impact absorbing material," and (2) "In an independent laboratory test designed to simulate a fall causing direct impact to the greater trochanter, the Posey Hipster III reduced the impact force below 90%, the best results of any hip protector available."  Memorandum and Order [**D.N.** 228] at pp. 27-28.

Posey's remaining claims are also material as a matter of law because they also relate to hip protector impact absorption, and are based on an impact absorption test:

- **"A test was created that would simulate a fall causing direct impact to the greater trochanter."**
- "Posey Hipsters **Proven Effective in Laboratory Tests"**
- "Posey Hipsters **Help Protect Against Injury from Falls"**
- "Posey Hipster … **showed excellent impact energy absorption**"
- "Posey engaged Garwood laboratories to **conduct testing to select a comfortable and effective impact absorbing material**"

Because these claims relate to the inherent hip protector quality of impact absorption, the Court should find them material as a matter of law.

HipSaver requests a finding of fact that the Garwood advertisements were distributed in interstate commerce.  Posey concedes that is placed the Garwood Advertisement in interstate commerce.  Posey's Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment [D.N. 182] at p. 11; Memorandum and Order by the Court, May 25, 207 at 8.

HipSaver also requests a finding of fact that the Posey and HipSaver are direct competitors. Memorandum and Order [**D.N.** 228] at 3.

Respectfully submitted
The HipSaver Company, Inc.
By its Attorneys,


/s/  Courtney M. Quish
Lee Carl Bromberg, BBO No.:  058480
Edward J. Dailey, BBO No.:  112220
Courtney M. Quish, BBO No.:  662288
BROMBERG SUNSTEIN, LLP
125 Summer Street - 11th floor
Boston, Massachusetts 02110-1618
617.443.9292
617.443.0004  Fax
cquish@bromsun.com
May 25, 2007

## <u>CERTIFICATE OF SERVICE</u>

I certify that this document has been filed through the Electronic Case Filing System of the United States District Court for the District of Massachusetts and will be served electronically by the court to the Registered Participants identified in the Notice of Electronic filing.


/s/  Courtney M. Quish

02820/00502  673507.3

33