UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE HIPSAVER COMPANY, INC., | ) Civil Action No. 05-10917 PBS |
| Plaintiff, | ) |
| v. | ) ORAL HEARING REQUESTED |
| J.T. POSEY COMPANY, | ) |
| Defendant. | ) |
| AND RELATED COUNTERCLAIM. | ) |

**MEMORANDUM IN SUPPORT OF EMERGENCY MOTION
OF J.T. POSEY COMPANY, INC. FOR
SANCTIONS FOR FAILURE TO PRODUCE**

1. **FACTS**

On January 8, 2007, in opposition to Posey's motion for summary judgment, HipSaver's president, Edward Goodwin, swore under penalty of perjury that HipSaver's sales were flat in 2006. However, in its May 24, 2007 proffer, HipSaver contended that its sales increased by nearly 20% in 2006. HipSaver's contention regarding its increased sales was echoed in the so-called "supplemental" expert report of Dr. Roy J. Epstein ("Epstein"), which has now been withdrawn.

In order to ameliorate the prejudice to Posey of HipSaver's late proffer and of the late Epstein report, the Court ordered HipSaver to produce its 2004 through 2006 invoices to Posey

within 24 hours. HipSaver agreed to produce them on a CD. *See* Exhibit "A" attached hereto, at 15:2-16:16 (excerpt of transcript of 05/29/07 hearing).

On May 31, 2007, at approximately 1:00 p.m., HipSaver produced summaries purportedly derived from its invoices for 2006 and the last three quarters of 2005. When counsel for Posey inquired as to why HipSaver had failed to produce its invoices, HipSaver's counsel, Ms. Quish, responded that HipSaver did not maintain invoices. When pressed by counsel for Posey, Ms. Quish further stated that she was unsure whether HipSaver did not maintain invoices at all or destroyed them after customers paid for merchandise.[1]

In sum, in response to Posey's motion for summary judgment, HipSaver has taken two diametrically opposed positions regarding its 2006 sales. In order to determine which of HipSaver's positions is correct (or, indeed, if either of them is correct), Posey needs access to HipSaver's underlying invoices. At this point, the invoices are central to a pivotal issue in the case, which is whether HipSaver suffered any injury and, if so, whether that injury was caused by Posey's accused advertising.

Posey's experts have examined two separate databases that purport to summarize HipSaver's alleged 2006 sales. The first is a Filemaker Pro database. The second is an Excel spreadsheet. Both of these documents allegedly summarize the information in HipSaver's invoices. However, both of them contain inconsistencies that raise questions about their accuracy. *See* Declaration of Philip Green, CPA, at ¶ 3 (attached hereto as Exhibit "B").

To assess the accuracy of HipSaver's sales numbers, Posey needs access to HipSaver's actual paper invoices which companies such as HipSaver typically keep. *See* Green Decl., at ¶¶ 4. And unless Posey receives them, it will be prejudiced in its efforts to defend itself. Among

---

[1] HipSaver's lead counsel subsequently wrote to counsel for Posey and stated that HipSaver did not maintain paper invoices.

other things, Posey will be hamstrung in its efforts to determine whether either of HipSaver's databases was modified to reflect higher sales numbers after the invoices were sent out.[2]

HipSaver obviously sends paper invoices to its customers so that they will know how much to pay HipSaver and so that they will have a paper record of their purchases. Moreover, HipSaver has known since it filed suit that its paper sales records were relevant to its claims in this case and were responsive to Posey's requests for production which asked HipSaver to, among other things, produce all documents concerning its contentions that it "has been damaged by Posey's advertising", as stated in its complaint. *See* Exhibit "C". Because this lawsuit began over two years ago, most of the invoices in question were generated during the time this action was pending. Thus, if in fact HipSaver presently has no paper records, it has absolutely no excuse for failing to preserve them.

## 2. ARGUMENT

Courts have broad discretion in to impose a variety of sanctions against a party that fails to produce evidence in violation of the discovery rules. A court's exercise of this discretion will not be reversed absent a clear abuse of discretion. *Marrocco v. General Motors Corp.*, 966 F.2d 220, 223 (7th Cir. 1992). Courts have significant latitude in deciding which discovery sanctions are appropriate. *Insurance Corp. of Ireland v. Compagnie Des Bauxites De Guinee*, 456 U.S. 694, 707 (1982).

Here, HipSaver failed to comply with the Court's order to produce its 2004-2006 invoices, an order that it agreed to comply with. See Exhibit "A". Moreover, it also failed to maintain and produce its invoices, which constitutes spoliation of evidence. Sanctions are

---

[2] Given HipSaver's modest sales, it would only take a few small adjustments in its database numbers to significantly and artificially inflate or deflate its growth rate.

appropriate for both of these actions. Fed. R. Civ. Proc. 37(b)(2) (party who fails to obey order to provide discovery is subject to sanctions).

Factors the courts consider in deciding whether to impose sanctions include: (1) whether the defendant was prejudiced as a result of the offending party's conduct; (2) whether the prejudice can be cured; (3) the practical importance of the evidence; (4) whether the offending party acted in good faith or bad faith; and (5) the potential for abuse if the evidence is not excluded. *Headley v. Chrysler Motor Corp.*, 141 F.R.D. 362, 365 (D Mass. 1991).

In cases involving spoliation of evidence, courts generally agree that the two most important factors in assessing whether to impose sanctions and, if so, what type, are (i) the culpability of the offender, or the alleged mental state that gave rise to the destruction of evidence, and (i) the prejudice or harm that resulted form the offender's actions. *McLaughlin v. Denharco, Inc.*, 129 F.Supp.2d 32 (D. Me. 2001) (noting conscious wrongdoing and prejudice are two key factors in spoliation analysis).

As far as HipSaver's mental state is concerned, HipSaver is the plaintiff. It cannot claim to have been ignorant about the fact that its sales invoices were relevant to its claim for damages. Insofar as it knew what it was doing when it failed to maintain its invoices, its conduct was intentional. *See Headley v. Chrysler Motor Corp.*, 141 F.R.D. at 364 ("intentional" means that evidence was not maintained despite knowledge that it should be retained for evidentiary purposes). *See also Trull v. Volkswagen of America, Inc.*, 187 F.3d 88 (1st Cir. 1999) (emphasizing that bad faith is not essential to sanction spoliation of evidence).

As far as prejudice is concerned, if as its counsel contends, HipSaver has not maintained copies of its invoices, they are gone. Therefore, it is not possible to determine precisely the degree of prejudice to Posey. *See Alexander v. National Farmers Organization*, 687 F.2d 1173,

1205 (8th Cir.1982) ("Obviously, the relevance of and resulting prejudice from destruction of documents cannot be clearly ascertained because the documents no longer exist."). What is known, however, is that HipSaver has essentially deprived Posey of the opportunity of comparing HipSaver's databases to the underlying invoices, as a result of which it will be completely impossible for Posey to determine whether HipSaver's two databases have been altered and, if so, to what extent. And the prejudice cannot be cured.

HipSaver has already been sanctioned twice for discovery-related conduct in this case. Thus, the Court should sanction HipSaver for its latest conduct by imposing the harshest sanction, i.e., dismissal of its complaint. Courts in numerous cases have struck a plaintiff's complaint for failing to provide court-ordered discovery. *See, e.g., Allstate Inc. Co. v. Sunbeam*, 865 F. Supp. 1267, 1279 ((N.D. Ill. 1994) (dismissing complaint because of extreme prejudice to defendant); *Computer Associates Int'l v. American Fundware*, 133 F.R.D. 166 (D. Colo. 1990) (answer stricken and default entered; spoliation of evidence "cannot be countenanced in a justice system whose goal is to find the truth through honest and orderly production of evidence under established discovery rules").

In the event the Court feels that dismissal is too drastic a remedy, then Posey requests that the Court impose an issue sanction against HipSaver precluding it from offering any evidence including expert testimony that reflects or purports to reflect the content of HipSaver's 2004-2006 invoices, including its sales for the 2004-2006 period. *See, e.g., Trull v. Volkswagen of America, Inc.*, 187 F.3d 88 (1st Cir. 1999) (upholding exclusion of post-accident of vehicle because it was discarded by insurance company and unavailable for inspection); *Uniguard Sec. Ins. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363 (9th Cir. 1992) (where party destroyed evidence it knew or should have known was relevant to litigation, trial court erred in declining to

exclude evidence); *Headley v. Chrysler Motor Corp.*, 141 F.R.D. at 365-67 (party precluded from presenting expert evidence on issue because it failed to preserve vehicle that it knew should be retained for evidentiary purposes).

### 3. CONCLUSION

For the foregoing reasons, Posey's motion for sanctions should be granted and the Court should dismiss HipSaver's complaint. In the alternative, the Court should preclude HipSaver from offering at trial any evidence that purports to reflect what is contained in its 2004-2006 invoices, including evidence of its 2004-2006 sales.

Dated: May 31, 2007

J.T. POSEY COMPANY

By its attorneys,

/s/ Douglas H. Morseburg
Jeffrey G. Sheldon (CA Bar No. 67516)
Douglas H. Morseburg
    (CA Bar No. 126205)
SHELDON MAK ROSE & ANDERSON
100 E. Corson Street, 3d Floor
Pasadena, CA 91103-3842
626.796.4000

Anthony J. Fitzpatrick (BBO # 564324)
DUANE MORRIS LLP
470 Atlantic Avenue, Suite 500
Boston, MA 02210
857.488.4200

### CERTIFICATE OF SERVICE

I certify that this document has been filed through the Electronic Case Filing System of the United States District Court for the District of Massachusetts and will be served electronically by the court to the Registered Participants identified in the Notice of Electronic filing.

May 31, 2007

/s/ Donald K. Piper
Donald K. Piper

**EXHIBIT "A"**

```
                                                                    1

              IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF MASSACHUSETTS


THE HIPSAVER COMPANY, INC.,   )
                              )
              Plaintiff       )
                              )
        -VS-                  ) CA No. 05-10917-PBS
                              ) Pages 1 - 72
J.T. POSEY COMPANY,           )
                              )
              Defendant       )



                    FINAL PRETRIAL CONFERENCE

             BEFORE THE HONORABLE PATTI B. SARIS
                  UNITED STATES DISTRICT JUDGE



A P P E A R A N C E S:

    EDWARD J. DAILEY, ESQ. and COURTNEY M. QUISH, ESQ.,
Bromberg & Sunstein, 125 Summer Street, Boston,
Massachusetts, 02110-1618, for the Plaintiff.

    ANTHONY J. FITZPATRICK, ESQ., Duane Morris,
470 Atlantic Avenue, Suite 500, Boston, Massachusetts, 02210,
for the Defendant.

    JEFFREY G. SHELDON, ESQ. and DOUGLAS H. MORSEBURG, ESQ.,
Sheldon Mak Rose & Anderson, P.C., 100 East Corson Street,
Third Floor, Pasadena, California, 91101, for the Defendant.

                         United States District Court
                         1 Courthouse Way, Courtroom 19
                         Boston, Massachusetts
                         May 29, 2007, 10:15 a.m.


                    LEE A. MARZILLI
                 OFFICIAL COURT REPORTER
              United States District Court
              1 Courthouse Way, Room 3205
                   Boston, MA  02210
                    (617)345-6787
```

HipSaver V. Posey, 5_29_07

15

1   which you left --
2        THE COURT:  I haven't read your motion yet, but I
3   think, at the very least, you might want to take his
4   deposition.
5        MR. SHELDON:  That's not even the beginning, your
6   Honor.  If you're going to allow it in --
7        THE COURT:  I don't know.  I don't know, I haven't
8   even read it, okay?  It literally was handed to me as I was
9   walking down the stairs.
10       MR. SHELDON:  I understand, your Honor.
11       THE COURT:  I'm not faulting you.  I'll read it.
12       MR. SHELDON:  Well, let me put it this way:  If
13  that theory is going to go forward --
14       THE COURT:  I would suggest you take the deposition
15  in the next few days.
16       MR. SHELDON:  The problem is, we don't have the
17  underlying documents that support this theory.  We've never
18  received them in discovery.  It's a bunch of invoices.  Our
19  experts have not seen them.  We have not had a chance to --
20       THE COURT:  Why haven't you given him the invoices?
21       MS. QUISH:  If he wants the invoices for all of --
22       THE COURT:  Of course he does.
23       MS. QUISH:  -- 2006, they never asked for them for
24  2005.
25       THE COURT:  I know, but we're in a new world, so

16

1   when can you give him all the invoices?
2           MR. SHELDON: Your Honor, we need to go back to
3   2002 because they're comparing trends from --
4           MS. QUISH: No, we aren't comparing from 2002. In
5   fact we're comparing from 2004, which is a comparison their
6   expert made first.
7           THE COURT: All right, so can you give them all the
8   invoices between 2004 and 2006?
9           MS. QUISH: I'm sure we can put them all on a CD if
10  they --
11          MR. DAILEY: Excuse me, your Honor. We've given
12  them all long since through 2005. We have the summary data
13  which we gave them for 2006. Without data, we can produce
14  the invoices in twenty-four hours.
15          THE COURT: All right, give them the invoices
16  within twenty-four hours.
17          MR. SHELDON: Okay, but we've got a significant
18  issue here now. All of a sudden their expert is saying, "Oh,
19  it had to be caused by stopping the Garwood ad." There's a
20  million other reasons possible.
21          MS. QUISH: He's misstating testimony.
22          THE COURT: Excuse me. Are you moving for a
23  continuance? Why don't you have your expert look at it.
24  You're the ones who are pressing me real hard for the June 4
25  date.

**EXHIBIT "B"**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE HIPSAVER COMPANY, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>J.T. POSEY COMPANY, INC., )<br>)<br>Defendant. ) | C.V. NO. 05-10917 PBS |

| |
|---|
| J.T. POSEY COMPANY, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>THE HIPSAVER COMPANY, INC., )<br>)<br>Defendant. ) |

### DECLARATION OF PHILIP GREEN, CPA

I, Philip Green, being duly sworn deposes and says:

1. I am a founding principal in the consulting firm of Hoffman Alvary & Company LLC. Prior to founding the firm in 1996, I was a senior manager in the accounting and consulting firm of Price Waterhouse LLP, now PriceWaterhouseCoopers. I am a Certified

Public Accountant, licensed by the State of New York. I also am a Certified Management Accountant ("CMA") and have earned the Accredited in Business Valuation ("ABV") designation from the American Institute of Certified Public Accountants.

2. As part of my work, I am regularly involved in analysis of damages in disputed matters including intellectual property infringements, false advertising claims and contract breaches among others. My work in these assignments often includes the review and analysis of the books of original entry, i.e. the general ledger system, maintained by parties to these matters as well as reconciliation of accounting information. These analyses are done to evaluate the reliability of the underlying accounting data for the purposes of determining damages.

3. In my supplemental report, I indicated I was unable to reconcile documents purportedly summarizing HipSaver's monthly HipSaver product sales with the invoice database it produced. In particular, I noted that the invoice database included obvious errors and significant data inconsistencies.

4. In my experience, when computerized records are found to be unreliable, accountants and auditors will as a matter of necessity rely on original paper records. In this case, since the invoice database does not accurately reflect HipSaver's HipSaver product sales on a monthly basis, the only way to verify the timing and amounts included in the summary monthly sales would be to review copies of the invoices sent to customers. In my experience as an accountant and auditor, businesses in the ordinary course of business issue invoices to customers. Further, in my experience, businesses the size of HipSaver retain copies of invoices sent to customers as a means of matching cash received to customer accounting records.

- 3 -

I swear under the pains and penalties of perjury that the foregoing is true and accurate to the best of my knowledge and belief.

May 31, 2007

_____
Philip Green CPA

**EXHIBIT "C"**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 05-10917 PBS

| | |
|---|---|
| The HipSaver Company, Inc., <br> Plaintiff, | ) <br> ) <br> ) |
| v | ) <br> ) |
| J.T. Posey Company, <br> Defendant | ) <br> ) <br> ) <br> ) |
| J.T. Posey Company, Inc., <br> Counterclaim Plaintiff | ) <br> ) <br> ) |
| v | ) <br> ) |
| The HipSaver Company, Inc. and <br> Edward L. Goodwin, <br> Counterclaim Defendants | ) <br> ) <br> ) <br> ) <br> ) |

## RESPONSE TO JT POSEY COMPANY'S
## FIRST REQUEST FOR PRODUCTION

Plaintiff, the HipSaver Company, Inc. responds to the Defendant's First Request for Production of Documents as follows:

1. <u>All documents identified in HipSaver's initial disclosure.</u>

**Response:** Subject to its right to withhold or redact any document on the basis of privilege, Plaintiff, the HipSaver Company, Inc. ("HipSaver") will produce all documents referred to in items 2 and 3 of HipSaver's Initial Disclosures.

1

conducted by Posey. Posey has blocked production of documents related to the comparative testing challenged in this case. Posey has and retains copies of all documents related to its flawed, deceptive, and fraudulent UCLA comparative testing which was challenged in the earlier lawsuit between the parties.

5. All documents concerning your contention that "Posey uses its marketplace dominance and deceptive advertising to drive smaller companies from the marketplace", as stated on pages 1-2 of the Complaint.

**Response:** HipSaver is aware of the experience of small vendors which, like itself, have been the subject of unfair and deceptive practices by Posey. With respect to its experience in dealing with Posey and subject to its right to withhold or redact any document on the basis of privilege, HipSaver will produce any responsive documents.

6. All documents concerning your contention that HipSaver "has been damaged by Posey's advertising", as stated on page 2 of the Complaint.

**Response:** Subject to its right to withhold or redact any document on the basis of privilege, HipSaver will produce responsive documents.

7. All documents concerning the allegations contained in paragraph 11 of the Complaint.

**Response:** Subject to its right to withhold or redact any document on the basis of privilege, HipSaver will produce responsive documents.

3