<div style="text-align:center">

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

</div>

_____
                                            )
THE HIPSAVER COMPANY, INC.,                 )
    Plaintiff / Counterclaim Defendant,   )
                                            )
v                                           )    Civil Action No. 05-10917 PBS
                                            )
J.T. POSEY COMPANY,                         )
    Defendant / Counterclaim Plaintiff.  )
                                            )
_____)

<div style="text-align:center">

**HIPSAVER'S OPPOSITION TO POSEY'S EMERGENCY MOTION FOR
SANCTIONS FOR FAILURE TO PRODUCE**

**PRELIMINARY STATEMENT**

</div>

HipSaver has produced <u>exactly</u> what HipSaver offered to produce at the May 29, 2007 hearing to resolve the parties' discovery dispute and which the Court adopted as its ruling.[1] Specifically, HipSaver produced what ALL parties had been referring to as HipSaver's 2006 "invoices," which are HipSaver's invoices in their native electronic format. During the entire course of this litigation, HipSaver has produced its invoices in this electronic format for the years prior to 2006 and up through September 13, 2006 without any objection by Posey.[2] Thus, it was only after HipSaver fully complied with the Court's May 29 ruling by producing all of the HipSaver 2006 invoices in electronic format that Posey put forward, for the first time, the contrived argument that what Posey

---

[1] The context for this dispute is that, in its May 15, 2007 Order, this Court instructed HipSaver to supplement its causation and injury evidence. Memorandum and Order, May 15, 2007 at 31 [D.N. 228]. In response, HipSaver served the Supplemental Expert Report of Dr. Roy Epstein and summary data relating to HipSaver sales for the final four months of 2005, and for all of 2006.

[2] Perhaps concerned that its misrepresentation of the obvious meaning of the Court's May 29 ruling is transparent, Posey also misrepresents as mere "summaries," the 2006 invoices in electronic format maintained in the ordinary course of business, which HipSaver produced to comply with the Court's Order and which Posey has always accepted as satisfying Posey's request for production of invoices. *See* Memorandum in Support of Motion for Sanctions [D.N. 283] at 2.

really wanted was the paper printouts of HipSaver's 2006 invoices. Nonetheless, and in the interest of avoiding further harassment and bickering by Posey, HipSaver spent the past weekend searching for, collecting and copying all of the paper printouts of the electronic version of the 2006 invoices, which it has in its possession, and will deliver them in hand to counsel for Posey on Monday (the first business day since the filing of Posey's motion for sanctions).

There is a small subset of the 2006 sales for which HipSaver does not maintain paper invoices. First, there are credit card purchases for which no paper invoices are ever generated. However, HipSaver likewise will produce carbon copies of the credit card slips. Second, since September 2006, HipSaver discontinued copying the paper invoice printouts in its normal course of business and instead solely relies on its electronic invoices. However, for these invoices, HipSaver has printed out paper copies solely for production in response to Posey's contrived request. All of the paper copies of credit card carbon copies and printouts of electronic invoices likewise will be delivered to counsel for Posey on Monday.

Notwithstanding HipSaver acceding to Posey's foregoing unreasonable demands, HipSaver maintains its position that Posey is wrong that it cannot evaluate HipSaver's sales data without access to paper counterparts to the electronic invoices. All of the data on the paper printouts are contained in the electronic invoices and thus Posey is not prejudiced by and has no need for paper printouts. Also, the electronic invoices are maintained in the ordinary course of business and qualify as business records under the Federal Rules of Evidence. In any case, to the extent that there is any truth to the accusation made by Posey (which Posey makes without pointing to a single shred of

evidence) that among the thousands of pages of HipSaver sales data already produced, Posey has found discrepancies), such discrepancies go to the weight of this evidence not to its admissibility.

Thus, Posey's misguided attempt to manufacture a basis to exclude important and material evidence fails both on the merits and because it is now moot.

## FACTS

### A.    The History of HipSaver's Production of Its Sales Data

In September 2006, HipSaver produced its U.S. sales data for the period of 1998 through September 13, 2006, which consisted of a FileMaker Pro database and an EXCEL database. The FileMaker Pro database contains all data concerning its invoiced sales including the electronic version of the invoices, which, in the ordinary course of business is generated by the database, and then printed and sent to customers. **Exhibit A,** Declaration of Helen Brogna in Support of HipSaver's Opposition to Posey's Motion for Sanctions [D.N. 282] at ¶¶ 3-5 ("Brogna Declaration"). Whenever an invoiced sale is made, HipSaver enters the order data into FileMaker Pro, creates an electronic invoice and then generates a paper invoice from the FileMaker Pro program, as stated above. *Id*. at ¶ 5. The invoice data is maintained by HipSaver in the FileMaker Pro database. *Id*. Accordingly, the FileMaker Pro database contains all HipSaver invoice data as well as the electronic version of all invoices, and is an accurate source of invoiced sales and invoice data, because HipSaver relies exclusively on this database to generate the paper invoice that is sent to the customer. *Id*. Paper printouts of the invoices are duplicative; they contain no additional information. *Id*.

In the ordinary course of business, after an invoice is issued, HipSaver then imports the invoice data from FileMaker Pro to an EXCEL file.[3] *Id.* at ¶ 7. Additional orders received and paid for by credit card over the phone are entered directly into the same EXCEL file; no invoice is generated for these credit card sales. *Id.* at ¶ 8. Therefore, the EXCEL file contains the entire HipSaver sales data for all sales made by HipSaver, whether invoiced or paid for by credit card. *Id.* at ¶ 9. This EXCEL file is the file relied upon by HipSaver for all bookkeeping and tax purposes. *Id.*

Thus, when HipSaver produced its sales information during discovery in September 2006 to Posey, HipSaver produced the FileMaker Pro and EXCEL databases. HipSaver did not produce paper invoices nor did Posey request production of paper invoices.

### B.     HipSaver's Production of Sales Data in Connection with its Supplemental Expert Report

Following summary judgment, in which this Court found that HipSaver's claims relating to false advertising that occurred before September 2004 were barred by a settlement agreement, this Court instructed HipSaver to make a supplemental proffer of "admissible evidence" to support its claim of causation and injury for damages arising since September 2004. Memorandum and Order, May 15, 2007 at 31 [D.N. 228].

In response to the Court's instruction, HipSaver served a supplemental report of its damages expert, Dr. Epstein, on May 24, 2007. This report (the "Supplemental Expert Report") evaluated summary data of HipSaver's U.S. sales from September 2005 through

---

[3] As noted in the accompanying Declaration of Helen Brogna, the FileMaker Pro database is intended to contain all HipSaver invoice data and, but for invoice records that could have been deleted by clerical error, the FileMaker Pro database contains all HipSaver invoice data. However, if any invoice data were lost from the FileMaker Pro database, this data would still appear in the EXCEL file because the FileMaker Pro data is imported into EXCEL.

4

the end of 2006 (the "Summary Data"). This Summary Data summarized the data set previously produced to Posey in September 2006 as well as additional data relating to the remaining sales in 2006 (September 14, 2006 through December 31, 2006). This Summary Data was produced to Posey on May 7, 2007, two weeks before HipSaver's Supplemental Expert Report was filed with the Court. Posey did not request underlying data or paper invoices for the Summary Data at that time.

At the May 29 Final Pretrial Conference, Posey complained for the first time that HipSaver had not produced the invoice data relating to the Summary Data relied on by Dr. Epstein in his Supplemental Expert Report and requested that HipSaver produce the relevant invoice data underlying the Summary Data. Counsel for HipSaver offered to produce the invoices on CD-ROM within 24 hours and the Court adopted this offer as its ruling to resolve the issue.

### C. HipSaver's Compliance With the Court's Ruling at the May 29, 2007 Hearing

At the hearing on May 29, counsel for HipSaver was referring to HipSaver's electronic invoices when they volunteered to produce HipSaver's 2006 invoices within 24 hours. *See* **Exhibit B**, Transcript of May 29, 2007 Final Pretrial Conference at 15-16. Indeed, counsel for HipSaver expressly disclosed that what they were referring to was electronic invoices when they stated that "we can put them all on a CD" and "we can produce them within twenty-four hours." *Id.* at 16. This electronic invoice format is exactly the electronic format in which HipSaver had previously produced to Posey all of HipSaver's prior electronic invoices, with absolutely no objection raised by Posey.[4] Thus, this electronic format was well understood by the parties as what HipSaver counsel

---

[4] HipSaver produced the electronic invoices to Posey in September of 2006. Posey never objected to the format of this production and never requested paper printouts of the invoices.

5

meant by their reference at the May 29 hearing to the invoices to be produced on compact disk.

Indeed, no one at the May 29 hearing, including Posey counsel, made any reference to, much less demand for, production of HipSaver <u>paper</u> printouts of HipSaver's electronic invoices. *See* **Exhibit B**, Transcript of May 29, 2007 Final Pretrial Conference at 15-16. It was only after HipSaver produced electronic invoices after the May 29 hearing[5] and Posey telephoned HipSaver counsel that HipSaver counsel became aware of Posey's new demand for paper invoices. In fact, at the time of the May 29 hearing, counsel for HipSaver did not even know that paper printouts of the electronic invoices existed, much less that they could be produced in twenty-four hours, as they knew could be done in relation to the electronic invoices. When Posey counsel called HipSaver counsel with their new demand for paper, HipSaver counsel stated their belief that no such paper printouts existed. It was only subsequently that, in the interest of leaving no stone unturned, HipSaver counsel learned that paper printouts to the electronic invoices do exist.

At that point (this weekend), HipSaver worked as expeditiously as possible to search for, collect and copy all of the paper counterparts to its invoices for the period September 2005 through September 2006. Copies of carbon credit card slips have also been located and copied. Thus, to avoid Posey's bickering, HipSaver will produce on Monday paper printouts for all invoices relating to invoiced sales made from September

---

[5] Due to unanticipated lengthy mediation sessions with Magistrate Judge Bowler in the 24 hours following the Final Pretrial Conference, HipSaver produced the invoices in two days.

2005 through December 2006,[6] and copies of carbon credit card slips from this same time period.

## ARGUMENT

**I.      HIPSAVER IS IN FULL COMPLIANCE WITH THE COURT'S RULING**

HipSaver fully complied with the Court's May 29 ruling adopting HipSaver's offer to produce HipSaver invoices. In response to the Court's ruling, HipSaver produced its invoices in electronic format, the same format in which it always had previously produced the invoices to Posey without any objection from Posey. HipSaver's production included both its electronic database of invoices, FileMaker Pro database, and its complete EXCEL database of all U.S. sales, which includes both invoiced sales as well as sales paid for by credit card so as to provide to Posey the complete record of all sales data. HipSaver produced this electronic data as it is maintained in the ordinary course of business. This production was complete and HipSaver fully complied with the Court's ruling.[7]

Posey's complaint that HipSaver did not comply with the Court's ruling by not producing paper invoices is a misrepresentation of the Court's ruling. None of the parties contemplated that the Court's ruling related to paper printouts of the invoices. Posey requested invoices; it never requested "paper." At the hearing, Counsel for HipSaver offered to produce invoices and the Court adopted as its ruling this offer to produce "all invoices"; neither HipSaver's counsel nor the Court specified "paper." *See* **Exhibit B**,

---

[6] As stated above, HipSaver only kept paper copies of its invoices until September 2006, at which point it decided to maintain the records only electronically. Accordingly, HipSaver will produce copies of all paper invoices maintained by HipSaver from September 2005 through September 2006. For the period after September 2006, HipSaver will generate invoices from its electronic database simply for this exercise.

[7] Posey's claim that only summaries of the invoice data were produced is wrong. HipSaver produced <u>all</u> invoices, as they are kept in the ordinary course of business. Posey now has in its possession all invoice data for 2004 through 2006.

7

Transcript of May 29, 2007 Final Pretrial Conference at 15-16. And, HipSaver offered to produce these invoices on CD-ROM, indicating its understanding that it would produce electronic invoices. *Id.* In fact, at the time that HipSaver counsel agreed to production, it did not even know that HipSaver maintained paper invoices. HipSaver's electronic production complies with the Court's ruling.

However, as stated above, to avoid further harassment by Posey, HipSaver will produce to Posey on Monday all paper printouts of invoices.

## II.   POSEY HAS NOT BEEN PREJUDICED

Posey's complaint of prejudice cannot be supported. The FileMaker Pro and EXCEL files produced to Posey contain all invoices and sales data as they are kept in the ordinary course of business, including all invoice data and the program used to generate paper invoices.

Posey complains that the paper invoices are necessary to resolve "inconsistencies" in the data. But, the electronic invoices contain the same information as the paper invoices; paper invoices would not resolve alleged "inconsistencies." To the extent that Posey complains that the invoice data in the FileMaker Pro and Excel databases "contain inconsistencies that raise questions about their accuracy," or to the extent that Posey simply has trouble understanding the sales data, such discrepancies go to the weight of this evidence, not to its admissibility. The maintenance of the files and the accuracy of the data are proper subjects of deposition testimony and cross examination; they are not a basis for dismissing the complaint or excluding evidence. HipSaver has already agreed to the deposition of HipSaver's principal and to pay all costs associated with the deposition.

8

With this opportunity for clarification and explanation, Posey's complaints of prejudice are unjustified.

Finally, even if Posey's complaint had merit (it does not), Posey's complaint is too late. HipSaver produced the majority of its invoice data in September 2006 in the same electronic form to which Posey now objects. At the time of production in September 2006, Posey never objected to the form of the data and never requested paper invoices. Posey's failure to object to this form of data in September 2006 forecloses its objection now. *JOM, Inc. v. Adell Plastics, Inc.*, 193 F.3d 47, 51-52 (1st Cir. 1999) (denying motion *in limine* where party's objection should have been raised during discovery and stating that, "[the requesting party] should have conferred in a timely manner with a view to obtaining *voluntary* disclosure" and noting that delaying in this objection was not fair to the producing party).

### III. HIPSAVER DID NOT SPOLIATE EVIDENCE

There is no spoliation and Posey's extreme accusations are contrived. "Spoliation is the intentional, negligent, or malicious destruction of relevant evidence." *Townsend v. American Insulated Panel Co., Inc.*, 174 F.R.D. 1, 4 (D.Mass. 1997). HipSaver did not destroy any evidence. HipSaver produced all of its sales information as it is maintained in the ordinary course of business. Given that HipSaver produced all sales data and given that HipSaver will produce printouts of this data, there is no basis for spoliation.[8]

---

[8] Moreover, HipSaver's decision to stop printing paper copies of invoices does not constitute spoliation. The sales data is maintained in the electronic database; HipSaver is under no obligation to print out invoices. HipSaver is under no obligation to record its sales in every possible form; such an imposition on businesses would be impractical and extraordinarily burdensome. Posey's claims of spoliation are specious.

## CONCLUSION

Accordingly, HipSaver requests that this Court deny Posey's motion for sanctions. Posey's claims of prejudice and spoliation are unsupported. HipSaver produced all relevant invoice data supporting its Supplemental Expert Report. Furthermore, although duplicative, HipSaver is in the process of producing to Posey paper invoice printouts.

Dated: June 3, 2007

                    Respectfully submitted

                    The HipSaver Company, Inc.
                    By its Attorneys,

                    /s/ Courtney M. Quish
                    Lee Carl Bromberg, BBO No.: 058480
                    Edward J. Dailey, BBO No.: 112220
                    Courtney M. Quish, BBO No.: 662288
                    BROMBERG SUNSTEIN, LLP
                    125 Summer Street - 11th floor
                    Boston, Massachusetts 02110-1618
                    617.443.9292
                    617.443.0004 Fax
                    cquish@bromsun.com

## CERTIFICATE OF SERVICE

I certify that this document has been filed through the Electronic Case Filing System of the United States District Court for the District of Massachusetts and will be served electronically by the court to the Registered Participants identified in the Notice of Electronic filing.

                    /s/ Courtney M. Quish
                    Courtney M. Quish

02820/00502 678702.4

# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE HIPSAVER COMPANY, INC.,<br>　　　Plaintiff / Counterclaim Defendant,<br><br>v<br><br>J.T. POSEY COMPANY,<br>　　　Defendant / Counterclaim Plaintiff. | Civil Action No. 05-10917 PBS |

### DECLARATION OF HELEN BROGNA IN SUPPORT OF HIPSAVER'S OPPOSITION TO POSEY'S EMERGENCY MOTION FOR SANCTIONS FOR FAILURE TO PRODUCE

I, Helen Brogna, make this Declaration on the basis of personal knowledge and under penalty of perjury.

1. I am co-owner and Executive Vice President of the HipSaver Company. I am responsible for the record keeping of the HipSaver Company.

2. In this Declaration, I describe HipSaver's activities, which HipSaver has conducted in the ordinary course of its business since before 2002, to charge for and record its sales of its HipSaver products. These activities are all the regular practice of HipSaver.

3. Shortly after the order is shipped, HipSaver charges for the order by either issuing an invoice or charging the customer's credit card.

4. HipSaver records and tracks all of its sales with two databases: FileMaker Pro and Excel.

5. We use a FileMaker Pro program to generate all invoices. When we get a new order, we contemporaneously input the data concerning the order into FileMaker Pro. We then use this program to generate an invoice to be sent to the customer. If the customer is a new customer, we create a new record and enter the customer's mailing information and billing information into the system and then add the order. If the customer is an existing customer, we simply retrieve the customer's data already stored in FileMaker Pro and enter the new order. We first create an electronic invoice, then print a paper version directly from the FileMaker Pro system, and then send the paper version of the invoice to the client. The FileMaker Pro database is intended to contain all HipSaver invoice data. Accordingly, but for invoice records that could have been deleted by clerical error, the FileMaker Pro database contains all HipSaver invoice data.

6. Until September 2006, we would make a photocopy of the invoice for our records before the invoice was sent to the customer. Beginning in September 2006 after generating an invoice we print a paper version to send to the client and import an electronic copy into a separate FileMaker Pro database dedicated for invoices only. We no longer make photocopies of paper invoices.

7. The invoice data contained on FileMaker Pro is recorded/imported to an EXCEL file.

8. When we get a new order to be paid by credit card, we complete a credit card slip, electronically submit the transaction to a credit card processing company, and keep a copy of the credit card slip for our records. We record and track credit card charges by manually entering the charges into the same EXCEL database described on

Paragraph 7. We do not generate an invoice for credit charge purchases. In September 2006, we also began entering the credit card information into File Maker Pro.

9.  Therefore, the EXCEL file contains the entire HipSaver sales data for all sales made by HipSaver, whether invoiced or paid by credit card. This EXCEL file is the file relied upon by HipSaver for all bookkeeping and tax purposes.

Signed under the pains and penalties of perjury on this 3 day of June, 2007.

_/s/ Helen Brogna_
Helen Brogna

02820/00502 678350.1

# EXHIBIT B

```
00001
 1      IN THE UNITED STATES DISTRICT COURT
        FOR THE DISTRICT OF MASSACHUSETTS
 2

 3  THE HIPSAVER COMPANY, INC., )
                                )
 4         Plaintiff    )
                                )
 5      -VS-        ) CA No. 05-10917-PBS
                    ) Pages 1 - 72
 6  J.T. POSEY COMPANY,        )
                                )
 7         Defendant   )

 8

 9          FINAL PRETRIAL CONFERENCE

10      BEFORE THE HONORABLE PATTI B. SARIS
            UNITED STATES DISTRICT JUDGE
11

12
   A P P E A R A N C E S:
13
       EDWARD J. DAILEY, ESQ. and COURTNEY M. QUISH, ESQ.,
14  Bromberg & Sunstein, 125 Summer Street, Boston,
    Massachusetts, 02110-1618, for the Plaintiff.
15
       ANTHONY J. FITZPATRICK, ESQ., Duane Morris,
16  470 Atlantic Avenue, Suite 500, Boston, Massachusetts, 02210,
    for the Defendant.
17
       JEFFREY G. SHELDON, ESQ. and DOUGLAS H. MORSEBURG, ESQ.,
18  Sheldon Mak Rose & Anderson, P.C., 100 East Corson Street,
    Third Floor, Pasadena, California, 91101, for the Defendant.
19
                United States District Court
20               1 Courthouse Way, Courtroom 19
                Boston, Massachusetts
21               May 29, 2007, 10:15 a.m.

22
                LEE A. MARZILLI
23              OFFICIAL COURT REPORTER
               United States District Court
24              1 Courthouse Way, Room 3205
                Boston, MA  02210
25                (617)345-6787
```

Final Pretrial hearing May 29, 2007                Page 1

00015
1  which you left --

2        THE COURT:  I haven't read your motion yet, but I

3  think, at the very least, you might want to take his

4  deposition.

5        MR. SHELDON:  That's not even the beginning, your

6  Honor.  If you're going to allow it in --

7        THE COURT:  I don't know.  I don't know, I haven't

8  even read it, okay?  It literally was handed to me as I was

9  walking down the stairs.

10       MR. SHELDON:  I understand, your Honor.

11       THE COURT:  I'm not faulting you.  I'll read it.

12       MR. SHELDON:  Well, let me put it this way:  If

13  that theory is going to go forward --

14       THE COURT:  I would suggest you take the deposition

15  in the next few days.

16       MR. SHELDON:  The problem is, we don't have the

17  underlying documents that support this theory.  We've never

18  received them in discovery.  It's a bunch of invoices.  Our

19  experts have not seen them.  We have not had a chance to --

20       THE COURT:  Why haven't you given him the invoices?

21       MS. QUISH:  If he wants the invoices for all of --

22       THE COURT:  Of course he does.

23       MS. QUISH:  -- 2006, they never asked for them for

24  2005.

25       THE COURT:  I know, but we're in a new world, so

00016

1  when can you give him all the invoices?

2     MR. SHELDON: Your Honor, we need to go back to
3  2002 because they're comparing trends from --

4     MS. QUISH: No, we aren't comparing from 2002. In
5  fact we're comparing from 2004, which is a comparison their
6  expert made first.

7     THE COURT: All right, so can you give them all the
8  invoices between 2004 and 2006?

9     MS. QUISH: I'm sure we can put them all on a CD if
10 they --

11    MR. DAILEY: Excuse me, your Honor. We've given
12 them all long since through 2005. We have the summary data
13 which we gave them for 2006. Without data, we can produce
14 the invoices in twenty-four hours.

15    THE COURT: All right, give them the invoices
16 within twenty-four hours.

17    MR. SHELDON: Okay, but we've got a significant
18 issue here now. All of a sudden their expert is saying, "Oh,
19 it had to be caused by stopping the Garwood ad." There's a
20 million other reasons possible.

21    MS. QUISH: He's misstating testimony.

22    THE COURT: Excuse me. Are you moving for a
23 continuance? Why don't you have your expert look at it.
24 You're the ones who are pressing me real hard for the June 4
25 date.

**Final Pretrial hearing May 29, 2007**          **Page 16**

```
00073
 1              CERTIFICATE
 2
 3  UNITED STATES DISTRICT COURT )
 4  DISTRICT OF MASSACHUSETTS    ) ss.
 5  CITY OF BOSTON               )
 6
 7
 8         I, Lee A. Marzilli, Official Federal Court
 9  Reporter, do hereby certify that the foregoing transcript,
10  Pages 1 through 72 inclusive, was recorded by me
11  stenographically at the time and place aforesaid in Civil
12  Action No. 05-10917-PBS, The HipSaver Company, Inc. Vs. J.T.
13  Posey Company, and thereafter by me reduced to typewriting
14  and is a true and accurate record of the proceedings.
15         In witness whereof I have hereunto set my hand this
16  31st day of May, 2007.
17
18
19
20
21
22         _____
           LEE A. MARZILLI, CRR
23            OFFICIAL FEDERAL COURT REPORTER
24
25
```