UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE HIPSAVER COMPANY, INC., | Civil Action No. 05-10917 PBS |
| Plaintiff, | |
| v. | ORAL HEARING REQUESTED |
| J.T. POSEY COMPANY, | |
| Defendant. | |

**MEMORANDUM IN SUPPORT OF EMERGENCY MOTION OF
J.T. POSEY COMPANY, INC. FOR SANCTIONS FOR THE
<u>UNTIMELY PRODUCTION OF ALTERED EVIDENCE</u>**

**I.   FACTS**

Prior to the pre-trial disclosure deadline of May 1, 2007, HipSaver produced a FileMaker database ("Original Database") of HipSaver sales up through September 13, 2006 and Excel spreadsheets of HipSaver sales up through 2005. On January 8, 2007, in opposition to Posey's motion for summary judgment, HipSaver's president, Edward Goodwin, swore under penalty of perjury that HipSaver's sales were flat in 2006. However, in its May 24, 2007 proffer, HipSaver contended that its sales increased by a significant amount in 2006. HipSaver's contention regarding its increased sales was echoed in the so-called "supplemental" expert report of Dr. Roy J. Epstein ("Epstein") which HipSaver now seeks to withdraw.

To ameliorate the prejudice to Posey from HipSaver's late proffer and from the late Epstein report, on May 29, 2007, the Court ordered HipSaver to produce its 2004 through 2006 invoices to Posey within 24 hours. HipSaver agreed to produce them on a CD. *See* Exhibit "A" attached hereto, at 15:2-16:16 (excerpt of transcript of 05/29/07 hearing).

Rather than produce the invoices underlying the Original Database as ordered by the Court, on May 31, 2007, four days before the original trial date, HipSaver produced a new FileMaker database ("2007 Database"), and for the first time produced a 2006 Excel spreadsheet ("2006 Excel Spreadsheet"). Clearly these documents were produced after all discovery and disclosure cut-off dates. The Court has already precluded HipSaver from offering evidence of sales after September 13, 2006. *See* Exhibit "B" attached hereto, at 6:22-7:1 (excerpt of transcript of 06/04/07 hearing).

Posey's experts have examined the 2007 Database that purports to summarize HipSaver's alleged 2006 sales. The 2007 Database differs substantially from the Original Database. *See* Declaration of Philip Green, CPA, at ¶4 (attached hereto as Exhibit "C"). For example, the number of invoice records over the same time period is different; the dollar values for some invoices have been changed; several fields in the Original Database have been removed in the 2007 Database including fields with product descriptions; and the total sales reported in the Original Database and the 2007 Database are different. *Id.* at ¶4. These facts suggest that data in the 2007 Database was manipulated or fabricated.

Additionally, Posey's experts have examined the 2006 Excel Spreadsheet that purports to summarize HipSaver's alleged 2006 sales and found that the information is not consistent with the data in the Original Database. *Id.* at ¶5.

## II. ARGUMENT

Courts have broad discretion in whether to impose a variety of sanctions against a party that fails to produce evidence in violation of the discovery rules. A district court's decision on sanctions will not be reversed absent abuse of discretion. *Sheppard v. River Valley Fitness One, L.P.,* 428 F.3d 1, 6 (1st Cir. 2005), *citing United States v. Soto-Beniques,* 356 F.3d 1, 20 (1st Cir.

2003), *cert. denied,* 124 S. Ct. 2432 (2004) (review of a district court's use or non-use of discovery sanctions is only for abuse of discretion).  Courts have significant latitude in deciding which discovery sanctions are appropriate.  *Insurance Corp. of Ireland v. Compagnie Des Bauxites De Guinee*, 456 U.S. 694, 707 (1982).

### 1. The Untimely 2007 Database And The 2006 Excel Spreadsheet Should Be Precluded

Rule 37(c)(1) sets out the consequences to a party who fails to disclose information required by Rules 26(a) or 26(e)(1), or who for fails to amend a prior incorrect or incomplete discovery response, as required by Rule 26(e)(2).  The rule provides, in plain and unambiguous language, that such a party "is not . . . permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed."  Moreover, the court "may impose other appropriate sanctions" including dismissal pursuant to Rule 37(b)(2)(C).

Here, HipSaver failed to comply with its obligations to supplement the financial data underlying its damages claims prior to the deadline for pre-trial disclosures.  The 2007 Database and the 2006 Excel Spreadsheet go far beyond the scope of the Original Database and the Excel spreadsheets for prior years produced prior to the deadline for pre-trial disclosures.  Both the 2007 Database and the 2006 Excel Spreadsheets were not produced during discovery and importantly were not part of the proffer authorized by the Court.

Factors the courts consider in deciding whether to impose sanctions include: (1) whether the defendant was prejudiced as a result of the offending party's conduct; (2) whether the prejudice can be cured; (3) the practical importance of the evidence; (4) whether the offending party acted in good faith or bad faith; and (5) the potential for abuse if the evidence is not excluded.  *Headley v. Chrysler Motor Corp.*, 141 F.R.D. 362, 365 (D. Mass. 1991).

The 2007 Database and the 2006 Excel Spreadsheet are extremely prejudicial to Posey. It is very difficult, during the week before trial, to reconcile the 2007 Database and the 2006 Excel Spreadsheet with the Original Database, previously produced Excel spreadsheets, and other documents produced by HipSaver. Additionally, the new database is missing fields from the Original Database, such as the customer name, address and zip code fields, thereby making reconciliation more difficult. *See* Declaration of Philip Green, CPA, at ¶4. Given the proximity to trial, the time consuming and expensive discovery already conducted, the expert reports already prepared in view of the Original Database, and the longstanding scheduling of witnesses for a June 2007 trial, the prejudice to Posey cannot be cured.

In delaying up until the last moment and offering substantially altered databases instead of the promised invoices, HipSaver acted in bad faith. The Court has already precluded evidence pertaining to sales after September 13, 2006. However, the remainder of the 2007 Database and the 2006 Excel Spreadsheet are untimely and should be precluded for any purpose on that basis. *See* Fed.R.Civ.P. 37(c)(1); *Sacramona v. Bridgestone/Firestone, Inc.*, 106 F.3d 444 (1st Cir. 1997) (court precluded introduction of physical evidence that had been altered during an inspection by Plaintiff's expert).

### 2. HipSaver's Complaint Should Be Dismissed In View Of The Altered Database

The Court has the inherent power to sanction willful conduct such as the fabrication of evidence and can use that power to dismiss a lawsuit. *Premier Homes and Land Corporation v. Cheswell*, 240 F.Supp.2d 97, 99-100 (D. Mass. 2002) (court dismissed a complaint and awarded fees and costs to the defendant after finding that the plaintiff filed a fabricated document to support its claim); *see also Rockdale Management Co., Inc. v. Shawmut Bank, N.A.,* 518 Mass. 596, 597-599, 638 N.E.2d 29, 31-32 (1994) (dismissal warranted where plaintiff forged letter on

issue of damages, referenced it in his answers to interrogatories, and lied about its genuineness at his deposition); *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989) (fraud on the court warranting dismissal occurs where party "sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense."); *Pope v. Federal Express Corp.*, 974 F.2d 982, 984 (8th Cir. 1992).

The substantial differences between the 2007 Database and the Original Database, together with the late production, raise the inference that data has been manipulated or fabricated in an attempt to overcome Posey's Motion for Summary Judgment. Additionally, HipSaver has already been sanctioned three times for discovery-related conduct in this case. The Court should sanction HipSaver for its latest conduct by imposing the harshest sanction, i.e., dismissal of its complaint.

Courts frequently dismiss cases pursuant to Rule 37(b)(2) for the type of contumacious conduct employed by HipSaver. *Marx v. Kelly, Hart & Hallman*, 929 F.2d 8, 10-11 (1st Cir. 1991)(deliberate pattern of delay and disregard for court procedures warranted dismissal); *Serra-Lugo v. Consortium-Las Marias*, 271 F.3d 5, 6 (1st Cir. 2001). HipSaver's untimely production of an altered database is particularly egregious and warrants dismissal. *Premier Homes and Land Corporation v. Cheswell*, 240 F.Supp.2d 97, 99-100 (D. Mass. 2002).

Accordingly, the Court should dismiss HipSaver's complaint with prejudice. In the alternative, the Court should preclude HipSaver from offering at trial any evidence of sales beyond or inconsistent with the data in the Original Database and should preclude the 2006 Excel Spreadsheet.

### III. CONCLUSION

For the foregoing reasons, Posey respectfully requests that the Court grant its motion for sanctions.

| | |
|---|---|
| Dated: June 6, 2007 | J.T. POSEY COMPANY |
| | By its attorneys, |
| | /s/ Anthony J. Fitzpatrick<br>Anthony J. Fitzpatrick (BBO # 564324)<br>DUANE MORRIS LLP<br>470 Atlantic Avenue, Suite 500<br>Boston, MA 02210<br>857.488.4200 |
| | Jeffrey G. Sheldon *(Pro hac vice)*<br>Douglas H. Morseburg *(Pro hac vice)*<br>SHELDON MAK ROSE & ANDERSON<br>100 E. Corson Street, 3d Floor<br>Pasadena, CA 91103-3842<br>626.796.4000 |

### CERTIFICATE OF SERVICE

I certify that this document has been filed through the Electronic Case Filing System of the United States District Court for the District of Massachusetts and will be served electronically by the court to the Registered Participants identified in the Notice of Electronic filing.

| | |
|---|---|
| June 6, 2007 | /s/ Anthony J. Fitzpatrick<br>Anthony J. Fitzpatrick |

EXHIBIT A

Case 1:05-cv-10917-PBS    Document 297-2    Filed 06/06/2007    Page 1 of 4

```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF MASSACHUSETTS


THE HIPSAVER COMPANY, INC.,  )
                             )
            Plaintiff        )
                             )
       -VS-                  ) CA No. 05-10917-PBS
                             ) Pages 1 - 72
J.T. POSEY COMPANY,          )
                             )
            Defendant        )



                    FINAL PRETRIAL CONFERENCE

              BEFORE THE HONORABLE PATTI B. SARIS
                  UNITED STATES DISTRICT JUDGE



A P P E A R A N C E S:

     EDWARD J. DAILEY, ESQ. and COURTNEY M. QUISH, ESQ.,
Bromberg & Sunstein, 125 Summer Street, Boston,
Massachusetts, 02110-1618, for the Plaintiff.

     ANTHONY J. FITZPATRICK, ESQ., Duane Morris,
470 Atlantic Avenue, Suite 500, Boston, Massachusetts, 02210,
for the Defendant.

     JEFFREY G. SHELDON, ESQ. and DOUGLAS H. MORSEBURG, ESQ.,
Sheldon Mak Rose & Anderson, P.C., 100 East Corson Street,
Third Floor, Pasadena, California, 91101, for the Defendant.

                          United States District Court
                          1 Courthouse Way, Courtroom 19
                          Boston, Massachusetts
                          May 29, 2007, 10:15 a.m.


                 LEE A. MARZILLI
               OFFICIAL COURT REPORTER
             United States District Court
             1 Courthouse Way, Room 3205
                 Boston, MA  02210
                   (617)345-6787
```

2735c236-2e77-43cc-b5ad-8c0168c0a9d4

1   which you left --
2            THE COURT:  I haven't read your motion yet, but I
3   think, at the very least, you might want to take his
4   deposition.
5            MR. SHELDON:  That's not even the beginning, your
6   Honor.  If you're going to allow it in --
7            THE COURT:  I don't know.  I don't know, I haven't
8   even read it, okay?  It literally was handed to me as I was
9   walking down the stairs.
10           MR. SHELDON:  I understand, your Honor.
11           THE COURT:  I'm not faulting you.  I'll read it.
12           MR. SHELDON:  Well, let me put it this way:  If
13  that theory is going to go forward --
14           THE COURT:  I would suggest you take the deposition
15  in the next few days.
16           MR. SHELDON:  The problem is, we don't have the
17  underlying documents that support this theory.  We've never
18  received them in discovery.  It's a bunch of invoices.  Our
19  experts have not seen them.  We have not had a chance to --
20           THE COURT:  Why haven't you given him the invoices?
21           MS. QUISH:  If he wants the invoices for all of --
22           THE COURT:  Of course he does.
23           MS. QUISH:  -- 2006, they never asked for them for
24  2005.
25           THE COURT:  I know, but we're in a new world, so

1  when can you give him all the invoices?
2          MR. SHELDON:  Your Honor, we need to go back to
3  2002 because they're comparing trends from --
4          MS. QUISH:  No, we aren't comparing from 2002.  In
5  fact we're comparing from 2004, which is a comparison their
6  expert made first.
7          THE COURT:  All right, so can you give them all the
8  invoices between 2004 and 2006?
9          MS. QUISH:  I'm sure we can put them all on a CD if
10 they --
11         MR. DAILEY:  Excuse me, your Honor.  We've given
12 them all long since through 2005.  We have the summary data
13 which we gave them for 2006.  Without data, we can produce
14 the invoices in twenty-four hours.
15         THE COURT:  All right, give them the invoices
16 within twenty-four hours.
17         MR. SHELDON:  Okay, but we've got a significant
18 issue here now.  All of a sudden their expert is saying, "Oh,
19 it had to be caused by stopping the Garwood ad."  There's a
20 million other reasons possible.
21         MS. QUISH:  He's misstating testimony.
22         THE COURT:  Excuse me.  Are you moving for a
23 continuance?  Why don't you have your expert look at it.
24 You're the ones who are pressing me real hard for the June 4
25 date.

# EXHIBIT B

Case 1:05-cv-10917-PBS    Document 297-3    Filed 06/06/2007    Page 1 of 4

Page 1

```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF MASSACHUSETTS


THE HIPSAVER COMPANY, INC.,   )
                              )
            Plaintiff         )
                              )
      -VS-                    ) CA No. 05-10917-PBS
                              ) Pages 1 - 37
J.T. POSEY COMPANY,           )
                              )
            Defendant         )


                        MOTION HEARING

             BEFORE THE HONORABLE PATTI B. SARIS
                 UNITED STATES DISTRICT JUDGE
```

A P P E A R A N C E S:

    COURTNEY M. QUISH, ESQ. and ROBERT L. KANN, ESQ., Bromberg & Sunstein, 125 Summer Street, Boston, Massachusetts, 02110-1618, for the Plaintiff.

    ANTHONY J. FITZPATRICK, ESQ., Duane Morris, 470 Atlantic Avenue, Suite 500, Boston, Massachusetts, 02210, for the Defendant.

    (By Telephone) JEFFREY G. SHELDON, ESQ. and DOUGLAS H. MORSEBURG, ESQ., Sheldon Mak Rose & Anderson, P.C., 100 East Corson Street, Third Floor, Pasadena, California, 91101, for the Defendant.

```
                        United States District Court
                        1 Courthouse Way, Courtroom 19
                        Boston, Massachusetts
                        June 4, 2007, 12:10 p.m.

                     LEE A. MARZILLI
                  OFFICIAL COURT REPORTER
                United States District Court
                1 Courthouse Way, Room 3205
                    Boston, MA  02210
                      (617)345-6787
```

2922511f-b8ea-416c-a6cd-bedd4392d621

Page 6

1  the database, and out comes the paper invoice.  We gave them
2  the entire database --
3           THE COURT:  No, but did you give them the paper
4  invoice?
5           MS. QUISH:  We gave them the electronic version of
6  the paper invoice.
7           THE COURT:  Then can they just hit the button?
8           MS. QUISH:  Yes, they can, they can hit the "print"
9  button.
10          THE COURT:  Excuse me.  Can you just hit "print"
11 and get the invoice?
12          MR. SHELDON:  No, your Honor.  I don't even know if
13 you could if you had the right program, but we certainly
14 can't.  It's a database.  It's got columns, you know,
15 columns.  It's a spreadsheet, it looks like.  It's got, like,
16 twenty columns across and thousands down concerning invoices.
17          THE COURT:  A, I'd be reversed in about ten seconds
18 flat by the First Circuit, and, B, it's wrong to allow this
19 not even to be completed by today, even have the supplemental
20 report.
21          Now, that doesn't necessarily mean you win and I
22 throw the case out.  We're going to go back to where we
23 were.  We're going to say that nothing past September, 2006,
24 is going to be relevant because that's what you've got, to
25 September 2006.  We're not allowing any data past September,

1    2006.

2            Now, what is your theory of damages?

3            MS. QUISH:  The theory of damages keys on their

4    earlier expert report, and this is it.  We have numbers of

5    damages from sales during the advertising period.  What we

6    want to do is compare the sales during the advertising period

7    to the sales after the advertising was withdrawn in August of

8    2005.  What this allows us to do is compare --

9            THE COURT:  Excuse me.  That's a theory of

10   causation, right?

11           MS. QUISH:  That's right.  That's what we

12   understood your order, your summary judgment to add.

13           THE COURT:  No, no, I just said damages.  No,

14   that's unfair.

15           MS. QUISH:  I thought it said injury.

16           THE COURT:  And damages, you can't pop on them a

17   damage theory, so --

18           MS. QUISH:  No, we stand on our original damages

19   theory.  And in our expert reports, before the summary

20   judgment, we actually provided two sets of damages.  One was

21   from 2001 forward, and one was from 2004 forward, so we had

22   already split that out.

23           THE COURT:  So you're going to stick with the --

24           MS. QUISH:  Yes.

25           THE COURT:  All right, this is very helpful.

2922511f-b8ea-416c-a6cd-bedd4392d621

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE HIPSAVER COMPANY, INC., <br><br> Plaintiff, <br><br> v. <br><br> J.T. POSEY COMPANY, INC., <br><br> Defendant. | C.V. NO. 05-10917 PBS |
| J.T. POSEY COMPANY, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE HIPSAVER COMPANY, INC., <br><br> Defendant. | |

## DECLARATION OF PHILIP GREEN, CPA

I, Philip Green, being duly sworn deposes and says:

    1.    I am a founding principal in the consulting firm of Hoffman Alvary & Company LLC. Prior to founding the firm in 1996, I was a senior manager in the accounting and consulting firm of Price Waterhouse LLP, now PriceWaterhouseCoopers. I am a Certified Public Accountant, licensed by the State of New York. I also am a Certified Management

Accountant ("CMA") and have earned the Accredited in Business Valuation ("ABV") designation from the American Institute of Certified Public Accountants.

2.   As part of my work, I am regularly involved in analysis of damages in disputed matters including intellectual property infringements, false advertising claims and contract breaches among others. My work in these assignments often includes the review and analysis of the books of original entry, i.e. the general ledger system, maintained by parties to these matters as well as reconciliation of accounting information. These analyses are done to evaluate the reliability of the underlying accounting data for the purposes of determining damages.

3.   In my supplemental report, I indicated I was unable to reconcile documents purportedly summarizing HipSaver's monthly HipSaver product sales with the FileMaker Pro database extract (HS2 002169) produced by HipSaver (the "Original FileMaker Database"). In particular, I noted that the Original FileMaker Database included obvious errors and significant data inconsistencies.

4.   Recently, HipSaver produced an additional FileMaker database file. This file appears to be an extract of invoices for January through December 2006 (the "2007 FileMaker Database Extract"). As further detailed below, the 2007 FileMaker Database Extract differs substantially from the previously provided Original FileMaker Database (HS2 002169). These substantial unexplained changes include:

- <u>Database Fields Have Been Removed.</u> - The 2007 FileMaker Database Extract does not include several of the database fields that were included in the Original FileMaker Database. For example, field such as the address, zip code, and customer name are not included in the 2007 FileMaker Database Extract. These

data can be useful in determining the customers to which HipSaver sold its HipSaver products.

- <u>Database Records Have Been Changed.</u> - The 2007 FileMaker Database Extract also contains fewer invoice records than the Original FileMaker Database.

- <u>The Dollar Values of Invoices Have Been Changed.</u> - Data for individual invoices in the 2007 FileMaker Database Extract are different than the data presented for the same invoice in the Original FileMaker Database. For example, in the Original FileMaker Database, invoice 06-03-145 was in the amount of $433.61. In the 2007 FileMaker Database Extract, invoice 06-03-145 was in the amount of $1,919.36.

- <u>Fields With Product Descriptions Have Been Removed.</u> - In the Original FileMaker Database, the description of the products sold for each invoice included the number of units of HipSaver and DermaSaver products included in each sale. In contrast, the 2007 FileMaker Database Extract identifies that DermaSaver products were sold. The quantity of the DermaSaver products sold is no longer included in the product description field. In the 2007 FileMaker Database Extract all revenues associated with these sales are attributed to the HipSaver products. The absence of information regarding the number of DermaSaver products sold in the 2007 FileMaker Database Extract makes it difficult to accurately separate DermaSaver sales from HipSaver product sales.

- <u>The Total Sales Reported In the Two Databases are Different.</u>

5.     Recently, HipSaver also produced an Excel spreadsheet that purportedly supports its domestic sales of HipSaver products in 2006 as reported on HS2 002605. This spreadsheet with the 2006 data was not provided before. The information contained in the Excel spreadsheet is not consistent with the data in the Original FileMaker Database.

I swear under the pains and penalties of perjury that the foregoing is true and accurate to the best of my knowledge and belief.

June 5, 2007

                                    */s/ Philip Green*
                                    Philip Green CPA