# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

_____

|  |  |  |
|---|---|---|
| THE HIPSAVER COMPANY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v | ) | Civil Action No. 05-10917 PBS |
| | ) | |
| J.T. POSEY COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

_____)

## PLAINTIFF'S LEGAL MEMORANDUM REGARDING THE CAUSATION REQUIREMENT UNDER THE LANHAM ACT

Dated:  June 11, 2007

Respectfully submitted,

The HipSaver Company, Inc.
By its Attorneys,

Lee Carl Bromberg, BBO No.:  058480
Edward J. Dailey, BBO No.:  112220
Courtney M. Quish, BBO No.:  662288
Paul S. Kitchin, BBO No.: 667954
BROMBERG SUNSTEIN, LLP
125 Summer Street - 11th floor
Boston, Massachusetts 02110-1618
617.443.9292
617.443.0004 Fax

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

SUMMARY OF THE LAW.................................................................................. 2

I.    HIPSAVER'S CLAIM FOR DAMAGES ........................................................ 2

      A.    At Most, HipSaver Must Provide Sufficient Evidence to Support a Reasonable Inference of a Causal Connection Between the False Advertising and the Harm Sustained ....................................................... 2

      B.    Where Posey's Garwood Advertisements are Comparative Statements, a Presumption of Harm Must Be Applied if the Defendant Made the Statements Knowing of Their False Nature ............................................... 3

      C.    The Court Should Apply the Presumption of Causation to All Garwood Statements Because The Parties Are Direct Competitors in a Two-Party Marketplace .............................................................................................. 4

II.    HIPSAVER'S CLAIM FOR INJUNCTIVE RELIEF........................................... 5

FACTS OF THE CASE RELEVANT TO HIPSAVER'S THEORY OF CAUSATION .. 6

HIPSAVER'S THEORY OF THE CASE....................................................................... 9

I.    HIPSAVER'S CLAIM FOR DAMAGES ........................................................ 10

      A.    HipSaver Offers Evidence of Actual Harm Sufficient to Support a Reasonable Inference by a Rational Fact-Finder that It was Harmed as a Result of Posey's False Garwood Advertising ......................................... 10

            (1)    Posey's Growth Rate was Almost Twice That of HipSaver During the Period of the Garwood Advertising and Supports a Strong Inference that the Garwood Advertising Caused Injury to HipSaver .............................................................................. 10

            (2)    The 2006 HipSaver Sales Data for Non-VA Shows that HipSaver Sales Rebounded After the Garwood Ad was Discontinued and Supports a Strong Inference of Causation and Injury .................. 11

            (3)    The 2006 DermaSaver Sales Data Shows that External Factors such as Formulary Restrictions or Brand Loyalty Do Not Account for the Disparity in HipSaver and Posey Sales ............................ 13

B.    Posey's False Comparative Advertisements Have Already Been Found to be Literally False by the Court and Accordingly, A Rebuttable Presumption of Harm and Causation Arises with Respect to These Statements.............................................................................................. 14

C.    HipSaver Seeks Posey's Profits as a Proxy for Its Damages ................... 15

II.    HIPSAVER'S CLAIM FOR INJUNCTIVE RELIEF........................................ 16

CONCLUSION............................................................................................................. 17

## PRELIMINARY STATEMENT

At the pretrial conference on Thursday, June 7, 2007, this court requested that the parties' submit a memorandum summarizing the law relating to the element of causation required to sustain a claim for damages under the Lanham Act and setting forth the theory of the case.

The Lanham Act §43(a) prohibits false advertising by prohibiting any "false or misleading representation of fact, which ... in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities."  15 U.S.C. §1125(a)(1)(B). HipSaver will prevail on this claim by showing that:

> (1) Posey made a false or misleading description of fact in a commercial advertisement; (2) the statement actually deceives or has the tendency to deceive a substantial segment of its audience; (3) the deception is material (*i.e.*, it is likely to influence the purchasing decision); (4) Posey placed the statement into interstate commerce; and (5) *HipSaver has been or is likely to be injured as a result of the statement, either by direct diversion of sales to Posey and by a lessening of goodwill associated with HipSaver's products.*

*See* the trial court's Memorandum and Order [**D.N.** 228] at p. 21 (quoting *Cashmere and Camel Hair Manufacturer's Institute v. Saks Fifth Avenue,* 284 F.3d 302, 310-11 (1st Cir. 2002)).

This memorandum sets forth the law and theory of the case with respect to the fifth and final element: HipSaver can show that it has been and is likely to be injured as a result of the challenged Garwood advertising statements.

## SUMMARY OF THE LAW

### I.     HIPSAVER'S CLAIM FOR DAMAGES

HipSaver was injured by Posey's false Garwood Advertisement. In order to prevail on its damages claim, HipSaver must prove causation and fact of injury: "[t]he aggrieved party must demonstrate that the false advertisement actually harmed its business. A precise showing is not required, and a diversion of sales, for example, would suffice." *Cashmere*, 284 F.3d at 318.

HipSaver may meet its burden of causation and injury by showing that HipSaver and Posey are direct competitors and that HipSaver has been harmed by Posey's false advertising. *Vermont Pure Holdings Ltd. v. Nestle Waters North America Inc.*, No. Civ.A.03-11465 DPW, 2006 WL 839486 (D. Mass. March 28, 2006). Indeed, because HipSaver and Posey are direct competitors (in fact, the only significant competitors in the U.S. marketplace), this court has ruled that a less definite showing of injury is required. Memorandum and Order [**D.N.** 228] at 31, *citing Ortho Pharmaceutical Corp. v. Cosprophar, Inc.,* 32 F.3d 690, 694 (2d Cir. 1994)(stating that courts tend to require a more substantive showing where there is no direct competition); *Balance Dynamics Corp. v. Schmitt Indus.,* 204 F.3d 683, 691 (7th Cir. 2000)(noting that consumer confusion tends to show "hard to prove" marketplace damages, like lost profits or lost sales, "probably exist").

### A.     At Most, HipSaver Must Provide Sufficient Evidence to Support a Reasonable Inference of a Causal Connection Between the False Advertising and the Harm Sustained

Under a theory of diverted sales, where the parties are direct competitors, a plaintiff need only provide sufficient evidence such that a rational fact-finder can make a

*reasonable inference* of a causal connection between the false advertising and the harm sustained. *Cashmere*, 284 F.3d at 319 (emphasis added). False advertising of a material characteristic of the product will support such a common sense inference of lost sales. *Cashmere,* 284 F.3d at 318-19 (1st Cir. 2002).

For example, in *Cashmere*, a fabric wholesaler and a trade association of cashmere manufacturers brought suit against a manufacturer of cashmere products for falsely advertising the cashmere content of its women's blazers, in violation of the Lanham Act. In opposition to summary judgment, the plaintiffs provided evidence that: (1) defendant overstated the percentage of cashmere in its blazers; (2) defendant priced its blazers below the prices offered by the plaintiff-wholesaler; and (3) (in the form of anecdotal evidence presented by the plaintiff's employee) that plaintiff-wholesaler had lost business to the defendant. Even though all expert testimony had been excluded, the First Circuit reversed the district court's grant of summary judgment for the defendant because the First Circuit found this evidence sufficient such that "a rational fact-finder could reasonably infer" injury to the plaintiff's ability to compete in the marketplace. *Cashmere* at 319. In a similar case in the Seventh Circuit, *Grove Fresh Distribs. v. New England Apple Prods. Co., Inc.*, the court held that, based on evidence of the significance of the "100% Florida" label used by the defendant, the jury could have inferred that costumers switched to the defendant's product because of its false "100% Florida" label. *Grove Fresh Distribs.,* 969 F.2d 552, 557 (7th Cir. 1992).

### B. Where Posey's Garwood Advertisements are Comparative Statements, a Presumption of Harm Must Be Applied if the Defendant Made the Statements Knowing of Their False Nature

Where a party is found to have made false comparative statements with

knowledge of their false nature, the case law is clear that a presumption arises that customers have been deceived by such statements and that the plaintiff suffered damages as a result of such deception.  In these cases, no further evidence of injury is required. *Porous Media Corp. v. Pall Corp.,* 110 F.3d 1329, 1332-1337 (8th Cir. 1997)(finding that "in comparative advertising cases where money damages are sought and where there exists proof of willful deception, as here, the reasoning of the injunction cases set forth primarily in the Second Circuit cases is applicable… A predicate finding of intentional deception, as a major part of the defendant's marketing efforts, contained in comparative advertising, encompasses sufficient harm to justify a rebuttable presumption of causation and injury in fact" and finding "willful deception" where defendant made false statements "with knowledge of their false or misleading nature").  Courts reason that causation and harm can be presumed because "a misleading comparison to a specific competing product necessarily diminishes that product's value in the minds of the consumer."  *McNeilab, Inc. v. American Home Products, Corp.*, 848 F.2d 34, 38 (2nd Cir. 1988).

> ### C.  The Court Should Apply the Presumption of Causation to All Garwood Statements Because The Parties Are Direct Competitors in a Two-Party Marketplace

While HipSaver believes that it has provided more than enough evidence to meet its burden under *Cashmere,* HipSaver submits that the presumption of causation and harm applied in cases of comparative statements and discussed above should also be applied to the non-comparative statements in this case because HipSaver and Posey are not only direct competitors but are the only two players in the marketplace.  In cases of comparative false advertising, causation and harm can be presumed because "a misleading comparison to a specific competing product necessarily diminishes that

product's value in the minds of the consumer." *McNeilab, Inc.*, 848 F.2d 34, 38. Similarly, in a determination of trademark infringement and disgorgement of profits under the Lanham Act, a party is entitled to disgorgement based on the finding of infringement because the likelihood of confusion would only cause injury to one party-the trademark owner. *Tamko Roofing Products, Inc. v. Ideal Roofing Company, Ltd.*, 282 F.3d 23 (1st Cir. 2002). Courts generally refuse to apply this reasoning to non-comparative advertising because "[t]he injury in such cases accrues equally to all competitors; none is more likely to suffer from the offending broadcasts than any other." *McNeilab, Inc.* at 38. But, here, Posey and HipSaver are the *only* market participants and therefore, the injury must accrue to HipSaver, regardless of whether HipSaver is named in the advertisement or not. Because any misleading statement about defendant's product necessarily diminishes the value of the only competing product in the minds of the consumer, the causation presumption should be applied where there is only a two-player marketplace. *McNeilab, Inc.*, 848 F.2d 34, 38.

## II.    HIPSAVER'S CLAIM FOR INJUNCTIVE RELIEF

Where plaintiff seeks injunctive relief, a plaintiff need only show that it is likely to be harmed by the false advertising. *The Holmes Group, Inc. v. RPS Products, Inc.,* 424 F.Supp.2d 271, 292 (D. Mass, 2006) (finding that evidence of direct competition together with testimony by plaintiff that the false advertising would likely harm plaintiff's goodwill was sufficient to create a genuine issue of material fact as to whether there is likelihood of harm). Furthermore, where the advertising claim is shown to be literally false, the court may enjoin the use of the claim without reference to the advertisement's impact on the buying public. *Castrol, Inc. v. Quaker State Corporation*, 977 F.2d 57, 62

(2nd Cir. 1992) (internal quotations omitted).

## FACTS OF THE CASE RELEVANT TO HIPSAVER'S THEORY OF CAUSATION

1.      HipSaver was founded in 1995. HipSaver is a company headquartered in Canton, Massachusetts. HipSaver had annual revenues in 2005 and 2006 of about $1.5 million. HipSaver is organized and registered as a Massachusetts corporation.

2.      Until 2005, HipSaver was a single product company, designing, developing, and manufacturing the HipSaver hip protector product.

3.      HipSaver's hip protector garment is sold under the HipSaver trademark. HipSavers are sold to nursing homes, long term care facilities, rehabilitation hospitals, and consumers.

4.      Posey was founded in 1937. Posey is a California corporation headquartered in Arcadia, California.

5.      Posey is in the business of selling healthcare/safety products for patient restraint, fall safety, wound prevention, and wheelchair seating, among others. Posey sells its products to nursing homes, long term care facilities and hospitals. Posey's annual revenue for 2005 was slightly more than $40 million dollars. Posey maintains a website at www.posey.com.

6.      A hip protector product is a product designed to protect at-risk individuals, primarily the elderly, against hip fractures caused by falls by reducing the force of the impact of the fall.

7.      Hip protectors may be comprised of entirely soft materials, entirely hard materials consisting essentially of a shield, or a combination of both hard and soft materials.

8.      HipSaver and Posey currently manufacture and sell entirely soft hip protectors.

9.      HipSaver and Posey are direct competitors in the hip protector market.

10.     HipSaver and Posey are the only two significant market competitors for soft hip protector products.

11.     Late in 2003, Posey distributed advertising that made reference to a so-called "UCLA White Paper."

12.     On June 10, 2004, HipSaver filed a lawsuit in the United States District Court for the District of Massachusetts, claiming, among other things, that the UCLA ads were false ("Posey I").

13.     In connection with its claims in Posey I, HipSaver sought, among other things, damages and preliminary and permanent injunctive relief halting and preventing further

publication, distribution, or reference to the challenged UCLA advertisement or so-called "UCLA White Paper" or the false testing conducted in support of the UCLA White Paper. HipSaver also sought an injunction halting all further publication or distribution of, or reference to, materials that claimed Posey's hip protector products were superior to HipSaver's.

14.     On September 21, 2004, the parties settled the Posey I lawsuit. As part of the settlement, the parties dismissed with prejudice the claims and counterclaims asserted in Posey I and entered into a written settlement agreement.   As another part of the settlement agreement, Posey distributed a corrective advertising statement that stated,

**Special Announcement:**
**HipSaver® and Posey Hipster® brand Hip Protectors**

In the fall of 2003, Posey began distributing an article (also known as the "White Paper") entitled "A Solution to Hip Fractures Using Performance Tested Hip Protectors." In its catalogs and newsletters, Posey included statements derived from the White Paper and bar charts comparing the relative effectiveness of Posey's Hipsters.

The White Paper was written by a UCLA graduate student working on his Master's Thesis. UCLA did not sponsor, authorize, or endorse the tests or the results reported in the White paper or the Master's Thesis.

The HipSaver Company, Inc. challenged the accuracy of the White Paper and the statements and bar charts in Posey's catalogs and newsletters. HipSaver's claims included: (a) a flawed testing methodology used by the graduate student; (b) testing of some products which were no longer offered in the marketplace; and (c) test conclusions which were subject to unreliable or false interpretation.

The HipSaver Company retained Wilson C. Hayes, PhD, a recognized biomechanical engineering expert, to review the White Paper, the graduate student's thesis, and Posey's advertising. Dr. Hayes determined that the research is not reliable and cannot sustain any of the claims in the White Paper and our advertising with reasonable certainty.
Posey values its hard-earned reputation and does not advocate the use of any material that may be inaccurate or out of date, and expressly regrets comparisons with HipSaver products and confusion this may have caused in the marketplace.

Posey has eliminated the bar charts and all statements based on the White Paper from its catalogs.

If by chance you have a copy of the White Paper or any advertising material referring to testing at UCLA, please do not use it or to rely on any statements in it.

If you have any questions about anything in this announcement, please contact Posey at [telephone number]

15.     Shortly after the parties settled the case and Posey distributed the corrective advertising statement, set forth above, Posey resumed distributed advertisements containing references to tests conducted by Garwood Laboratories. These advertisements are referred to as the "Garwood Advertisement/s" or the "Garwood Ad/s". Distribution of the ads in question commenced approximately in the latter part of 2001 and ceased when

Posey began distributing the so-called "UCLA White Paper." Posey resumed distributing these Garwood advertisements in or about October 2004, after the parties executed a settlement agreement relating to Posey's distribution of the so-called "UCLA White Paper." This lawsuit, filed in the Spring of 2005, challenges the Garwood ads.

16.    The Garwood advertisements contained the following statements:

    a.    "A test was created that would simulate a fall causing direct impact to the greater trochanter."

    b.    "An independent laboratory study was conducted to determine the most effective impact absorbing material."

    c.    "In an independent laboratory test designed to simulate a fall causing direct impact to the greater trochanter, the Posey Hipster III reduced the impact force by 90%, the best results of any hip protector available."

    d.    "Posey Hipsters Proven Effective in Laboratory Tests"

    e.    "Posey Hipsters Help Protect Against Injury from Falls"

    f.    "Posey Hipster … showed excellent impact energy absorption."

17.    The Garwood Ads were contained in Posey product instruction sheets and brochures. These materials were mailed to customers and prospective customers, distributed at trade shows and sent to people who requested information on Posey's Hipster hip protectors. Beginning in 2004, the Garwood Ad was often placed on a flyer which included references to Posey's High Durability Hipster product.

18.    Posey's Garwood Advertisements were withdrawn in the fall of 2005.

19.    In May 2005, in response to HipSaver's letter objecting to Posey's advertising statements regarding the results of the Garwood Test, Posey changed some of the language in its advertisements.

20.    In August 2005, Posey eliminated any reference to the results of the Garwood advertising. In addition, it removed the product instructions which mentioned Garwood from its web-site.

21.    However, Posey's 2005 catalog was not replaced by its 2006 catalog until late 2005/early 2006.

22.    Accordingly, because all instances of the Garwood advertising could not be instantly withdrawn from circulation and because a residual effect is typical of advertising, HipSaver conservatively estimates that the Garwood advertising injured HipSaver at least until Posey's 2006 catalog was distributed.

23.    HipSaver seeks damages in the form of Posey's profits for the period of October

2004 through December 2005. According to HipSaver's damages expert, Dr. Epstein, Posey's revenue on its Hipster sales for this period amount to $756,828.

24.    In addition to money damages, HipSaver also seeks injunctive relief. HipSaver seeks (1) a permanent injunction against Posey's publication or distribution of the Garwood Advertisement and (2) injunctive relief requiring Posey to provide 30-day notice to HipSaver of any new advertising based on any testing.

25.    By its summary judgment, this court found two comparative Garwood statements to be literally false and material:

- "In an independent laboratory test designed to simulate a fall causing direct impact to the greater trochanter, the Posey Hipster III reduced the impact force by 90%, the best results of any hip protector available."

- "An independent laboratory study was conducted to determine the most effective impact absorbing material."

## HIPSAVER'S THEORY OF THE CASE

HipSaver's theory of causation is premised on the theory of direct competition, two-party marketplace, the presumption of harm resulting from comparative advertising, and direct diversion of sales. HipSaver and Posey are direct and two-party marketplace in the hip protector market. *See* Posey Statement of Facts [D.N. 163], no. 4. Under a theory of direct competition and two-party marketplace control between these two parties, HipSaver argues that a presumption of causation and harm should arise from Posey's literally false advertising. But, even under the inferential standard laid out by the court in *Cashmere*, HipSaver argues that a strong inference can be drawn from the evidence that false advertising by Posey relating to a material element of its product caused injury to HipSaver. More specifically, HipSaver asserts that, absent market disruption caused by the Defendant's literally false Garwood advertising, it would have a greater percentage of market share and higher revenue. In support of its theory and based solely on data and information provided to Posey in September 2006 (during the

discovery period), HipSaver offers evidence to show that (1) HipSaver sales growth as half that of Posey's during the false advertising period; (2) HipSaver's non-VA sales increased markedly after Posey's Garwood advertisement was discontinued; and (3) HipSaver's positive experience with sales of its DermaSaver product to national chain facilities from which HipSaver has been frozen out.  It should be noted that items (1) and (2) have been expressly identified by Posey's damages experts as inferential indices of causation and injury to HipSaver.  Cumulatively, these three items are sufficient to infer causation and injury from Posey's literally false advertising.

Finally, it is important to note that HipSaver is limited to an analysis of the advertising period and post-advertising period in proving lost sales because the period preceding the Garwood advertising is tainted by Posey's previous false advertising campaign using the so-called "UCLA white paper."[1]

## I.    HIPSAVER'S CLAIM FOR DAMAGES

### A.    HipSaver Offers Evidence of Actual Harm Sufficient to Support a Reasonable Inference by a Rational Fact-Finder that It was Harmed as a Result of Posey's False Garwood Advertising

#### (1)    Posey's Growth Rate was Almost Twice That of HipSaver During the Period of the Garwood Advertising and Supports a Strong Inference that the Garwood Advertising Caused Injury to HipSaver

In their first report, Posey's damages experts posited that differential growth rates between Posey and HipSaver during the Garwood advertising period is indicative of

---

[1] To the extent that Posey will argue that HipSaver's decline in sales is due to Posey's own previous bad acts, it is Posey's burden to show if and to what extent HipSaver should not be awarded all of Posey's Hipster profits.  *Tamko Roofing Products, Inc. v. Ideal Roofing Co., Ltd*, 282 F.3d 23, 36-37 (1st Cir. 2002)(stating that once infringement and direct competition are established, the burden of showing that not all profits should be awarded falls on the defendant); *Ricky Smith Pontiac, Inc. v. Subaru of New England, Inc.*, 14 Mass.App.Ct. 396, 426-427 (stating that once the plaintiff has provided a reasonable basis for damages, the plaintiff need only prove the amount of damages with as much certainty as the circumstances of the case permit).

injury to HipSaver. And as previously stated in Dr. Epstein's Expert Report, dated October 31, 2006, the parties' growth rates *during* the period of the false advertising are markedly different: Posey's average monthly sales increased by 8.8% in the nine months following September 2004 relative to the nine months prior. *See* Expert Report of Hoffman and Green, February 16, 2006, at 7. This same comparison for HipSaver, using data from Hoffman and Green's data, shows that HipSaver's sales increased by little more than 4%. *See* Expert Report of Dr. Epstein, September 25, 2006, at ¶21. In fact, if VA sales are removed, HipSaver sales rose only 2%. This comparison creates a reasonable inference that HipSaver experienced a depressed rate of growth as a result of the false advertising. Indeed, the inference of injury and harm to HipSaver is heightened if the comparison period is extended to the residual advertising period of the last four months in 2005 when HipSaver sales were even weaker.[2]

> **(2)    The 2006 HipSaver Sales Data for Non-VA Shows that HipSaver Sales Rebounded After the Garwood Ad was Discontinued and Supports a Strong Inference of Causation and Injury**

The 2006 HipSaver non-VA sales data shows a marked increase in sales that began in December 2005 and continued to grow throughout 2006. This increase in non-VA sales shows that once the Garwood advertisement was discontinued, HipSaver sales rebounded. Specifically, during the period of accused advertising[3] and residual period (October 2004 through December 2005), HipSaver's monthly sales averaged $34,871 per

---

[2] While Posey claims to have withdrawn its Garwood advertising at the end of August 2005, no plausible argument can be made that the impact of the advertising ended then. The ads remained in circulation for some period of time and certainly were not supplanted by any corrective advertising which may, otherwise, have blunted the durability or residual impact of Posey's literally false statements. See Thomas, Lacy Glenn, "advertising in consumer Goods Industries: Durability, Economies of Scale, and Heterogeneity", 32 J. Law Econ. 1 at 186.

[3] During the period of accused advertising only (October 2004 through August 2005), HipSaver's monthly sales averaged $35,752 per month.

month.  In the period following removal of the advertising (January 2006 through August 2006), HipSaver's sales increased by 14% to average monthly sales of $39,830 per month.

As Posey's own damages expert posited in his expert report, such a reaction strongly supports the inference of causation:

> **[I]f the allegedly false Garwood references resulted in lower HipSaver sales, it would be expected that higher monthly sales would occur when the references were discontinued.**

Report of Creighton Hoffman, February 16, 2005, at p. 6. [4]  HipSaver's 2006 sales data shows precisely the response Mr. Hoffman predicted if injury had occurred:  HipSaver sales rebounded after the Garwood Advertisement was discontinued and continued to grow in the following months.



**October 2004-December 2005     January 2006-August 2006**
**HipSaver's Non-VA Revenue**

---

[4]  In their report, Mssrs. Hoffman and Green imply that an increase in sales would follow <u>immediately</u> after removal of the ads.  Such a conclusion will be challenged by Dr. Epstein in his trial testimony and defies common sense.  Instead, one would expect HipSaver's sales to require some time before ramping up to a level that is free of the lingering effect of the advertising.

Because the increase in HipSaver's monthly sales occurs shortly after Posey removed the Garwood advertisement, accounting for residual advertising, the data supports a reasonable inference that HipSaver's growth rate would have been higher absent the marketplace disruption of false advertising and accordingly, that HipSaver was injured as a result of Posey's false Garwood advertising, conforming to Posey's own expert's economic analysis.  By Posey's own expert statement, "higher monthly sales [occurring] when the references were discontinued" shows that "the allegedly false Garwood references resulted in lower HipSaver sales."  Report of Creighton Hoffman, February 16, 2005, at p. 6.

HipSaver's principal, Mr. Goodwin, will also testify that this increase in sales was not just due to increasing sales to existing customers but that HipSaver gained many new customers.

This evidence supports the conclusion that, once Posey's Garwood advertising was removed, HipSaver was able to penetrate the hip protector market.

> **(3)    The 2006 DermaSaver Sales Data Shows that External Factors Such as Formulary Restrictions or Brand Loyalty Do Not Account for the Disparity in HipSaver and Posey Sales**

During the summer of 2005, HipSaver introduced a new line of wound prevention products under the DermaSaver trademark.  DermaSaver is marketed to customers in the same manner as HipSaver.  DermaSaver competes against a number of wound prevention products sold by Posey. In contrast to HipSaver, however, DermaSaver has not experienced any false advertising.

Data and information provided to Posey during the discovery period demonstrate that DermaSaver has made a successful entry into the U.S. marketplace.  More important,

13

the data shows that DermaSaver has been sold to national health care facilities. By contrast, HipSaver has been frozen out of this marketplace. Therefore, the DermaSaver sales data provides an alternative 'but for' scenario with respect to HipSaver's access to long term healthcare chains. Because all other variables are held equal (the products directly compete; the product providers are the same; the sales and customer services are the same), the comparison between the HipSaver and DermaSaver market penetration shows that, absent a marketplace disruption such as the Garwood advertising, HipSaver would have had the ability to sell in large chains where Posey products were already sold.

This data counters Posey's suggestion (*see e.g.* Expert Report of Gary Reich, February 16, 2006 at ¶¶ 26-27) that it is formulary restrictions, brand loyalty, or Posey's tenure in the marketplace, rather than false advertising, that have kept HipSaver out of the healthcare chains and large distributors. The DermaSaver sales experience offers an alternative 'but for' scenario, showing that HipSaver would have access to healthcare institutions but for the injury of Posey's marketplace disruption, its false advertising.

**B.    Posey's False Comparative Advertisements Have Already Been Found to be Literally False by the Court and Accordingly, A Rebuttable Presumption of Harm and Causation Arises with Respect to These Statements**

Where a party is found to have made false comparative statements with knowledge of their false nature, a presumption arises that consumers were deceived by such statements and that the plaintiff suffered damages as a result of such deception and no further evidence of injury is required. *Porous Media Corp. v. Pall Corp.,* 110 F.3d 1329, 1332-1337 (8th Cir. 1997). This Court has already determined that two comparative false advertising claims are literally false.

Whether Posey knowingly made these literally false claims is a question of fact

for the jury. *Porous Media Corp. v. Pall Corp.,* 110 F.3d 1329, 1332-1333 (8th Cir. 1997)(affirming jury instruction stating, "If you should find that Pall made any false or misleading statements … deliberately-that is with knowledge of their false or misleading nature-and you find that Pall engaged in making any such deliberately false statements as an important part of its marketing efforts, then you may presume that customers and prospective customers were deceived by any such statements and that Porous has suffered damages as a result of such deception). Posey was already challenged for false comparative establishment claims in the 2004 litigation between these parties challenging Posey's dissemination of the so-called "UCLA White Paper." Posey acknowledged in a corrective advertising statement that the UCLA tests were not reliable. Yet, within one month of issuing an apology and corrective advertising statement, Posey began distributing further literally false establishment claims based on the testing conducted at Garwood Laboratories. Based on this evidence, a jury could reasonably find that Posey knowingly issued the claims in the Garwood Advertisement that this Court already found to be literally false. A jury's finding as to Posey's knowledge of the false advertisements alone would support a rebuttable presumption of causation and harm.

### C. HipSaver Seeks Posey's Profits as a Proxy for Its Damages

Once the plaintiff has provided a reasonable basis for damages, the plaintiff need only prove the amount of damages with as much certainty as the circumstances of the case permit. *Ricky Smith Pontiac, Inc. v. Subaru of New England, Inc.*, 14 Mass.App.Ct. 396, 426-427 (1982). With respect to the amount of damages sought by HipSaver, HipSaver seeks Posey's profits as a proxy for its own damages. *Vermont Pure Holdings, Ltd. v. Nestle Waters North America, Inc.,* Case No. 03-11465, 2006 WL 839486 (D.

Mass, March 28, 2006).  Recovery of Defendant's lost profits are expressly provided for under the Lanham Act as a rough measure of the harm to plaintiff.  *Tamko Roofing Products, Inc. v. Ideal Roofing Co., Ltd,* 282 F.3d 23, 36-37 (1st Cir. 2002).  Dr. Epstein assesses Posey's profits of its Hipster sales at $756,828.[5]  Expert Report of Dr. Epstein, September 26, 2006 at 6.  It is Posey's burden to show if and to what extent HipSaver should not be awarded all of Posey's Hipster profits.  *Tamko Roofing Products, Inc.,* 282 F.3d at 36-37 (stating that the burden of showing that not all profits should be awarded falls on the defendant).

## II.     HIPSAVER'S CLAIM FOR INJUNCTIVE RELIEF

In addition to money damages, HipSaver also seeks injunctive relief.  HipSaver seeks (1) a permanent injunction against Posey's publication or distribution of the Garwood Advertisement and (2) injunctive relief requiring Posey to provide 30-day notice to HipSaver of any new advertising based on any testing.  Here, Posey and HipSaver are direct competitors.  Posey's advertising goes to a material element of the hip protector product and is likely to cause deception.   Finally, injunctive relief, even after Posey voluntarily withdrew the advertising, is warranted in this case.  Posey has a history of false advertising and more importantly, a history of reviving and reusing false advertising on the heels of settlement of a false advertising dispute.  HipSaver's only insurance that Posey will not revive the Garwood ads or any other false advertising campaign or create new advertising based on old tests is permanent injunctive relief.  Accordingly, HipSaver satisfies its burden of showing a likelihood of harm and is entitled

---

[5]  HipSaver wishes to correct an error in this Court's Memorandum and Order.  This Court stated that HipSaver's expert calculated its lost profits damage claim with **all profits earned by Posey**.  *See* Memorandum and Order [**D.N.** 228] at p. 30.  But, HipSaver's damages expert's calculations were based **only** on Hipster sales, and **not** on **all** profits earned by Posey.  Dr. Epstein calculates Posey's profits for Hipster sales as $756,828 for the period of October 2004 through December 2005.

to permanent injunctive relief from this Court.

## CONCLUSION

Under the Lanham Act case law, HipSaver has presented more than enough evidence to support its claims for monetary and injunctive relief because HipSaver and Posey are direct and exclusive competitors in the soft hip protector market and because HipSaver presents evidence of lost sales sufficient to enable to rational fact-finder to make a reasonable inference that the Garwood advertising caused harm to HipSaver.

HipSaver has been harmed seriously, perhaps fatally in this case. And there can be no doubt that Posey is the source—the single competitor with an *admitted* history of false advertising, the competitor with a history of marketing a defective product, and the competitor which set out in 2001 to copy HipSaver's product and capture the market by any means available.

Dated:  June 11, 2007

Respectfully submitted,
The HipSaver Company, Inc.
By its Attorneys,

/s/  Courtney M. Quish
Lee Carl Bromberg, BBO No.:  058480
Edward J. Dailey, BBO No.:  112220
Courtney M. Quish, BBO No.:  662288
Paul S. Kitchin, BBO No.: 667954
BROMBERG SUNSTEIN, LLP
125 Summer Street - 11th floor
Boston, Massachusetts 02110-1618
617.443.9292
617.443.0004 Fax
cquish@bromsun.com

## CERTIFICATE OF SERVICE

I certify that this document has been filed through the Electronic Case Filing System of the United States District Court for the District of Massachusetts and will be served electronically by the court to the Registered Participants identified in the Notice of Electronic filing.

/s/ Courtney M. Quish
Courtney M. Quish

02820/00502 683877.1