UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                      )
THE HIPSAVER COMPANY, INC.,           )
                                      )
Plaintiff,                            )
                                      )
v                                     )   Civil Action No. 05-10917 PBS
                                      )
J.T. POSEY COMPANY,                   )
                                      )
Defendant.                            )
                                      )
_____)


**STATEMENT BY THE HIPSAVER COMPANY REGARDING
SUBMISSION OF ITS 2006 SALES DATA**

At yesterday's hearing (June 11, 2007), the parties disputed whether HipSaver produced an EXCEL spreadsheet to Posey during discovery which contained HipSaver's complete 2006 sales data up through September 13, 2006. After review of its discovery files and consultation with HipSaver, counsel has confirmed that HipSaver's production in the fall of 2006 was inadvertently[1] incomplete and did **not** include an EXCEL file with all of the charge data for 2006. And while the underlying FileMaker Pro database includes most of the 2006 transactions from both invoice and charge customers, it cannot be reconciled without the spreadsheet data.

Prior to the trial Court's Summary Judgment Memorandum and Order of May 15, 2007, neither party noticed this incomplete data because HipSaver sales and revenue for

---

[1] When HipSaver produced its sales and revenue data during discovery, FileMaker Pro database information for every month from January 2001 through mid September 2006 was produced. At the same time, Excel spreadsheet data was produced for every month from January 2001 through December 2005. Spreadsheet data for the first 8 ½ months of 2006 was overlooked.

1

2006 had not been considered in the causation / injury analysis. With the Court's invitation to provide additional evidence of causation / injury in the period from and after 2004, however, HipSaver reviewed its 2006 data and offered summaries of that data as part of its proffer, trial Exh. 569, 569a, 662, enclosed at **Exhibit A**. Posey has had the monthly summaries of all 2006 data since May 24th, the underlying FileMaker Pro database and EXCEL spreadsheet for 2006 since May 31st, and all of the source paper records since June 4th. From this information, Posey can readily verify VA and non VA sales for every month from January 2001 through December 2006. Posey is not prejudiced.

A.     **HipSaver's 2006 Sales Data Is Relevant Evidence And Should Be Admitted**

A week ago Posey had a legitimate concern that production of the proffered supplemental data so close to trial might prejudice its ability to verify HipSaver's 2006 revenues and the split between VA and non VA sales, but the court safeguarded Posey against prejudice by permitting it to move for continuance; and it has done just that. Posey faces nothing more than inconvenience now. By contrast, if HipSaver is unable to offer the supplemental data, it will be barred from offering highly relevant evidence which is a material index of causation, an index first identified by Posey's experts in their expert report. The resulting prejudice to HipSaver is that a substantive element of causation and injury may be barred. As a matter of due process and fairness, that is too high a price for an incomplete production of data during discovery and where there is no issue of prejudice to the Defendant. As a matter of due process and fairness also, it is too high a price to cripple a substantive claim for willful, intentional, literally false advertising because of an oversight.

1. **HipSaver's 2006 Data Is Responsive to the Court's Proffer Invitation, Is Highly Relevant, and Must Be Permitted, At the Very Least, as Rebuttal Evidence to Posey's Expert Claims**

In their expert report, Posey's experts, Hoffman/Green, first raised the issue of an increase or "uptick" in sales as an index of causation / injury. Then, they calculated the change in sales and offered data and an expert opinion that HipSaver's sales did not increase after termination of the challenged advertising. *See* Hoffman/Green, trial Exh. 144 at 6.

With this report, the Defendant has unquestionably opened the sales increase issue as a highly relevant causation / injury issue for trial; and as such, HipSaver has the right to counter and rebut Posey's report with evidence showing that, in fact, sales increased significantly after the false advertising period. Fed. R. Evid. 402. "We let jurors see and hear even marginally relevant evidence, because we trust them to weigh the evidence appropriately." *U.S. v Hitt*, 981 F.2d 422, 423 (9th Cir. 1992). The only limitation on HipSaver's right to respond and rebut with relevant evidence is if the probative value of HipSaver's evidence "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay". Fed. R. Evid. 403. None of the listed factors applies, and none should bar HipSaver's right to introduce supplemental 2006 data which was produced as part of the Court's authorized proffer, is relevant to an issue raised by the Defendant, is highly relevant to causation / injury, and will not prejudice Posey.

2. **HipSaver's Supplemental 2006 Sales Data was Produced in Response to This Court's Invitation to Make a Proffer of Evidence Supporting Causation and a Theory of Damages**

In the Court's May 15, 2007, Summary Judgment Memorandum and Order,

HipSaver's false advertising claims for the period preceding the 2004 settlement agreement [D.N. 228] were dismissed. As a result, much of HipSaver's proof of causation and injury was no longer relevant because it pertained to the period pre-dating the settlement agreement—HipSaver's proof of injury and causation for the period post-dating the settlement was limited to a showing of a significant differential growth rate between Posey and HipSaver during the false advertising period. In fairness to HipSaver, the Court invited a further proffer of evidence:

> HipSaver, however, must present admissible evidence of post-settlement damages and cannot invite jury speculation. Thus, HipSaver must supplement its pre-trial memorandum within two weeks to make a proffer of evidence supporting causation and a theory of damages consistent with this ruling. HipSaver will not be permitted to grab a pocketful of Posey's profits without some evidence linking the false advertisements to HipSaver's allegations of injury.

Memorandum and Order, May 15, 2007 [D.N. 228] at 31. This Court's request for an additional submission required only that the evidence be admissible; *it did not require that the evidence already be in the record.* Indeed, a limitation to the discovery record is contrary to the court's reasoning in permitting a proffer in the first instance.

In response to the Court's request, and within the two week period prescribed by the Court, HipSaver filed a supplemental submission, repeating the evidence of differential growth already submitted and setting forth additional evidence of causation relating to (1) HipSaver's market success in selling its DermaSaver product to health care facility chains from which the HipSaver hip protector product has been excluded[2] and (2) HipSaver's sales increase in 2006, the year after the advertising period.

At the Final Pretrial Hearing on May 29, 2007, Posey moved to strike the

---

[2] HipSaver does not seek to offer evidence of DermaSaver sales volume *per se* but, instead, seeks only to offer a listing of the facilities to which HipSaver sold the DermaSaver product in order to show HipSaver's successful penetration of the same market in the absence of false advertising.

4

submission, arguing in part that the submission relied upon data not previously produced to Posey. HipSaver immediately responded by producing the FileMaker pro and 2006 EXCEL databases maintained in the ordinary course of business on May 31, 2007. These databases included all HipSaver sales data for 2006 and supplemented the 2006 data produced during discovery. Posey then demanded the paper printouts of this data and strongly argued that HipSaver should be sanctioned for producing electronic data instead of paper. HipSaver again responded immediately by gathering, processing, and printing paper printouts.

At considerable expense, HipSaver produced paper printouts of all invoices and charges on June 4th. Posey never looked at the paper invoices. Indeed, Posey counsel told the Court yesterday that he 'wouldn't spend money going through paper.' Thus, Posey's demand for paper was a complete fool's errand, and its associated motions for sanctions were a groundless attempt to prejudice HipSaver.[3]

Now that Posey has all the data – electronic and paper, it argues that it doesn't want any of the data and seeks the preclusion of HipSaver's proffer because the data was not produced completely during discovery. And while Posey has claimed prejudice if the complete 2006 data is presented at trial, *there is no prejudice*. Posey has all of the data, it has its continuance, it completed a full day of further depositions of Dr. Epstein and Mr. Goodwin on Friday, June 8th, and it has more than enough time to complete any further analysis it needs before trial.

The complete 2006 data should be allowed as part of the proffer permitted by the Court's Summary Judgment Memorandum and Order. And, as argued above, the data

---

[3] Given, however, that Posey has all paper records of HipSaver's sales from 2001 through 2006, Posey's complaints about the reliability of HipSaver's electronic databases are without merit, whether or not the Defendant chooses to look at the paper.

must be permitted as highly relevant evidence in response to the sales increase issue first raised by Posey's expert analysis which claims no sales increase after the false advertising period.

### 3. HipSaver will be Extremely Prejudiced by Exclusion of its 2006 Sales Data

Whereas Posey will suffer only inconvenience if the 2006 HipSaver sales data is admitted, HipSaver will suffer extreme prejudice with a procedural ruling prohibiting it from offering any substantive evidence of its 2006 sales increases which, in fact, exceeded 12% for non VA sales for the first eight months of the year. That data goes directly to the merits of this lawsuit and is a material index of injury and causation.

On May 15th, less than a month ago, the Court invited HipSaver to make its proffer of additional evidence. This was two weeks after the pretrial disclosure deadline and less than a month before the scheduled trial. In response, HipSaver submitted its proffer of evidence, which included both 2006 data previously produced to Posey during discovery and supplemental 2006 data produced as part of the proffer. It also included a listing of national chain health care facilities to which DermaSaver has been sold but from which the HipSaver hip protector product has been frozen out.

HipSaver's supplemental 2006 sales data is relevant evidence which strongly supports its argument of injury and causation for the time period following the 2004 settlement agreement. At the same time, this supplemental data responds to and rebuts the argument first made by Posey's experts that there was no significant increase in sales after the false advertising period. Exclusion of HipSaver's data will compromise its evidence of injury and causation. This evidence should not be precluded simply because it was produced in response to the Court's request for a proffer of admissible evidence. It

is admissible as a proffer and as a rebuttal to Posey's up-tick claim and evidence. And in the absence of prejudice to Posey, it should be admitted as a matter of law. Fed. R. Evid. 403.

B. **Even if the Court Excludes HipSaver's 2006 Sales Data, HipSaver Offers Sufficient Evidence of Causation and Injury to Survive Summary Judgment and to Allow its Claims for Damages and Injunctive Relief to a Jury**

Even if this Court precludes HipSaver's 2006 sales data, HipSaver maintains that its case should move forward because the remaining evidence of (1) differential growth rates and (2) HipSaver's ability to penetrate the market with respect to DermaSaver sales is sufficient to support a rational inference by a reasonable fact-finder that HipSaver's injury was caused by Posey's false advertising. *Cashmere and Camel Hair Manufacturer's Institute v. Saks Fifth Avenue,* 284 F.3d 302, 310-11 (1st Cir. 2002); *see also* Plaintiff's Legal memorandum Regarding the Causation Requirement Under the Lanham Act [D.N. 302], submitted June 11, 2007 .

Furthermore, even if the Court finds that the cumulative evidence of injury and causation is not enough to allow HipSaver to move forward on its claims of false advertising with respect to Posey's non-comparative advertising statements, HipSaver is *already* entitled to a jury on its false advertising claims relating to the comparative statements in the Garwood advertisements. At summary judgment, the Court determined that the comparative states are both literally false and material. Under the presumption applied in *Porous Media Corp.* which is cited in the Court's Summary Judgment Memorandum and Order, no further evidence of injury is required. *Porous Media Corp. v. Pall Corp.,* 110 F.3d 1329, 1332-1337 (8th Cir. 1997)(finding that "in comparative advertising cases where money damages are sought and where there exists proof of

7

willful deception, as here, the reasoning of the injunction cases set forth primarily in the Second Circuit cases is applicable… A predicate finding of intentional deception, as a major part of the defendant's marketing efforts, contained in comparative advertising, encompasses sufficient harm to justify a rebuttable presumption of causation and injury in fact" and finding "willful deception" where defendant made false statements "with knowledge of their false or misleading nature"); *see also McNeilab, Inc. v. American Home Products, Corp.*, 848 F.2d 34, 38 (2nd Cir. 1988). Of course, any attempt by Posey to rebut the presumption of causation / injury here through Hoffman/Green will, in any event, immediately open up all of HipSaver's 2006 sales data to the jury.

Finally, HipSaver maintains its claim for injunctive relief, which is essential to prevent yet a *third* false advertising dispute between these parties. The claim for injunctive relief is easily supported by HipSaver's record evidence showing a likelihood of harm from the history of false advertising here and demonstrating the need to bar any further iterations of the Garwood advertisement and to provide for an enforceable notice provision which will forestall false empirical test advertising going forward. *The Holmes Group, Inc. v. RPS Products, Inc.,* 424 F.Supp.2d 271, 292 (D. Mass, 2006) (finding that evidence of direct competition together with testimony by plaintiff that the false advertising would likely harm plaintiff's goodwill created a genuine issue of material fact as to likelihood of harm).

## CONCLUSION

Accordingly, for the reasons stated above, HipSaver respectfully requests that this Court permit HipSaver to offer evidence of its 2006 sales data.

Dated: June 12, 2007

Respectfully submitted,
The HipSaver Company, Inc.
By its Attorneys,

/s/ Courtney M. Quish
Lee Carl Bromberg, BBO No.: 058480
Edward J. Dailey, BBO No.: 112220
Courtney M. Quish, BBO No.: 662288
Paul S. Kitchin, BBO No.: 667954
BROMBERG SUNSTEIN, LLP
125 Summer Street - 11th floor
Boston, Massachusetts 02110-1618
617.443.9292
617.443.0004 Fax
cquish@bromsun.com

**CERTIFICATE OF SERVICE**

I certify that this document has been filed through the Electronic Case Filing System of the United States District Court for the District of Massachusetts and will be served electronically by the court to the Registered Participants identified in the Notice of Electronic filing.

/s/ Courtney M. Quish

02820/00502 684912.1

# EXHIBIT A

HipSaver US Sales 2001-2005

| | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 |
|---|---|---|---|---|---|---|
| jan | 11,310.23 | 46,932.78 | 36,410.92 | 71,566.23 | 61,268.69 | 62,932.84 |
| feb | 23,848.84 | 10,553.38 | 45,865.00 | 50,306.43 | 63,650.13 | 66,070.38 |
| mar | 16,235.92 | 37,282.96 | 37,589.26 | 39,151.18 | 62,941.34 | 154,812.60 |
| apr | 21,517.49 | 24,827.30 | 49,226.27 | 50,634.43 | 57,556.00 | 53,743.89 |
| may | 21,632.89 | 33,299.02 | 30,612.29 | 58,892.17 | 50,863.48 | 79,220.75 |
| june | 16,004.82 | 34,105.33 | 66,481.15 | 41,138.08 | 53,611.90 | 46,828.66 |
| july | 19,945.91 | 26,003.44 | 38,801.92 | 73,625.18 | 43,053.08 | 88,343.41 |
| aug | 26,799.87 | 32,618.94 | 51,837.51 | 59,366.48 | 76,133.63 | 75,148.81 |
| sept | 18,089.68 | 40,843.41 | 86,558.61 | 61,262.92 | 60,548.13 | 91,494.42 |
| oct | 25,631.27 | 23,123.63 | 33,034.12 | 54,289.07 | 65,918.13 | 58,159.90 |
| nov | 26,513.16 | 58,616.51 | 41,828.66 | 52,915.68 | 53,701.63 | 72,034.89 |
| dec | 12,540.11 | 35,360.08 | 43,041.58 | 70,181.15 | 97,676.78 | 51,888.61 |
| totals | 240,070.19 | $403,566.78 | $561,287.29 | $683,329.00 | $746,922.92 | 900,679.16 |
| % increase | | | | | | |
| Avg Unit Price | 25.55 | 29.78 | 30.41 | 31.01 | 31.4 | |
| Avg Shipping/unit | 1.33 | 1.27 | 1.26 | 1.16 | 1.23 | |
| Avg Unit Price 2001–2005 | | | | | 30.24 | |
| Avg Shipping/unit 2001–2005 | | | | | 1.24 | |

Trial Exhibit 569
Civil Action No. 05-10917 PBS

## Total USA

| | 2003 | 2004 | 2005 | 2006 |
|---|---|---|---|---|
| jan | | 70,381.23 | 58,716.69 | 62,932.84 |
| feb | | 48,557.43 | 63,650.13 | 66,070.38 |
| mar | | 43,712.43 | 61,756.34 | 152,166.60 |
| apr | | 60,423.55 | 57,556.81 | 49,924.89 |
| may | | 55,611.77 | 50,863.48 | 69,651.86 |
| june | | 38,018.08 | 53,611.90 | 45,034.66 |
| july | | 73,625.18 | 43,053.08 | 86,257.41 |
| aug | | 59,366.48 | 74,753.63 | 71,041.71 |
| sept | | 61,262.92 | 60,548.13 | 91,494.42 |
| oct | 33,034.12 | 54,289.07 | 65,918.13 | |
| nov | 39,079.16 | 52,915.68 | 53,701.63 | |
| dec | 43,041.58 | 70,181.15 | 97,676.78 | |
| totals | | 688,344.97 | 741,806.73 | 694,574.77 |



Trial Exhibit 569a
Civil Action No. 05-10917 PBS

Total USA ~ No VAMCs

| | 2003 | 2004 | 2005 | 2006 |
|---|---|---|---|---|
| jan | | 26,017.81 | 43,437.82 | 41,057.15 |
| feb | | 35,628.00 | 40,916.76 | 36,446.12 |
| mar | | 35,262.82 | 37,607.06 | 41,502.29 |
| apr | | 34,894.80 | 40,188.53 | 37,455.64 |
| may | | 48,746.65 | 37,968.74 | 41,069.39 |
| june | | 28,281.17 | 32,418.82 | 29,315.24 |
| july | | 35,645.49 | 32,044.01 | 40,451.58 |
| aug | | 33,876.35 | 38,346.47 | 51,360.33 |
| sept | | 38,193.75 | 23,878.93 | 47,010.59 |
| oct | 28,058.78 | 36,808.76 | 38,681.11 | |
| nov | 36,075.26 | 26,143.46 | 40,570.73 | |
| dec | 29,556.11 | 27,394.31 | 26,660.69 | |
| totals | | 406,893.37 | 432,719.67 | 365,668.33 |

Trial Exhibit
662
Civil Action No. 05-10917 PBS