**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

---

|  |  |  |
|---|---|---|
| THE HIPSAVER COMPANY, INC., | ) | |
| | ) | |
| Plaintiff / Counterclaim Defendant, | ) | |
| | ) | |
| v | ) | Civil Action No. 05-10917 PBS |
| | ) | |
| J.T. POSEY COMPANY, | ) | |
| | ) | |
| Defendant / Counterclaim Plaintiff. | ) | |
| | ) | |

---

**PRELIMINARY JURY INSTRUCTIONS**
**[PROPOSED BY PLAINTIFF, THE HIPSAVER COMPANY, INC.]**



THE HIPSAVER COMPANY, INC.
By its Attorneys,

Lee Carl Bromberg, BBO No. 058480
Edward J. Dailey, BBO No. 112220
Courtney M. Quish, BBO No. 662288
Paul S. Kitchin, BBO No.: 667954
BROMBERG SUNSTEIN, LLP
125 Summer Street - 11th floor
Boston, Massachusetts 02110-1618
617.443.9292

*Attorneys for Plaintiff, The HipSaver*
*Company, Inc.*

August 8, 2007

Plaintiff, The HipSaver Company, Inc. ("HipSaver"), respectfully requests that the Court read the attached preliminary jury instructions to the jury prior to the commencement of trial. These instructions are based on the Manual of Model Civil Jury Instructions (Ninth Circuit, 2004), unless otherwise noted. As the Ninth Circuit Jury Committee has previously stated:

> Preliminary instructions given at the beginning of the trial, while by no means a substitute for those given at the end of the case, serve the important function of orienting the jury to the nature of the trial to come. It is helpful to explain at the very start the nature and scope of the jury's duty, some of the basic ground rules, and the issues to be decided.

*Id.* (1997 ed.), Section 1, Introductory Comment; *see also Benchbook for U.S. District Court Judges*, Federal Judicial Center (4th Ed. 1996, with March 2000 revisions), Chapter 6.05. In addition to standard jury instructions regarding how the jurors should conduct themselves during the trial, HipSaver has proposed a very few preliminary instructions regarding the key substantive issues in the case (*e.g.*, what constitutes literally false advertising), and has done so only where the law is clear as to the applicable legal standard.[1] HipSaver believes that such preliminary instructions are necessary to orient the jurors as to the evidence they will hear at trial, especially given the number of claims and the complexity of the facts.

For the foregoing reasons, HipSaver respectfully requests that the following jury instructions be given to the jury at the commencement of trial, immediately prior to the opening statements.

---

[1] HipSaver is cognizant of the Ninth Circuit Jury Committee's statement that, "Erroneous pretrial instructions can be the basis for appeal. Caution, therefore, should be used in giving preliminary instructions when there is a dispute as to applicable law." *Id.* (2004 edition), Section 1, Introductory Comment.

Dated:  August 8, 2007

Respectfully submitted,
The HipSaver Company, Inc.
By its Attorneys,


/s/  Courtney M. Quish
Lee Carl Bromberg, BBO No.:  058480
Edward J. Dailey, BBO No.:  112220
Courtney M. Quish, BBO No.:  662288
Paul Kitchin, BBO No.: 667954
BROMBERG SUNSTEIN, LLP
125 Summer Street - 11th floor
Boston, Massachusetts 02110-1618
617.443.9292
617.443.0004  Fax
cquish@bromsun.com


## CERTIFICATE OF SERVICE

I certify that this document has been filed through the Electronic Case Filing System of the United States District Court for the District of Massachusetts and will be served electronically by the court to the Registered Participants identified in the Notice of Electronic filing.


/s/  Courtney M. Quish
Courtney M. Quish

**1.    DUTY OF JURY**

Ladies and gentlemen: You are now the jury in this case, and I want to take a few minutes to tell you something about your duties as jurors and to give you some instructions. At the end of the trial, I will give you more detailed instructions. Those instructions will control your deliberations. Please listen carefully to everything that I say. It is your duty to follow all of the instructions, including those that I give you now, instructions during trial and the instructions following the trial. All of the instructions are important, and you should consider them together as a whole.

You should not take anything I may say or do during the trial as indicating what I think of the evidence or what your verdict should be.

You have two main duties as jurors.[2] The first one is to decide what the facts are from the evidence that you see and hear here in court. Deciding what the facts are is your job, not mine. You should not take these instructions, or anything that I say or do during this trial, as indicating what I think of the evidence or what your verdict should be.

Your second duty is to take the law that I give you, apply it to the facts, and in this way decide the case. It is my job to instruct you about the law. Regardless of any opinion you may have as to what the law ought to be, you must base your verdict upon the law given by me.

This case should be considered and decided by you as an action between persons of equal standing in the community. All persons stand equal before the law and are to be dealt with as equals in a court of justice. Do not let any bias, sympathy, or prejudice that you may feel toward one side or the other influence your decision in any way.

---

[2]  Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware (1993); Manual of Model Civil Jury Instructions (Ninth Circuit, 2004).

## 2.    CLAIMS GENERALLY

## 2.1    SUMMARY OF THE CLAIMS

To help you follow the evidence, I will give you a brief summary of the positions of the parties.

The plaintiff in this case is The HipSaver Company.  We will refer to the plaintiff as HipSaver. HipSaver is a small company located in Canton, Massachusetts.  The company was founded in 1995 by Mr. Edward Goodwin.  HipSaver manufactures and sells hip protector garments for adults.  HipSaver sold its first HipSaver product in 1995.  These garments are worn like underwear, spandex or sweatpants and have pads sewn into the sides that are positioned over the hip bone, or trochanter, and are designed to prevent hip fractures.

The defendant is The J.T. Posey Company, Inc.  We will refer to the defendant as Posey. Posey is a California-based company that manufactures over 600 healthcare/safety products for patient restraint, fall safety, wound prevention, and wheelchair seating, among others.  Posey has annual revenues in excess of $40 million and is the dominant nationwide distributor of patient safety and support equipment devices.  Around 1999, Posey introduced its first hip protector product.  In 2002, Posey introduced a new hip protector product called the Hipster.

This case is about false advertising. HipSaver challenges a number of Posey advertisements for its Hipster product that all refer to a test conducted by Garwood Laboratories. These advertisements may sometimes be referred to collectively as "the Garwood ads."

HipSaver challenges these advertisements and claims that statements in the Garwood ads are literally false.  HipSaver further claims that these statements are material statements because they are likely to influence the purchasing decision and that the statements cause consumer deception.  HipSaver also claims that Posey published and distributed the allegedly false ads willfully and that the Garwood ads have caused injury to HipSaver's reputation and business prospects, and it seeks damages for its injury.

Posey denies all of HipSaver's claims.  Posey contends that the statements it made in the Garwood advertisements were not false.  Posey also claims that HipSaver has suffered no harm as a result of any statements made by Posey.

In addition to its false advertising claim, HipSaver also claims that Posey's distribution of the Garwood ads without notice breached an earlier settlement agreement between the parties. This settlement agreement was entered by HipSaver and Posey in 2004 to resolve an earlier false advertising dispute.

By way of background, the parties were involved in a previous dispute over false advertising in 2004.  In the 2004 litigation, HipSaver challenged the accuracy of Posey's distribution of an advertisement often referred to as the "UCLA White Paper" ad and the statements and bar charts in the advertisement that were placed in Posey catalogs and newsletters.  HipSaver challenged Posey's advertising as literally false.  Posey challenged claims

5

made by HipSaver on HipSaver's web-site. The parties resolved the lawsuit by settlement and signed a settlement agreement in September of 2004.

Under the terms of the settlement agreement, Posey withdrew the UCLA ad and issued a corrective advertising statement. The parties agreed also that, "[i]n the event of any further comparative testing of Posey and HipSaver products by either party, neither party shall make commercial advertising use of the results or analysis related to such testing without first giving the other party at least thirty (30) days advance written notice of the results or analysis."

Posey circulated the Garwood ads at issue in this case nationwide for at least ten months in 2004 and 2005. HipSaver claims that, in circulating the Garwood ads Posey engaged in false advertising and also breached the 2004 settlement agreement because Posey did not provide 30 days notice to HipSaver before distributing commercial advertising that appeared to make use of results of new comparative testing.

## 2.2 STIPULATED FACTS

The parties have stipulated to the following facts, which you should assume are true for the purposes of this case:

1. HipSaver was founded in 1995. HipSaver is a company headquartered in Canton, Massachusetts. HipSaver had annual revenues in 2005 and 2006 of about $1.5 million. HipSaver is organized and registered as a Massachusetts corporation.

2. Mr. Edward Goodwin founded the HipSaver Company and is the co-owner and President of HipSaver. He developed the HipSaver® hip protector, a soft foam washable encapsulated protective pad sewn into a garment. Mr. Goodwin has sold HipSaver hip protectors since about 1995. His product is sold in the United States, Canada, Europe, and Australia.

3. Ms. Helen Brogna is the majority owner and Executive Vice President of HipSaver.

4. Until 2006, HipSaver was a single product company, designing, developing, and manufacturing the HipSaver hip protector product.

5. HipSaver's hip protector garment is sold under the HipSaver trademark. HipSavers are sold to nursing homes, long term care facilities, rehabilitation hospitals, and consumers.

6. HipSaver maintains a web-site at www.hipsaver.com.

7. Posey was founded in 1937. Posey is a California corporation headquartered in Arcadia, California.

8. Mr. Ernest Posey is President of Posey.

9. Ms. Victoria Lewis serves as a product manager for Posey.

10. Mr. Charles Nail serves as the Controller for Posey.

11.    Posey is in the business of selling healthcare/safety products for patient restraint, fall safety, wound prevention, and wheelchair seating, among others.  Posey sells its products to nursing homes, long term care facilities and hospitals.  Posey's annual revenue for 2005 was slightly more than $40 million dollars.  Posey maintains a website at www.posey.com.

12.    A hip protector product is a product designed to protect at-risk individuals, primarily the elderly, against hip fractures caused by falls by reducing the force of the impact of the fall.

13.    Hip protectors may be comprised of entirely soft materials, entirely hard materials consisting essentially of a shield, or a combination of both hard and soft materials.

14.    Posey introduced its first soft hip protector into the market in the year 2000.  It was sold under the name "Hipster".  Posey later re-designed its soft hip protector.  Its re-designed soft hip protector was introduced into the market in approximately October 2001.

15.    HipSaver and Posey currently manufacture and sell entirely soft hip protectors.

16.    HipSaver and Posey are direct competitors in the hip protector market.

17.    This lawsuit challenges a series of advertisements published and distributed by J.T. Posey containing references to tests conducted by Garwood Laboratories.  These advertisements are referred to as the "Garwood Advertisement/s" or the "Garwood Ad/s".  Distribution of the ads in question commenced approximately in the latter part of 2001.

18.    Garwood Laboratories, Inc. is a California corporation that conducts various types of testing.

19.    In 2001, Posey paid Garwood to conduct some testing on some foam materials that Posey was considering using in the pads that are incorporated into its hip protectors.  Since 2001, Posey contracted with and retained Garwood Laboratories on a number of occasions to conduct material or product testing, including impact tests on hip protector materials and products in 2005.

20.    Garwood Laboratories conducted the "independent laboratory test" referred to in the Garwood ads.  The tests conducted by Garwood Laboratories are referred to as the "Garwood Test/s."

21.    Garwood performed two different types of tests for Posey.  In one of the tests, Garwood tested samples of raw materials.  Each material sample was placed under a 6" diameter weight weighing 72 lbs.  The weight was then raised in a guide to the specified height of twenty-four (24) inches, and dropped on the sample. This drop was repeated on each sample.  Impact amplitudes, measuring the force attenuation properties of the samples, were recorded.  This type of test is referred to as a "direct impact test."  Upon completion of each test, the test samples were inspected by a Posey representative and returned to Posey.

22.    Following the testing, Garwood produced reports to Posey detailing the results of the testing.

23.    In late 2001, Posey began disseminating advertising materials that made reference to the Garwood Test.  In these early advertisements, Posey stated that the tests were conducted in 2001. These early advertisements contained the following statements:

      a.    "A test was created that would simulate a fall causing direct impact to the greater trochanter."

      b.    "An independent laboratory study was conducted to determine the most effective impact absorbing material."

      c.    "In an independent laboratory test designed to simulate a fall causing direct impact to the greater trochanter, the Posey Hipster III reduced the impact force by 90%, the best results of any hip protector available."

      d.    "Posey Hipsters Proven Effective in Laboratory Tests"

      e.    "Posey Hipsters Help Protect Against Injury from Falls"

      f.    "Posey Hipster … showed excellent impact energy absorption."

24.    The Garwood Ads were contained in Posey product catalogs, product instruction sheets and brochures.  These materials were mailed to customers and prospective customers, distributed at trade shows and sent to people who requested information on Posey's Hipster hip protectors.

25.    Posey also distributed materials containing the Garwood Ads in late 2004. These materials repeated the same statements that were contained in the earlier Garwood Ads.

26.    At some point, Posey deleted the reference to the 2001 date.

27.    Beginning in 2004, the Garwood Ad was often placed on a flyer which included references to Posey's High Durability Hipster product.

28.    Posey's Garwood Advertisements were withdrawn in the fall of 2005.

29.    HipSaver's President, Mr. Goodwin, learned of Posey's Garwood Ads at least as early as 2002.

30.    Late in 2003, Posey distributed advertising that made reference to a so-called "UCLA White Paper."

31.    On June 10, 2004, HipSaver filed a lawsuit in the United States District Court for the District of Massachusetts, claiming, among other things, that the UCLA ads were false ("Posey I").

32.    In connection with its claims in Posey I, HipSaver sought, among other things, damages and preliminary and permanent injunctive relief halting and preventing further publication, distribution, or reference to the challenged UCLA advertisement or so-called "UCLA White Paper" or the false testing conducted in support of the UCLA White Paper.  HipSaver also

sought an injunction halting all further publication or distribution of, or reference to, materials that claimed Posey's hip protector products were superior to HipSaver's.

33.    In Posey I, Posey counterclaimed against HipSaver for, among other things, false advertising.  Posey's counterclaims arose out of HipSaver's publication of various statements regarding the parties' respective products on HipSaver's internet web-site.  On September 21, 2004, the parties settled the Posey I lawsuit.  As part of the settlement, the parties dismissed with prejudice the claims and counterclaims asserted in Posey I and entered into a written settlement agreement.

34.    After the Posey I settlement, HipSaver challenged Posey's Garwood advertising by way of a "cease and desist" letter dated May 3, 2005.  HipSaver filed this lawsuit on May 4, 2005.

35.    In May 2005, in response to HipSaver's letter objecting to Posey's advertising statements regarding the results of the Garwood Test, Posey changed some of the language in its advertisements.

36.    In August 2005, Posey eliminated any reference to the results of the Garwood advertising.  In addition, it removed the product instructions which mentioned Garwood from its web-site.

### 2.3    FINDINGS OF FACTS RELATED TO SPECIFIC CLAIMS

**At the conclusion of the trial, you will be asked to find additional facts and apply the law to the facts.  You will be asked to fill out a jury verdict form and questionnaire for that purpose.  You may be asked such questions as the following:**

### 2.3.a    FALSE ADVERTISING

**Did Posey distribute comparative advertisements?**

A comparative advertisement is one in which the advertising company claims relative product superiority.  A comparative advertising statement need not name a specific competitor in order to be considered false comparative advertising.  One type of comparative advertising statement proves product superiority based on tests.[3]

**Did Posey distribute literally false comparative advertisements?**

An advertisement is literally false if it contains literally false statements about itself, its own product, HipSaver, or the HipSaver's product.  A statement is literally false if it states or implies that tests or studies prove the challenged statements, but you find that the tests are not sufficiently reliable to support the statements, or alternatively, you find that, even if reliable, the tests do not establish that the advertising statements were true.[4]

---

[3]  Memorandum and Order (July 19, 2007) [D.N. 312] at 20; *Castrol v. Pennzoil Co.*, 987 F.2d 939 (3d Cir. 1993); McCarthy, Vol. 4, Ch. 27, § 59 at p. 27-124.
[4]  *Spalding Sports Worldwide, Inc. v. Wilson Sporting Goods Co.*, 198 F.Supp.2d 59, 67 (D. Mass. 2002) (Ponsor, J.).

I have already determined that two of Posey's advertising claims are literally false: the advertising claim that "An independent laboratory study was conducted to determine the most effective impact absorbing material," and the claim that "In an independent laboratory test designed to simulate a fall causing direct impact to the greater trochanter, the Posey Hipster III reduced the impact force below 90%, the best results of any hip protector available."[5] The falsity of these two claims is established and you do not need to consider the falsity of these two claims.

**If you find that Posey's statements in the Garwood advertisements are literally false, do you find that Posey willfully published and distributed these literally false advertisements?**

Conduct is "willful" if it is voluntary and intentional.[6]

**If you find that Posey's statements in the Garwood advertisements are literally false, do you find that the advertisements cause consumer deception?**

You may infer from the challenged statement/s themselves that the literally false statement/s would deceive consumers.[7] You may also infer consumer deception if you find that Posey intended to deceive the consuming public.[8] Intention to deceive the public may be found where, for example, Posey knew that a challenged advertising statement was misleading but failed to clarify the statement to minimize or remove consumer confusion.[9]

**If you find that the Garwood advertisements are literally false and caused deception, do you find that the deception is material?**

Deception is material if a challenged statement is "likely to influence the purchasing decision."[10] One method of establishing materiality involves showing that the false or misleading deception relates to an "inherent quality or characteristic" of the product.[11]

I have already determined that two of Posey's advertising claims are material: the advertising claim that "An independent laboratory study was conducted to determine the most effective impact absorbing material," and the claim that "In an independent laboratory test designed to simulate a fall causing direct impact to the greater trochanter, the Posey Hipster III

---

[5] Memorandum and Order (May 15, 2007) [D.N. 228] at p. 28 (granting HipSaver's Motion for Partial Summary Judgment in part by finding that the statements "An independent laboratory study was conducted to determine the most effective impact absorbing material," and "In an independent laboratory test designed to simulate a fall causing direct impact to the greater trochanter, the Posey Hipster III reduced the impact force below 90%, the best results of any hip protector available" are literally false).

[6] *Tamko Roofing Prods., Inc. v. Ideal Roofing Co., Ltd.*, 282 F.3d 23, 32 (1st Cir. 2002).

[7] *Cashmere*, 284 F.3d 302, 311; *Clorox*, 228 F.3d at 33, n.6; *see also Balance Dynamics Corp. v. Schmitt Indus.*, 204 F.3d 683, 693 (6th Cir. 2000) (noting that when a statement is literally false, "a plaintiff need not demonstrate actual customer deception in order to obtain relief "); *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1180 (8th Cir. 1998).

[8] *Cashmere*, 284 F.3d 302, 311.

[9] *Cashmere*, 284 F.3d 302, 316-17.

[10] *Clorox*, 228 F.3d at 33 n. 6.

[11] *Cashmere*, 284 F.3d at 311-312.

10

reduced the impact force below 90%, the best results of any hip protector available."[12] The materiality of these two claims is established and you do not need to consider the materiality of these two claims.

**If you find that deception in the Garwood advertisements are literally false and that the statement/s in the advertisement cause material deception, do you find that HipSaver has been injured as a result of the statement/s?**

If you find that Posey made any literally false comparative statements in the challenged advertising in a willful manner, that is with knowledge of their falsity, and that Posey and HipSaver compete in a two firm market, then HipSaver is entitled to a rebuttable presumption that it has been injured and harmed by false advertising.[13] In considering whether Posey's false advertising was willful, you may consider Posey's past advertising conduct.[14] Injury may also appear in many other forms: it may be shown by direct diversion of sales away from HipSaver to Posey, lost sales to HipSaver, and/or by a lessening of goodwill associated with HipSaver's products.[15] Posey may rebut the presumption of injury by presenting evidence that HipSaver has not been injured by literally false advertising.

---

[12]  Memorandum and Order (May 15, 2007)[D.N. 228] at p. 28 (granting HipSaver's Motion for Partial Summary Judgment in part by finding that the statements "An independent laboratory study was conducted to determine the most effective impact absorbing material," and "In an independent laboratory test designed to simulate a fall causing direct impact to the greater trochanter, the Posey Hipster III reduced the impact force below 90%, the best results of any hip protector available" are material).

[13]  *See* Memorandum and Order (July 19, 2007) [D.N. 312] at 19 ; *Porous Media Corp. v. Pall Corp.*, 110 F.3d 1329, 1332-33 (8th Cir. 1997) (affirming this jury instruction by the trial court in a Lanham Act false advertising case).

[14]  *JTH Tax, Inc. v. H & R Block Eastern Tax Servs. Inc.*, 128 F.Supp.2d 926, 938 (E.D. Va. 2001) (finding that Lanham Act false advertising was intentional, willful, and deliberate based in part on defendant's past advertising conduct and applying presumption of consumer deception for deliberate false advertising), *aff'd in part by* 28 Fed.Appx. 207, 211-12 (4th Cir. 2002) (affirming district court's finding of intentional, willful, and deliberate false advertising).

[15]  *Clorox Co. P.R. v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 33 n.6 (1st Cir. 2000); *see generally,* Julia Huston & Sarah C. Peck, "Defamation, Commercial Disparagement, and False Advertising," *Business Torts in Massachusetts* (MCLE, Inc. 2002).

**2.3.b    BREACH OF CONTRACT**

**Did Posey breach the settlement agreement when it published the Garwood Advertisements after the Settlement Agreement?**

a.    A contract is a legally enforceable promise or set of promises.  A settlement agreement is a contract.[16]

b.    A breach of contract claim is a failure to comply with one or more terms of the contract.

**If you find that Posey breached the settlement agreement, did HipSaver suffer damages as a result of Posey's breach?**[17]

a.    If a party breaches a contract, then the non-breaching party has a right to elect a remedy to redress the breach.  The type of breach must be considered in order to determine the remedies available to the non-breaching party.

b.    The basic principle of contract damages is that the injured party should be put in as good a position as if the other party had fully performed its obligations under the contract.

c.    In order to recover damages against Posey for breach of contract HipSaver must demonstrate that the damages complained of were caused by Posey's conduct.

---

[16]    *National Fire Protection Ass'n, Inc. v. Intern. Code Council, Inc.*, Case No. 03-10848, WL 839501 (D. Mass, March 29, 2006).
[17]    *Massachusetts Superior Court Civil Practice Jury Instructions*, v. 1, §14.3.

3.    **EVIDENCE IN THE CASE**[18]

You must make your decision based only on the evidence that you will see and hear here in the court. You should use your common sense in weighing the evidence. You should consider the evidence in the light of your own observations and experiences in life. You may draw such reasonable inferences as you believe to be justified from proved facts. You may not make any finding of fact based on surmise, speculation, or conjecture.

---

[18] *See* Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware (1993).

**4.    WHAT IS EVIDENCE**[19]

The evidence you are to consider in deciding what the facts are consists of the following three kinds of evidence:

1.    the sworn testimony of any witness;

2.    the exhibits that have been admitted into evidence; and

3.    any facts to which the lawyers have agreed.

---

[19] *See* Manual of Model Civil Jury Instructions, § 1.6 (Ninth Circuit, 2007).

5.    **WHAT IS NOT EVIDENCE**[20]

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition sometimes testimony and exhibits are received only for a limited purpose; when I have given a limiting instruction, you must follow it.

(4) Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

---

[20] *See* Manual of Model Civil Jury Instructions, § 1.7 (Ninth Circuit, 2007).

## 6.        EVIDENCE FOR LIMITED PURPOSE[21]

Some evidence may be admitted for a limited purpose only.  When I instruct you that an item of evidence has been admitted for a limited purpose, you must consider it only for that limited purpose and for no other.

---

[21]    *See* Manual of Model Civil Jury Instructions, § 1.8 (Ninth Circuit, 2007).

**7.      DIRECT AND CIRCUMSTANTIAL EVIDENCE**[22]

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

---

[22]  *See* Manual of Model Civil Jury Instructions § 1.9 (Ninth Circuit, 2007).

**8.    CHARTS AND SUMMARIES IN EVIDENCE**[23]

Certain charts and summaries will be received into evidence to illustrate information brought out in trial.  Charts and summaries are only as good as the underlying evidence that supports them.  You should, therefore, give them only such weigh as you think the underlying evidence deserves.

---

[23] Manual of Model Civil Jury Instructions, § 2.13 (Ninth Circuit, 2007).

## 9.    CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE[24]

Certain charts and summaries not received in evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case.  They are not themselves evidence or proof of any facts.  If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

---

[24]  *See* Manual of Model Civil Jury Instructions § 2.12 (Ninth Circuit, 2007).

## 10    BENCH CONFERENCES AND RECESSES[25]

From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess. Please understand that while you are waiting, we are working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we will do what we can to keep the number and length of these conferences to a minimum. I may not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

---

[25]  Manual of Model Civil Jury Instructions, § 1.18 (Ninth Circuit, 2007).

## 11.    RULING ON OBJECTIONS

During the trial, I may not let you hear the answers to some of the questions, and I may not let you see some of the exhibits. I may also order you to disregard things that you see or hear. You must not consider these answers or exhibits. You must ignore all of these things. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence.

## 12.     CREDIBILITY OF WITNESSES[26]

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, or part of it, or none of it. Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case and any bias or prejudice;

(5) whether other evidence contradicted the witness's testimony;

(6) the reasonableness of the witness's testimony in light of all the evidence; and

(7) any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

---

[26] *See* Manual of Model Civil Jury Instructions, § 1.11 (Ninth Circuit, 2007).

## 13.    EXPERT TESTIMONY

The rules of evidence ordinarily do not permit witnesses to testify as to opinions or conclusions.  An exception to this rule exists as to those whom we call "expert witnesses." Witnesses who, by education and experience, become very knowledgeable about some art, science, profession, field, or calling may state an opinion as to relevant and material matters only if they have expertise in that art, science, profession, field, or calling and only if the testimony is based upon sufficient facts and data; the testimony is the product of reliable principles and methods; and the witness applied the principles and methods reliably to the facts of the case.[27]  Expert witnesses may also state their reasons for the opinion.

You will hear the testimony of several expert witnesses.  You should consider each expert opinion received in evidence in this case, and give it such weight as you think it deserves.  However, the fact that an expert has given an opinion does not mean that you are obligated to accept it.  As with any other witness, it is up to you to decide whether to rely upon it.  You should assess the weight to be given to the expert opinion in light of all the evidence in this case and judge the credibility by the same standard as applied to ordinary witnesses.

---

[27] Fed. R. Evidence 702

14.     **CORPORATE RESPONSIBILITY**[28]

A corporation, such as J.T. Posey Company, can act only through real people.  A corporation is legally responsible for acts or omissions of its owners, officers, employees and agents.

---

[28]  See 3 Kevin F. O'Malley et al., *Federal Jury Practice and Instructions* § 103.31 (5th ed. 2000).

15.    **CONDUCT OF THE JURY**[29]

I will now say a few words about your conduct as jurors.

First, you are not to discuss this case with anyone, including your fellow jurors, members of your family, people involved in the trial, or anyone else, nor are you allowed to permit others to discuss the case with you.  If anyone approaches you and tries to talk to you about the case, please let me know about it immediately;

Second, do not read any news stories or articles or listen to any radio or television reports about the case or about anyone who has anything to do with it;

Third, do not do any research, such as consulting dictionaries, searching the Internet or using other reference materials, and do not make any investigation about the case on your own;

Fourth, if you need to communicate with me simply give a signed note to the clerk to give to me; and

Fifth, do not make up your mind about what the verdict should be until after you have gone to the jury room to decide the case and you and your fellow jurors have discussed the evidence.  Keep an open mind until then.

---

[29]  Manual of Model Civil Jury Instructions, § 1.12 (Ninth Circuit, 2007).

## 16.    NO TRANSCRIPT AVAILABLE TO JURY

At the end of the trial, you will have to make your decision based on what you recall of the evidence.  You will not have a transcript of the trial.  I urge you to pay close attention to the testimony as it is given.

17.     **TAKING NOTES**

If you wish, you may take notes to help you remember what witnesses said. If you do take notes, please keep them to yourself until you and your fellow jurors go to the jury room to decide the case. Do not let note-taking distract you so that you do not hear other answers by witnesses. When you leave, your notes should be left in the [courtroom] [jury room].

Whether or not you take notes, you should rely on your own memory of what was said. Notes are only to assist your memory. You should not be overly influenced by the notes.

18.    **OUTLINE OF TRIAL**

The next phase of the trial will now begin.  First, each side may make an opening statement.  An opening statement is not evidence.  It is simply an outline to help you understand what that party expects the evidence will show.  A party is not required to make an opening statement.

HipSaver will then present evidence, and counsel for Posey may cross-examine. Then Posey may present evidence, and counsel for HipSaver may cross-examine.

After the evidence has been presented, the attorneys will make closing arguments and I will instruct you on the law that applies to the case.

After that, you will go to the jury room to deliberate on your verdict.

*** 

02820/00502 682087.1