# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

_____

|  |  |  |
|---|---|---|
| THE HIPSAVER COMPANY, INC., | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v | ) | Civil Action No. 05-10917 PBS |
| | ) | |
| J.T. POSEY COMPANY, | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

_____

# JURY INSTRUCTIONS
# [PROPOSED BY PLAINTIFF, THE HIPSAVER COMPANY, INC.]

THE HIPSAVER COMPANY, INC.
By its Attorneys,

Lee Carl Bromberg, BBO No. 058480
Edward J. Dailey, BBO No. 112220
Courtney M. Quish, BBO No. 662288
Paul S. Kitchin, BBO No.: 667954
BROMBERG SUNSTEIN, LLP
125 Summer Street - 11th floor
Boston, Massachusetts 02110-1618
617.443.9292

*Attorneys for Plaintiff, The HipSaver
Company, Inc.*

## TABLE OF CONTENTS

1.    STANDARD PRELIMINARY INSTRUCTIONS ........................................................1

    1.1    Introduction ..........................................................................................1

    1.2    Function of the Court and the Jury ......................................................2

    1.3    Evidence in the Case ...........................................................................3

    1.4    What Is Evidence .................................................................................4

    1.5    What Is Not Evidence ..........................................................................5

    1.6    Evidence for Limited Purpose .............................................................6

    1.7    Direct and Circumstantial Evidence ....................................................7

    1.8    Charts and Summaries in Evidence ......................................................8

    1.9    Charts and Summaries Not Received In Evidence ...............................9

    1.10   Bench Conferences and Recesses ......................................................10

    1.11   Ruling on Objections .........................................................................11

    1.12   Credibility of Witnesses ....................................................................12

    1.13   Expert Testimony ...............................................................................13

    1.14   Corporate Responsibility ...................................................................14

    1.15   Conduct of the Jury ...........................................................................15

    1.16   No Transcript Available to the Jury ..................................................16

2.    CLAIMS IN GENERAL ....................................................................................17

    2.1    Overview ............................................................................................17

    2.2    Burden of Proof..................................................................................20

3.    FALSE ADVERTISING ....................................................................................21

    3.1    Elements of a False Advertising Claim .............................................21

|   |   | a) | Direct Competition..................................................................................21 |
|---|---|---|---|
|   |   | b) | Challenged Advertising .........................................................................22 |
|   |   | c) | Comparative ...........................................................................................22 |
|   |   | d) | Literally False or Misleading Statement................................................22 |
|   |   | e) | Willfulness .............................................................................................23 |
|   |   | f) | The Statement Actually Deceives or Has the Tendency to Deceive.........23 |
|   |   | g) | The Deception Must Be Material............................................................24 |
|   |   | h) | HipSaver Has Been or is Likely to Be Injured as a Result of the Statement ................................................................................................25 |

|   | 3.2 | False Advertising Damages – Posey's Profits....................................................27 |
|---|---|---|
|   | 3.3 | Intentional False Advertising ............................................................................28 |
| 4. | BREACH OF CONTRACT...............................................................................................29 |
|   | 4.1 | Elements of a Breach of Contract Claim ...........................................................30 |
|   | 4.2 | Damages for Breach of Contract ........................................................................31 |
| 5. | DAMAGES GENERALLY................................................................................................32 |
| 6. | STIPULATED FACTS .....................................................................................................34 |
| 7. | DELIBERATION AND VERDICT....................................................................................35 |
|   | 7.1 | Selection of Foreperson and Form of Verdict ....................................................35 |
|   | 7.2 | Jury Communications .........................................................................................36 |
|   | 7.3 | Unanimous Verdict .............................................................................................37 |
|   | 7.4 | Court Has No Opinion ........................................................................................38 |

# 1.    STANDARD PRELIMINARY INSTRUCTIONS

## 1.1    Introduction[1]

Members of the jury, the evidence and arguments in this case have been completed and I will now instruct you as to the law you must follow in deciding this case.  I will start by explaining your duties and the general rules that apply in every civil case.  Then I will explain the positions of the parties and the law you will apply in this case.  And last, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.  Please listen carefully to everything that I say.  It is your duty to follow all of the instructions, including those that I gave you before and during trial, as well as these instructions.  All of the instructions are important, and you should consider them together as a whole.

---

[1]  *See* Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware (1993); 3 Kevin F. O'Malley et al., *Federal Jury Practice and Instructions* § 103.01 (5th ed. 2000).

**1.2     Function of the Court and the Jury**[2]

You have two main duties as jurors.  The first one is to decide what the facts are from the evidence that you saw and heard here in court.  Deciding what the facts are is your job, not mine. You should not take these instructions, or anything that I have said or done during this trial, as indicating what I think of the evidence or what your verdict should be.

Your second duty is to take the law that I give you, apply it to the facts, and in this way decide the case.  It is my job to instruct you about the law.  Regardless of any opinion you may have as to what the law ought to be, you must base your verdict upon the law given by me.

This case should be considered and decided by you as an action between persons of equal standing in the community.  All persons stand equal before the law and are to be dealt with as equals in a court of justice.  Do not let any bias, sympathy, or prejudice that you may feel toward one side or the other influence your decision in any way.

---

[2]  Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware (1993); Manual of Model Civil Jury Instructions (Ninth Circuit, 2004).

**1.3     Evidence in the Case**[3]

You must make your decision based only on the evidence that you saw and heard here in court.  You should use your common sense in weighing the evidence.  You should consider the evidence in light of your own observations and experiences in life.  You may draw such reasonable inferences as you believe to be justified from proved facts.  You may not make any finding of fact based on surmise, speculation, or conjecture.

---

[3]  *See* Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware (1993).

**1.4    What Is Evidence**[4]

The evidence you are to consider in deciding what the facts are consists of the following three kinds of evidence:

1.      the sworn testimony of any witness;

2.      the exhibits that have been admitted into evidence; and

3.      any facts to which the lawyers have agreed.

---

[4]  *See* Manual of Model Civil Jury Instructions, § 1.6 (Ninth Circuit, 2007).

### 1.5     What Is Not Evidence[5]

In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

(1)  Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they have said in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2)  Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.

(3)  Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition sometimes testimony and exhibits are received only for a limited purpose; when I have given a limiting instruction, you must follow it.

(4)  Anything you may have seen or heard when the court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.

---

[5]  *See* Manual of Model Civil Jury Instructions, § 1.7 (Ninth Circuit, 2007).

**1.6     Evidence for Limited Purpose**[6]

Some evidence may be admitted for a limited purpose only.  When I instructed you that an item of evidence has been admitted for a limited purpose, you must consider it only for that limited purpose and for no other.

---

[6] *See* Manual of Model Civil Jury Instructions, § 1.8 (Ninth Circuit, 2007).

**1.7    Direct and Circumstantial Evidence**[7]

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

---

[7]  *See* Manual of Model Civil Jury Instructions § 1.9 (Ninth Circuit, 2007).

**1.8     Charts and Summaries in Evidence**[8]

Certain charts and summaries have been received into evidence to illustrate information brought out in trial.  Charts and summaries are only as good as the underlying evidence that supports them.  You should, therefore, give them only such weigh as you think the underlying evidence deserves.

---

[8]  *See* Manual of Model Civil Jury Instructions § 2.13 (Ninth Circuit, 2007).

**1.9    Charts and Summaries Not Received In Evidence**[9]

Certain charts and summaries not received in evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case.  They are not themselves evidence or proof of any facts.  If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

---

[9]  *See* Manual of Model Civil Jury Instructions § 2.12 (Ninth Circuit, 2007).

**1.10     Bench Conferences and Recesses**[10]

From time to time during the trial, it became necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess.  Please understand that while you were waiting, we were working.  The purpose of these conferences was not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we did what we could to keep the number and length of these conferences to a minimum.  I may not have always granted an attorney's request for a conference.  Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

---

[10]   Manual of Model Civil Jury Instructions, § 1.18 (Ninth Circuit, 2007).

### 1.11     Ruling on Objections

During the trial, I may not have let you hear the answers to some of the questions, and I may not have let you see some of the exhibits.  I may also have ordered you to disregard things that you saw or heard.  You must not consider these answers or exhibits. You must ignore all of these things.  Do not speculate about what a witness might have said or what an exhibit might have shown.  These things are not evidence.

## 1.12    Credibility of Witnesses[11]

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, or part of it, or none of it.  Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case and any bias or prejudice;

(5) whether other evidence contradicted the witness's testimony;

(6) the reasonableness of the witness's testimony in light of all the evidence; and

(7) any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

---

[11] *See* Manual of Model Civil Jury Instructions, § 1.11 (Ninth Circuit, 2007).

### 1.13  Expert Testimony[12]

The rules of evidence ordinarily do not permit witnesses to testify as to opinions or conclusions.  An exception to this rule exists as to those whom we call "expert witnesses".  Witnesses who, by education and experience, become very knowledgeable about some art, science, profession, field, or calling may state an opinion as to relevant and material matters only if they have expertise in that art, science, profession, field, or calling and only if the testimony is based upon sufficient facts and data; the testimony is the product of reliable principles and methods; and the witness applied the principles and methods reliably to the facts of the case.[13]  They also may state their reasons for the opinion.

You have heard the testimony of several expert witnesses.  You should consider each expert opinion received in evidence in this case, and give it such weight as you think it deserves.  However, the fact that an expert has given an opinion does not mean that you are obligated to accept it.  As with any other witness, it is up to you to decide whether to rely upon it.  You should assess the weight to be given to the expert opinion in the light of all the evidence in this case and judge the credibility by the same standard as applied to ordinary witnesses.

---

[12] *See 3* Kevin F. O'Malley et al., *Federal Jury Practice and Instructions* § 104.40 (5th ed. 2000).
[13] Fed. R. Evidence 702

### 1.14   Corporate Responsibility[14]

A corporation, such as J.T. Posey Company, can act only through real people.  A corporation is legally responsible for acts or omissions of its owners, officers, employees and agents.

---

[14]  See 3 Kevin F. O'Malley et al., *Federal Jury Practice and Instructions* § 103.31 (5th ed. 2000).

### 1.15    Conduct of the Jury[15]

I will now say a few words about your conduct as jurors.

First, you are not to discuss this case with anyone, including members of your family, people involved in the trial, or anyone else; this includes discussing the case in internet chat rooms or through internet "blogs," internet bulletin boards, or email. Nor are you allowed to permit others to discuss the case with you. If anyone approaches you and tries to talk to you about the case, please let me know about it immediately.

Second, do not read or listen to any news stories, articles, radio, television, or on-line reports about the case or about anyone who has anything to do with it;

Third, do not do any research, such as consulting dictionaries, searching the Internet or using other reference materials, and do not make any investigation about the case on your own;

Fourth, if you need to communicate with me, simply give a signed note to the clerk to give to me; and

Fifth and finally, do not make up your mind about what the verdict should be until after you have gone to the jury room to decide the case and you and your fellow jurors have discussed the evidence. Keep an open mind until then.

---

[15]  Manual of Model Civil Jury Instructions, § 1.12 (Ninth Circuit, 2007).

### 1.16    No Transcript Available to the Jury

During deliberations, you will have to make your decision based on what you recall of the evidence.  You may review exhibits and documents and charts and other materials which have been received into evidence.  These materials will all be in the jury room.

You will not have a transcript of the trial testimony.  However, for good reason, you may ask to have testimony read to you.  If you believe there is good reason to review testimony, please state the reason in writing; and submit your request to me.

## 2.     CLAIMS IN GENERAL

### 2.1     Overview

I will now provide you with an overview as to the claims in this case. I will then instruct you on the law as to each of these claims, in detail.

As you know, the plaintiff in this case is The HipSaver Company. We will refer to the plaintiff as HipSaver. HipSaver is a small company in Canton, Massachusetts. The company was founded in 1995 by Mr. Edward Goodwin. HipSaver manufactures and sells hip protector garments for adults. HipSaver sold its first HipSaver product in 1995. These garments are worn like underwear, spandex or sweatpants and have pads sewn into the sides that are positioned over the trochanter, or hip bone and are designed to prevent hip fractures. Because hip fractures often lead to more serious injuries and even death, hip protectors are a very low cost but valuable preventative care product. HipSaver was the first to offer an all soft hip protector product like the one just described. Over the years, HipSaver has continued to improve upon its product by testing and identifying the force attenuation properties of different foams and improving upon the durability of the product.

The defendant is The J.T. Posey Company, Inc. We will refer to the defendant as Posey. Posey is a California-based company that manufactures over 600 healthcare/safety products for patient restraint, fall safety, wound prevention, and wheelchair seating, among others. Posey has annual revenues in excess of $40 million and is the dominant nationwide distributor of patient safety and support equipment devices. In 1999 Posey introduced its first hip protector product. In 2002, Posey introduced a new hip protector product called the Hipster.

These parties have been involved in litigation once before in 2004. In 2004, HipSaver challenged the truth of Posey's advertising of the so-called UCLA white paper. The UCLA

white paper advertisement claimed that Posey's product had been scientifically validated at UCLA. HipSaver challenged the accuracy of the White Paper and the statements and bar charts in catalogs and newsletters distributed nationwide by Posey. In the 2004 lawsuit, HipSaver challenged Posey's advertising as literally false. The parties resolved the lawsuit by settlement and signed a settlement agreement in September of 2004.

Under the terms of the settlement agreement, Posey paid $360,000 to HipSaver and agreed to circulate a corrective advertising statement to customers. Also under the terms of the agreement, the parties agreed that, "[i]n the event of any further comparative testing of Posey and HipSaver products by either party, neither party shall make commercial advertising use of the results or analysis related to such testing without first giving the other party at least thirty (30) days advance written notice of the results or analysis."

Following this settlement, Posey revived advertisements relating to comparative testing of HipSaver and Posey hip protector pad which it had conducted first in 2001. Posey had originally circulated these advertisements in at least 2002 and 2003. In some cases, the new advertisements which appeared in the fall of 2004 were revised slightly by removing the 2001 testing date and posting the results in flyers for new products, such that the tests cited by the flyers might appear to be tests conducted more recently than 2001. But in all of these new advertisements, Posey was referring to testing conducted for it at Garwood Laboratories. These ads have sometimes been referred to as the Garwood Advertisements.

Posey circulated the Garwood Advertisements nationwide for at least ten months in 2004 and 2005. In this lawsuit, HipSaver claims that the advertisements are comparative and challenges the claims in the Garwood Advertisement as literally false and unfair or deceptive. HipSaver alleges that Posey's statements in the Garwood Advertisements have been willful and

18

have caused injury to HipSaver's reputation and business prospects, and it seeks damages for its injury.

HipSaver also claims that, in circulating the Garwood Advertisement, Posey breached the 2004 settlement agreement. Posey did not provide 30 days notice to HipSaver before distributing commercial advertising that appeared to make use of results of new comparative testing. HipSaver alleges that Posey's breach caused injury to HipSaver's reputation and business prospects, and it seeks damages for this injury.

Finally, HipSaver alleges that Posey's actions constitute unfair and deceptive trade practices.

Posey denies all of HipSaver's claims. Posey contends that the statements it made in the Garwood advertisements were not false. Posey also claims that HipSaver has suffered no harm as a result of any statements made by Posey.

## 2.2    Burden of Proof

HipSaver has the burden of proving the elements of its claims by the preponderance of the evidence.  "Preponderance of the evidence" simply means "more likely than not."  A party in a civil case having the burden of proving a particular fact does not have to establish the existence of that fact as an absolute certainty or a moral certainty.  It is sufficient if the party having the burden of proving a particular fact establishes the existence of that fact as the greater likelihood, the greater probability. That is what preponderance of evidence really means: more likely than not.

### 3.     FALSE ADVERTISING

### 3.1     Elements of a False Advertising Claim

HipSaver has claimed that Posey has engaged in false advertising under the Lanham Act § 43(a).

In order to prevail on a false advertising claim under the Lanham Act, HipSaver must prove, by a preponderance of the evidence:

a. Posey and HipSaver are direct competitors;

b. The challenged Posey advertisements make a false or misleading statement or description of fact or misrepresentation about its own or another company's products;

c. The misleading description or misrepresentation is comparative;

d. The misleading description or misrepresentation is literally false;

e. Posey willfully published and distributed these literally false advertisements;

f. The advertising statement actually deceives or has the tendency to deceive a substantial segment of its audience;

g. The deception is material (i.e., it is likely to influence the purchasing decision);

h. HipSaver has been or is likely to be injured as a result of the statement, either by direct diversion of sales away from HipSaver and to Posey and/or by a lessening of goodwill associated with HipSaver's products.[16]

I will walk through each of these elements:

### a)     Direct Competition

I have already determined that the parties agree that HipSaver and Posey are direct competitors.[17]  Posey and HipSaver are the dominant sellers of soft hip protectors in the United States.[18]

---

[16]   *See* Memorandum and Order (May 15, 2007) [DN 228] at 21 *citing Cashmere,* 284 F.3d at 310-11 (citation omitted).
[17]   *See* Plaintiff's Trial Brief [D.N. 274] at p. 9, Stipulated Fact No. 16.
[18]   *See* Memorandum and Order (May 15, 2007) [DN 228] at 3.

**b)**    **Challenged Advertising**

A challenged advertising statement must make a false or misleading statement or description of fact or a misrepresentation about Posey's product or about another company's product. An advertisement need not name a competitor in order to be false or misleading or a misrepresentation.[19]

**c)**    **Comparative**

A comparative advertising statement is one in which the advertising company claims relative product superiority backed up by tests.[20] A comparative advertising statement need not name a specific competitor in order to be considered false comparative advertising.[21]

**d)**    **Literally False or Misleading Statement**

First, HipSaver must show that Posey made a literally false statement in an advertisement. A literally false statement is one that is literally false on its face.

HipSaver challenges claims in Posey's advertisements that are purportedly supported by tests. Where a defendant's ad explicitly or implicitly represents that tests or studies prove its product superior, a plaintiff satisfies its burden of proving that the advertising claim is literally false by showing that the tests did not establish the proposition for which they were cited.[22] HipSaver can meet this burden by demonstrating that the tests were not sufficiently reliable to permit a conclusion stated in the advertisement.[23]  Or, HipSaver can meet this burden by showing that the tests, even if reliable, do not establish the proposition asserted by the

---

[19]  *Castrol v. Pennzoil Co.*, 987 F.2d 939 (3d Cir. 1993); McCarthy, Vol. 4, Ch. 27, § 59 at p. 27-124.

[20]  *See* Memorandum and Order (July 19, 2007) [DN 312] at 20.

[21]  McCarthy, Vol. 4, Ch. 27, § 59 at p. 27-124; *Castrol v. Pennzoil Co.*, 987 F.2d 939, 946 (3d Cir. 1993)("[T]here need not be a direct comparison to a competitor for statement to be actionable under the Lanham Act").

[22]  Memorandum and Order (May 15, 2007) [DN 228] at 22 *citing Castrol, Inc. v. Quaker State Corp*., 977 F.2d 57, 63 (2d Cir. 1992).

[23]  Memorandum and Order (May 15, 2007) [DN 228] at 22-23 *citing Castrol, Inc. v. Quaker State Corp*., 977 F.2d 57, 63 (2d Cir. 1992)(*citing*, inter alia, *McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co*., 938 F.2d 1544 (2d Cir. 1991)).

defendant.[24]  If you find that the tests cited by Posey in its advertisements were not reliable or that they did not support Posey's advertising statements, then the advertising claims must be found to be literally false even if it is claimed that the tests were conducted in good faith.[25]

I have already determined that two of Posey's advertising claims are literally false: the advertising claim that "An independent laboratory study was conducted to determine the most effective impact absorbing material," and the claim that "In an independent laboratory test designed to simulate a fall causing direct impact to the greater trochanter, the Posey Hipster III reduced the impact force below 90%, the best results of any hip protector available."[26]  The falsity of these two claims is established and you do not need to consider the falsity of these two claims.

**e)    Willfulness**

Conduct is "willful" if it is voluntary and intentional.[27]

**f)    The Statement Actually Deceives or Has the Tendency to Deceive**

In order to prove false advertising under the Lanham Act, HipSaver must show that the literally false statement actually deceives or has the tendency to deceive consumers.  However, there are two exceptions to this requirement.

- Where the challenged statement is literally false, you may infer from the statement itself that the literally false statement would deceive consumers.[28]

---

[24]  Memorandum and Order (May 15, 2007) [DN 228] at 23 *citing Spalding Sports Worldwide, Inc. v. Wilson Sporting Goods Co*., 198 F. Supp. 2d 59, 67 (D. Mass. 2002) (*citing Castrol, Inc. v. Pennzoil Quaker State Co*., 169 F. Supp. 2d 332, 336 (D.N.J. 2001)).

[25]  *Gillette Co. v. Norelco Consumer Prods. Co.*, 946 F.Supp. 115, 121-22 (D. Mass. 1996) (Lindsay, J.).

[26]  Memorandum and Order (May 15, 2007) [D.N. 228] at 28 (granting HipSaver's Motion for Partial Summary Judgment in part by finding that the following statements literally false: "An independent laboratory study was conducted to determine the most effective impact absorbing material," and "In an independent laboratory test designed to simulate a fall causing direct impact to the greater trochanter, the Posey Hipster III reduced the impact force below 90%, the best results of any hip protector available").

[27]  *Tamko Roofing Prods., Inc. v. Ideal Roofing Co., Ltd.*, 282 F.3d 23, 32 (1st Cir. 2002).

[28]  *Cashmere*, 284 F.3d 302, 311; *Clorox*, 228 F.3d at 33, n.6; s*ee also Balance Dynamics Corp. v. Schmitt Indus.*, 204 F.3d 683, 693 (6th Cir. 2000) (noting that when a statement is literally false, "a plaintiff need not demonstrate actual customer deception in order to obtain relief"); *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1180 (8th

- Deception may also be established if you find that Posey intended to deceive the consuming public.[29] Intention to deceive may be found where, for example, Posey knew that a challenged advertising statement was misleading but failed to clarify the statement to minimize or remove consumer confusion.[30] In considering whether Posey's false advertising was intentional, you may consider Posey's past advertising conduct, including its earlier advertising campaign which was withdrawn as part of a settlement agreement with HipSaver.[31]

## g)     The Deception Must Be Material

The materiality component of a false advertising claim requires HipSaver to prove that Posey's deception is "likely to influence the purchasing decision."[32] One method of establishing materiality involves showing that the false or misleading statement relates to an "inherent quality or characteristic" of the product.[33]

I have already determined that two of Posey's advertising claims are material: the advertising claim that "An independent laboratory study was conducted to determine the most effective impact absorbing material," and the claim that "In an independent laboratory test designed to simulate a fall causing direct impact to the greater trochanter, the Posey Hipster III reduced the impact force below 90%, the best results of any hip protector available."[34] The

---

Cir. 1998).

[29] *Cashmere*, 284 F.3d 302, 311.

[30] *Cashmere*, 284 F.3d 302, 316-17.

[31] *JTH Tax, Inc. v. H & R Block Eastern Tax Servs. Inc.*, 128 F.Supp.2d 926, 938 (E.D. Va. 2001) (finding that Lanham Act false advertising was intentional, willful, and deliberate based in part on defendant's past advertising conduct and applying presumption of consumer deception for intentional false advertising), *aff'd in part by* 28 Fed.Appx. 207, 211-12 (4th Cir. 2002) (affirming district court's finding of intentional, willful, and deliberate false advertising).

[32] *Clorox*, 228 F.3d at 33 n. 6.

[33] *Cashmere*, 284 F.3d at 311-312.

[34] Memorandum and Order (May 15, 2007)[D.N. 228] at p. 28 (granting HipSaver's Motion for Partial Summary Judgment in part by finding that the statements "An independent laboratory study was conducted to determine the most effective impact absorbing material," and "In an independent laboratory test designed to simulate a fall causing direct impact to the greater trochanter, the Posey Hipster III reduced the impact force below 90%, the best results of any hip protector available" are material).

materiality of these two claims is established and you do not need to consider the materiality of these two claims.

**h)    HipSaver Has Been or is Likely to Be Injured as a Result of the Statement**

In order to find that HipSaver has been or is likely to be injured as a result of the statement, you must find that HipSaver suffered actual harm or is likely to suffer actual harm in the future.

If you should find that Posey made any literally false comparative statements in the challenged advertising in a willful or deliberate manner, that is with knowledge of their falsity, and that Posey and HipSaver compete in a two firm market then you may presume that HipSaver has suffered harm.[35]  In considering whether Posey's false advertising was willful or deliberate, you may consider Posey's past advertising conduct.[36]

For a showing of actual harm, "[a] precise showing is not required, and a diversion of sales, for example, would suffice."[37]  HipSaver must prove the fact of damage with reasonable certainty, which can be satisfied by "proof of some damage flowing from Posey's unlawful act."[38]  Proof of damage does not necessarily require a showing of a decrease in sales; you may find harm if HipSaver's sales continued to grow but the rate of growth decreased as a result of Posey's actions.[39]  For example, if you find that HipSaver lost sales as a result of Posey's advertising or that HipSaver's growth slowed as a result of Posey's advertising or that HipSaver's sales or potential sales were diverted to Posey as a result of the advertising, you

---

[35]  *See* Memorandum and Order at 19 (DN 312, July 19, 2007); *Porous Media Corp. v. Pall Corp.*, 110 F.3d 1329, 1332-33 (8th Cir. 1997) (affirming this jury instruction by the trial court in a Lanham Act false advertising case).

[36]  *JTH Tax, Inc. v. H & R Block Eastern Tax Servs. Inc.*, 128 F.Supp.2d 926, 938 (E.D. Va. 2001) (finding that Lanham Act false advertising was intentional, willful, and deliberate based in part on defendant's past advertising conduct and applying presumption of consumer deception for deliberate false advertising), *aff'd in part by* 28 Fed.Appx. 207, 211-12 (4th Cir. 2002) (affirming district court's finding of intentional, willful, and deliberate false advertising).

[37]  *Cashmere and Camel Hair Manufacturer's Institute v. Saks Fifth Avenue*, 284 F.3d 302, 318 (1st Cir. 2002).

[38]  *Ricky Smith Pontiac, Inc. v. Subaru of New England, Inc.*, 14 Mass.App.Ct. 396, 422-423 (1982).

[39]  *Ricky Smith Pontiac, Inc.*, 14 Mass.App.Ct. at 422-423 (1982); *see also Rebel Oil Co. v. Atlantic Richfield Co.*,

have found actual harm.[40]

---

957 F.Supp. 1184, 1197 (D. Nev. 1997)(finding that a material issue of fact existed with respect to lost profits even where there was steady growth in the plaintiff's profit margins throughout the period in question).

[40]   *Ricky Smith Pontiac, Inc.*, 14 Mass.App.Ct. at 422-423 (1982)(awarding lost profits for loss of additional sales even though plaintiff's sales increased over time)

**3.2    False Advertising Damages – Posey's Profits**[41]

If you find that HipSaver has been harmed, you may determine an amount of damages to be paid to HipSaver. Your determination will be advisory. Under federal law, I will make the final determination of damages.

In calculating an award, you may award Posey's profits to HipSaver as a measure of HipSaver's injury.[42] HipSaver has the burden of proving Posey's gross revenue by a preponderance of the evidence. Profit is determined by deducting all expenses from gross revenue. Gross revenue is all of Posey's receipts from using false advertising in the sale of hip protectors.

Posey has the burden of proving the expenses and the portion of the profit attributable to factors other than false advertising by a preponderance of the evidence. Expenses are all operating and production costs incurred in producing the gross revenue.

---

[41]  Manual of Model Civil Jury Instructions (Ninth Circuit, 2004).
[42]  *Vermont Pure Holdings, Ltd. v. Nestle Waters North America, Slip Copy* Case No. 03-11465, 2006 WL 839486 at * 12 (D. Mass. March 28, 2006)(Woodlock, J.); *Tamko Roofing Products, Inc. v. Ideal Roofing Company, Ltd.*, 282 F.3d 23 (1st Cir. 2002)(Lynch, J.).

### 3.3     Intentional False Advertising[43]

If you find that the Posey engaged in false advertising, you must also determine whether Posey's false advertising was deliberate or willful, knowing that its advertising was false.[44]

In considering whether Posey's false advertising was deliberate or willful, you may consider Posey's past advertising conduct, including its earlier advertising campaign which was withdrawn as part of a settlement with HipSaver.[45]

---

[43]  *See* Manual of Model Civil Jury Instructions (Ninth Circuit, 2004).

[44]  *See Tamko Roofing Products, Inc. v. Ideal Roofing Company, Ltd.*, 282 F.3d 23, 31 (1st Cir. 2002) (Lynch, J.) (affirming attorney's fees award based on an advisory jury finding that Lanham Act violation was willful).

[45]  *JTH Tax, Inc. v. H & R Block Eastern Tax Servs. Inc.*, 128 F.Supp.2d 926, 938 (E.D. Va. 2001) (finding that Lanham Act false advertising was intentional, willful, and deliberate based in part on defendant's past advertising conduct), *aff'd in part by* 28 Fed.Appx. 207, 211-12 (4th Cir. 2002) (affirming district court's finding of intentional, willful, and deliberate false advertising).

**4.    BREACH OF CONTRACT**

HipSaver claims that Posey breached the 2004 settlement agreement between the parties by distributing its Garwood advertisements in 2004 and 2005 without providing 30 days advance notice.  The settlement agreement requires 30 days advance notice unless HipSaver was aware that the Garwood ads were already being used by Posey at the time of the 2004 settlement agreement.

### 4.1     Elements of a Breach of Contract Claim[46]

A contract is a legally enforceable promise or set of promises.  A settlement agreement is a contract.[47]  A breach of contract claim is a failure to comply with one or more terms of the contract.  In order to recover for breach of contract, the non-breaching party must have completely performed its own obligation under the contract.  Where one party to a contract has failed to perform its obligations, then as a matter of law the other party is thereafter excused from performing its contractual obligations.

In order to prevail on its breach of contract claim, HipSaver must prove the following four elements by a preponderance of the evidence:

1.  that there is a contract;

2.  that HipSaver performed its obligations under the contract (or is excused from performance);

3.  that Posey breached the contract; and

4.  that HipSaver suffered damages as a result of the breach of contract.

---

[46] *Massachusetts Superior Court Civil Practice Jury Instructions*, §14.1.19
[47]  *National Fire Protection Ass'n, Inc. v. Intern. Code Council, Inc.*, Case No. 03-10848, WL 839501 (D. Mass, March 29, 2006).

### 4.2    Damages for Breach of Contract[48]

For every breach of a promise made on good consideration, the law awards some damage.  Actual damages stemming from a breach of contract must be proven.  However, if a breach is found but actual damages are not proven, the plaintiff is entitled, at least, to nominal damages.[49]

Actual damages must be proven.  If a party breaches a contract, then the non-breaching party has a right to elect a remedy to redress the breach.  The type of breach must be considered in order to determine the remedies available to the non-breaching party.

There are two kinds of breach of contract—material breaches and immaterial breaches.  A material breach occurs when there is a breach of an essential feature of the contract, or when there is a breach that goes to the heart of the agreement.

The basic principle of contract damages is that the injured party should be put in as good a position as if the other party had fully performed its obligations under the contract.[50]

In order to recover damages against Posey for breach of contract HipSaver must demonstrate that the damages complained of were caused by Posey's conduct.

If you find that Posey breached the settlement agreement but that HipSaver failed to prove that it sustained any actual damages, you may return a verdict for HipSaver on its breach of contract claim and fix the amount of compensatory damages in a nominal sum such as one dollar.[51]

---

[48]  *Massachusetts Superior Court Civil Practice Jury Instructions*, v. 1, §14.3.
[49]  *Corbett v. Derman Shoe Co.*, 338 Mass. 405, 412 (1959).
[50]  *Massachusetts Superior Court Civil Practice Jury Instructions*, v. 1, §14.3.1(a).
[51]  *Corbett v. Derman Shoe Co.*, 338 Mass. 405, 412 (1959).

5.    **DAMAGES GENERALLY**

If you find that HipSaver has proven one or more of its claims against Posey, then you will need to decide the amount of damages, if any, that HipSaver should recover for the harm that was caused or substantially caused by Posey. "Damages" means the amount of money that will reasonably and fairly compensate HipSaver for the injury it suffered as a result of Posey's unlawful conduct.[52] I have already charged you with instructions pertaining to each of the claims set forth by HipSaver in this case.

With respect to its case for actual damages, HipSaver is not required to prove the amount of its damages with mathematical precision.[53] Although you cannot merely guess as to the amount of damages, you may make a just and reasonable estimate of the damage based on both the direct and circumstantial evidence.[54] Once HipSaver has provided a reasonable basis for damages, HipSaver need only prove the amount of damages with as much certainty as the circumstances of the case permit.[55]

---

[52] *Alpo PetFoods, Inc. v. Ralston Purina Co.*, 997 F.2d 949, 954 (D.C. 1993).

[53] *Alpo Petfoods v. Ralston Purina Co.*, 997 F.2d 949, 954 (D.C. Cir. 1993) (explaining, in false advertising context, that where damages are uncertain, the wrongdoer bears the risk of the uncertainty created by his conduct), reh 'g dismissed (May 11, 1994); *Ricky Smith Pontiac v. Subaru of New England, Inc.*, 14 Mass. App. Ct. 396, 426-27 (1982) (explaining that in business tort cases, "an element of uncertainty is permitted in calculating damages and an award of damages can stand on less than substantial evidence"), review denied, 387 Mass. 1103 (1982).

[54] *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 264 (1946) (jury may award damages to a plaintiff based on a "just and reasonable estimate of the damage based on relevant data"), reh 'g denied, 327 U.S. 817 (1946); *Big 0 Tire Dealers, Inc. v. Goodyear Tire and Rubber Co.*, 408 F. Supp. 1219, 1248 (D. Colo. 1976) (jury instructions explaining that "jury should use its best judgment in determining the amount of such damages, if any, based upon the evidence"), aff'd as modified, 561 F.2d 1365 (10th Cir. 1977), cert. dismissed, 434 U.S. 1052 (1978).

[55] *Ricky Smith Pontiac, Inc. v. Subaru of New England, Inc.*, 14 Mass.App.Ct. 396, 426-7 (1982)(awarding lost profits for loss of additional sales even though plaintiff's sales increased over time); *see also Cahill v. TIG Premier Ins. Co.*, 47 F.Supp. 2d 87, 89 (D.Mass. 1999)(affirming jury award for lost profits because expert testimony provided "sufficient certainty" and stating that while lost profits cannot be recovered when they are "remote, speculative, hypothetical, and not within the realm of reasonable certainty," they need not be "susceptible of calculation with mathematical exactness")(internal citations omitted); *Eldim, Inc. v. Mullen*, 47 Mass. App. Ct. 125, 129-130 (1999)(affirming district court's award for lost profits in a non-competition case where damages were based on plaintiff's previous contracts for similar products, and stating that "although lost profits are often difficult to prove with precision, uncertainty in the assessment of damages is not a bar to their recovery, especially where any difficulties in determining damages arise in large part from the defendant's conduct" and that in such cases, "a reasonable approximation will suffice")(internal quotations omitted); *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 562-564 (1931)(allowing for award of damages proven "as a matter of just and reasonable

Your damages awards for false advertising and breach of contract may not be duplicative, which simply means that HipSaver should be compensated in full for the harm it proves, but damages for the same losses should not be counted more than once.[56]

You may also award injunctive relief. If you find that HipSaver faces a likelihood of suffering future harm as a result of Posey's actions, you may award injunctive relief. Injunctive relief may be awarded in many forms. For example, you may require Posey to cease the offending activity or to distribute corrective advertising.[57]

---

inference, although the result will only be approximate" because "it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts").

[56] *Fox v. F&J Gattozzi Corp.*, 41 Mass. App. Ct. 581, 588-89 (1997) (holding that duplicative damages may not be recovered for losses caused by the same wrongful act).

[57] 15 U.S.C. 1125; *Castrol, Inc. v. Quaker State Corp.*, 977 F.2d 57 (2d. Cir. 1992); *Novartis Corp. v. F.T.C.*, 223 F.3d 783 (D.C. Cir. 2000).

33

**6.    STIPULATED FACTS**

The parties have stipulated to certain facts which you should assume are true for the purposes of this case.  The stipulated facts are set forth in Plaintiff's Trial Exhibit 657.

7.      **DELIBERATION AND VERDICT**

    7.1      **Selection of Foreperson and Form of Verdict**

Upon retiring to the jury room, the foreperson will preside over your deliberations and will be your representative here in court.

Each of you must decide the case for yourself, but you should do so only after you have considered all the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not hesitate to change your opinion if the discussion persuades you that you should. Do not come to a decision simply because other jurors think it is right.[58]

A form of verdict has been prepared for you.  The verdict form asks specific questions relating to each of HipSaver's claims.  You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in the answers to the questions, date, and sign the form.  You will then return, with your verdict, to the courtroom.

You have a great responsibility to deliberate carefully and fully on every issue before you and to complete the verdict form accurately and completely.

---

[58]  Manual of Model Civil Jury Instructions, § 3.1 (Ninth Circuit, 2007).

35

## 7.2    Jury Communications[59]

If it becomes necessary during your deliberations to communicate with me, you may send a note through the marshal, signed by your presiding juror or by one or more members of the jury.  No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court.  If you send out a question, I will consult with the parties before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.  Do not disclose any vote count in any note to the court.

---

[59]  Manual of Model Civil Jury Instructions, § 3.2 (Ninth Circuit, 2007).

### 7.3    Unanimous Verdict[60]

Your verdict must represent the considered judgment of each juror.  Your verdict on each question in the verdict form, whether for or against a party, must be unanimous.

You should make every reasonable effort to reach a verdict.  In doing so, you should consult with one another, express your own views, and listen to the opinions of your fellow jurors.  Discuss your differences with an open mind.  Do not hesitate to reexamine your own views and change your opinion if you come to believe it is wrong.  But you should not surrender your honest beliefs about the weight or effect of evidence solely because of the opinions of other jurors or for the purpose of returning a unanimous verdict.

You should give fair and equal consideration to all the evidence and deliberate with the goal of reaching an agreement that is consistent with the individual judgment of each juror.  You are impartial judges of the facts.  Your only interest is to seek the truth from the evidence in the case.  You now have the most important role in this case.  It is up to you to reach a fair and impartial verdict.

---

[60]    *See* Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware (1993).

### 7.4    Court Has No Opinion[61]

Let me finish by repeating something that I said to your earlier. Nothing that I have said or done during this trial was meant to influence your decision in any way. You must decide the issues in this case yourselves based on the evidence presented.

You may retire to begin your deliberations and the Court will await your just verdict. The bailiff shall now escort you to the jury room.

---

[61] *See* Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware (1993).

Respectfully submitted
The HipSaver Company, Inc.
By its Attorneys,


/s/  Courtney M. Quish
Lee Carl Bromberg, BBO No.:  058480
Edward J. Dailey, BBO No.:  112220
Courtney M. Quish, BBO No.:  662288
Paul S. Kitchin, BBO No.: 667954
BROMBERG SUNSTEIN, LLP
125 Summer Street - 11th floor
Boston, Massachusetts 02110-1618
617.443.9292
617.443.0004  Fax
cquish@bromsun.com
August 08, 2007

## CERTIFICATE OF SERVICE

I certify that this document has been filed through the Electronic Case Filing System of the United States District Court for the District of Massachusetts and will be served electronically by the court to the Registered Participants identified in the Notice of Electronic filing.


/s/  Courtney M. Quish
Courtney M. Quish


02820/00502 715149.2