UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE HIPSAVER COMPANY, INC., ) | Civil Action No. 05-10917 PBS |
| Plaintiff, ) | |
| v. ) | |
| J.T. POSEY COMPANY, ) | |
| Defendant. ) | |
| AND RELATED COUNTERCLAIM. ) | |

**RESPONSE OF J.T. POSEY COMPANY, INC. TO HIPSAVER'S
MOTION FOR ORDER AS TO ADMISSIBILITY OF FACTS RELATING TO
POSEY I AND TO POSEY I SETTLEMENT AGREEMENT**

In its seventh motion *in limine* (D.N. 237), Defendant J.T. Posey Company, Inc. asked the Court to limit the introduction of evidence at trial regarding the prior lawsuit between the parties ("Posey I"), the Posey I settlement and the Posey I settlement agreement. At the Final Pretrial Conference on May 29, 2007, the Court decided that, at the trial, facts and evidence relating to Posey I would be excluded because it was too prejudicial. *See* PTC Hearing Tr., at 50:23-51:14 (D.N. 284).

By the instant motion, Plaintiff The HipSaver Company, Inc. ("HipSaver") is merely asking the Court to reconsider its decision. The Court should decline to do so. If the Court granted the motion, HipSaver would be permitted to raise the issue of Posey's alleged "prior bad acts" but Posey would be precluded by the Court's prior rulings from raising HipSaver's "prior bad acts" and its "present bad acts". This would be unfair in the extreme. In addition, granting the motion would effectively require a mini-trial on the merits of Posey I during the course of the instant trial.

HipSaver advances four arguments as to why it should be "open season" at trial with respect to the facts surrounding Posey I and the Posey I settlement agreement. None of these arguments has any merit.

1. <u>The Alleged Relevance of the "Special Announcement".</u>

HipSaver's first argument is that the Posey I settlement agreement should be admitted because the "Special Announcement" which is attached to it (and which is referred to in HipSaver's motion as the "corrective statement") is relevant to Dr. Hayes' credibility because the announcement states that Dr. Hayes is "a recognized biomechanical engineering expert". The Special Announcement does, in fact, say that Dr. Hayes is "a recognized biomechanical engineering expert". While this statement may constitute an admission as to Dr. Hayes' credentials in the field of biomechanical engineering, it is absolutely irrelevant to the issue of Dr. Hayes' credibility. It matters not, however, because Posey does not plan to challenge Dr. Hayes' bona fides as an expert at trial.

The real reason HipSaver wants to use the Special Announcement at trial is that it wants the jury to conclude that, since Posey issued the announcement at the conclusion of Posey I, it must have been guilty of false advertising and that, if Posey was guilty before, it must be guilty now. This is obviously improper. The admission of the Posey I settlement agreement and/or the Special Announcement at trial would be unduly prejudicial. Therefore, they must be excluded under Rule 403 of the Federal Rules of Evidence.

2. <u>The Purported Relevance to Posey's Alleged Intent to Deceive</u>

HipSaver's second argument as to why it should be permitted to introduce evidence regarding Posey I and the facts surrounding that action is that "Posey's past conduct" is relevant to its "intent to deceive" when it published the Garwood ads. The main reason this argument fails is

that Posey I only involved conduct relating to, and advertisements that made reference to, the UCLA White Paper. Indeed, HipSaver has spent the better part of the past two years contending that only the UCLA White Paper was involved in Posey I and that neither Posey I nor the settlement agreement had anything to do with the Garwood ads or to Posey's publication of the Garwood ads.

Moreover, this Court has already ruled that the release provision contained in the Posey I settlement agreement bars the litigation of any pre-settlement claims between the parties. Thus, any pre-settlement conduct relating to Posey's alleged "intent to deceive" is irrelevant to the claims HipSaver is asserting in this case. The pertinent inquiry is whether Posey had any "intent to deceive" after the Posey I settlement.

Finally, HipSaver's second argument is deficient for the simple reason that HipSaver has entirely neglected to explain how Posey's conduct with respect to the UCLA White Paper ads will permit the jury to draw any conclusions about Posey's intentions in publishing the Garwood ads after the settlement in Posey I.

In support of its position that Posey's "past conduct" is relevant to its intent to deceive, HipSaver cites *JTH Tax, Inc. v. H&R Block Eastern Tax Servs., Inc.*, 128 F.Supp.2d 926, 938 (E.D. Va. 2001). In that case, the plaintiff ("Liberty") and the defendant ("H&R Block") were competing income tax preparers who offered customers the option of receiving an advance against the amount of any refund they were due from the IRS. IRS regulations required the parties to clearly disclose to potential recipients that any advance they elected to receive was a "rapid advance" loan ("RAL") for which they would have to pay fees and interest, rather than a "speeded up" tax refund.

In the year 2000, H&R Block offered a new version of its RAL in an area in which Liberty was just beginning to do business. In various ads in that area, H&R Block referred to its new RAL as a "refund", a "refund amount" and a "check in the amount of your refund". Liberty sued for false advertising and, following a bench trial, it prevailed. In deciding whether H&R Block's conduct was "intentional", the district court relied, among other things, upon an internal H&R Block report

- 3 -

concerning the impact on consumers of the word "refund" and upon the fact that H&R Block had agreed to at least three consent decrees in various state courts that prohibit it from using the word "refund" in connection with its RAL's. *See JTH Tax*, 128 F.Supp.2d at 938.

HipSaver would have the Court believe that the district court in *JTH Tax* decided the question of H&R Block's "intent to deceive" on the basis of its "past advertising conduct" generally. It did no such thing. The court decided the issue of intent based upon evidence that, among other things, H&R Block had specifically agreed with three state attorneys general that it would not do <u>exactly</u> what it was doing in that case, which is use the word "refund" in connection with products that were, in reality, loans.

In this case, HipSaver wants to use evidence regarding conduct not related to the Garwood ads to argue that Posey intended to deceive when it published the Garwood ads. This is a far cry from what the court in *JTH Tax* did. Thus, the case is simply inapposite here.

3. <u>The Alleged Relevance of Posey I to the Issue of Willfulness</u>

In its third argument is that it should be permitted to introduce evidence at trial regarding Posey I, HipSaver argues that the circumstances surrounding Posey I and the Posey I settlement agreement are relevant because such evidence illustrates Posey's "history" of false advertising, its awareness and understanding of the law of false advertising and its subsequent publication of false statements. This argument falls of its own weight.

First of all, the Posey I settlement was a compromise of disputed claims and the settlement agreement specifically states that nothing in the agreement "may be construed as an admission of wrongdoing or liability by any party." *See* Exhibit "A" (Settlement Agreement, at paragraph 9). Permitting HipSaver to argue that the Posey I settlement, the settlement agreement, or the Special Announcement that Posey agreed to disseminate following the settlement would show that it has a

"history" of false advertising would directly contravene the settlement agreement (as a part of which HipSaver received $360,000).

Second, as set out above, the Court has already decided that the release provision contained in the Posey I settlement agreement bars the litigation of any pre-settlement claims between the parties. Thus, the pertinent inquiry with respect to willfulness is whether anything Posey did <u>after</u> the settlement demonstrates willfulness. Pre-settlement conduct is simply irrelevant to the inquiry.

Third, permitting HipSaver to argue that the settlement agreement and (as HipSaver puts it) the "context" of the settlement agreement illustrate Posey's "history" of false advertising would be contrary to Rule 404(b) of the Federal Rules of Evidence, which provides that evidence of prior "bad acts" is not admissible to prove the character of a defendant in an effort to show action in conformity with that trait. *See U.S. v. Williams*, 458 F.3d 312, 317 ($3^d$ Cir. 2006) (the prohibition against the introduction of bad acts evidence to show propensity applies to defendants and third parties alike).

4.   <u>The Relevance to the Breach of Contract Issue.</u>

HipSaver's final argument is that the jury needs to be aware of the notice provision contained in the Posey I settlement agreement in order to determine whether Posey breached the agreement. Posey agrees that the jury needs to be apprised of the notice provision. However, as is set out in Posey's seventh motion *in limine* this can be easily accomplished by telling the jury that the parties were engaged in previous litigation, that they settled, that the settlement agreement executed in connection with the settlement contained the language specified in the Notice provision and that HipSaver contends that Posey breached that provision. Nothing else needs to be said.

5.  <u>Conclusion</u>

For the foregoing reasons, HipSaver's motion for reconsideration of the Court's earlier ruling on Posey's seventh motion *in limine* should be denied.

                                         Respectfully submitted,

Dated: August 10, 2007               J.T. POSEY COMPANY

                                         By its attorneys,

<u>/s/ Douglas H. Morseburg</u>
Jeffrey G. Sheldon, Admitted Pro Hac Vice
Douglas H. Morseburg, Admitted Pro Hac Vice
SHELDON MAK ROSE & ANDERSON PC
100 East Corson Street, Third Floor
Pasadena, CA 91103-3842
(626) 796-4000

Anthony J. Fitzpatrick (BBO # 564324)
DUANE MORRIS LLP
470 Atlantic Avenue, Suite 500
Boston, MA 02210
(617) 289-9200

<b><u>CERTIFICATE OF SERVICE</u></b>

I certify that this document has been filed through the Electronic Case Filing System of the United States District Court for the District of Massachusetts and will be served electronically by the court to the Registered Participants identified in the Notice of Electronic filing.

August 10, 2007                                <u>/s/ Donald K. Piper</u>
                                                    Donald K. Piper

# SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into between The HipSaver Company, Inc. ("HipSaver") and J.T. Posey Company, Inc. ("Posey") with reference to the following facts:

## RECITALS

A. HipSaver has filed an action in the United States District Court for the District of Massachusetts entitled *The HipSaver Company, Inc. v. J.T. Posey Company, Inc.*, as Civil Action No. 04-11294 PBS (the "Action"), in which HipSaver accuses Posey among other things of having violated the Lanham Act and the Massachusetts Unfair or Deceptive Business Practices Act by disseminating certain materials, including a document entitled "A Solution to Hip Fractures Using Performance Tested Hip Protectors" (the "White Paper") and including in Posey catalogs and promotional materials certain bar charts comparing the relative effectiveness of hip protectors (the "Bar Charts") and statements derived from the White Paper.

B. Posey denies the allegations asserted by HipSaver in the Action.

C. Posey filed an answer and counterclaim in the Action in which Posey asserts among other things that HipSaver has made false representations about Posey products on HipSaver's website.

D. HipSaver denies the allegations asserted by Posey in the Counterclaim.

E. The Parties desire to settle all disputes among them concerning or in any way related to the Action.

NOW, THEREFORE, in consideration of the promises, covenants and conditions set forth in this Agreement, the Parties hereto agree as follows:

1. Posey shall pay to HipSaver the sum of $360,000.00 by check payable to The BROMBERG SUNSTEIN LLP Client Account to be delivered to BROMBERG SUNSTEIN within fourteen (14) days of the filing of the Stipulation for Dismissal of the Action as set forth in paragraph 12 below (the "Stipulation for Dismissal").

2. Posey shall not distribute the White Paper or make any advertising claims based on or derived from the White Paper.

PC 0365

causes of action, known or unknown, fixed or contingent, which arise from or are related to the false advertising claims under 15 U.S.C. §§ 1125, 1117 and G.L. c.93A, §§ 2, 11 which were asserted or which could have been asserted in the Action for conduct which occurred prior to the date of this Agreement.

11. Except for the obligations contained in this Agreement, HipSaver releases Posey, and all of its officers, directors, employees, agents, representatives, dealers, distributors, shareholders, attorneys, predecessors, successors, assigns, affiliates, related companies, or corporations connected with them from any and all claims, liabilities or causes of action, known or unknown, fixed or contingent, which arise from or are related to the false advertising claims under 15 U.S.C. §§ 1125, 1117 and G.L. c.93A, §§ 2, 11 which were asserted or which could have been asserted in the Action for conduct which occurred prior to the date of this Agreement.

12. Concurrently with the counter-execution of this Agreement the Parties agree that their respective counsel will execute and file a Stipulation for Dismissal of the Action with prejudice substantially in the form of Exhibit "C" attached.

13. HipSaver acknowledges and agrees that it will not initiate any legal action against Vijay Gupta, Bimal P. Gandhi, or the University of California for any claim related to the false advertising claims under 15 U.S.C. §§ 1125, 1117 and G.L. c.93A, §§ 2, 11 which were asserted or which could have been asserted in the Action for conduct which occurred prior to the date of this Agreement.

14. The terms of this Agreement shall remain confidential except that they are binding and enforceable and are admissible for the purposes of enforcement. In addition, either party may truthfully report that the Action has been settled to the mutual satisfaction of the Parties. It is expressly understood and agreed that HipSaver may distribute and publish the "Special Announcement: HipSaver and Posey Hipster brand Hip Protectors" and may state that Posey will distribute that document in its new catalogs and to its sales representatives, distributors, and dealers. Except as provided in this paragraph, no Party shall, without notice to and the prior written consent of the other Party, disclose any of the terms and conditions of this Agreement to any person or entity, including, without limitation, to any customers or potential customers of a Party, provided, however, that any Party may disclose such information to the extent required

3

PC 0367

by law or order of a court or government agency; and the Parties may inform their attorneys and independent public accountants of the terms and conditions of this Agreement.

15. Each party shall bear its own costs, expenses and attorneys' fees in connection with the Action and the negotiation, preparation, and execution of this Agreement.

16. Any notices or other communications under this Agreement shall be in writing, and shall be sent by facsimile and/or by email attachment, with a copy by hand-delivery or overnight courier service, as follows:

Notice Addresses:

To HipSaver:
> The HipSaver Company, Inc.
> 7 Hubbard Street
> Canton, Massachusetts 02021
> Attention: Edward L. Goodwin
> Fax: 1.781.821.6514

With a copy to:
> BROMBERG SUNSTEIN LLP
> 125 Summer Street
> Boston, Massachusetts 02110-1618
> Attention: Edward J. Dailey, Esq.
> Fax: (617) 443-0004

To: Posey:
> J.T. Posey Company
> 5635 Peck Road
> Arcadia, CA 91006
> Attention: Ernest Posey
> Fax: (626) 443-9886

With a copy to:
> SHELDON & MAK
> 225 South Lake Avenue, 9th Floor
> Pasadena, California 91101
> Attention: Jeffrey G. Sheldon, Esq.
> Fax: (626) 795-6321

17. The Parties, and each of them, acknowledge that they have completely read the terms of this Agreement, and fully understand the terms and consequences of this Agreement. All Parties further acknowledge that they have been represented by

PC 0368

counsel with respect to the negotiation and execution of this Agreement and that their counsel has explained the terms and the significance of this Agreement.

18. The failure of any party to insist upon the strict compliance by any other party to this Agreement of the performance of any covenant, condition or promise herein shall not invalidate this Agreement nor shall any such failure be construed as a waiver or relinquishment of the performance of any other covenant, condition or promise in this Agreement.

19. This Agreement is the entire agreement between and among the Parties hereto with respect to the subject matter set forth herein.

20. Each party has cooperated in the drafting and preparation of this Agreement. Hence, neither this Agreement nor any part of it shall be construed against either party merely because such party may have drafted all or part of it.

21. The Parties to this Agreement, and each of them, agree to perform such further and other acts and to execute and deliver such further and other documents as may be reasonably necessary to carry out the provisions of this Agreement.

22. Each party hereto represents and warrants that it has full power and authority to enter into this Agreement and to perform any and all transactions or other matters contemplated to be performed under this Agreement.

23. This Agreement may be amended or modified only by a written instrument signed by all of the Parties.

24. This Agreement shall be binding on and shall inure to the benefit of the Parties hereto, and their respective officers, directors, shareholders, legal representatives, assignees and successors-in-interest.

25. This Agreement may be executed by facsimile and in counterparts all of which taken together shall constitute a single instrument.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date set forth next to their respective signatures below.

THE HIPSAVER COMPANY, INC.        J.T. POSEY COMPANY, INC.

By: _/s/ Edward Goodwin_           By: _/s/ Ernest M Posey_

PC 0369

Edward L. Goodwin, President
Its: President

Dated: 9/22/04, 2004

Its: President

Dated: 9/21/2004, 2004

APPROVED AS TO FORM:

BROMBERG SUNSTEIN LLP

By: _____
Edward J. Dailey
Attorneys for HipSaver

Dated: 9.21.04, 2004

SHELDON & MAK PC

By: _____
Jeffrey G. Sheldon
Attorneys for Posey

Dated: 9/21, 2004

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 04-11294-PBS

HIPSAVER COMPANY, INC., )
        Plaintiff, )
         )
v. )
         )
J.T. POSEY COMPANY, )
        Defendant. )

## UNDERTAKING BY DEFENDANT J.T. POSEY COMPANY

During the pendency of the above action Posey undertakes and agrees as follows:

    1.    Posey has discontinued distribution of the White Paper authored by Bimal P. Gandhi ("White Paper");

    2.    Posey has discontinued distribution of catalogs and all other materials containing information derived from the White Paper;

    3.    Posey has instructed all its employees, sales representatives, and distributors who have purchased Hipsters since 2001, to discontinue all reference to the White Paper and information derived from the White Paper, nor represent that its hip protectors have been validated by scientific research at UCLA, in communications with

EXHIBIT A
(page 1 of 2)

PC 0371

customers or potential customers, including written correspondence, emails, telephonic or face-to-face conversations, sales pitches, and the like;

    4.    Posey will not include the White Paper or information derived from the White Paper in any future catalogs, brochures, or other advertising materials.

    5.    Posey will not represent that its hip protectors have been validated by scientific research at UCLA.

This undertaking is not made as any admission of liability or wrongdoing, but because Posey values its reputation, and does not engage in activities that are in any way questionable.

Dated: August 26, 2004

                                       J.T. POSEY COMPANY

                                       By:  *s/Ernest M. Posey/*
                                                Ernest M. Posey

**EXHIBIT A**
(page 2 of 2)

PC 0372

**EXHIBIT B**

**Special Announcement:**
**HipSaver® and Posey Hipster® brand Hip Protectors**

In the fall of 2003, Posey began distributing an article (also known as the "White Paper") entitled "A Solution to Hip Fractures Using Performance Tested Hip Protectors." In its catalogs and newsletters, Posey included statements derived from the White Paper and bar charts comparing the relative effectiveness of Posey's Hipsters.

The White Paper was written by a UCLA graduate student working on his Master's Thesis. UCLA did not sponsor, authorize, or endorse the tests or the results reported in the White paper or the Master's Thesis.

The HipSaver Company, Inc. challenged the accuracy of the White Paper and the statements and bar charts in Posey's catalogs and newsletters. HipSaver's claims included: (a) a flawed testing methodology used by the graduate student; (b) testing of some products which were no longer offered in the marketplace; and (c) test conclusions which were subject to unreliable or false interpretation.

The HipSaver Company retained Wilson C. Hayes, PhD, a recognized biomechanical engineering expert, to review the White Paper, the graduate student's thesis, and Posey's advertising. Dr. Hayes determined that the research is not reliable and cannot sustain any of the claims in the White Paper and our advertising with reasonable certainty.

Posey values its hard-earned reputation and does not advocate the use of any material that may be inaccurate or out of date, and expressly regrets comparisons with HipSaver products and confusion this may have caused in the marketplace.

Posey has eliminated the bar charts and all statements based on the White Paper from its catalogs.

If by chance you have a copy of the White Paper or any advertising material referring to testing at UCLA, please do not use it or to rely on any statements in it.

If you have any questions about anything in this announcement, please contact Posey at [telephone number]

**EXHIBIT B**
(page 1 of 1)

PC 0373