# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

_____
                                            )
THE HIPSAVER COMPANY, INC.,                 )
                                            )
    Plaintiff                          )
                                            )
v                                           )     Civil Action No. 05-10917 PBS
                                            )
J.T. POSEY COMPANY,                         )
                                            )
    Defendant                          )
                                            )
_____)

## [REVISED] JURY INSTRUCTIONS
## [PROPOSED BY PLAINTIFF, THE HIPSAVER COMPANY, INC.]

THE HIPSAVER COMPANY, INC.
By its Attorneys,

Lee Carl Bromberg, BBO No. 058480
Edward J. Dailey, BBO No. 112220
Courtney M. Quish, BBO No. 662288
Paul S. Kitchin, BBO No.: 667954
BROMBERG SUNSTEIN, LLP
125 Summer Street - 11th floor
Boston, Massachusetts 02110-1618
617.443.9292

*Attorneys for Plaintiff, The HipSaver
Company, Inc.*

# TABLE OF CONTENTS

1.   STANDARD PRELIMINARY INSTRUCTIONS ...........................................................1

     1.1   Introduction ...................................................................................1

     1.2   Function of the Court and the Jury ...................................................2

     1.3   Evidence in the Case ......................................................................3

     1.4   What Is Evidence ...........................................................................4

     1.5   What Is Not Evidence .....................................................................5

     1.6   Evidence for Limited Purpose ..........................................................6

     1.7   Direct and Circumstantial Evidence ..................................................7

     1.8   Charts and Summaries in Evidence ...................................................8

     1.9   Charts and Summaries Not Received In Evidence ...............................9

     1.10  Bench Conferences and Recesses ...................................................10

     1.11  Ruling on Objections .....................................................................11

     1.12  Credibility of Witnesses ................................................................12

     1.13  Expert Testimony ..........................................................................13

     1.14  Corporate Responsibility ...............................................................14

     1.15  Conduct of the Jury .......................................................................15

     1.16  No Transcript Available to the Jury .................................................16

2.   CLAIMS IN GENERAL ...........................................................................17

     2.1   Overview ......................................................................................17

     2.2   Burden of Proof.............................................................................20

3.   FALSE ADVERTISING ...........................................................................21

     3.1   Elements of a False Advertising Claim .............................................21

i

a) Direct Competition ......................................................................21

b) Challenged Advertising ...............................................................22

c) Comparative ..................................................................................22

d) Literally False or Misleading Statement......................................22

e) Willfulness ....................................................................................23

f) The Statement Actually Deceives or Has the Tendency to Deceive.........23

g) The Deception Must Be Material ..................................................24

h) HipSaver Has Been or is Likely to Be Injured as a Result of the Statement ...............................................................25

3.2 False Advertising Damages – Posey's Profits....................................27

3.3 Intentional False Advertising ..............................................................28

4. BREACH OF CONTRACT...........................................................................29

4.1 Elements of a Breach of Contract Claim .............................................30

4.2 Damages for Breach of Contract .........................................................31

5. DAMAGES GENERALLY............................................................................32

6. STIPULATED FACTS ..................................................................................34

7. DELIBERATION AND VERDICT................................................................35

7.1 Selection of Foreperson and Form of Verdict .....................................35

7.2 Jury Communications ...........................................................................36

7.3 Unanimous Verdict ...............................................................................37

7.4 Court Has No Opinion ..........................................................................38

# 1.     STANDARD PRELIMINARY INSTRUCTIONS

## 1.1     Introduction[1]

Members of the jury, the evidence and arguments in this case have been completed and I will now instruct you as to the law you must follow in deciding this case.  I will start by explaining your duties and the general rules that apply in every civil case.  Then I will explain the positions of the parties and the law you will apply in this case.  And last, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.  Please listen carefully to everything that I say.  It is your duty to follow all of the instructions, including those that I gave you before and during trial, as well as these instructions.  All of the instructions are important, and you should consider them together as a whole.

---

[1]  *See* Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware (1993); 3 Kevin F. O'Malley et al., *Federal Jury Practice and Instructions* § 103.01 (5th ed. 2000).

1

**1.2     Function of the Court and the Jury**[2]

You have two main duties as jurors.  The first one is to decide what the facts are from the evidence that you saw and heard here in court.  Deciding what the facts are is your job, not mine.  You should not take these instructions, or anything that I have said or done during this trial, as indicating what I think of the evidence or what your verdict should be.

Your second duty is to take the law that I give you, apply it to the facts, and in this way decide the case.  It is my job to instruct you about the law.  Regardless of any opinion you may have as to what the law ought to be, you must base your verdict upon the law given by me.

This case should be considered and decided by you as an action between persons of equal standing in the community.  All persons stand equal before the law and are to be dealt with as equals in a court of justice.  Do not let any bias, sympathy, or prejudice that you may feel toward one side or the other influence your decision in any way.

---

[2]  Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware (1993); Manual of Model Civil Jury Instructions (Ninth Circuit, 2004).

**1.3     Evidence in the Case**[3]

You must make your decision based only on the evidence that you saw and heard here in court.  You should use your common sense in weighing the evidence.  You should consider the evidence in light of your own observations and experiences in life.  You may draw such reasonable inferences as you believe to be justified from proved facts.  You may not make any finding of fact based on surmise, speculation, or conjecture.

---

[3]  *See* Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware (1993).

**1.4    What Is Evidence**[4]

The evidence you are to consider in deciding what the facts are consists of the following three kinds of evidence:

1.    the sworn testimony of any witness;

2.    the exhibits that have been admitted into evidence; and

3.    any facts to which the lawyers have agreed.

---

[4] *See* Manual of Model Civil Jury Instructions, § 1.6 (Ninth Circuit, 2007).

## 1.5    What Is Not Evidence[5]

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition sometimes testimony and exhibits are received only for a limited purpose; when I have given a limiting instruction, you must follow it.

(4) Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

---

[5] *See* Manual of Model Civil Jury Instructions, § 1.7 (Ninth Circuit, 2007).

**1.6     Evidence for Limited Purpose**[6]

Some evidence may be admitted for a limited purpose only.  When I instructed you that an item of evidence has been admitted for a limited purpose, you must consider it only for that limited purpose and for no other.

---

[6]  *See* Manual of Model Civil Jury Instructions, § 1.8 (Ninth Circuit, 2007).

**1.7     Direct and Circumstantial Evidence**[7]

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

---

[7] *See* Manual of Model Civil Jury Instructions § 1.9 (Ninth Circuit, 2007).

**1.8     Charts and Summaries in Evidence**[8]

Certain charts and summaries have been received into evidence to illustrate information brought out in trial.  Charts and summaries are only as good as the underlying evidence that supports them.  You should, therefore, give them only such weigh as you think the underlying evidence deserves.

---

[8]  *See* Manual of Model Civil Jury Instructions § 2.13 (Ninth Circuit, 2007).

### 1.9    Charts and Summaries Not Received In Evidence[9]

Certain charts and summaries not received in evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. They are not themselves evidence or proof of any facts. If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

---

[9]  *See* Manual of Model Civil Jury Instructions § 2.12 (Ninth Circuit, 2007).

**1.10    Bench Conferences and Recesses**[10]

From time to time during the trial, it became necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess.  Please understand that while you were waiting, we were working.  The purpose of these conferences was not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we did what we could to keep the number and length of these conferences to a minimum.  I may not have always granted an attorney's request for a conference.  Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

---

[10]  Manual of Model Civil Jury Instructions, § 1.18 (Ninth Circuit, 2007).

### 1.11    Ruling on Objections

During the trial, I may not have let you hear the answers to some of the questions, and I may not have let you see some of the exhibits.  I may also have ordered you to disregard things that you saw or heard.  You must not consider these answers or exhibits.  You must ignore all of these things.  Do not speculate about what a witness might have said or what an exhibit might have shown.  These things are not evidence.

### 1.12    Credibility of Witnesses[11]

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, or part of it, or none of it.  Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case and any bias or prejudice;

(5) whether other evidence contradicted the witness's testimony;

(6) the reasonableness of the witness's testimony in light of all the evidence; and

(7) any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

---

[11] *See* Manual of Model Civil Jury Instructions, § 1.11 (Ninth Circuit, 2007).

### 1.13    Expert Testimony[12]

The rules of evidence ordinarily do not permit witnesses to testify as to opinions or conclusions.  An exception to this rule exists as to those whom we call "expert witnesses".  Witnesses who, by education and experience, become very knowledgeable about some art, science, profession, field, or calling may state an opinion as to relevant and material matters only if they have expertise in that art, science, profession, field, or calling and only if the testimony is based upon sufficient facts and data; the testimony is the product of reliable principles and methods; and the witness applied the principles and methods reliably to the facts of the case.[13]  They also may state their reasons for the opinion.

You have heard the testimony of several expert witnesses.  You should consider each expert opinion received in evidence in this case, and give it such weight as you think it deserves.  However, the fact that an expert has given an opinion does not mean that you are obligated to accept it.  As with any other witness, it is up to you to decide whether to rely upon it.  You should assess the weight to be given to the expert opinion in the light of all the evidence in this case and judge the credibility by the same standard as applied to ordinary witnesses.

---

[12]  *See 3* Kevin F. O'Malley et al., *Federal Jury Practice and Instructions* § 104.40 (5th ed. 2000).
[13]  Fed. R. Evidence 702

**1.14   Corporate Responsibility**[14]

A corporation, such as J.T. Posey Company, can act only through real people.  A corporation is legally responsible for acts or omissions of its owners, officers, employees and agents.

---

[14]  See 3 Kevin F. O'Malley et al., *Federal Jury Practice and Instructions* § 103.31 (5th ed. 2000).

### 1.15   Conduct of the Jury[15]

I will now say a few words about your conduct as jurors.

First, you are not to discuss this case with anyone, including members of your family, people involved in the trial, or anyone else; this includes discussing the case in internet chat rooms or through internet "blogs," internet bulletin boards, or email.  Nor are you allowed to permit others to discuss the case with you.  If anyone approaches you and tries to talk to you about the case, please let me know about it immediately.

Second, do not read or listen to any news stories, articles, radio, television, or on-line reports about the case or about anyone who has anything to do with it;

Third, do not do any research, such as consulting dictionaries, searching the Internet or using other reference materials, and do not make any investigation about the case on your own;

Fourth, if you need to communicate with me, simply give a signed note to the clerk to give to me; and

Fifth and finally, do not make up your mind about what the verdict should be until after you have gone to the jury room to decide the case and you and your fellow jurors have discussed the evidence.  Keep an open mind until then.

---

[15]  Manual of Model Civil Jury Instructions, § 1.12 (Ninth Circuit, 2007).

**1.16    No Transcript Available to the Jury**

During deliberations, you will have to make your decision based on what you recall of the evidence.  You may review exhibits and documents and charts and other materials which have been received into evidence.  These materials will all be in the jury room.

You will not have a transcript of the trial testimony.  However, for good reason, you may ask to have testimony read to you.  If you believe there is good reason to review testimony, please state the reason in writing; and submit your request to me.

2.      **CLAIMS IN GENERAL**

    2.1    **Overview**

I will now provide you with an overview as to the claims in this case. I will then instruct you on the law as to each of these claims, in detail.

As you know, the plaintiff in this case is The HipSaver Company. We will refer to the plaintiff as HipSaver. HipSaver is a small company in Canton, Massachusetts. The company was founded in 1995 by Mr. Edward Goodwin. HipSaver manufactures and sells hip protector garments for adults. HipSaver sold its first HipSaver product in 1995. These garments are worn like underwear, spandex or sweatpants and have pads sewn into the sides that are positioned over the trochanter, or hip bone and are designed to prevent hip fractures. Because hip fractures often lead to more serious injuries and even death, hip protectors are a very low cost but valuable preventative care product. HipSaver was the first to offer an all soft hip protector product like the one just described. Over the years, HipSaver has continued to improve upon its product by testing and identifying the force attenuation properties of different foams and improving upon the durability of the product.

The defendant is The J.T. Posey Company, Inc. We will refer to the defendant as Posey. Posey is a California-based company that manufactures over 600 healthcare/safety products for patient restraint, fall safety, wound prevention, and wheelchair seating, among others. Posey has annual revenues in excess of $40 million and is the dominant nationwide distributor of patient safety and support equipment devices. In 1999 Posey introduced its first hip protector product. In 2002, Posey introduced a new hip protector product called the Hipster.

These parties have been involved in litigation once before in 2004. In 2004, HipSaver challenged the truth of Posey's advertising of the so-called UCLA white paper. The UCLA

white paper advertisement claimed that Posey's product had been scientifically validated at UCLA.  HipSaver challenged the accuracy of the White Paper and the statements and bar charts in catalogs and newsletters distributed nationwide by Posey.  In the 2004 lawsuit, HipSaver challenged Posey's advertising as literally false.  The parties resolved the lawsuit by settlement and signed a settlement agreement in September of 2004.

Under the terms of the settlement agreement, Posey paid $360,000 to HipSaver and agreed to circulate a corrective advertising statement to customers.  Also under the terms of the agreement, the parties agreed that, "[i]n the event of any further comparative testing of Posey and HipSaver products by either party, neither party shall make commercial advertising use of the results or analysis related to such testing without first giving the other party at least thirty (30) days advance written notice of the results or analysis."

Following this settlement, Posey revived advertisements relating to comparative testing of HipSaver and Posey hip protector pad which it had conducted first in 2001.  Posey had originally circulated these advertisements in at least 2002 and 2003.  In some cases, the new advertisements which appeared in the fall of 2004 were revised slightly by removing the 2001 testing date and posting the results in flyers for new products, such that the tests cited by the flyers might appear to be tests conducted more recently than 2001.  But in all of these new advertisements, Posey was referring to testing conducted for it at Garwood Laboratories.  These ads have sometimes been referred to as the Garwood Advertisements.

Posey circulated the Garwood Advertisements nationwide for at least ten months in 2004 and 2005. In this lawsuit, HipSaver claims that the advertisements are comparative and challenges the claims in the Garwood Advertisement as literally false and unfair or deceptive. HipSaver alleges that Posey's statements in the Garwood Advertisements have been willful and

have caused injury to HipSaver's reputation and business prospects, and it seeks damages for its injury.

HipSaver also claims that, in circulating the Garwood Advertisement, Posey breached the 2004 settlement agreement. Posey did not provide 30 days notice to HipSaver before distributing commercial advertising that appeared to make use of results of new comparative testing.  HipSaver alleges that Posey's breach caused injury to HipSaver's reputation and business prospects, and it seeks damages for this injury.

Finally, HipSaver alleges that Posey's actions constitute unfair and deceptive trade practices.

Posey denies all of HipSaver's claims.  Posey contends that the statements it made in the Garwood advertisements were not false.  Posey also claims that HipSaver has suffered no harm as a result of any statements made by Posey.

### 2.2    Burden of Proof

HipSaver has the burden of proving the elements of its claims by the preponderance of the evidence. "Preponderance of the evidence" simply means "more likely than not." A party in a civil case having the burden of proving a particular fact does not have to establish the existence of that fact as an absolute certainty or a moral certainty. It is sufficient if the party having the burden of proving a particular fact establishes the existence of that fact as the greater likelihood, the greater probability. That is what preponderance of evidence really means: more likely than not.

3.      **FALSE ADVERTISING**

3.1      **Elements of a False Advertising Claim**

HipSaver has claimed that Posey has engaged in false advertising under the Lanham Act

§ 43(a).

In order to prevail on a false advertising claim under the Lanham Act, HipSaver must

prove, by a preponderance of the evidence:

    a.  Posey and HipSaver are direct competitors;

    b.  The challenged Posey advertisements make a false or misleading statement or description of fact or misrepresentation about its own or another company's products;

    c.  The misleading description or misrepresentation is comparative;

    d.  The misleading description or misrepresentation is literally false;

    e.  Posey willfully published and distributed these literally false advertisements;

    f.  The advertising statement actually deceives or has the tendency to deceive a substantial segment of its audience;

    g.  The deception is material (i.e., it is likely to influence the purchasing decision);

    h.  HipSaver has been or is likely to be injured as a result of the statement, either by direct diversion of sales away from HipSaver and to Posey and/or by a lessening of goodwill associated with HipSaver's products.[16]

I will walk through each of these elements:

a)      **Direct Competition**

I have already determined that the parties agree that HipSaver and Posey are direct

competitors.[17]   Posey and HipSaver are the dominant sellers of soft hip protectors in the United

States.[18]

---

[16]   *See* Memorandum and Order (May 15, 2007) [DN 228] at 21 *citing Cashmere,* 284 F.3d at 310-11 (citation omitted).
[17]   *See* Plaintiff's Trial Brief [D.N. 274] at p. 9, Stipulated Fact No. 16.
[18]   *See* Memorandum and Order (May 15, 2007) [DN 228] at 3.

**b)      Challenged Advertising**

A challenged advertising statement must make a false or misleading statement or description of fact or a misrepresentation about Posey's product or about another company's product. An advertisement need not name a competitor in order to be false or misleading or a misrepresentation.[19]

**c)      Comparative**

A comparative advertising statement is one in which the advertising company claims relative product superiority backed up by tests.[20] A comparative advertising statement need not name a specific competitor in order to be considered false comparative advertising.[21]

**d)      Literally False or Misleading Statement**

First, HipSaver must show that Posey made a literally false statement in an advertisement. A literally false statement is one that is literally false on its face.

HipSaver challenges claims in Posey's advertisements that are purportedly supported by tests. Where a defendant's ad explicitly or implicitly represents that tests or studies prove its product superior, a plaintiff satisfies its burden of proving that the advertising claim is literally false by showing that the tests did not establish the proposition for which they were cited.[22] HipSaver can meet this burden by demonstrating that the tests were not sufficiently reliable to permit a conclusion stated in the advertisement.[23] Or, HipSaver can meet this burden by showing that the tests, even if reliable, do not establish the proposition asserted by the

---

[19] *Castrol v. Pennzoil Co.*, 987 F.2d 939 (3d Cir. 1993); McCarthy, Vol. 4, Ch. 27, § 59 at p. 27-124.

[20] *See* Memorandum and Order (July 19, 2007) [DN 312] at 20.

[21] McCarthy, Vol. 4, Ch. 27, § 59 at p. 27-124; *Castrol v. Pennzoil Co.*, 987 F.2d 939, 946 (3d Cir. 1993)("[T]here need not be a direct comparison to a competitor for statement to be actionable under the Lanham Act").

[22] Memorandum and Order (May 15, 2007) [DN 228] at 22 *citing Castrol, Inc. v. Quaker State Corp*., 977 F.2d 57, 63 (2d Cir. 1992).

[23] Memorandum and Order (May 15, 2007) [DN 228] at 22-23 *citing Castrol, Inc. v. Quaker State Corp*., 977 F.2d 57, 63 (2d Cir. 1992)(*citing*, inter alia, *McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co*., 938 F.2d 1544 (2d Cir. 1991)).

defendant.[24]  If you find that the tests cited by Posey in its advertisements were not reliable or that they did not support Posey's advertising statements, then the advertising claims must be found to be literally false even if it is claimed that the tests were conducted in good faith.[25]

I have already determined that two of Posey's advertising claims are literally false: the advertising claim that "An independent laboratory study was conducted to determine the most effective impact absorbing material," and the claim that "In an independent laboratory test designed to simulate a fall causing direct impact to the greater trochanter, the Posey Hipster III reduced the impact force below 90%, the best results of any hip protector available."[26]  The falsity of these two claims is established and you do not need to consider the falsity of these two claims.

**e)    Willfulness**

Conduct is "willful" if it is voluntary and intentional.[27]

**f)    The Statement Actually Deceives or Has the Tendency to Deceive**

In order to prove false advertising under the Lanham Act, HipSaver must show that the literally false statement actually deceives or has the tendency to deceive consumers.  However, there are two exceptions to this requirement.

- Where the challenged statement is literally false, you may infer from the statement itself that the literally false statement would deceive consumers.[28]

---

[24]  Memorandum and Order (May 15, 2007) [DN 228] at 23 *citing Spalding Sports Worldwide, Inc. v. Wilson Sporting Goods Co*., 198 F. Supp. 2d 59, 67 (D. Mass. 2002) (*citing Castrol, Inc. v. Pennzoil Quaker State Co*., 169 F. Supp. 2d 332, 336 (D.N.J. 2001)).

[25]  *Gillette Co. v. Norelco Consumer Prods. Co.*, 946 F.Supp. 115, 121-22 (D. Mass. 1996) (Lindsay, J.).

[26]  Memorandum and Order (May 15, 2007) [D.N. 228] at 28 (granting HipSaver's Motion for Partial Summary Judgment in part by finding that the following statements literally false: "An independent laboratory study was conducted to determine the most effective impact absorbing material," and "In an independent laboratory test designed to simulate a fall causing direct impact to the greater trochanter, the Posey Hipster III reduced the impact force below 90%, the best results of any hip protector available").

[27]  *Tamko Roofing Prods., Inc. v. Ideal Roofing Co., Ltd.*, 282 F.3d 23, 32 (1st Cir. 2002).

[28]  *Cashmere*, 284 F.3d 302, 311; *Clorox*, 228 F.3d at 33, n.6; s*ee also Balance Dynamics Corp. v. Schmitt Indus.*, 204 F.3d 683, 693 (6th Cir. 2000) (noting that when a statement is literally false, "a plaintiff need not demonstrate actual customer deception in order to obtain relief"); *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1180 (8th

- Deception may also be established if you find that Posey intended to deceive the consuming public.[29]  Intention to deceive may be found where, for example, Posey knew that a challenged advertising statement was misleading but failed to clarify the statement to minimize or remove consumer confusion.[30]  In considering whether Posey's false advertising was intentional, you may consider Posey's past advertising conduct, including its earlier advertising campaign which was withdrawn as part of a settlement agreement with HipSaver.[31]

g)    **The Deception Must Be Material**

The materiality component of a false advertising claim requires HipSaver to prove that Posey's deception is "likely to influence the purchasing decision."[32]  One method of establishing materiality involves showing that the false or misleading statement relates to an "inherent quality or characteristic" of the product.[33]

I have already determined that two of Posey's advertising claims are material: the advertising claim that "An independent laboratory study was conducted to determine the most effective impact absorbing material," and the claim that "In an independent laboratory test designed to simulate a fall causing direct impact to the greater trochanter, the Posey Hipster III reduced the impact force below 90%, the best results of any hip protector available."[34]  The

---

Cir. 1998).

[29] *Cashmere*, 284 F.3d 302, 311.

[30] *Cashmere*, 284 F.3d 302, 316-17.

[31]  *JTH Tax, Inc. v. H & R Block Eastern Tax Servs. Inc.*, 128 F.Supp.2d 926, 938 (E.D. Va. 2001) (finding that Lanham Act false advertising was intentional, willful, and deliberate based in part on defendant's past advertising conduct and applying presumption of consumer deception for intentional false advertising), *aff'd in part by* 28 Fed.Appx. 207, 211-12 (4th Cir. 2002) (affirming district court's finding of intentional, willful, and deliberate false advertising).

[32] *Clorox*, 228 F.3d at 33 n. 6.

[33] *Cashmere*, 284 F.3d at 311-312.

[34]  Memorandum and Order (May 15, 2007)[D.N. 228] at p. 28 (granting HipSaver's Motion for Partial Summary Judgment in part by finding that the statements "An independent laboratory study was conducted to determine the most effective impact absorbing material," and "In an independent laboratory test designed to simulate a fall causing direct impact to the greater trochanter, the Posey Hipster III reduced the impact force below 90%, the best results of any hip protector available" are material).

materiality of these two claims is established and you do not need to consider the materiality of these two claims.

**h)**    **HipSaver Has Been or is Likely to Be Injured as a Result of the Statement**

In order to find that HipSaver has been or is likely to be injured as a result of the statement, you must find that HipSaver suffered actual harm or is likely to suffer actual harm in the future.

If you should find that Posey made any literally false comparative statements in the challenged advertising in a willful or deliberate manner, that is with knowledge of their falsity, and that Posey and HipSaver compete in a two firm market then you may presume that HipSaver has suffered harm.[35]   In considering whether Posey's false advertising was willful or deliberate, you may consider Posey's past advertising conduct.[36]

For a showing of actual harm, "[a] precise showing is not required, and a diversion of sales, for example, would suffice."[37]   HipSaver must prove the fact of damage with reasonable certainty, which can be satisfied by "proof of some damage flowing from Posey's unlawful act."[38]   Proof of damage does not necessarily require a showing of a decrease in sales; you may find harm if HipSaver's sales continued to grow but the rate of growth decreased as a result of Posey's actions.[39]   For example, if you find that HipSaver lost sales as a result of Posey's advertising or that HipSaver's growth slowed as a result of Posey's advertising or that HipSaver's sales or potential sales were diverted to Posey as a result of the advertising, you

---

[35]  *See* Memorandum and Order at 19 (DN 312, July 19, 2007); *Porous Media Corp. v. Pall Corp.*, 110 F.3d 1329, 1332-33 (8th Cir. 1997) (affirming this jury instruction by the trial court in a Lanham Act false advertising case).

[36]  *JTH Tax, Inc. v. H & R Block Eastern Tax Servs. Inc.*, 128 F.Supp.2d 926, 938 (E.D. Va. 2001) (finding that Lanham Act false advertising was intentional, willful, and deliberate based in part on defendant's past advertising conduct and applying presumption of consumer deception for deliberate false advertising), *aff'd in part by* 28 Fed.Appx. 207, 211-12 (4th Cir. 2002) (affirming district court's finding of intentional, willful, and deliberate false advertising).

[37]  *Cashmere and Camel Hair Manufacturer's Institute v. Saks Fifth Avenue*, 284 F.3d 302, 318 (1st Cir. 2002).

[38]  *Ricky Smith Pontiac, Inc. v. Subaru of New England, Inc.*, 14 Mass.App.Ct. 396, 422-423 (1982).

[39]  *Ricky Smith Pontiac, Inc.*, 14 Mass.App.Ct. at 422-423 (1982); *see also Rebel Oil Co. v. Atlantic Richfield Co.*,

have found actual harm.[40]

---

957 F.Supp. 1184, 1197 (D. Nev. 1997)(finding that a material issue of fact existed with respect to lost profits even where there was steady growth in the plaintiff's profit margins throughout the period in question).

[40]   *Ricky Smith Pontiac, Inc.*, 14 Mass.App.Ct. at 422-423 (1982)(awarding lost profits for loss of additional sales even though plaintiff's sales increased over time)

26

### 3.2    False Advertising Damages – Posey's Profits[41]

If you find that HipSaver has been harmed, you may determine an amount of damages to be paid to HipSaver. Your determination will be advisory. Under federal law, I will make the final determination of damages.

In calculating an award, you may award Posey's profits to HipSaver as a measure of HipSaver's injury.[42] HipSaver has the burden of proving Posey's gross revenue by a preponderance of the evidence. Profit is determined by deducting all expenses from gross revenue. Gross revenue is all of Posey's receipts from using false advertising in the sale of hip protectors.

Posey has the burden of proving the expenses and the portion of the profit attributable to factors other than false advertising by a preponderance of the evidence. Expenses are all operating and production costs incurred in producing the gross revenue.

---

[41]  Manual of Model Civil Jury Instructions (Ninth Circuit, 2004).
[42]  *Vermont Pure Holdings, Ltd. v. Nestle Waters North America, Slip Copy* Case No. 03-11465, 2006 WL 839486 at
* 12 (D. Mass. March 28, 2006)(Woodlock, J.); *Tamko Roofing Products, Inc. v. Ideal Roofing Company, Ltd.*, 282
F.3d 23 (1st Cir. 2002)(Lynch, J.).

**3.3    Intentional False Advertising**[43]

If you find that the Posey engaged in false advertising, you must also determine whether Posey's false advertising was deliberate or willful, knowing that its advertising was false.[44]

In considering whether Posey's false advertising was deliberate or willful, you may consider Posey's past advertising conduct, including its earlier advertising campaign which was withdrawn as part of a settlement with HipSaver.[45]

---

[43]  *See* Manual of Model Civil Jury Instructions (Ninth Circuit, 2004).

[44]  *See Tamko Roofing Products, Inc. v. Ideal Roofing Company, Ltd.*, 282 F.3d 23, 31 (1st Cir. 2002) (Lynch, J.) (affirming attorney's fees award based on an advisory jury finding that Lanham Act violation was willful).

[45]  *JTH Tax, Inc. v. H & R Block Eastern Tax Servs. Inc.*, 128 F.Supp.2d 926, 938 (E.D. Va. 2001) (finding that Lanham Act false advertising was intentional, willful, and deliberate based in part on defendant's past advertising conduct), *aff'd in part by* 28 Fed.Appx. 207, 211-12 (4th Cir. 2002) (affirming district court's finding of intentional, willful, and deliberate false advertising).

4.     **BREACH OF CONTRACT**

HipSaver claims that Posey breached the 2004 settlement agreement between the parties by distributing its Garwood advertisements in 2004 and 2005 without providing 30 days advance notice. The settlement agreement requires 30 days advance notice unless HipSaver was aware that the Garwood ads were already being used by Posey at the time of the 2004 settlement agreement.

### 4.1    Elements of a Breach of Contract Claim[46]

A contract is a legally enforceable promise or set of promises. A settlement agreement is a contract.[47] A breach of contract claim is a failure to comply with one or more terms of the contract. In order to recover for breach of contract, the non-breaching party must have completely performed its own obligation under the contract. Where one party to a contract has failed to perform its obligations, then as a matter of law the other party is thereafter excused from performing its contractual obligations.

In order to prevail on its breach of contract claim, HipSaver must prove the following four elements by a preponderance of the evidence:

1. that there is a contract;

2. that HipSaver performed its obligations under the contract (or is excused from performance);

3. that Posey breached the contract; and

4. that HipSaver suffered damages as a result of the breach of contract.

---

[46] *Massachusetts Superior Court Civil Practice Jury Instructions*, §14.1.19
[47] *National Fire Protection Ass'n, Inc. v. Intern. Code Council, Inc.*, Case No. 03-10848, WL 839501 (D. Mass, March 29, 2006).

**4.2    Damages for Breach of Contract**[48]

For every breach of a promise made on good consideration, the law awards some damage. Actual damages stemming from a breach of contract must be proven. However, if a breach is found but actual damages are not proven, the plaintiff is entitled, at least, to nominal damages.[49]

Actual damages must be proven. If a party breaches a contract, then the non-breaching party has a right to elect a remedy to redress the breach. The type of breach must be considered in order to determine the remedies available to the non-breaching party.

There are two kinds of breach of contract—material breaches and immaterial breaches. A material breach occurs when there is a breach of an essential feature of the contract, or when there is a breach that goes to the heart of the agreement.

The basic principle of contract damages is that the injured party should be put in as good a position as if the other party had fully performed its obligations under the contract.[50]

In order to recover damages against Posey for breach of contract HipSaver must demonstrate that the damages complained of were caused by Posey's conduct.

If you find that Posey breached the settlement agreement but that HipSaver failed to prove that it sustained any actual damages, you may return a verdict for HipSaver on its breach of contract claim and fix the amount of compensatory damages in a nominal sum such as one dollar.[51]

---

[48]  *Massachusetts Superior Court Civil Practice Jury Instructions*, v. 1, §14.3.
[49]  *Corbett v. Derman Shoe Co.*, 338 Mass. 405, 412 (1959).
[50]  *Massachusetts Superior Court Civil Practice Jury Instructions*, v. 1, §14.3.1(a).
[51]  *Corbett v. Derman Shoe Co.*, 338 Mass. 405, 412 (1959).

31

5.      **DAMAGES GENERALLY**

If you find that HipSaver has proven one or more of its claims against Posey, then you will need to decide the amount of damages, if any, that HipSaver should recover for the harm that was caused or substantially caused by Posey. "Damages" means the amount of money that will reasonably and fairly compensate HipSaver for the injury it suffered as a result of Posey's unlawful conduct.[52] I have already charged you with instructions pertaining to each of the claims set forth by HipSaver in this case.

With respect to its case for actual damages, HipSaver is not required to prove the amount of its damages with mathematical precision.[53] Although you cannot merely guess as to the amount of damages, you may make a just and reasonable estimate of the damage based on both the direct and circumstantial evidence.[54] Once HipSaver has provided a reasonable basis for damages, HipSaver need only prove the amount of damages with as much certainty as the circumstances of the case permit.[55]

---

[52] *Alpo PetFoods, Inc. v. Ralston Purina Co.*, 997 F.2d 949, 954 (D.C. 1993).

[53] *Alpo Petfoods v. Ralston Purina Co.*, 997 F.2d 949, 954 (D.C. Cir. 1993) (explaining, in false advertising context, that where damages are uncertain, the wrongdoer bears the risk of the uncertainty created by his conduct), reh 'g dismissed (May 11, 1994); *Ricky Smith Pontiac v. Subaru of New England, Inc.*, 14 Mass. App. Ct. 396, 426-27 (1982) (explaining that in business tort cases, "an element of uncertainty is permitted in calculating damages and an award of damages can stand on less than substantial evidence"), review denied, 387 Mass. 1103 (1982).

[54] *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 264 (1946) (jury may award damages to a plaintiff based on a "just and reasonable estimate of the damage based on relevant data"), reh 'g denied, 327 U.S. 817 (1946); *Big 0 Tire Dealers, Inc. v. Goodyear Tire and Rubber Co.*, 408 F. Supp. 1219, 1248 (D. Colo. 1976) (jury instructions explaining that "jury should use its best judgment in determining the amount of such damages, if any, based upon the evidence"), aff'd as modified, 561 F.2d 1365 (10th Cir. 1977), cert. dismissed, 434 U.S. 1052 (1978).

[55] *Ricky Smith Pontiac, Inc. v. Subaru of New England, Inc.*, 14 Mass.App.Ct. 396, 426-7 (1982)(awarding lost profits for loss of additional sales even though plaintiff's sales increased over time); *see also Cahill v. TIG Premier Ins. Co.*, 47 F.Supp. 2d 87, 89 (D.Mass. 1999)(affirming jury award for lost profits because expert testimony provided "sufficient certainty" and stating that while lost profits cannot be recovered when they are "remote, speculative, hypothetical, and not within the realm of reasonable certainty," they need not be "susceptible of calculation with mathematical exactness")(internal citations omitted*); Eldim, Inc. v. Mullen*, 47 Mass. App. Ct. 125, 129-130 (1999)(affirming district court's award for lost profits in a non-competition case where damages were based on plaintiff's previous contracts for similar products, and stating that "although lost profits are often difficult to prove with precision, uncertainty in the assessment of damages is not a bar to their recovery, especially where any difficulties in determining damages arise in large part from the defendant's conduct" and that in such cases, "a reasonable approximation will suffice")(internal quotations omitted); *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 562-564 (1931)(allowing for award of damages proven "as a matter of just and reasonable

Your damages awards for false advertising and breach of contract may not be duplicative, which simply means that HipSaver should be compensated in full for the harm it proves, but damages for the same losses should not be counted more than once.[56]

You may also award injunctive relief.  If you find that HipSaver faces a likelihood of suffering future harm as a result of Posey's actions, you may award injunctive relief.  Injunctive relief may be awarded in many forms.  For example, you may require Posey to cease the offending activity or to distribute corrective advertising.[57]

---

inference, although the result will only be approximate" because "it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts").

[56] *Fox v. F&J Gattozzi Corp.*, 41 Mass. App. Ct. 581, 588-89 (1997) (holding that duplicative damages may not be recovered for losses caused by the same wrongful act).

[57] 15 U.S.C. 1125; *Castrol, Inc. v. Quaker State Corp.*, 977 F.2d 57 (2d. Cir. 1992); *Novartis Corp. v. F.T.C.*, 223 F.3d 783 (D.C. Cir. 2000).

**6.    STIPULATED FACTS**

The parties have stipulated to certain facts which you should assume are true for the purposes of this case. The stipulated facts are set forth in Plaintiff's Trial Brief [D.N. 274] at 7-12, attached as Exhibit A for the Court's convenience.

**7.    DELIBERATION AND VERDICT**

**7.1    Selection of Foreperson and Form of Verdict**

Upon retiring to the jury room, the foreperson will preside over your deliberations and will be your representative here in court.

Each of you must decide the case for yourself, but you should do so only after you have considered all the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not hesitate to change your opinion if the discussion persuades you that you should. Do not come to a decision simply because other jurors think it is right.[58]

A form of verdict has been prepared for you. The verdict form asks specific questions relating to each of HipSaver's claims. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in the answers to the questions, date, and sign the form. You will then return, with your verdict, to the courtroom.

You have a great responsibility to deliberate carefully and fully on every issue before you and to complete the verdict form accurately and completely.

---

[58]  Manual of Model Civil Jury Instructions, § 3.1 (Ninth Circuit, 2007).

## 7.2    Jury Communications[59]

If it becomes necessary during your deliberations to communicate with me, you may send a note through the marshal, signed by your presiding juror or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court. If you send out a question, I will consult with the parties before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to the court.

---

[59] Manual of Model Civil Jury Instructions, § 3.2 (Ninth Circuit, 2007).

### 7.3    Unanimous Verdict[60]

Your verdict must represent the considered judgment of each juror.  Your verdict on each question in the verdict form, whether for or against a party, must be unanimous.

You should make every reasonable effort to reach a verdict.  In doing so, you should consult with one another, express your own views, and listen to the opinions of your fellow jurors.  Discuss your differences with an open mind.  Do not hesitate to reexamine your own views and change your opinion if you come to believe it is wrong.  But you should not surrender your honest beliefs about the weight or effect of evidence solely because of the opinions of other jurors or for the purpose of returning a unanimous verdict.

You should give fair and equal consideration to all the evidence and deliberate with the goal of reaching an agreement that is consistent with the individual judgment of each juror.  You are impartial judges of the facts.  Your only interest is to seek the truth from the evidence in the case.  You now have the most important role in this case.  It is up to you to reach a fair and impartial verdict.

---

[60]  *See* Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware (1993).

### 7.4    Court Has No Opinion[61]

Let me finish by repeating something that I said to your earlier.  Nothing that I have said or done during this trial was meant to influence your decision in any way.  You must decide the issues in this case yourselves based on the evidence presented.

You may retire to begin your deliberations and the Court will await your just verdict. The bailiff shall now escort you to the jury room.

---

[61]  *See* Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware (1993).

Respectfully submitted
The HipSaver Company, Inc.
By its Attorneys,


/s/  Courtney M. Quish
Lee Carl Bromberg, BBO No.:  058480
Edward J. Dailey, BBO No.:  112220
Courtney M. Quish, BBO No.:  662288
Paul S. Kitchin, BBO No.: 667954
BROMBERG SUNSTEIN, LLP
125 Summer Street - 11th floor
Boston, Massachusetts 02110-1618
617.443.9292
617.443.0004  Fax
cquish@bromsun.com
August 08, 2007

## CERTIFICATE OF SERVICE

I certify that this document has been filed through the Electronic Case Filing System of the United States District Court for the District of Massachusetts and will be served electronically by the court to the Registered Participants identified in the Notice of Electronic filing.


/s/  Courtney M. Quish
Courtney M. Quish


02820/00502 722362.1

# EXHIBIT A

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

_____

|  |  |  |
|---|---|---|
| THE HIPSAVER COMPANY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v | ) | Civil Action No. 05-10917 PBS |
| | ) | |
| J.T. POSEY COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

_____)

## PLAINTIFF'S TRIAL BRIEF

Lee Carl Bromberg, BBO No.: 058480
Edward J. Dailey, BBO No.: 112220
Courtney M. Quish, BBO No.: 662288
BROMBERG SUNSTEIN, LLP
125 Summer Street - 11th floor
Boston, Massachusetts 02110-1618
617.443.9292
617.443.0004  Fax

Jeffrey G. Sheldon (CA Bar No. 67516)
Douglas H. Morseburg (CA Bar No. 126205)
SHELDON MAK ROSE & ANDERSON PC
225 South Lake Avenue, Suite 900
Pasadena, CA 91001
(626) 796-4000

Anthony J. Fitzpatrick (BBO # 564324)
DUANE MORRIS LLP
470 Atlantic Avenue, Suite 500
Boston, MA 02210
(617) 289-9200

*Attorneys for Plaintiff,*
*The HipSaver Company.*

*Attorneys for the Defendant,*
*J.T. Posey Company.*

# TABLE OF CONTENTS

I.    STATEMENT OF PENDING PRETRIAL MOTIONS ......................................... 1

II.   STATEMENT OF THE CASE AND ISSUES TO BE TRIED ............................. 1

  1.    Concise Summary Of The Evidence To Be Offered By HipSaver ............................ 1

  2.    Stipulated Facts .................................................................................................. 7

  3.    HipSaver's Statement Of Contested Issues Of Fact ................................................ 12

  4.    HipSaver's Statement of Issues of Law ................................................................. 13

       A.    HipSaver Will Prevail On Its Lanham Act False Advertising Claim
             (Count II) ..................................................................................................... 13

             1.    Posey's Garwood Advertisements Make Literally False
                   Claims ............................................................................................... 14

                   a.    Posey's Advertising Claim Showing Posey Hipster's
                         Performance in a Test Simulating "a Fall Causing
                         Direct Impact to the Greater Trochanter" is Literally
                         False Because the Garwood Test Did Not Simulate a
                         Fall ......................................................................................... 15

                   b.    Posey's Advertising Claim that Posey Hipsters Are
                         "Proven Effective in Laboratory Tests" and Have
                         "Excellent Impact Absorption" Cannot Be Supported
                         by the Garwood Test and Therefore, is Literally False ......... 16

                   c.    Posey's Advertising Claim That "Posey Hipsters Help
                         Protect Against Injury from a Fall" Cannot Be
                         Supported by the Garwood Test and Is Therefore
                         Literally False ........................................................................ 17

                   d.    The Statement that "Posey engaged Garwood
                         Laboratories to conduct testing to select a comfortable
                         and effective impact absorbing material" is literally
                         false ....................................................................................... 17

                   e.    Posey's Advertisement is Literally False in its Entirety
                         Because the Overall Impression of the Garwood
                         Advertisement Strongly Falsely Suggests That the
                         Garwood Test Results Prove That Posey Hipsters Help
                         Protect Against Hip Fractures from Falls ............................ 17

2. Posey's False Advertisements Actually Deceives or Has the Tendency to Deceive a Substantial Segment of its Audience ........... 18

3. Posey's False Advertisements Are Material ..................................... 19

4. Posey's Garwood Advertising was Distributed in Interstate Commerce ........................................................................................ 19

5. Posey's False Garwood Advertisement Caused Harm to HipSaver And Is Likely To Cause Future Harm to HipSaver .......... 19

   a. The 2006 HipSaver Sales Data Shows that HipSaver Sales Rebounded After the Garwood Ad was Discontinued and Supports a Strong Inference of Causation and Injury ........................................................... 21

   b. Posey's Growth Rate was Almost Twice That of HipSaver During the Period of the Garwood Advertising and Supports a Strong Inference that the Garwood Advertising Caused Injury to HipSaver ............... 23

   c. The 2006 DermaSaver Sales Data Shows that External Factors such as Formulary Restrictions or Brand Loyalty Cannot Alone Account for the Disparity in HipSaver and Posey Sales ..................................... 24

   d. A Reasonable Fact Finder Can Infer That Posey's False Advertisements Caused Harm to HipSaver ................. 25

6. HipSaver Seeks an Accounting of Posey's Profits as a Proxy for Its Injury .................................................................................... 25

7. Posey's False Advertising was Willful ........................................... 27

B. HipSaver Will Prevail On Its Chapter 93A Claim (Count III) ..................... 27

C. HipSaver Will Prevail On Its Breach Of Contract Claim (Count I) .............. 28

   1. The Settlement Agreement Between the Parties is Valid and Binding ........................................................................................ 28

   2. HipSaver Complied with the Contract and Performed all Obligations under the Contract ....................................................... 29

   3. Posey Breached the Notice Provision of the Settlement Agreement ...................................................................................... 29

       4.    Posey's Breach of the Settlement Agreement Caused Damage
to HipSaver ........................................................................................ 30

III.    PLAINTIFF'S PROPOSAL REGARDING VOIR DIRE .................................................... 31

IV.    PLAINTIFF'S PROPOSAL REGARDING PRETRIAL JURY CHARGE ......................... 31

V.    PLAINTIFF'S PROPOSED JURY INSTRUCTIONS ......................................................... 31

VI.    PLAINTIFF'S PROPOSED JURY VERDICT FORM ........................................................ 31

VII.    PLAINTIFF'S PROPOSAL REGARDING FINDINGS OF FACT AND
CONCLUSIONS OF LAW ................................................................................................ 31

Plaintiff The HipSaver Company, Inc. ("HipSaver") submits this Trial Brief pursuant to the Court's February 14, 2007, Pretrial Order [**D.N.** 213].  Trial in this matter is currently scheduled to begin on June 4, 2007.

## I.    STATEMENT OF PENDING PRETRIAL MOTIONS

On May 15, 2007, HipSaver filed the following three motions *in Limine*:

- HipSaver's Motion *in Limine* to Exclude the 2006 Tampere Test and Test Results [**D.N.** 241];
- HipSaver's Motion *in Limine* to Exclude Expert Testimony of Kevin Minissian [**D.N.** 243];
- HipSaver's Motion *in Limine* to Exclude Opinion Testimony of Gary Reich by [**D.N.** 247];

On May 25, 2007, HipSaver filed a Motion *In Limine* To Exclude Posey's Affirmative Defense of Unclean Hands [**D.N.** 272]

On May 15, 2007, J.T. Posey Company ("Posey") filed seven motions *in limine*:

- Posey's First Motion *in Limine* For Order Precluding Use of Certain Terms To Refer To Posey, Its President And Its Products [**D.N.** 231];
- Posey's Second Motion *in Limine* For Order Precluding Evidence That HipSaver Has Been Harmed As A Consequence Of Posey's Accused Ads [**D.N.** 232];
- Posey's Third Motion *in Limine* For Order Precluding Testimony Of Roy J. Epstein Regarding Damage In Fact To The HipSaver Company, Inc. [**D.N.** 233];
- Posey's Fourth Motion *in Limine* For An Order Precluding Trial Of Issues Involving The Truth Or Falsity Of Advertising Statements Not Involving The Garwood Testing [**D.N.** 234];
- Posey's Fifth Motion *in Limine* For Order Precluding Expert Testimony By Edward Goodwin [**D.N.** 235];
- Posey's Sixth Motion *in Limine* For An Order Precluding HipSaver From Juxtaposing Portions Of Different Advertisements Or Presenting Portions Of Advertisements Out Of Context [**D.N.** 236];
- Posey's Seventh Motion *in Limine* For Order Limiting Use Of Information Regarding Posey I At Trial [**D.N.** 237].

On May 22, 2007, both parties filed oppositions to the other's motions *in limine*.

## II.    STATEMENT OF THE CASE AND ISSUES TO BE TRIED

### 1.    Concise Summary Of The Evidence To Be Offered By HipSaver

Plaintiff The HipSaver Company ("HipSaver") is a small, closely-held Massachusetts

1

corporation that develops, manufactures, and distributes hip protector garments. These garments consist of a foam pad enclosed in an expendable air pouch, which absorbs energy associated with the impact from a fall and provides fracture protection to the hip/femur in the elderly and disabled. The device is washable, sewn into clothing, and positioned over the hip. HipSaver's President, Edward Goodwin, invented the product in 1995.

Until recently, HipSaver was a single product company that only sold the HipSaver product. Starting in June 2005, HipSaver began selling a second product under the trade name DermaSaver. The DermaSaver product line consists of a series of skin cover or skin protection products that are designed to protect fragile skin and reduce shear and pressure by using a revolutionary MicroSpring™ textile in the product. These products are sold to the same customer base: long-term care facilities and nursing homes.

Posey is a large, multi-product California corporation. Posey, with annual revenues in excess of $40 million, is the dominant nationwide distributor of patient safety and support equipment devices. One of Posey's product lines is a line of hip protectors ("Hipsters") which compete directly with the HipSaver garment.

Together, Posey and HipSaver dominate the hip protector market in the United States. The hip protector garments are used in nursing homes, rehabilitation hospitals and private residences to protect against hip fractures in the elderly caused by falls. The relevant market includes some 17,000 nursing homes and 3,000 rehabilitation hospitals.

The dispute between these parties is the result of a failed settlement between HipSaver and Posey. In 2004, HipSaver challenged Posey's deceptive advertising tactics in an earlier action before this court, Docket Number 04-11294-PBS ("2004 Litigation"). After mediation before Judge Mazzone, the parties attempted to resolve the issues by settlement. In September 2004, the parties executed a written Settlement Agreement ("Settlement Agreement"). By the terms of the

Settlement Agreement Posey withdrew its so-called "UCLA White Paper" advertisements, circulated a corrective advertising statement, and paid $360,000 to HipSaver. The Settlement Agreement resolved the underlying dispute over the UCLA advertisements, but it fell short of its goal to halt Posey's general market strategy of positioning itself in the marketplace for soft hip protector garments through false and deceptive advertising.

Now, for the second time in three years, HipSaver again challenges Posey's false and deceptive advertising practices. Given Posey's contumacious acts in the face of the earlier settlement, HipSaver seeks a fair and final resolution of this dispute.

In this case, HipSaver challenges a series of Posey advertisements making claims related to effectiveness and superiority of its hip protector product ("Garwood Advertisement/s"). Specifically, HipSaver challenges claims related to effectiveness and superiority that explicitly or implicitly rely on a test conducted at Garwood Laboratories in July, 2001 ("Garwood Test").

In the 2005 Complaint presently before the trial court, HipSaver claims that Posey conducted a literally false, deceptive and misleading advertising campaign with distribution of numerous versions of an advertisement referencing the Garwood Test. HipSaver complains that this nationwide advertising campaign violates the Lanham Act, 15 U.S.C. §1125(a)(1)(B) and the Massachusetts Unfair and Deceptive Business Practices Act, G.L. c. 93A, §§2, 11. HipSaver also complains that Posey breached the Settlement Agreement by distributing its false advertising based on new testing without notifying HipSaver of the new advertising as required by the Settlement Agreement.

The challenged nationwide advertising campaign includes variations of the following advertisements (shown below).[1] Throughout this Memorandum, these advertisements in all forms

---

[1] The Court has already determined that some of the claims in the Garwood Advertisements listed below are literally false, namely, (1) "An independent laboratory study was conducted to determine the most effective impact absorbing material," and (2) "In an independent laboratory test designed to simulate a fall causing direct impact to the greater

are referred to as the "Garwood Advertisement/s."



(highlighting inserted to identify challenged portions of the Advertisement).

---

trochanter, the Posey Hipster III reduced the impact force below 90%, the best results of any hip protector available." Memorandum and Order [**D.N.** 228] at pp. 27-28.

# POSEY HIPSTERS HELP PROTECT AGAINST INJURY FROM FALLS



It's a long way down for residents at risk of injury from falls. You can greatly reduce that risk with Posey Hipsters. The Hipsters' high energy-absorbing foam pads are positioned precisely over the hip bones, increasing the odds of surviving a fall uninjured. The Hipsters are comfortable and slim enough to be virtually undetectable under clothing. By offering increased protection, Hipsters relieve residents' anxiety about falling and enhance their quality of life.

- High impact-absorbing viscoelastic pads protect hip bones against injury from falls
- Soft, comfortable pads improve compliance versus hard-shelled products
- Washable to CDC standards for soiled linen without removing the pads
- 100% latex-free
- Five sizes for correct fit
- Discreet, low-profile pads are virtually undetectable under clothing




*Low Profile - All styles fit discreetly under men's and women's clothing.*

## Posey Hipsters Proven Effective in Laboratory Test

An independent laboratory study was conducted to determine the most effective impact absorbing material. A test was created that would simulate a fall causing direct impact to the greater trochanter. In this study, a weight was released in a guided drop to simulate a 120 lb. subject falling from a height of 36", or the estimated height of the hip above the floor for a typical nursing home resident. The baseline measurement of impact force was determined to be a fall directly onto concrete. The G-Force of a fall under this scenario was 2,660G's and, for purposes of comparison, is just slightly less impact force than that of a baseball being struck by a bat. In this extreme test, the low profile Posey Hipster reduced the impact force on average by 90% and showed excellent impact energy absorption.



Testing was conducted by Garwood Laboratories.
Data on file at J.T. Posey Company *Source: www.madsci.org

**Special offer: 30-day no-risk free trial.**
Test the Posey Hipsters for yourself with no obligation to buy.

PC 1744

Thousands of printed versions of these advertisements were distributed in Posey catalogs and mailers from August 2004 through Summer 2005 to Posey's nationwide list of corporate

5

customers as well as to an unknown number of potential Posey customers.  Posey also posted the Garwood Advertisement on its website, www.posey.com.

A version of this Garwood Advertisement was also distributed in videotape form.  In the video, the bar chart from the printed Garwood Advertisement is shown on the screen (as shown below) while a narrator simultaneously states the following, "In an independent laboratory test *designed to simulate a fall* causing direct impact to the greater trochanter, the Posey Hipster III reduced the impact force by 90%, **the best results of any hip protector available."**(emphasis added).



"In an independent laboratory test designed to simulate a fall causing direct impact to the greater trochanter, the Posey Hipster III reduced the impact force by 90%, the best results of any hip protector available."

HipSaver challenges the following statements made in the Garwood Advertisements as literally false and further challenges the entire advertisement as literally false based on the overall impression of the advertisement.

- **"A test was created that would simulate a fall causing direct impact to the greater trochanter."**

- **"An independent laboratory study was conducted to determine the most effective impact absorbing material**."[2]

- "In an independent laboratory test designed to simulate a fall causing direct impact to the greater trochanter, the Posey Hipster III reduced the impact force below 90%, **the best results of any hip protector available**."[3]

- "Posey Hipsters **Proven Effective in Laboratory Tests"**

- "Posey Hipsters **Help Protect Against Injury from Falls"**

- "Posey Hipster … **showed excellent impact energy absorption."**

- "Posey engaged Garwood Laboratories to **conduct testing to select a comfortable and effective impact absorbing material**."

These statements are all made in connection to or with reference to the Garwood Test. Because the Garwood Advertisement cites the Garwood Test as support for its claims, the parties focus on the Garwood Test to determine whether the challenged establishment claims are proven by the Garwood Test or are, alternatively, literally false.

The undisputed facts show that Posey distributed thousands upon thousands of copies of these advertisements in interstate commerce, using catalogs, mailers, and video. Posey also posted these advertisements on its website, www.posey.com. The parties agree that Posey's Garwood Test cannot support critical claims in the advertisements for which the Garwood Test is referenced. And Posey cannot dispute that the claims are material.

### 2.    Stipulated Facts

The parties, Plaintiff HipSaver and Defendant Posey have previously stipulated to the

---

[2]  The Court has already determined that this advertising claim is literally false, that it deceived consumers, and that it is material. Memorandum and Order [**D.N.** 228] at pp. 27-28. To the extent necessary, HipSaver will further prove at trial that this claim caused harm to HipSaver.
[3]  The Court has already determined that this advertising claim is literally false, that it deceived consumers, and that it is material. Memorandum and Order [**D.N.** 228] at pp. 27-28. To the extent necessary, HipSaver will further prove at trial that this claim caused harm to HipSaver.

following facts.  Joint Pretrial Memorandum [**D.N.** 223].

1.      HipSaver was founded in 1995. HipSaver is a company headquartered in Canton, Massachusetts. HipSaver had annual revenues in 2005 and 2006 of about $1.5 million. HipSaver is organized and registered as a Massachusetts corporation.

2.      Mr. Edward Goodwin founded the HipSaver Company and is the co-owner and President of HipSaver. He developed the HipSaver® hip protector, a soft foam washable encapsulated protective pad sewn into a garment.  Mr. Goodwin has sold HipSaver hip protectors since about 1995.  His product is sold in the United States, Canada, Europe, and Australia.

3.      Ms. Helen Brogna is the majority owner and Executive Vice President of HipSaver.

4.      Until 2006, HipSaver was a single product company, designing, developing, and manufacturing the HipSaver hip protector product.

5.      HipSaver's hip protector garment is sold under the HipSaver trademark.  HipSavers are sold to nursing homes, long term care facilities, rehabilitation hospitals, and consumers.

6.      HipSaver maintains a web-site at www.hipsaver.com.

7.      Posey was founded in 1937.  Posey is a California corporation headquartered in Arcadia, California.

8.      Mr. Ernest Posey is President of Posey.

9.      Ms. Victoria Lewis serves as a product manager for Posey.

10.     Mr. Charles Nail serves as the Controller for Posey.

11.     Posey is in the business of selling healthcare/safety products for patient restraint, fall safety, wound prevention, and wheelchair seating, among others.  Posey sells its products to nursing homes, long term care facilities and hospitals.  Posey's annual revenue for 2005 was slightly more than $40 million dollars.  Posey maintains a website at www.posey.com.

12.     A hip protector product is a product designed to protect at-risk individuals, primarily the elderly, against hip fractures caused by falls by reducing the force of the impact of the fall.

13.     Hip protectors may be comprised of entirely soft materials, entirely hard materials consisting essentially of a shield, or a combination of both hard and soft materials.

14.     Posey introduced its first soft hip protector into the market in the year 2000. It was sold under the name "Hipster". Posey later re-designed its soft hip protector. Its re-designed soft hip protector was introduced into the market in approximately October 2001.

15.     HipSaver and Posey currently manufacture and sell entirely soft hip protectors.

16.     HipSaver and Posey are direct competitors in the hip protector market.

17.     This lawsuit challenges a series of advertisements published and distributed by J.T. Posey containing references to tests conducted by Garwood Laboratories. These advertisements are referred to as the "Garwood Advertisement/s" or the "Garwood Ad/s". Distribution of the ads in question commenced approximately in the latter part of 2001.

18.     Garwood Laboratories, Inc. is a California corporation that conducts various types of testing.

19.     In 2001, Posey paid Garwood to conduct some testing on some foam materials that Posey was considering using in the pads that are incorporated into its hip protectors. Since 2001, Posey contracted with and retained Garwood Laboratories on a number of occasions to conduct material or product testing, including impact tests on hip protector materials and products in 2005.

20.     Garwood Laboratories conducted the "independent laboratory test" referred to in the

Garwood ads. The tests conducted by Garwood Laboratories are referred to as the "Garwood Test/s."

21. Garwood performed two different types of tests for Posey. In one of the tests, Garwood tested samples of raw materials. Each material sample was placed under a 6" diameter weight weighing 72 lbs. The weight was then raised in a guide to the specified height of twenty-four (24) inches, and dropped on the sample. This drop was repeated on each sample. Impact amplitudes, measuring the force attenuation properties of the samples, were recorded. This type of test is referred to as a "direct impact test." Upon completion of each test, the test samples were inspected by a Posey representative and returned to Posey.

22. Following the testing, Garwood produced reports to Posey detailing the results of the testing.

23. In late 2001, Posey began disseminating advertising materials that made reference to the Garwood Test. In these early advertisements, Posey stated that the tests were conducted in 2001. These early advertisements contained the following statements:

a) "A test was created that would simulate a fall causing direct impact to the greater trochanter."

b) "An independent laboratory study was conducted to determine the most effective impact absorbing material."

c) "In an independent laboratory test designed to simulate a fall causing direct impact to the greater trochanter, the Posey Hipster III reduced the impact force by 90%, the best results of any hip protector available."

d) "Posey Hipsters Proven Effective in Laboratory Tests"

e) "Posey Hipsters Help Protect Against Injury from Falls"

10

f)      "Posey Hipster … showed excellent impact energy absorption."

24.     The Garwood Ads were contained in Posey product catalogs, product instruction sheets and brochures.  These materials were mailed to customers and prospective customers, distributed at trade shows and sent to people who requested information on Posey's Hipster hip protectors.

25.     Posey also distributed materials containing the Garwood Ads in late 2004.  These materials repeated the same statements that were contained in the earlier Garwood Ads.

26.     At some point, Posey deleted the reference to the 2001 date.

27.     Beginning in 2004, the Garwood Ad was often placed on a flyer which included references to Posey's High Durability Hipster product.

28.     Posey's Garwood Advertisements were withdrawn in the fall of 2005.

29.     HipSaver's President, Mr. Goodwin, learned of Posey's Garwood Ads at least as early as 2002.

30.     Late in 2003, Posey distributed advertising that made reference to a so-called "UCLA White Paper."

31.     On June 10, 2004, HipSaver filed a lawsuit in the United States District Court for the District of Massachusetts, claiming, among other things, that the UCLA ads were false ("Posey I").

32.     In connection with its claims in Posey I, HipSaver sought, among other things, damages and preliminary and permanent injunctive relief halting and preventing further publication, distribution, or reference to the challenged UCLA advertisement or so-called "UCLA White Paper" or the false testing conducted in support of the UCLA White Paper.  HipSaver also sought an injunction halting all further publication or distribution of, or reference to, materials that claimed Posey's hip protector products were superior to HipSaver's.

11

33.     In Posey I, Posey counterclaimed against HipSaver for, among other things, false advertising.  Posey's counterclaims arose out of HipSaver's publication of various statements regarding the parties' respective products on HipSaver's internet web-site.  On September 21, 2004, the parties settled the Posey I lawsuit.  As part of the settlement, the parties dismissed with prejudice the claims and counterclaims asserted in Posey I and entered into a written settlement agreement.

34.     After the Posey I settlement, HipSaver challenged Posey's Garwood advertising by way of a "cease and desist" letter dated May 3, 2005.  HipSaver filed this lawsuit on May 4, 2005.

35.     In May 2005, in response to HipSaver's letter objecting to Posey's advertising statements regarding the results of the Garwood Test, Posey changed some of the language in its advertisements.

36.     In August 2005, Posey eliminated any reference to the results of the Garwood advertising.  In addition, it removed the product instructions which mentioned Garwood from its web-site.

### 3.     HipSaver's Statement Of Contested Issues Of Fact

1.     Whether statements made by Posey and published in the Garwood Ads were literally false:[4]

a)     "A test was created that would simulate a fall causing direct impact to the greater trochanter."

b)     "An independent laboratory study was conducted to determine the most effective impact absorbing material."

c)     "In an independent laboratory test designed to simulate a fall causing direct

---

[4]  The Court has already determined that statements b) and c) below are literally false, that they deceived consumers, and that they are material.  Memorandum and Order [**D.N.** 228] at pp. 27-28.

impact to the greater trochanter, the Posey Hipster III reduced the impact force by 90%, the best results of any hip protector available."

d)      "Posey Hipsters Proven Effective in Laboratory Tests"

e)      "Posey Hipsters Help Protect Against Injury from Falls"

f)      "Posey Hipster … showed excellent impact energy absorption."

2.      Whether Posey's literally false statements are material.

3.      Whether Posey's advertising was unfair or deceptive.

4.      Whether Posey's literally false statements deceived or have the tendency to deceive consumers.

5.      Whether Posey's literally false statements have damaged HipSaver.

6.      Whether Posey's unfair or deceptive statements have damaged HipSaver.

7.      The extent of such damages.

8.      The extent of Posey's profits for its Hipster hip protector product.

9.      Whether Posey's literally false and unfair or deceptive statements were made maliciously, fraudulently, deliberately, or willfully.

10.     Whether Posey has breached the Notice provision of the 2004 Settlement Agreement.

11.     Whether Posey's breach of the Notice provision of the 2004 Settlement Agreement has damaged HipSaver.

12.     The extent of such damages.

    **4.      HipSaver's Statement of Issues of Law**

        **A.      HipSaver Will Prevail On Its Lanham Act False Advertising Claim (Count II)**

The Lanham Act §43(a) prohibits false advertising by prohibiting any "false or misleading representation of fact, which . . . in commercial advertising or promotion,

13

misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another

person's goods, services, or commercial activities."   15 U.S.C. §1125(a)(1)(B).  HipSaver will

prevail on this claim by showing that:

> (1) Posey made a false or misleading description of fact in a commercial advertisement; (2) the statement actually deceives or has the tendency to deceive a substantial segment of its audience; (3) the deception is material (*i.e.*, it is likely to influence the purchasing decision); (4) Posey placed the statement into interstate commerce; and (5) HipSaver has been or is likely to be injured as a result of the statement, either by direct diversion of sales to Posey and by a lessening of goodwill associated with HipSaver's products.

*See* Memorandum and Order [**D.N.** 228] at p. 21 (quoting *Cashmere and Camel Hair*

*Manufacturer's Institute v. Saks Fifth Avenue,* 284 F.3d 302, 310-11 (1st Cir. 2002)).

### 1. Posey's Garwood Advertisements Make Literally False Claims

Posey's Garwood Advertisement is literally false because the Garwood Test results do

not support the proposition for which they were cited.  To determine whether an ad is literally

false, "[f]irst, a factfinder must determine the claim conveyed by the advertisement. Once the

claim made by the advertisement has been determined, the factfinder must then evaluate whether

that claim is false."  Memorandum and Order [**D.N.** 228] at p. 22 (quoting *Clorox Co., P.R. v.*

*Proctor & Gamble Commercial Co.,* 228 F.3d 24, 34 (1st Cir. 2000)).

A plaintiff can succeed on a false advertising claim by proving either that the defendant's

advertisement is literally false or implicitly false.  *Cashmere,* 284 F.3d at 311.  Where the

challenged ad explicitly or implicitly represents that tests or studies prove its claims, "plaintiff

satisfies its burden of showing [literal falsehood] by showing that the tests did not establish the

proposition for which they were cited."  Memorandum and Order [**D.N.** 228] at p. 22 (quoting

*Castrol, Inc. v. Quaker State Corp.,* 977 F.2d 57, 63 (2nd Cir 1991)).  A plaintiff can meet this

burden by establishing either (a) that the tests were not sufficiently reliable to permit the conclusion for which it was cited; or (b) that the tests, even if reliable, do not establish the proposition for which they were asserted.  Memorandum and Order [**D.N.** 228] at p. 23 (quoting *Spalding Sports Worldwide, Inc. v. Wilson Sporting Goods Co., 198 F. Supp. 2d 59*, 67 (D. Mass. 2002)); *Castrol,* 977 F.2d at 63.  Posey's claims are literally false because the Garwood Test results do not support Posey's claims.

The Court has already determined that Posey's two relative product quality advertising claims are literally false:  (1) "An independent laboratory study was conducted to determine the most effective impact absorbing material," and (2) "In an independent laboratory test designed to simulate a fall causing direct impact to the greater trochanter, the Posey Hipster III reduced the impact force below 90%, the best results of any hip protector available."  Memorandum and Order [**D.N.** 228] at pp. 27-28.

> **a.  Posey's Advertising Claim Showing Posey Hipster's Performance in a Test Simulating "a Fall Causing Direct Impact to the Greater Trochanter" is Literally False Because the Garwood Test Did Not Simulate a Fall**

Of course, the very purpose of a hip protection garment is to protect a person, particularly elders and disabled persons, from hip fracture in the event of a fall.  Keying directly to this purpose, the Garwood Advertisement states, "An independent laboratory study was conducted to determine the most effective impact absorbing material.  A test was created that would *simulate a fall causing direct impact to the greater trochanter."*  But the parties and Posey's expert agree that the Garwood Test did not simulate a fall causing direct impact to the greater trochanter.  Posey's expert stated that the Garwood Tests "do not model the intricacies of the bone and soft tissue geometries and material properties" Memorandum and Order [**D.N.** 228] at p. 26 (quoting Ebramzadeh Rebuttal Expert Report, October 18, 2006, at unnumbered p. 8)) and

accordingly that, "[the Garwood test] is not the proper way to simulate a fall." *Id.* (quoting Ebramzadeh Depo. at 51). Dr. Ebramzadeh stated that, "Since the Garwood test is not a valid simulation . . . it should not be analyzed as one . . . . Treating the Garwood Test as a full simulation rather than a materials test exaggerates the difference in outcome between the Garwood test and [tests that have simulated a fall]." Ebramzadeh Rebuttal Expert Report, October 18, 2006, at unnumbered p. 9. The statement in the Garwood Advertisement that "A test was created that would simulate a fall causing direct impact to the greater trochanter" is literally false.

Not only is the claim that the test "simulated a fall" literally false, all claims purportedly established by the Garwood Test must also be literally false because the Garwood Test does not permit any conclusions about the effectiveness or performance of any tested matter in a simulation of a fall. *Castrol,* 977 F.2d at 63.

Furthermore, the test was not even a reliable materials test. The parties agree that the testing did not follow the precise specifications of the ASTM F355-95, the industry standard protocol specified in the Garwood Test procedures. *See* Memorandum and Order [**D.N.** 228] at p. 26. Therefore, all claims in the Garwood advertisement are literally false.

### b. Posey's Advertising Claim that Posey Hipsters Are "Proven Effective in Laboratory Tests" and Have "Excellent Impact Absorption" Cannot Be Supported by the Garwood Test and Therefore, is Literally False

In addition to the Garwood Test deficiencies discussed above, the Garwood Test cannot prove that the Hipster is effective or has excellent impact absorption. Where an advertising claim makes implicit or explicit references to tests, the plaintiff may satisfy its burden by showing that *those* tests do not prove the proposition for which they were asserted. *BASF Corp. v. Old World Trading Co., Inc.,* 41 F.3d 1081, 1091 (7th Cir. 1994). The Garwood Test cannot

be used to draw any conclusions about the effectiveness of the Hipster hip protector because it did not test the actual garment and did not consider the size of the pad and/or the positioning of the pad in the garment, two significant factors in the ability of the Hipster to absorb impact.

Accordingly, the Garwood Advertisement's claims that Posey Hipsters are "proven effective in laboratory tests" have "excellent impact absorption" cannot be supported by the Garwood Test results and is therefore, literally false.

**c.    Posey's Advertising Claim That "Posey Hipsters Help Protect Against Injury from a Fall" Cannot Be Supported by the Garwood Test and Is Therefore Literally False**

One of the variations of the Garwood Advertisement is titled "Posey Hipsters Help Protect Against Injury from a Fall." When the Advertisement is considered in its entirety, the claim of protection against injury in a fall looks to be supported by the Garwood Test results. However, this claim is also literally false because the Garwood Test does not simulate a fall and cannot substantiate the claim that the Hipster garment protects against injury from a fall.

**d.    The Statement that "Posey engaged Garwood Laboratories to conduct testing to select a comfortable and effective impact absorbing material" is literally false.**

Evidence will show that the Garwood test did not test comfortability. Furthermore, for the reasons stated above, the the impact energy absorbition test was invalid and therefore, could not even prove the effectiveness of a raw material.

**e.    Posey's Advertisement is Literally False in its Entirety Because the Overall Impression of the Garwood Advertisement Strongly Falsely Suggests That the Garwood Test Results Prove That Posey Hipsters Help Protect Against Hip Fractures from Falls**

Posey's Garwood Advertisement is literally false in its entirety because the overall impression of the Garwood Advertisement suggests that the Posey Hipster was laboratory tested in a fall simulation and was proven to be not only effective but, the most effective hip protector.

An advertisement conveys a claim by "necessary implication" under the Lanham Act when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated. Lanham Trade Mark Act, § 43(a), 15 U.S.C.A. § 1125(a); *Clorox,* 228 F.3d at 35. Here, the Garwood Advertisement taken as a whole is literally false because (a) neither the garment nor the raw material was tested in a study simulating a fall; (b) the study did not test the Hipster garment and is therefore, incapable of making any assessment as to the ability of the garment; (c) neither the garment nor the material was proven effective in preventing injury from a fall in the test; and (d) the pad was not the most effective at reducing force in a pure materials comparison. Accordingly, when considering the advertisement as a whole, the entire Garwood Advertisement is literally false.

## 2. Posey's False Advertisements Actually Deceives or Has the Tendency to Deceive a Substantial Segment of its Audience

To the extent HipSaver demonstrates Posey's literally false advertising, it is entitled to a "presumption of consumer deception, irrespective of the type of relief sought." *Cashmere*, 284 F.3d at 309. Also, to the extent HipSaver demonstrates Posey's intent to deceive consumers, HipSaver is entitled to a presumption of consumer deception: "It is well established that if there is proof that a defendant intentionally set out to deceive or mislead consumers, a presumption arises that consumers in fact have been deceived." *Cashmere*, 284 F.3d at 316.

The Court has already determined that Posey's two relative product quality advertising claims are literally false: (1) "An independent laboratory study was conducted to determine the most effective impact absorbing material," and (2) "In an independent laboratory test designed to simulate a fall causing direct impact to the greater trochanter, the Posey Hipster III reduced the impact force below 90%, the best results of any hip protector available." Memorandum and Order [**D.N.** 228] at pp. 27-28. Because these claims are literally false, HipSaver is entitled to a

presumption that these claims deceived consumers.

### 3.    Posey's False Advertisements Are Material

False or misleading statements relating to an "inherent quality or characteristic" of the product are material. *Cashmere,* 284 F.3d at 311-312 (finding that statement relating to the quality and characteristics of a cashmere garment would likely be found material by a rational fact finder) (internal citations omitted). The Court has already determined that "impact absorption is an 'inherent quality or characteristic' of hip protector garments -- reducing the impact from a fall is, after all, the point." Memorandum and Order [**D.N.** 228] at p. 28. All of Posey's Garwood advertising statements are therefore material, because they all make impact absorption claims based on the Garwood impact absorption tests.

In particular, the Court has already determined that Posey's two relative product quality advertising claims are material: (1) "An independent laboratory study was conducted to determine the most effective impact absorbing material," and (2) "In an independent laboratory test designed to simulate a fall causing direct impact to the greater trochanter, the Posey Hipster III reduced the impact force below 90%, the best results of any hip protector available." Memorandum and Order [**D.N.** 228] at p. 28.

### 4.    Posey's Garwood Advertising was Distributed in Interstate Commerce

Posey concedes that it placed the Garwood Advertisement in interstate commerce. Posey's Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment [D.N. 182] at p. 11.

### 5.    Posey's False Garwood Advertisement Caused Harm to HipSaver And Is Likely To Cause Future Harm to HipSaver

HipSaver suffered harm as a result of Posey's false Garwood Advertisement. HipSaver

must prove causation and fact of injury: "[t]he aggrieved party must demonstrate that the false advertisement actually harmed its business. A precise showing is not required, and a diversion of sales, for example, would suffice." *Cashmere*, 284 F.3d at 318.

HipSaver may meet this burden by showing that HipSaver and Posey are direct competitors and that HipSaver has been harmed by Posey's false advertising. *Vermont Pure Holdings Ltd. v. Nestle Waters North America Inc.*, No. Civ.A.03-11465 DPW, 2006 WL 839486 (D. Mass. March 28, 2006). Because the parties stipulate and this Court has made a finding of fact that the parties are direct competitors, Memorandum and Order [**D.N.** 228] at 3, HipSaver must show that HipSaver has suffered injury as a result of Posey's false advertising. Memorandum and Order [**D.N.** 228] at 31. HipSaver meets its burden if it presents evidence of causation and damages such that a rational fact finder could draw a "reasonable inference" of a causal connection between the false advertising and the harm sustained. *Cashmere*, 284 F.3d at 319 (1st Cir. 2002).

Where, as here, HipSaver and Posey are direct competitors, a less definite showing of injury is required. Memorandum and Order [**D.N.** 228] at 31, *citing Ortho Pharmaceutical Corp. v. Cosprophar, Inc.,* 32 F.3d 690, 694 (2d Cir. 1994); *Balance Dynamics Corp. v. Schmitt Indus.,* 204 F.3d 683, 691 (7th Cir. 2000)(noting that consumer confusion tends to show "hard to prove" marketplace damages, like lost profits or lost sales, "probably exist").

With respect to the comparative advertising claims contained in the Garwood advertisements and already found literally false by this Court, no further evidence of injury is required because where the defendant is found to have made false comparative statements with knowledge of their false nature, a presumption arises that consumers were deceived by such statements and that the plaintiff suffered damages as a result of such deception. *Porous Media*

*Corp. v. Pall Corp.,* 110 F.3d 1329 (8th Cir. 1997).

Once the plaintiff has provided a reasonable basis for damages, the plaintiff need only prove the amount of damages with as much certainty as the circumstances of the case permit. *Ricky Smith Pontiac, Inc. v. Subaru of New England, Inc.,* 14 Mass.App.Ct. 396, 426-427.  With respect to the amount of damages sought by HipSaver, HipSaver seeks Posey's lost profits as a proxy for its own damages.  Dr. Epstein assesses Posey's profits of its Hipster sales at $756,828.[5] Expert Report of Dr. Epstein, September 26, 2006 at 6.  It is Posey's burden to show if and to what extent HipSaver should not be awarded all of Posey's Hipster profits.  *Tamko Roofing Products, Inc. v. Ideal Roofing Co., Ltd,* 282 F.3d 23, 36-37 (1st Cir. 2002)(stating that once infringement and direct competition are established, the burden of showing that not all profits should be awarded falls on the defendant).

> **a.**  **The 2006 HipSaver Sales Data Shows that HipSaver Sales Rebounded After the Garwood Ad was Discontinued and Supports a Strong Inference of Causation and Injury**

The 2006 HipSaver sales data shows a marked increase in sales that began in December 2005 and continued to grow throughout 2006.  This sales increase shows that once the Garwood advertisement was discontinued, HipSaver sales rebounded.  Specifically, during the period of accused advertising, HipSaver's monthly sales averaged $58,769 per month.  From September 2005 through December 2005, HipSaver's sales averaged $69,461 per month.  And, for the 2006 calendar year, HipSaver's average monthly sales further increased to $75,057 per month.  *See* Supplemental Expert Report of Roy J. Epstein, May 24, 2006 at ¶ 5.

As Posey's own damages expert posited in his expert report, such a reaction strongly

---

[5]  HipSaver wishes to correct an error in this Court's Memorandum and Order.  This Court stated that HipSaver's expert calculated its lost profits damage claim with ***all profits earned by Posey***.  *See* Memorandum and Order [**D.N.** 228] at p. 30.  But, HipSaver's damages expert's calculations were based **only** on Hipster sales, and ***not*** on ***all*** profits earned by Posey.  Dr. Epstein calculates Posey's profits for Hipster sales as $756,828 for the period of

supports the inference of causation:

> **[I]f the allegedly false Garwood references resulted in lower HipSaver sales, it would be expected that higher monthly sales would occur when the references were discontinued.**

Report of Creighton Hoffman, February 16, 2005, at p. 6. [6]  HipSaver's December 2005 and 2006 sales data show precisely the response Mr. Hoffman predicted if injury had occurred: HipSaver sales rebounded after the Garwood Advertisement was discontinued and continued to grow in the following months.  Supplemental Expert Report of Roy Epstein, May 24, 2007.

---

October 2004 through December 2005.
[6]  In their report, Mssrs. Hoffman and Green did not find an increase in HipSaver sales immediately following removal of the advertisement.  However, Mssrs. Hoffman and Green excluded data from December 2005 which would have shown an increase in sales.  Furthermore, Hoffman's implication that an increase in sales would follow immediately after removal of the ads is challenged by Dr. Epstein and defies common sense.  As Dr. Epstein states in his report, "one would expect HipSaver's sales to require some time before ramping up to a level that is free of the lingering effect of the advertising."  Supplemental Expert Report of Dr. Epstein, May 24, 2007, at ¶6.



Oct. 2004 – Aug. 2005
(During Garwood Advertising)

Sept. 2005 – Dec. 2005
(4-month period directly
following removal of Garwood
ad)

Jan. 2006 – Dec. 2006
(Period beginning 4 months
after the Garwood ad was
removed)

Because this growth coincides with Posey's removal of the Garwood advertisement, the data supports a reasonable inference that HipSaver's growth rate would have been higher absent the marketplace disruption of false advertising and accordingly, that HipSaver was injured as a result of Posey's false Garwood advertising, conforming to Posey's own expert's economic analysis. By Posey's own expert statement, "higher monthly sales [occurring] when the references were discontinued" shows that "the allegedly false Garwood references resulted in lower HipSaver sales."  Report of Creighton Hoffman, February 16, 2005, at p. 6.

> **b.** **Posey's Growth Rate was Almost Twice That of HipSaver During the Period of the Garwood Advertising and Supports a Strong Inference that the Garwood Advertising Caused Injury to HipSaver**

As previously stated in Dr. Epstein's Expert Report, dated October 31, 2006, and restated

in the attached Supplemental Report, the parties' growth rates *during* the period of the false advertising are markedly different. Posey's average monthly sales increased by 8.8% in the nine months following September 2004 relative to the nine months prior. *See* Expert Report of Hoffman and Green, February 16, 2006, at 7. This same comparison for HipSaver, using data from Hoffman and Green's exhibits, shows that HipSaver's sales increased by only 4.5%. *See* Supplemental Expert Report of Dr. Epstein, May 24, 2007, at 8 This comparison creates a reasonable inference that HipSaver experienced a depressed rate of growth as a result of the false advertising.

> **c.** **The 2006 DermaSaver Sales Data Shows that External Factors such as Formulary Restrictions or Brand Loyalty Cannot Alone Account for the Disparity in HipSaver and Posey Sales**

HipSaver also offers 2006 sales data for a new product designed and manufactured by HipSaver and sold under the trade name DermaSaver. DermaSaver was first sold in June 2005. This product directly competes with a number of Posey products. The 2006 DermaSaver sales data provides an alternative 'but for' scenario with respect to HipSaver's access to long term healthcare chains and catalogs.

In contrast to the HipSaver product, which has been frozen out of the national healthcare facilities, DermaSaver has been successfully sold to the same customers. Because all other variables are held equal (the products directly compete; the product providers are the same; the sales and customer services are the same), the comparison between the HipSaver and DermaSaver market penetration shows that, absent a marketplace disruption such as the Garwood advertising, HipSaver would have had the ability to sell in large chains where Posey products were already sold. This data counters Posey's suggestion (*see e.g.* Expert Report of Gary Reich, February 16, 2006 at ¶¶ 26-27) that it is formulary restrictions, brand loyalty, or

Posey's tenure in the marketplace, rather than false advertising, that kept HipSaver out of the healthcare chains and large distributors. This 2006 DermaSaver sales data offers an alternative 'but for' scenario, showing HipSaver's access to healthcare institutions but for the marketplace disruption.

### d.   A Reasonable Fact Finder Can Infer That Posey's False Advertisements Caused Harm to HipSaver

In addition to HipSaver's illustrations of actual harm, Posey's false advertising of the quality and effectiveness of its hip protection product creates a common sense inference of lost sales. *Cashmere,* 284 F.3d at 318-19 (1st Cir. 2002).

HipSaver has been harmed seriously, perhaps fatally in this case. And there can be no doubt that Posey is the source—the single competitor with an *admitted* history of false advertising, the competitor with a history of marketing a defective product, and the competitor which set out in 2001 to knock off HipSaver's product and capture the market by any means available.

### 6.   HipSaver Seeks an Accounting of Posey's Profits as a Proxy for Its Injury

Once the plaintiff has provided a reasonable basis for damages, the plaintiff need only prove the amount of damages with as much certainty as the circumstances of the case permit. *Ricky Smith Pontiac, Inc. v. Subaru of New England, Inc.*, 14 Mass.App.Ct. 396, 422-423 (1982)(awarding lost profits for loss of additional sales even though plaintiff's sales increased over time) at 426-427; *see also Cahill v. TIG Premier Ins. Co.*, 47 F.Supp. 2d 87, 89 (D. Mass. 1999)(affirming jury award for lost profits because expert testimony provided "sufficient certainty" and stating that while lost profits cannot be recovered when they are "remote, speculative, hypothetical, and not within the realm of reasonable certainty," they need not be

"susceptible of calculation with mathematical exactness")(internal citations omitted).

As a small closely-held corporation, HipSaver does not have the accounting or bookkeeping facilities to enable it to quantify its actual damages. Accordingly, Posey seeks an accounting of Posey's Hipster profits for the period of injury, September 2004 through December 2005 as a proxy for its own damages. The damages provision under the Lanham Act expressly provides that plaintiff may recover damages in the form of lost profits and corrective advertising:

> When a violation shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled … to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed at its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed.

15 U.S.C. § 1117(a).

Based on Posey's financial data, Dr. Epstein assesses Posey's profits of its Hipster sales at $756,828.[7] Expert Report of Dr. Epstein, September 26, 2006 at 6. It is Posey's burden to show if and to what extent HipSaver should not be awarded all of Posey's Hipster profits. *Tamko Roofing Products, Inc. v. Ideal Roofing Co., Ltd,* 282 F.3d 23, 36-37 (1st Cir. 2002)(stating that once infringement and direct competition are established, the burden of showing that not all profits should be awarded falls on the defendant).

In addition to money damages, HipSaver seeks injunctive relief, permanently enjoining Posey from bringing back the Garwood Advertisement for a third time or making any reference to the tests conducted by Garwood or reference to the results of the 2001 tests. Finally, HipSaver

---

[7] HipSaver wishes to correct an error in this Court's Memorandum and Order. This Court stated that HipSaver's expert calculated its lost profits damage claim with all profits earned by Posey. See Memorandum and Order at p. 30. But, HipSaver's damages expert's calculations were based only on Hipster sales, and not on all profits earned by Posey. Dr. Epstein calculates Posey's profits for Hipster sales as $756,828 for the period of October 2004 through December 2005.

requests that Posey publish corrective advertising to be posted on the Posey web-site and Posey catalog and to be made in writing to Posey sales staff and sales representatives and to every person and entity on Posey's customer and solicitation lists in an attempt to mitigate or reverse any lasting effects of the Garwood Advertisement.

### 7. Posey's False Advertising was Willful

Under the Lanham Act, false advertising with a "malicious, fraudulent, deliberate, or willful" intent creates an "exceptional case." *See Tamko Roofing Prods., Inc. v. Ideal Roofing Co., Ltd.*, 282 F.3d 23, 31 (1st Cir. 2002) (affirming attorney's fees award based on an advisory jury finding that Lanham Act violation was willful). "A finding of bad faith or fraud is not a necessary precondition. Willfulness short of bad faith or fraud will suffice when equitable considerations justify an award and the district court supportably finds the case exceptional." *Id.* at 32. A finding of intent for a Lanham Act "exceptional case" is based on the "totality of the circumstances." *Tamko Roofing*, 282 F.3d at 33. Whether a case is an "exceptional case" within the meaning of the Lanham Act determines whether a plaintiff may recover attorney's fees as part of its recovery. 15 U.S.C. § 1117(a).

HipSaver will present evidence that, given the history between these parties and Posey's awareness of the concern of false advertising, and given the facts of the case which show that the Garwood claims are literally false and that such false claims were made knowingly by Posey, this false advertising case should be considered exceptional and attorney fees and costs should be awarded to HipSaver.

### B. HipSaver Will Prevail On Its Chapter 93A Claim (Count III)

HipSaver will prevail on its Chapter 93A claim because Posey's false advertising in violation of the Lanham Act also constitutes a violation of G.L. c. 93A. §§ 2, 11. Chapter 93A

makes misleading or false advertising actionable by a competitor damaged by such advertising. *Skinder-Strauss Associates v. Massachusetts Continuing Legal Educ. Inc.,* 914 F.Supp. 665, 681-682 (D. Mass. 1995)(finding that using the word "official" where it did not have any endorsement supported a 93A claim because it "could reasonably be found to have caused a person to act differently from the way he otherwise would have acted"); 940 C.M.R. § 6.04(1) (1995) (providing that "[i]t is an unfair or deceptive act for a seller to make any material representations of fact in an advertisement if the seller knows or should know that the material representation is false or misleading or has the tendency or capacity to be misleading").  The Court has already determined that, "[b]ecause the distribution of these materials occurred in-state, HipSaver has produced sufficient evidence that the 'center of gravity' of the claim occurred Posey's false advertising occurred 'primarily and substantially' in of the Commonwealth."  Memorandum and Order [**D.N.** 228] at p. 34.

Under Ch. 93A, HipSaver seeks money damages as well as attorney fees and costs.

### C.   HipSaver Will Prevail On Its Breach Of Contract Claim (Count I)

To prevail on a breach of contract claim, a party must show (1) the existence of a valid and binding contract; (2) that the complaining party has complied with the contract and performed his own obligations under it; and (3) that the breach of contract caused damages. *Persson v. Scotia Prince Cruises, Ltd.,* 330 F.3d 28, 34 (1st Cir. 2003) *(citing 5* Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1235, at 268-70 (2d ed. 2002)).

### 1.   The Settlement Agreement Between the Parties is Valid and Binding

In 2004, HipSaver filed suit against Posey in the District Court of Massachusetts, challenging Posey's distribution of the so-called "UCLA White Paper." Following mediation with Mazzone, J., HipSaver and Posey entered into a settlement agreement. Both parties signed

the agreement and gave consideration for the agreement.

**2.      HipSaver Complied with the Contract and Performed all Obligations under the Contract**

The Court already determined that Posey failed to allege any facts that HipSaver has not complied with the terms of the settlement agreement.  Memorandum and Order [**D.N.** 228] at pp. 20 – 21 (dismissing Posey's breach of contract counterclaim).

**3.      Posey Breached the Notice Provision of the Settlement Agreement**

The notice provision of the Settlement Agreement required that, "[i]n the event of any further comparative testing of Posey and HipSaver products by either party, neither party shall make commercial advertising use of the results or analysis related to such testing without first giving the other party at least thirty (30) days advance written notice of the results or analysis." "Posey did not provide HipSaver with advanced notice of its intent to disseminate [the Garwood Advertisement]."  Memorandum and Order [**D.N.** 228] at p. 7.

The clear purpose of the notice provision in the Settlement Agreement was to give HipSaver an advanced opportunity to review comparative studies (shown previously to be flawed, faulty and, misrepresented) suddenly pulled out of thin air by Posey and asserted as fact. This works in tandem with provisions such as those of paragraphs 5-8 in the Settlement Agreement, requiring corrective advertising, and paragraph 4, preventing the future use of flawed studies.  These preventative measures were essential for a small company like HipSaver, which can survive only so many attacks of false advertising, no matter how much corrective advertising follows.

Posey offers a crabbed reading of the opening phrase of paragraph 8 which would allow it to scuttle the Agreement by recycling old, flawed tests or by offering new comparisons from

old testing.[8]  Posey's argument would contradict and undercut the very purpose of the Settlement Agreement.  An exception for a new advertising campaign grounded in "old testing" has no purpose and certainly was not contemplated or intended by the parties.  Indeed, the passive preamble to paragraph 8 and its reference to *further* testing could not have been and never was intended as a crippling limitation to be applied only to *new* testing.  Rather, the opening phrase should be construed, in light of its purpose, to mean:  "In the event of any further application of comparative testing of Posey and HipSaver products by either party . . .".  *Fay, Spofford & Thorndike, Inc. v. Massachusetts Port Authority*, 387 N.E.2d 206, 210 (Mass. App. Ct. 1979) (refusing to construe sentence in contract as limitation where a literal interpretation would undercut "the general purpose manifested by the entire contract, and by circumstances existing at the time of execution").

As is evident from the context of the Settlement Agreement (which settled a prior false advertising claim based on a different flawed study and which compelled corrective advertising) the point to paragraph 8 is notice of the further use of comparative tests in advertising, and Posey should not be allowed to evade its duties by finely parsing a provision with an otherwise obvious objective.  Had Posey complied with the notice provision, this lawsuit might well have been avoided.  Its failure to comply with the notice provision is material and a direct breach of the Settlement Agreement.

### 4.    Posey's Breach of the Settlement Agreement Caused Damage to HipSaver

Posey's failure to notify HipSaver of the Garwood Advertising deprived HipSaver of the

---

[8]  When Posey developed its High Durability product, Posey supplemented the original 2001 Garwood Test with new testing of the High Durability product. Memorandum and Order [**D.N.** 228] at p. 7.  The Court has already determined that this new Garwood testing falls within the plain meaning of the notice provision of the Settlement Agreement.  Memorandum and Order [**D.N.** 228] at p. 20.  Accordingly, to the extent that this new testing is referenced or relied upon in the Garwood advertisement, Posey breached the Settlement Agreement by distributing

opportunity to object to the advertisements before they were circulated to thousands of hip protector customers. Furthermore, without knowledge of the advertisements, HipSaver was not even aware of the false statements and was unable to counter the statements in the advertisements even after the advertisements were distributed. Accordingly, all harm to HipSaver caused by the false advertising was suffered as a result of Posey's breach of the notice provision of the Settlement Agreement.

## III.    PLAINTIFF'S PROPOSAL REGARDING VOIR DIRE

HipSaver defers to the Court's usual practices for conducting voir dire and recommends that the Court include the relevant questions filed with the Court on May 15, 2007.

## IV.    PLAINTIFF'S PROPOSAL REGARDING PRETRIAL JURY CHARGE

HipSaver defers to the Court's usual practices for determining the appropriate pretrial jury charge, if any.

## V.    PLAINTIFF'S PROPOSED JURY INSTRUCTIONS

The Plaintiff filed Proposed Jury Instructions with the Court on May 15, 2007.

## VI.    PLAINTIFF'S PROPOSED JURY VERDICT FORM

The Plaintiff will file a Proposed Jury Verdict Form with the Court at the close of evidence unless the Court requests it sooner.

## VII.    PLAINTIFF'S PROPOSAL REGARDING FINDINGS OF FACT AND CONCLUSIONS OF LAW

HipSaver proposes a conclusion of law that Posey's impact absorption advertising claims are material. The Court has already determined that "impact absorption is an 'inherent quality or characteristic' of hip protector garments -- reducing the impact from a fall is, after all, the point -- HipSaver has met its burden of producing evidence that the representations are material."

---

the Garwood Advertisement without giving the required notice to HipSaver.

Memorandum and Order [**D.N.** 228] at p. 28.  False or misleading statements relating to an "inherent quality or characteristic" of the product are material.  *Cashmere,* 284 F.3d at 311-312.  Specifically, the Court has determined that the following claims related to impact absorption and are material: (1) "An independent laboratory study was conducted to determine the most effective impact absorbing material," and (2) "In an independent laboratory test designed to simulate a fall causing direct impact to the greater trochanter, the Posey Hipster III reduced the impact force below 90%, the best results of any hip protector available."  Memorandum and Order [**D.N.** 228] at pp. 27-28.

Posey's remaining claims are also material as a matter of law because they also relate to hip protector impact absorption, and are based on an impact absorption test:

- **"A test was created that would simulate a fall causing direct impact to the greater trochanter."**
- "Posey Hipsters **Proven Effective in Laboratory Tests"**
- "Posey Hipsters **Help Protect Against Injury from Falls"**
- "Posey Hipster … **showed excellent impact energy absorption**"
- "Posey engaged Garwood laboratories to **conduct testing to select a comfortable and effective impact absorbing material**"

Because these claims relate to the inherent hip protector quality of impact absorption, the Court should find them material as a matter of law.

HipSaver requests a finding of fact that the Garwood advertisements were distributed in interstate commerce.  Posey concedes that is placed the Garwood Advertisement in interstate commerce.  Posey's Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment [D.N. 182] at p. 11; Memorandum and Order by the Court, May 25, 207 at 8.

HipSaver also requests a finding of fact that the Posey and HipSaver are direct competitors. Memorandum and Order [**D.N.** 228] at 3.

Respectfully submitted
The HipSaver Company, Inc.
By its Attorneys,

/s/ Courtney M. Quish
Lee Carl Bromberg, BBO No.: 058480
Edward J. Dailey, BBO No.: 112220
Courtney M. Quish, BBO No.: 662288
BROMBERG SUNSTEIN, LLP
125 Summer Street - 11th floor
Boston, Massachusetts 02110-1618
617.443.9292
617.443.0004 Fax
cquish@bromsun.com
May 25, 2007

## CERTIFICATE OF SERVICE

I certify that this document has been filed through the Electronic Case Filing System of the United States District Court for the District of Massachusetts and will be served electronically by the court to the Registered Participants identified in the Notice of Electronic filing.

/s/ Courtney M. Quish

02820/00502 673507.3